**OBERMAYER REBMANN MAXWELL & HIPPEL LLP**
Michael D. Vagnoni, Esquire (*pro hac vice*)
Matthew S. Olesh, Esquire
Edmond M. George, Esquire (*pro hac vice*)
60 East 42nd Street, 40th Floor
New York, NY 10165
Telephone: 917-994-2544
Direct Dial: 215-665-3043
Facsimile: 917-994-2545
michael.vagnoni@obermayer.com
*Counsel to Tinuiti, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | : | |
|---|---|---|
| **In re:** | : | CHAPTER 11 |
| | : | |
| **RML, LLC**[1] | : | Case. No. 22-10784 (DSJ) |
| | : | |
| **Reorganized Debtor** | : | |
| | : | |
| Tax I.D. No. N/A | : | |
| | : | |

**MOTION OF TINUITI, INC. FOR ALLOWANCE AND
IMMEDIATE PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM
<u>PURSUANT TO 11 U.S.C. §§ 503(a) AND (b)(1)(A)</u>**

Tinuiti, Inc. ("Tinuiti"), by and through its attorneys Obermayer Rebmann Maxwell & Hippel LLP, hereby files this motion (the "Motion") for allowance and immediate payment of its administrative expense claim in the amount of $77,743.05, plus any and all related costs, expenses, and fees pursuant to 11 U.S.C. §§ 503(a) and (b)(1)(A). In support of this Motion, Tinuiti respectfully states as follows:

---

[1] On May 30, 2023, the Court entered the Order (I) Consolidating Remaining Matters Under the Remaining Case, (II) Entering Final Decree Closing Certain of the Chapter 11 Cases, (III) Changing the Case Caption of the Remaining Case, and (IV) Granting Related Relief [Docket No. 1920], closing the affiliated chapter 11 cases and directing that all motions, notices, and other pleadings related to any of the affiliated debtors be filed in this case. The location of RML, LLC's service address for purposes of these Chapter 11 Cases is: 55 Water St., 43rd Floor, New York, NY 10041-0004.

4868-1632-1891 v4

**JURISDICTION AND VENUE**

1. On June 15, 2022 (the "Petition Date"), Revlon, Inc. and Revlon Consumer Products Corporation, among other debtors (the "Debtors"), filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") initiating the above-captioned cases.

2. The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b).

3. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (B).

4. Venue is proper in this District pursuant to 28 U.S.C. § 1409.

**BACKGROUND**

5. On or about July 1, 2020, Tinuiti and Debtor Revlon Consumer Products Corporation executed a Master Services Agreement ("MSA") for digital marketing and media services. See **Ex. A** to the Chaille Brown Declaration.

6. The MSA provided that Revlon Consumer Products Corporation:

> hereby engages Tinuiti to provide certain digital marketing and media services (the "Services") as more fully described in one or more Statements of Work (each an "SOW") with each SOW to be incorporated herein, regardless of when each SOW is entered into, by this reference and made a part hereof as if fully set forth herein.

See Id. at ¶1.1. (hereinafter, "Services" and "SOW" take on the same definitions they are given in the MSA).

7. Pursuant to this provision, each SOW is incorporated into the MSA, and the MSA and all SOWs constitute a single, indivisible contract.

8. Subsequently, Tinuiti and various Revlon Consumer Products Corporation affiliates, each a member of the Debtors, entered the following SOWs for which Tinuiti has not been paid in full:

   a) Schedule A6, entered March 15, 2022;

   b) Schedule D1, entered July 1, 2021; and

   c) Schedule F1, entered September 1, 2021.

See **Ex. B, C, & D,** respectively to the Chaille Brown Declaration.

9. On October 24, 2022, Tinuiti filed proofs of claim in several of the Debtors' bankruptcy cases for the amounts unpaid under the SOWs, including Claim No. 3134 filed in the Revlon Consumer bankruptcy case in the amount of $1,491,511.86 as the aggregate amount due to Tinuiti (the "POC").

10. Schedule D1 was renewed by the Debtors through June 30, 2023.

11. After the Petition Date, the Debtor Revlon Consumer Products Corporation and Tinuiti negotiated and ultimately entered into the following agreements:

   a) Continuation of Schedule F1 and Addendum 4 to Schedule A1, Continuation and Revision of Schedule A6 dated June 30, 2022, with an effective date of July 1, 2022 (the "Continuation Agreement");

   b) Amendment Number 1 to Schedule A6 made and entered into and effective as of July 1, 2022, which modified the terms of Schedule A6 and extended the term of A6 to June 30, 2023 ("Amendment 1 to Schedule A6"); and

   c) Amendment Number 2 to Schedule F1 dated October 31, 2022, with an effective date of September 21, 2022 which extended the term of Schedule F1 to June 30, 2023 ("Amendment 2 to Schedule F1").

4868-1632-1891 v4

See **Ex. E, F, & G,** respectively to the Chaille Brown Declaration.

12. Pursuant to the MSA and SOWs (hereinafter, the MSA, Schedule A1, Schedule D1, Schedule F1, Schedule A6, the Continuation Agreement, Amendment 1 to Schedule A6 and Amendment 2 to Schedule F1 are referred to as the "Tinuiti Contracts"), Tinuiti provided digital marketing and media services to the following Debtors: Revlon Consumer Products Corporation, Revlon Canada, Inc., Elizabeth Arden Canada Ltd., Revlon International Corporation, and Elizabeth Arden UK Ltd.

13. As a party to the MSA, Debtor Revlon Consumer Products Corporation is liable for all amounts due thereunder.

14. The Tinuiti Contracts are executory contracts.

15. While the Tinuiti Contracts were originally not assumed, assigned, or rejected; the Debtors have since rejected the Tinuiti Contracts in accordance with the Debtors' Third Plan Supplement and Exhibits B-1 and B-2 attached thereto, which were filed on March 31, 2023 (DI# 1734).

16. While the Debtors' Third Plan Supplement only explicitly rejects the MSA, pursuant to the MSA, each SOW is incorporated into the MSA, and the Tinuiti Contracts constitute a single, indivisible contract. As such, the Debtors have rejected all of the Tinuiti Contracts.

17. Thereafter, on April 17, 2023, Tinuiti received a letter from the Debtors that effectively terminated the Tinuiti Contracts (the "Termination Letter") and stated in part:

> If not already completed or specifically agreed between the parties that the service is not required, it is expected that Tinuiti will complete all existing projects and services and assist with all transition activities as are reasonable and customary and/or as outlined in the Scope(s) on or before May 31, 2023.

See **Ex. H** to the Chaille Brown Declaration.

18. Subsequently, on April 28, 2023, Tinuiti filed a timely proof of claim in the amount of $153,933.33 for damages resulting from the rejection of the Tinuiti Contracts, pursuant to Article VII.B of the Debtors' Third Amended Plan as a counterparty to an unexpired executory contract that has been rejected (the "Rejection Claim") (Claim No. 37199).

19. In addition to the rejection damages, Tinuiti still has not been paid for the Services in the amount of $77,743.05, provided and invoiced to the Debtors under the Tinuiti Contracts for the time period of April 1, 2023, through April 30, 2023 (the "April Invoices"). See **Ex. I** to the Chaille Brown Declaration.

20. The Unpaid Invoices are broken down as follows:

| Invoice No. | Date | Due Date | Amount | Services |
|---|---|---|---|---|
| INV61021 | 4/30/2023 | 6/14/2023 | $35,000.00 | April 2023 Media Fees |
| INV61028 | 4/30/2023 | 6/14/2023 | $9,847.45 | April 2023 Media Fees |
| INV61227 | 4/30/2023 | 6/14/2023 | $32,895.60 | April 2023 Affiliate Fees |
| | | | **$77,743.05** | |

21. The April Invoices are due on or before June 14, 2023.

22. In addition to the April Invoices, the Debtors requested in the Termination Letter that Tinuiti continue to provide Services through May 31, 2023, which Services will be the subject of additional invoices that will be added as a supplement to the instant Motion once they are

generated (the "May Invoices" or together with the April Invoices, the "Unpaid Invoices"). See **Ex. H** to the Chaille Brown Declaration.

23. The Services that are the basis for the Unpaid Invoices and the costs and expenses associated therewith were actual and necessary to preserve the Debtors' Bankruptcy Estate. The work underlying the invoices was beneficial to the estate as the Debtors' estate received advertising and digital media exposure as a result of the performance of Tinuiti, completed at the request of the Debtors.

24. While the Debtors made payment on some post-petition invoices, including a payment of $141,000.00 on May 15, 2023, they have not made payment on the Unpaid Invoices.

25. The Debtors' failure to make payment of the Unpaid Invoices has harmed Tinuiti in the amount of at least $77,743.05 plus the May Invoices and any and all related costs, expenses, and fees.

26. The circumstances of the instant matter justify the immediate payment of the Unpaid Invoices plus any and all related costs, expenses, and fees.

27. While the April Invoices and May Invoices are not due until June 15, 2023, and July 15, 2023, respectively, the work was performed by Tinuiti prior to the administrative bar date. Tinuiti files the Motion out of an abundance of caution as the Unpaid Invoices are due after the June 1, 2023, bar date for the filing of requests for administrative expenses.

28. Tinuiti and the Debtors have been unable to resolve the above-cited issues and the payment of the Unpaid Invoices. As such, Tinuiti files the present Motion for allowance and immediate payment of an administrative claim in the amount of the Unpaid Invoices plus any and all related costs, expenses, and fees.

**APPLICABLE LAW AND BASIS FOR RELIEF**

A.     **Tinuiti is Entitled to a Post-Petition Administrative Expense Claim**

29.    The Bankruptcy Code provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including . . . the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A).

30.    Under § 503(b)(1)(A) of the Bankruptcy Code, "[a]n expense is administrative only if (1) it arises out of a transaction between the creditor and the bankrupt's trustee or debtor in possession, and (2) only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business." *In re Bethlehem Steel Corp.*, 479 F.3d 167, 172 (2d Cir. 2007).

31.    As to the second requirement, courts have held that an administrative expense payment should be afforded to those who either assist in the preservation and administration of the estate, or who aid the debtor's rehabilitation to the benefit of all creditors. *See In re Armorflite Precision, Inc.,* 43 B.R. 14 (Bankr. D. Me. 1984).

32.    Moreover, the goods or services provided must have been given to and actually benefit the debtor-in-possession, and must not be intended to further the self-interest of the particular claimant. *See In re Charter Company,* 52 B.R. 267 (Bankr. N.D. Fla. 1985).

33.    It is undisputable that the Services that are the basis for the Unpaid Invoices were actually provided to the Debtors at the Debtors' specific request, and that the costs and expenses that make up the Unpaid Invoices arose out of the Tinuiti Contracts, which are undoubtedly transactions between Tinuiti and the Debtors.

34. Further, the Services that are the basis for the Unpaid Invoices were not only beneficial to the Debtors, but also assisted in the preservation and administration of the Debtors' bankruptcy estate, and aided in the Debtors' rehabilitation to the benefit of all creditors.

35. This fact is made clear from the Debtors entering into the Continuation Agreement, Amendment 1 to Schedule A6, and Amendment 2 to Schedule F1, agreeing to continue using Tinuiti's services after the Petition Date and until June 30, 2023.

36. Indeed, the Services that are the basis for the Unpaid Invoices and the costs and expenses associated therewith were actual and necessary to preserve the Debtors' bankruptcy estate

37. Therefore, Tinuiti has demonstrated that it satisfies both requirements of § 503(b)(1)(A) of the Bankruptcy Code and therefore is entitled to an administrative expense claim in the contract amount of $77,743.05 plus the May Invoices and any and all related costs, expenses, and fees.

B. **Tinuiti's Administrative Claim Should Be Immediately Payable**

38. Courts have the discretion as to whether to provide for the immediate payment of an allowed administrative claim. *See, e.g.*, *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002); *In re Global Home Prods.*, LLC, 2006 Bankr. LEXIS 3608, at *10-11 (Bankr. D. Del. Dec. 21, 2006). Specifically, courts look to a variety of factors in determining whether to order immediate payment, including (1) bankruptcy's goal of orderly and equal distribution among creditors, (2) the particular needs of the administrative claimant, and (3) the length and expense of the cases' administration. *See HQ Global Holdings*, 282 B.R. at 173.

39. The Debtors the Services that are the basis for the Unpaid Invoices pursuant to the Continuation Agreement, Amendment 1 to Schedule A6, and Amendment 2 to Schedule F1, agreeing to continue using Tinuiti's services after the Petition Date and until June 30, 2023.

40. There is no doubt that the Debtors requested and received the Services and entered into the Continuation Agreement, Amendment 1 to Schedule A6, and Amendment 2 to Schedule F1 in order to allow the Debtors to continue operations after the Petition Date and preserve and benefit the Debtors' bankruptcy estate.

41. Indeed, the fact that Tinuiti's right to payment by virtue of the Debtors' rejection and termination of the Tinuiti Contracts arose post-petition means that its claim is distinct from the typical bankruptcy distribution scheme that governs the treatment of similarly situated pre-petition creditors.

42. Further, Tinuiti is entitled to payment on the Unpaid Invoices as the Debtors specifically requested in the Termination Letter that Tinuiti continue to provide the Services under the Tinuiti Contracts through May 31, 2023.

43. As to Tinuiti's need for immediate payment, said administrative expense claim is a substantial sum for the purposes of Tinuiti's small business operations. Thus, failure by the Debtors to remit immediate payment of Tinuiti's administrative expense claim will impose a substantial financial hardship on Tinuiti in addition to the harm it has already suffered on account of the unpaid amounts in the POC and the Rejection Claim.

44. Therefore, Tinuiti has demonstrated that this Court should exercise its discretion to compel the Debtors to immediately pay Tinuiti's administrative expense claim in the amount of $77,743.05 plus the May Invoices and any and all related costs, expenses, and fees.

**NOTICE**

45. Notice of this Motion will be provided to (i) counsel to the Debtors, Paul Weiss Rifkind Wharton & Garrison LLP; (ii) the Office of the United States Trustee for Region 2; (iii) counsel to the Ad Hoc Group of Term Loan DIP Lenders and Brandco Lenders, Davis Polk & Wardwell LLP; (iv) counsel the Official Committee of Unsecured Creditors, Brown Rudnick LLP; (v) Kroll Restructuring Administration LLC, the Debtors' Claims and Noticing Agent; and (vi) all parties that have filed requests for electronic service of documents in these cases. Tinuiti respectfully submits that, in view of the facts and circumstances, such notice is sufficient, and no other or further notice need be provided.

**NO PRIOR REQUEST**

46. No prior request for the relief sought in this Motion has been made to this or any other court.

**\*\*\*REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK\*\*\***

4868-1632-1891 v4

## CONCLUSION

WHEREFORE, Tinuiti respectfully requests that pursuant to § 503(a) and (b)(1)(A) of the Bankruptcy Code the Court enter an Order (i) allowing Tinuiti an administrative expense claim in the amount of $77,743.05 plus the May Invoices and any and all related costs, expenses, and fees, (ii) compelling the Debtors to make immediate payment in satisfaction of said claim, and (iii) for such other and further relief as to this Court may deem just and proper.

Respectfully submitted,

Dated: June 1, 2023         By:    */s/ Michael D. Vagnoni*
                                    Michael D. Vagnoni, Esquire (*pro hac vice*)
                                    Matthew S. Olesh, Esquire
                                    Edmond M. George, Esquire (*pro hac vice*)
                                    60 East 42nd Street, 40th Floor
                                    New York, NY 10165
                                    Telephone: 917-994-2544
                                    Direct Dial: 215-665-3043
                                    Facsimile: 917-994-2545
                                    matthew.olesh@obermayer.com
                                    *Counsel to Tinuiti, Inc.*