**OBERMAYER REBMANN MAXWELL & HIPPEL LLP**
Michael D. Vagnoni, Esquire (*pro hac vice*)
Matthew S. Olesh, Esquire
Edmond M. George, Esquire (*pro hac vice*)
60 East 42nd Street, 40th Floor
New York, NY 10165
Telephone: 917-994-2544
Direct Dial: 215-665-3043
Facsimile: 917-994-2545
michael.vagnoni@obermayer.com
*Counsel to Tinuiti, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **In re:** | : CHAPTER 11 |
|  | : |
| **RML, LLC[1]** | : Case. No. 22-10784 (DSJ) |
|  | : |
| **Reorganized Debtor** | : |
|  | : |
| Tax I.D. No. N/A | : |
|  | : |

**DECLARATION OF CHAILLE BROWN IN SUPPORT OF**
**MOTION OF TINUITI, INC. FOR ALLOWANCE AND IMMEDIATE**
**PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM**
**PURSUANT TO 11 U.S.C. §§ 503(a) AND (b)(1)(A)**

I, Chaille Brown, the Chief Financial Officer of Tinuiti, Inc. ("Tinuiti"), hereby declare

and certify as follows:

1.     I am the Chief Financial Officer of Tinuiti and have personal knowledge of the facts

stated herein.

---

[1] On May 30, 2023, the Court entered the Order (I) Consolidating Remaining Matters Under the Remaining Case, (II) Entering Final Decree Closing Certain of the Chapter 11 Cases, (III) Changing the Case Caption of the Remaining Case, and (IV) Granting Related Relief  [Docket No. 1920], closing the affiliated chapter 11 cases and directing that all motions, notices, and other pleadings related to any of the affiliated debtors be filed inthis case.  The location of RML, LLC's service address for purposes of these Chapter 11 Cases is:  55 Water St., 43rd Floor, New York, NY 10041-0004.

2.      Tinuiti is a is a digital marketing agency offering a broad range of services, including Paid Search, Shoppable Media, Paid Social, Display, Insights & Analytics, and beyond.

3.       Tinuiti provided such services to Revlon, Inc. and Revlon Consumer Products Corporation, among other debtors (the "Debtors") both before and after the petition date, June 15, 2022 (the "Petition Date").

4.      On or about July 1, 2020, Tinuiti and Debtor Revlon Consumer Products Corporation executed a Master Services Agreement ("MSA") for digital marketing and media services. A true and correct copy of the MSA is attached as **Exhibit "A"** hereto.

5.      The MSA provided that Revlon Consumer Products Corporation:

> hereby engages Tinuiti to provide certain digital marketing and media services (the "Services") as more fully described in one or more Statements of Work (each an "SOW") with each SOW to be incorporated herein, regardless of when each SOW is entered into, by this reference and made a part hereof as if fully set forth herein.

See Id. at ¶1.1. (hereinafter, "Services" and "SOW" take on the same definitions they are given in the MSA).

6.      Pursuant to this provision, each SOW is incorporated into the MSA, and the MSA and all SOWs constitute a single, indivisible contract.

7.      Subsequently, Tinuiti and various Revlon Consumer Products Corporation affiliates, each a member of the Debtors, entered the following SOWs for which Tinuiti has not been paid in full:

    d)  Schedule A6, entered March 15, 2022;

    e)  Schedule D1, entered July 1, 2021; and

    f)  Schedule F1, entered September 1, 2021.

True and correct copies of Schedule A6, Schedule D1, and Schedule F1 are attached respectively as **Exhibits "B", "C", & "D"** hereto.

8.      On October 24, 2022, Tinuiti filed proofs of claim in several of the Debtors' bankruptcy cases for the amounts unpaid under the SOWs, including Claim No. 3134 filed in the Revlon Consumer bankruptcy case in the amount of $1,491,511.86 as the aggregate amount due to Tinuiti (the "POC").

9.      Schedule D1 was renewed by the Debtors through June 30, 2023.

10.     After the Petition Date, the Debtor Revlon Consumer Products Corporation and Tinuiti negotiated and ultimately entered into the following agreements:

> d)  Continuation of Schedule F1 and Addendum 4 to Schedule A1, Continuation and Revision of Schedule A6 dated June 30, 2022 with an effective date of July 1, 2022 (the "Continuation Agreement");

> e)  Amendment Number 1 to Schedule A6 made and entered into and effective as of July 1, 2022 which modified the terms of Schedule A6 and extended the term of A6 to June 30, 2023 ("Amendment 1 to Schedule A6"); and

> f)  Amendment Number 2 to Schedule F1 dated October 31, 2022 with an effective date of September 21, 2022  which extended the term of Schedule F1 to June 30, 2023 ("Amendment 2 to Schedule F1").

True and correct copies of the Continuation Agreement, Amendment 1 to Schedule A6, and Amendment 2 to Schedule F1 are attached respectively as **Exhibits "E", "F", & "G"** hereto.

11.     Pursuant to the MSA and SOWs (hereinafter, the MSA, Schedule A1, Schedule D1, Schedule F1, Schedule A6, the Continuation Agreement, Amendment 1 to Schedule A6 and Amendment 2 to Schedule F1 are referred to as the "Tinuiti Contracts"), Tinuiti provided digital

marketing and media services to the following Debtors: Revlon Consumer Products Corporation, Revlon Canada, Inc., Elizabeth Arden Canada Ltd., Revlon International Corporation, and Elizabeth Arden UK Ltd.

12.     While the Tinuiti Contracts were originally not assumed, assigned, or rejected; the Debtors have since rejected the Tinuiti Contracts in accordance with the Debtors' Third Plan Supplement and Exhibits B-1 and B-2 attached thereto, which were filed on March 31, 2023 (DI# 1734). As such, the Debtors have rejected all of the Tinuiti Contracts.

13.     Thereafter, on April 17, 2023, Tinuiti received a letter from the Debtors that effectively terminated the Tinuiti Contracts (the "Termination Letter") and stated in part:

> If not already completed or specifically agreed between the parties that the service is not required, it is expected that Tinuiti will complete all existing projects and services and assist with all transition activities as are reasonable and customary and/or as outlined in the Scope(s) on or before May 31, 2023.

A true and correct copy of the Termination Letter is attached as **Exhibit "H"** hereto.

14.     Subsequently, on April 28, 2023, Tinuiti filed a proof of claim in the amount of $153,933.33 for damages resulting from the rejection of the Tinuiti Contracts, pursuant to Article VII.B of the Debtors' Third Amended Plan as a counterparty to an unexpired executory contract that has been rejected (the "Rejection Claim") (Claim No. 37199).

15.     In addition to the rejection damages, Tinuiti still has not been paid for the Services in the amount of $77,743.05, provided and invoiced to the Debtors under the Tinuiti Contracts for the time period of April 1, 2023, through April 30, 2023 (the "April Invoices"). True and correct copies of the Unpaid Invoices are attached as **Exhibit "I"** hereto.

16.     The April Invoices are due on or before June 14, 2023.

17.     In addition to the April Invoices, as the Debtors requested in the Termination Letter
that Tinuiti continue to provide Services through May 31, 2023, which Services will be the subject
of additional invoices that will be added as a supplement to the Motion once they are generated
(the "May Invoices" or together with the April Invoices, the "Unpaid Invoices"). <u>See</u> **Ex. H**.

18.     While the Debtors made payment on some post-petition invoices, including a
payment of $141,000.00 on May 15, 2023, they have not made payment on the Unpaid Invoices.

19.     The Debtors' failure to make payment of the Unpaid Invoices has harmed Tinuiti
in the amount of $77,743.05 plus the May Invoices and any and all related costs, expenses, and
fees.

20.     While the April Invoices and May Invoices are not due until June 15, 2023 and
July 15, 2023, respectively, Tinuiti files the Motion out of an abundance of caution as the Unpaid
Invoices are due after June 1, 2023, bar date for administrative expenses.

21.     I certify that, to the best of my knowledge, the foregoing is true and accurate under
penalty of perjury.


*/s/Chaille Brown*
_____
CHAILLE BROWN
CHIEF FINANCIAL OFFICER
TINUITI INC.


Dated:  June 1, 2023_____

# EXHIBIT "A"

**Master Service Agreement**
**Between Revlon Consumer Products Corporation and Tinuiti Inc.**

This Master Services Agreement (the "MSA" or "Agreement") (collectively with all exhibits, schedules and attachments hereto, and all SOWs (defined below) entered into pursuant hereto, this "<u>Agreement</u>") is made effective as of July 1, 2020, (the "Effective Date") and is entered into by and between Revlon Consumer Products Corporation,  (the "Client") a Delaware corporation with its principal place of business located at One New York Plaza, New York NY  10004 , and TINUITI Inc. ("Tinuiti") a Delaware corporation with its principal place of business located at 121 South 13th Street, 3rd Floor, Philadelphia, Pennsylvania 19107.  Client and Tinuiti are collectively referred to as the "Parties" and individually as a "Party."

WHEREAS, Tinuiti is in the business of providing digital marketing and media services;

WHEREAS, Client desires to engage in a non-exclusive relationship with Tinuiti to perform certain digital marketing and media services;

NOW, THEREFORE, in consideration of the foregoing, the mutual promises and undertakings set forth below, and other good and valuable consideration exchanged by the Parties, the receipt and sufficiency of which are acknowledged by the Parties, the Parties agree as follows:

1. Services:  Tinuiti represents and warrants it has vast expertise in rendering Services and will provide Services in accordance with the highest industry accepted standards and will use its best efforts to provide Client with advice and recommendations according to such highest standards and expertise.  Tinuiti acknowledges and agrees that Client has engaged Tinuiti to render Services based in significant part on Tinuiti's expertise in rendering Services.  Tinuiti is a Digital Marketing and Media Services agency founded with experience in strategic planning, digital marketing program deployment, campaign optimization and reporting.  Tinuiti shall perform all Services in a good and workmanlike manner, in accordance with the highest current industry quality standards, and using personnel qualified and capable of performing the Services according to such standards. Client may request the replacement of any worker provided by Tinuiti hereunder at any time for any lawful reason, and Tinuiti shall replace that worker as soon as possible with a worker whose performance is acceptable to Client, at no additional charge to Client.

   1.1. <u>Statements of Work.</u> Client hereby engages Tinuiti to provide certain digital marketing and media services (the "Services") as more fully described in one or more Statements of Work (each an "SOW") with each SOW to be incorporated herein, regardless of when each SOW is entered into, by this reference and made a part hereof as if fully set forth herein.

      1.1.1. <u>Change Orders and Procedures.</u> If either Party requests any changes to an SOW such Party will submit a written change request to the other (a "Change Request"). In the event of any acceptable Change Request, Tinuiti will promptly provide Client with either a new SOW or an amendment to an existing SOW, each of which shall describe in detail the changes or modifications to the Services and the effect of executing such Change Request as well as the costs of the Services to implement each Change Request as well as any additional fees or terms. Changes to an existing SOW will not become effective until executed in writing by both Parties. Absent the execution of a new SOW or an amendment to an existing SOW, the Parties will continue to proceed to fulfill their obligations under the then-current SOW then in force for the applicable Services.

   1.2. <u>Affiliates.</u> This Agreement shall be applicable to Client and its affiliates and subsidiaries. Both Client and Client's affiliates may enter into SOWs. A Client affiliate may enter into a SOW directly with Tinuiti and such SOW shall be governed by the terms and conditions set forth in this Agreement.

   1.3. <u>Conflict Between Documents.</u> In the event of a conflict between any term of this Agreement and a SOW, this Agreement will control unless the conflicting term specifically references the inconsistent term in the Agreement, in which case the conflicting term will control only for the limited purpose set forth in the SOW containing such term.

   1.4. <u>Services Standards and Client Support.</u> Tinuiti will perform the Services in a professional and workmanlike manner for the applicable Services and in accordance with the terms of this Agreement and the applicable SOW. Client shall continuously provide, throughout the term of each SOW pursuant to this Agreement, Tinuiti with access to any and all Client accounts necessary or required in order for Tinuiti to provide the Services under any applicable SOW to Client. Client shall not make any changes to the Services without Tinuiti's knowledge. Tinuiti shall not be responsible for changes made to Client's account(s) or any advertising campaign that Tinuiti has not been retained to either create,

**Master Service Agreement**
**Between Revlon Consumer Products Corporation and Tinuiti Inc.**

promote, provide support or services for or if such change contradicts advice provided by Tinuiti or are done without Tinuiti's knowledge in the event that Tinuiti has been retained to create, promote or provide support or services for.

1.5.    Account Representative. During the Term of each SOW, each Party will make available an individual representative or representatives who will serve as the primary point of contact in dealing with the other Party during the Term of such SOW (each representative an "Account Representative"). Each Account Representative: (a) must be reasonably acceptable to the other Party and (b) will communicate regularly with the other Party's Account Representative. The Client's Account Representative will have the power and authority to make routine decisions with respect to actions taken by Tinuiti in the ordinary course of day-to-day management of Client's account with Tinuiti and, to bind the Client with any authorization as may be required from time to time for any approvals or matters related to the Services. The Client's Account Representative shall be knowledgeable with regard to the Services. Either Party may notify the other party that an Account Representative is not acceptable either because such Account Representative fails to properly communicate with the other Party's Account Representative; is abusive and is acting in an unprofessional manner; or does not have the necessary authority required of the Account Representative pursuant to this Agreement. Upon receipt of such notice the Account Representative must either be replaced to the reasonable satisfaction of the other Party or corrective actions be taken so that the Account Representative is reasonably satisfactory to the other Party.

1.6.    Meetings and Pre-approved Expenditures Related to Client Meetings. Tinuiti will participate in meetings with Client, as reasonably requested by Client, to review the Services. Client will reimburse Tinuiti for all travel related expenses.  Any expenses Tinuiti seeks reimbursement for that are above the Travel Budget shall require Client's prior approval. Client will reimburse Tinuiti for Tinuiti's travel-related expenses at cost and without mark-up only to the extent that:  (a) such expenses relate to travel requested by Client that is not such Tinuiti personnel's primary work location (and is not local to such primary work location), (b) such expenses do not relate to governance or account management activities, (c) such expenses comply with the most recent version provided by Client of their Contractor Travel policy with it's most recent applicable version attached hereto as **Exhibit 1**, (d) such expenses are approved by Client in writing in advance and (e) Tinuiti retains substantiation of such expenses, such as itemized invoices, receipts and/or other payment documentation, which documents will be available upon Client's request. Any other travel-related expenses incurred by Tinuiti are not reimbursable.

2.    Intellectual Property

2.1.    Client Materials. Client hereby grants to Tinuiti, during the Term, a limited, revocable, non-exclusive, non-transferable, royalty-free, right and license (without the right to sublicense) to use, copy, perform, display and distribute any content, trademarks, copyrights and logos provided to Tinuiti by or on behalf of Client ("Client Materials") for the sole purpose of performing the Services. Client shall have the right to revoke the rights granted to Tinuiti under this Agreement to use such Client Materials, and Tinuiti will immediately cease using the applicable Client Materials. Tinuiti shall not be responsible for any fines, judgments, losses or other damages caused by Tinuiti's use of the Client Materials as directed by Client in any campaign or advertisement.

2.1.1.    Ownership. As between Tinuiti and Client, Client will own all right, title and interest in and to any and all Client Materials. Tinuiti shall not act or fail to act in a manner inconsistent with such ownership nor use the Client Materials in any way other than as specifically provided herein. Tinuiti's use of the Client Materials shall inure to the benefit and be on behalf of Client.

2.1.2.    Prior Approval of Expenditures and Campaign Materials. Tinuiti will secure Client's prior written approval before releasing any Client Materials to any third party under the terms of any SOW. Client must approve all creative materials used in executing the Services, including but not limited to keywords, creative assets, ad copy, emails or advertisements (collectively, the "Advertisements"). An email by the Client Account Representative or other authorized individual on behalf of Client shall be a sufficient form for communicating Client's approval of the Advertisements. Approval by Client of any Advertisement created by Tinuiti hereunder shall constitute or be deemed to constitute a representation that such Advertisement is not libelous or defamatory or in violation of any applicable laws, regulations, advertising guidelines or any third-party rights,

**Master Service Agreement**
**Between Revlon Consumer Products Corporation and Tinuiti Inc.**

including, without limitation, privacy and publicity rights.

2.2. <u>Creative Assets.</u> Any creative assets (the "Creative Assets") provided, developed or created by Tinuiti for Client in the course of the performance of the Services shall be deemed Work Product in accordance with Section 2.3 below. For any Creative Asset provided, developed or created by Tinuiti for Client in the course of performance of the Services, Tinuiti will not use for any third party. Tinuiti assigns to Client and agrees to perfect the assignment to Client of all right, title, and interest in any trademarks or trade names directed to Client's products or services that Tinuiti prepares or Tinuiti and Client together develop in the Creative Assets.

2.3. <u>Work Product.</u> Upon payment of all fees due hereunder, Client shall own all right, title and interest in and to all intellectual property and work product created, proposed, prepared, developed, produced, published or broadcast by or for Client by Tinuiti under this Agreement, including without limitation any Advertisements created by Tinuiti, reports, work, media plans, research, photographs, promotions, campaigns which are made, conceived, reduced to practice, created, written, designed or developed by or at the request of or by or at the request of Client as a result of, or in connection with, the Services (collectively, the "Work Product"). All Work Product will be deemed to be works made for hire for Client. To the extent that title to any such Work Product may not otherwise vest in Client, or such Work Product may not be considered works made for hire, all right, title and interest therein are hereby irrevocably assigned to Client. Unless otherwise directed by Client, upon completion of the Services or upon the earlier termination of this Agreement and payment of all fees due hereunder, Tinuiti will immediately turn over to Client all Work Product (including all copies thereof). All such Work Product will be transferred to Client electronically over the internet.

2.4. <u>Third Party Technology.</u> Services provided under this Agreement pursuant to an SOW may include technology of third party providers. For any such provider, that provider shall remain the sole owner of all right, title and all intellectual property rights associated with their technology. Except as expressly granted in this Agreement or in any SOW, Client will not have or acquire any rights or interest in or to the services or technology of that provider.

2.5. <u>Background IP.</u> Tinuiti retains all ownership rights in all strategies, programs, services, processes, designs, software, technologies and inventions provided by Tinuiti previously developed by Tinuiti or developed by Tinuiti in the course of Tinuiti's performance of the Services that are not specifically developed for Client ("Background IP"). Tinuiti hereby grants to Client a perpetual, irrevocable, nonexclusive, royalty-free limited license (i) to use the Background IP to the extent the Background IP is included in the Work Product provided by Tinuiti to Client in the course of performance of the Services; and (ii) only for Client's internal purposes, to use the Background IP to the extent the Background IP is included in any strategy provided by Tinuiti to Client in the course of performance of the Services. These licenses survive termination of this Agreement, except for termination by Tinuiti as a result of Client's uncured breach of this Agreement."

2.6. <u>No Other Grants.</u> Except as set forth in this Agreement or otherwise expressly agreed to in writing by the Parties, nothing in this Agreement will be deemed to grant or assign to the other Party any ownership rights, license rights, or interests of any kind in the other Party's products, services or technology or in the other Party's intellectual property or proprietary rights.

3. <u>Compensation and Billing Procedures</u>

3.1. <u>Fees.</u> In consideration of the Services provided to Client by Tinuiti under this Agreement, Client shall pay Tinuiti the fees as set forth in the Schedule of Fees included in the SOW applicable to such Services.

3.2. <u>Billing and Payment Procedures.</u> Unless otherwise provided for in an SOW, all invoices for Services will be generated on a monthly basis in accordance with the terms and conditions outlined in the applicable SOW's Schedule of Fees. All undisputed amounts owed by Client to Tinuiti are due within forty-five (45) days after the date of Client's receipt of the invoice unless otherwise stated in an applicable SOW. All Invoices from Tinuiti to Client will be sent to:

**Accounts Payable Contact**
Accounts Payable Contact Name:  <u>Various</u>
Accounts Payable Contact Address: <u>Accounts Payable, North Entrance, 1501 Williamsboro Street, Oxford NC  27565</u>
Accounts Payable Contact Email:  <u>accounts.payable@revlon.com</u>
Accounts Payable Contact Phone Number:<u>   N/A</u>

**Master Service Agreement**
**Between Revlon Consumer Products Corporation and Tinuiti Inc.**

3.2.1. <u>Payment Forms.</u> Payment is accepted in form of check, wire transfer and/or ACH/Direct deposit.

3.2.2. <u>Taxes.</u>    All fees are exclusive of taxes. Tinuiti will charge and Client will pay any national, state or local sales or use taxes or any similar taxes, levies or fees that Tinuiti is legally obligated to charge with respect to Client, provided that such taxes are stated on each original invoice that Tinuiti provides to Client and such invoice separately states such taxes and indicates the specific Services or other charges upon which such taxes are imposed.  Client shall have no liability for any taxes based upon Tinuiti's gross revenues, income, property or employees.  Client shall maintain the right to deduct or withhold any taxes that it determines it is obligated to withhold from any amounts payable to Tinuiti under this Agreement, and payment to Tinuiti as reduced by such deductions or withholdings will constitute full payment and settlement to Tinuiti of such amounts.  Throughout the term of this Agreement, Tinuiti will provide Client with any forms, documents, or certifications as may be required for Client to satisfy any information reporting or withholding tax obligations with respect to any payments under this Agreement.

4. <u>Term and Termination</u>
    4.1. <u>Term:</u>  This Agreement will be effective as of the Effective Date and will remain in effect unless terminated pursuant to either Section 4.2 or 4.3 below (the "Term").  SOWs will have the duration as specified therein.
    4.2. <u>Termination for Cause:</u> In the event that either Client or Tinuiti breach any material provision of this Agreement or any SOW, or materially default in the performance of any of their respective obligations thereunder, the Party not in breach or default may, at its option, terminate this Agreement or any SOW by giving written notice to the other Party specifying the breach or default and such Party's intent to terminate.  Such a termination will be effective thirty (30) days following the receipt of such notice by the Party in breach or default, unless the Party in breach or default has cured the identified breach to the terminating party's commercially reasonable satisfaction within such thirty (30) day period.
    4.3. <u>Termination without Cause:</u> Unless otherwise stated in a SOW, either Party may terminate this Agreement or any SOW in whole or in part without cause, for any reason or for no reason at all and at its sole and exclusive discretion, by providing written notice of its intent to terminate pursuant to this Section 4.3.  Such termination will be effective thirty (30) days following the receipt of such notice.
    4.4. <u>Effect of Termination:</u>  Any termination or expiration of this Agreement will not terminate or affect the obligations of the Parties to each other under existing SOWs issued pursuant to this Agreement, and such SOWs will continue in full force and effect and will continue to be governed by the terms of this Agreement until their expiration or completion or unless and until any such SOWs are themselves terminated pursuant to this Agreement. Upon any termination of an SOW by Client, Client shall have no further payment obligations under such SOW.  In the event of termination all data, Client information and materials and access to any accounts used by Tinuiti to provide the Services shall be provided to Revlon without contingencies.  Tinuiti will transfer to Client or any third party designated by Client, the campaign data, including but not limited to all reservations or contract information, and make any arrangements with any third party, for advertising space and all rights and claims thereto and therein (the "Data Transfer"). In addition, upon Client's written request, Tinuiti shall use its best efforts during the Data Transfer to cancel any contracts designated by Client that are not to be performed after termination of the Agreement.  Tinuiti agrees to complete Data Transfer within thirty (30) days from the expiration date, however, such Data Transfer shall not be complete until all data and information is transferred.
    4.5. <u>Obligations Upon Termination.</u> Upon termination of this Agreement for any reason, , Tinuiti will transfer to Client or any third party designated by Client the campaign data, including but not limited to all reservations or contract information, and make any arrangements with any third party, for advertising space and all rights and claims thereto and therein (the "Data Transfer"). In addition, upon Client's written request, Tinuiti shall use its best efforts during the Data Transfer to cancel any contracts designated by Client that are not to be performed after termination of the Agreement.

5. <u>Confidentiality</u>

**Master Service Agreement**
**Between Revlon Consumer Products Corporation and Tinuiti Inc.**

5.1.  <u>Confidential Information.</u> Both Parties acknowledge that during the Term and any SOWs, each Party may or will have access to and contact with "Confidential Information" of the other Party as defined in Section 5.2. Each Party explicitly agrees that, during the Term, (i) it will not disclose to any third party any Confidential Information disclosed to it by the other Party except as expressly permitted in this Agreement; (ii) it will not use any Confidential Information disclosed to it by the other Party for its own purposes (except as necessary to perform its obligations under this Agreement); (iii) it will maintain the confidentiality of all Confidential Information of the other Party in its possession or control, which obligation shall be satisfied by the receiving Party using the same measures and level of effort to protect Confidential Information of the disclosing Party that the receiving Party uses to protect its own Confidential Information. Notwithstanding the foregoing, each Party may disclose Confidential Information (x) to the extent required by a court of competent jurisdiction or other governmental authority or otherwise as required by law, provided that such Party uses reasonable efforts to permit the disclosing Party to request confidential treatment or a protective order before such disclosure; (y) on a "need-to-know" basis under an obligation of confidentiality to its legal counsel, accountants, employees, agents, contractors and consultants; or (z) Client may disclose Confidential Information to its parent company or affiliates.

5.2.  <u>Definition of Confidential Information.</u> For purposes of this Agreement, "Confidential Information" means all non-public information about the disclosing Party's (or its suppliers') business or activities that is marked or designated by such Party as "confidential" or "proprietary" at the time of disclosure or that reasonably would be understood to be confidential given the circumstances of disclosure. By way of illustration and not limitation, Confidential Information will include, in the case of Client, Client data, Client Materials, Work Product, written records pertaining to the Work Product, vendor information, equipment, trade secrets including client lists, processes, research, reports, technical data, know-how, marketing or business plans, forecasts, tax information, unpublished financial information or business results, budgets, prices, costs and employee lists that are communicated to, learned of, developed or otherwise acquired by Tinuiti during the Term and thereafter. Notwithstanding the foregoing, Confidential Information will not include (and the Parties' obligations under this Section 5 will not apply to) any information that: (i) the receiving Party rightfully knew before receiving it from the disclosing Party; (ii) is independently developed by the receiving Party without reference to any information originating from the disclosing Party; (iii) the receiving Party documents were lawfully received from a third party not under any obligation of confidentiality with respect to such information or data, and without restrictions on use or disclosure; or (iv) is or becomes publicly available to the general public through means other than by breach of this Agreement.

5.3.  <u>Obligations Related to Confidentiality Following Termination.</u> Upon termination or expiration of this Agreement or any SOW for any reason and, in any event, upon the disclosing Party's request to the other, the receiving Party will deliver promptly to the disclosing Party, or, at the disclosing Party's option, the receiving Party will immediately destroy, all memoranda, notes, records, reports, media and other documents and materials (and all copies thereof) regarding or including any Confidential Information in its possession or under its control.

5.4.  <u>Remedies.</u> Both Parties acknowledge that any breach of any of the provisions of this Section 5 may result in serious and irreparable injury to the non-breaching Party for which the non-breaching Party may not be adequately compensated by monetary damages alone.  Therefore, both Parties agree that, in addition to any other remedy it may have at law or otherwise, the non-breaching Party will be entitled to seek both temporary and permanent injunctive relief to the extent permitted by law. This provision will not in any way limit such other remedies as may be available to the disclosing Party, whether under this Agreement, at law, or in equity.

5.5.  <u>Third Parties.</u> Tinuiti represents that its retention of any third parties, and Tinuiti's performance under this Agreement does not, and will not, breach any agreement that obligates Tinuiti to keep in confidence any trade secrets or confidential or proprietary information of Tinuiti's or of any other party or to refrain from competing, directly or indirectly, with the business of any other party.  Except as reasonably necessary to perform its obligations hereunder, Tinuiti will not disclose to Client any trade secrets or Confidential or Proprietary Information of any other party without first obtaining prior written consent.

6.  <u>Non-Solicitation/Non Hire</u>

6.1.  Each Party agrees not to interfere in any employment relationships between the other Party and its employees. Each Party agrees that during the term of this Agreement and for six (6) months after the termination of this Agreement not to hire, solicit or otherwise engage any employee of the other Party whether as an employee or independent contractor. The Parties further agree not to solicit or encourage any employee of the other Party to terminate, alter or modify their employment with the other Party. The provisions of this Section 6.1 shall not apply with respect to a

**Master Service Agreement**
**Between Revlon Consumer Products Corporation and Tinuiti Inc.**

Party's employees who seek employment from the other Party on their own initiative, such as, but not limited to, in response to a general solicitation, announcement or advertisement for employment with such Party.

7. Representations and Warranties

7.1. Authority. Each Party represents and warrants that (a) it has the full power and authority to enter into this Agreement; (b) this Agreement has been executed by a duly authorized representative of such Party and contains the valid and binding obligations and agreements of such Party, enforceable against such Party, in accordance with all of the terms contained herein, subject to applicable bankruptcy, insolvency, reorganization and other laws of general applicability relating to or affecting creditors' rights. (c) all obligations to be performed hereunder will be performed with all reasonable care, skill and diligence; (d) it has all necessary and appropriate rights to fulfill its obligations hereunder; (e) it will use best efforts to comply at all times with all applicable laws and regulations of any jurisdiction in which the Party acts; and (f) its employees and agents will use best efforts to comply with all applicable policies and standards of the other Party related to the applicable Services.

7.2. Tinuiti Represents that, to the best of its abilities, (a) its services will be performed in a professional and workmanlike manner in accordance with applicable professional standards; (b) it will complete any work not in compliance with this warranty that is brought to the attention of, by providing written notice to, Tinuiti within thirty (30) days of initial delivery to Client; and (c) to the best of its knowledge, any Work Product or Background IP (excluding Client Materials) will not infringe on any intellectual property rights or other proprietary rights of any third party.

7.3. Disclaimer. THE PRECEDING PARAGRAPH CONTAINS TINUITI'S ONLY WARRANTIES CONCERNING THE SERVICES, AND IS MADE EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY OR OTHERWISE. Tinuiti CAN NOT AND DOES NOT GUARANTEE THAT ANY SERVICE WILL BE OR WILL PERFORM ERROR-FREE OR UNINTERRUPTED, OR THAT ANY ERRORS CAN OR WILL BE FIXED.

8. Indemnification by the Parties

8.1. By the Parties. Each Party will defend, indemnify and hold harmless the other Party and its directors, officers, volunteers, shareholders, employees and agents from and against any claim, demand, loss, cost, damage, expense or liability (including reasonable attorneys' fees and costs) assessed against or incurred by the indemnifying Party which arises out of or is related to (a) the negligent or willful acts or omissions of the other Party and/or its employees, including but not limited to libel, slander, defamation, plagiarism and invasion of privacy; (b) any claim that the Work Product, including any Advertisement or other materials delivered under this Agreement, such as Client Materials, infringes any copyright, patent, trade secret or other proprietary right of any third party; (c) actions taken by the indemnifying Party and/or its employees or contractors that are either outside the scope of this Agreement or not within the scope of the approvals required under this Agreement.

8.2. Indemnification Claim. The indemnities in this Section 8 are contingent upon: (a) the indemnified Party promptly notifying the indemnifying Party in writing of any claim which may give rise to a claim for indemnification hereunder; (b) the indemnifying Party being allowed to control the defense and settlement of such claim; and (c) the indemnified Party cooperating with all reasonable requests of the indemnifying Party (at the indemnifying Party's expense) in defending or settling a claim. The indemnified Party will have the right, at its option and expense, to participate in the defense of any suit or proceeding through a counsel of its own choosing. Neither Party shall make any settlement of any claims that may give rise to liability of the other party hereto without the prior written consent of the other Party.

9. LIMITATION OF LIABILITY.

IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY CONSEQUENTIAL, SPECIAL, INCIDENTAL, PUNITIVE OR INDIRECT LOSS, DAMAGE OR EXPENSE, WHETHER BASED ON BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR ANY OTHER LEGAL THEORY EVEN IF IT HAS BEEN ADVISED OF THEIR POSSIBLE EXISTENCE. TINUITI'S MAXIMUM LIABILITY FOR DIRECT DAMAGES UNDER OR IN RELATION TO THIS AGREEMENT (REGARDLESS OF FORM OF ACTION, WHETHER IN CONTRACT, NEGLIGENCE OR OTHERWISE) WILL BE LIMITED TO THE FEES PAID OR PAYABLE BY CLIENT TO TINUITI DURING THE SIX (6) MONTH PERIOD IMMEDIATELY PRECEDING THE CLAIM.  IN NO EVENT SHALL TINUITI BE LIABLE FOR ANY DAMAGES, INCLUDING WITHOUT LIMITATION DAMAGES THAT RESULT FROM THE USE OF, OR INABILITY TO USE, THE SERVICES OR ANY THIRD PARTY TECHNOLOGY.

10. Insurance. Tinuiti shall, at its sole cost and expense, maintain the necessary and reasonable insurance coverage for the Services provided.

a) Comprehensive General Liability Insurance. Tinuiti shall maintain Comprehensive General Liability insurance with limits no less than $1,000,000 each for bodily injury and/or property damage and $2,000,000 in the aggregate.

**Master Service Agreement**
**Between Revlon Consumer Products Corporation and Tinuiti Inc.**

b)    <u>Professional Liability Insurance</u>. Tinuiti shall maintain Professional Liability insurance covering Tinuiti for loss or damage arising out of negligent acts or errors or omissions which arise from providing the Services under this Agreement with limits of no less than $5,000,000.

c)    <u>Crime Coverage</u>. Tinuiti shall maintain insurance covering loss or destruction of Client money and securities caused by Employee Theft and Computer Fraud/Funds Transfer Fraud with limits of no less than $3,000,000.

d)    <u>Workers Compensation and Employer's Liability Insurance</u>. Tinuiti shall maintain workers compensation insurance in accordance with the laws of the state in which Tinuiti's obligations under this Agreement and any SOW are performed. Tinuiti shall maintain Employer's Liability Insurance with limits of no less than $1,000,000 each for bodily injury/disease and $1,000,000 in the aggregate.

e)    <u>Cyber Liability Insurance.</u> Tinuiti shall maintain Cyber Liability Insurance covering Tinuiti for cyber liability and network security in the event of a breach of confidentiality or credit injury with limits no less than $5,000,000.

f)    <u>Umbrella Liability Insurance. Tinuiti shall maintain Umbrella Liability Insurance in excess of subsection (a) above, with minimum limits of $10,000,000 each occurrence; and $10,000,000 in the aggregate.</u>

11. <u>Tinuiti's Limited Authority to Act.</u> Client grants Tinuiti the limited authority to act on Client's behalf as its agent in order to perform the Services approved by Client and Client hereby retains Tinuiti as its agent for that purpose. Notwithstanding, Client has the right to use any other digital marketing or media service(s) entities.

12. <u>Notices</u>. Any notices or communications regarding this Agreement from one Party to the other shall be in writing and will be effective when (a) personally hand-delivered to the Party for whom intended; (b) upon confirmation of receipt when sent by overnight courier, signature requested or; (c) after five (5) days following deposit of the same into the United States mail (certified mail, postage prepaid and return receipt requested) when addressed to such other Party at the address specified below or such other address as either Party may from time to time designate in writing to the other Party or (d) by electronic mail. For project approvals and expense approvals under this Agreement, email communications are considered sufficient for purposes of written notice.

If to Client:                                          If to Tinuiti:

Company: Revlon Consumer Products Corporation        TINUITI INC
Address:  One New York Plaza, New York, NY 10004      121 South 13th Street, Floor 3 Philadelphia, PA 19107
Attn:      Kiki Gregware                              Attn: Zach Morrison
Email:    kiki.gregware@revlon.com                    Zach.Morrison@Tinuiti.com
Phone:    212.527.5369                                212.863.9699

With a copy to the Office of the General Counsel at the same address

13.  <u>General Provisions</u>

13.1. <u>Force Majeure</u>. In the event that either Party is prevented from performing, or is unable to perform, any of its obligations under this Agreement due to any cause beyond the reasonable control of the Party invoking this provision, including but not limited to acts of god, pandemic or the like, acts of war or breaches of the peace, acts of terrorism or threatened acts of terrorism, riots, civil disturbances, labor disturbances, strikes, lockouts, failure of a telecommunications or power carrier to provide adequate service, inadequacy or failure of a carrier or shipper, governmental regulations or interference, or any similar or dissimilar causes beyond the reasonable control of a Party, the Party affected in its performance will be excused and the time for performance will be extended for the period of delay or inability to perform due to such occurrence. However, should the affected Party's inability to perform continue for a period of thirty (30) days or more, the other Party may terminate this Agreement by providing ten (10) days' prior written notice to the affected Party.

13.2. <u>Publicity.</u> Tinuiti may not use Client's name or disclose the terms or existence of this Agreement to any third party, including on Tinuiti's customer lists, press releases, case studies, award entries, or otherwise, without Client's express prior written consent in each and every instance.  In addition, all such press releases or the use of Client's name or any trademark of Client will require prior written approval by Client's public relations team.

13.3. <u>Waiver and Severability</u>. The waiver by either Party of a breach or a default of any provision of this Agreement or any SOW by the other Party will not be construed as a waiver of any succeeding breach of the same or any

REVLGL-369696.0.0                                                                        7

**Master Service Agreement**
**Between Revlon Consumer Products Corporation and Tinuiti Inc.**

other provision, nor will any delay or omission on the part of either Party to exercise or avail itself of any right, power or privilege that it has, or may have hereunder, operate as a waiver of any right, power or privilege by such Party. The rights and remedies of the Parties set forth in this Agreement are in addition to any rights or remedies the Parties may otherwise have at law or equity. If any term or provision of this Agreement or any SOW shall be found by a mediator, arbitrator, or court of competent jurisdiction to be invalid, illegal or otherwise unenforceable, the same will not affect the other terms or provisions hereof or the whole of this Agreement or any SOW, but such provision will be deemed modified to the extent necessary in the court's opinion to render such term or provision enforceable, and the rights and obligations of the Parties will be construed and enforced accordingly, preserving to the fullest extent possible the intent and agreements of the Parties set forth herein.

13.4. <u>Headings.</u> Captions and headings contained in this Agreement have been included for ease of reference and convenience and will not be considered in interpreting or construing this Agreement.

13.5. <u>Survival.</u> The provisions of Sections 1.3, 2, 3, 4, 5, 6, 7, 8, 9, 10 and 13 will survive any termination of this Agreement.

13.6. <u>Costs, Expenses and Attorney's Fees.</u>   In all actions or proceedings regarding or relating to this Agreement or Tinuiti's performance of the Services, each Party shall bear their own fees and expenses, including attorney's fees.

13.7. <u>Assignment.</u> This Agreement, and the rights and obligations hereunder, may not be assigned, transferred and/or delegated in whole or in part by either Party, without the prior written consent of the other Party with such consent not to be unreasonably withheld. In the case of any permitted assignment or transfer of or under this Agreement, this Agreement or the relevant provisions will be binding upon, and inure to the benefit of, the successors, executors, heirs, representatives, administrators and assigns of the Parties hereto.

13.8. <u>Access to and Retention and Examination of Records.</u>  Client shall have the right, during the term of this Agreement and for two (2) years following its expiration or termination, during normal business hours to examine Tinuiti's records exclusively related to expenditures on behalf of Client's business, as well as any and all contracts, correspondence, books and other sources of information relating solely to Client's business. Client shall notify Tinuiti at least ten (10) business days in advance of any such requested examination to ensure that such records are made available to Client at Tinuiti's premises. Any such examination pursuant to this section 13.8 may not occur more than once per calendar year.

13.9. <u>Security Measures.</u> Tinuiti implements commercially reasonable technical and organizational measures designed to secure information and data from accidental loss and from unauthorized access, use, alteration or disclosure. However, Tinuiti, its agents and subcontractors, do not and cannot guarantee that unauthorized third parties will never be able to defeat those measures.

13.10. <u>Entire Agreement.</u> This Agreement constitutes the entire and final agreement between the Parties with regard to the subject matter hereof. No waiver, consent, modification or change of terms of this Agreement will bind either Party unless agreed upon in writing and signed by both Parties, and then such waiver, consent, modification or change will be effective only in the specific instance and for the specific purpose given.

13.11. <u>Compliance with Laws:</u>  Tinuiti shall comply with all applicable Laws at all times, regardless of whether such compliance is related to this Agreement. Tinuiti further agrees that all actions undertaken in connection with this Agreement shall comply with Client's Third Party Code of Conduct ("Third Party Code") (available at https://www.revloninc.com/suppliers/code-of-conduct).

13.12. <u>Governing Law:</u>  This Agreement will be governed by and construed in accordance with the laws of the State of New York without regard to conflict of law principles. New York courts will have exclusive jurisdiction of any claims brought by this Agreement.  If any term or condition of this Agreement will be held to be invalid, unenforceable or void, the remainder of this Agreement and such term or condition will remain in full force and effect.  No failure or neglect of either party hereto in any instance to exercise any right, power or privilege hereunder or under law will constitute a waiver of any other right, power or privilege or of the same right, power or privilege in any other instance.  This Agreement may not be amended or modified except by a written agreement signed by Client and Tinuiti.

13.13. <u>Contract Interpretation.</u> Ambiguities, inconsistencies or conflicts in this Agreement will not be strictly construed against either Party, but will be resolved by applying the most reasonable interpretation under the

**Master Service Agreement**
**Between Revlon Consumer Products Corporation and Tinuiti Inc.**

circumstances, giving full consideration to the Parties' intentions at the time this Agreement is entered into
and common practice in the industry.

13.14. Counterparts. This Agreement may be executed in counterparts, each of which will constitute an original, and
all of which will constitute one agreement.

13.15. Third Party Beneficiaries. This Agreement does not create, and shall not be construed as creating, any rights
enforceable by any person who is not a party to this Agreement.

13.16. Independent Contractor Status of the Parties. The Parties and their respective personnel are and shall
continue to be independent contractors with respect to each other. By virtue of this Agreement, neither Party
or its personnel, agents and/or contractors shall become, and under no circumstances shall be construed as
being, an employee, agent, joint venture, partner or affiliate of the other Party or as standing in any
relationship with respect to the other Party that would impose liability on the other Party for the actions or
omissions of such Party, its personnel or its contractors.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**Master Service Agreement**
**Between Revlon Consumer Products Corporation and Tinuiti Inc.**

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed by their respective authorized representatives.

Revlon Consumer Products Corporation                    TINUITI, Inc

Signature: *Kiki Gregware*                              Signature: _Jesse Eisenberg_
Kiki Gregware (Jul 1, 2020 16:32 EDT)                   Jesse Eisenberg (Jul 1, 2020 08:03 EDT)

Name:    Kiki Gregware                                  Name:    Jesse Eisenberg

Title:   SVP, Global Consumer Engagement               Title:   Chief Growth Officer

Date:    June 30, 2020                                  Date:    June 30, 2020

**Master Service Agreement**
**Between Revlon Consumer Products Corporation and Tinuiti Inc.**

**Exhibit 1**

**Revlon Consumer Products Corporation**
**Contractor Travel Policy**



Revlon-Global-TE-Poli
cy-Nov-2017-v2.pdf

**Master Service Agreement**
**Between Revlon Consumer Products Corporation and Tinuiti Inc.**

**DATA PROCESSING ADDENDUM**

This Data Processing Addendum ("DPA") is made and entered into by and between Revlon Inc.,  (hereinafter "**Client" or "Business"**) and **Tinuiti, Inc. ("Tinuiti" or "Service Provider")** as an Addendum to the Master Services Agreement entered into and effective as of , (the "Effective Date").   With regard to Personal Information which Tinuiti may collect, receive or otherwise process as a result of any agreements between Tinuiti and Client (or its subsidiaries), Tinuiti and Client agree to the following:

1.     Definitions:

Agreement means the Master Services Agreement entered into by the Client with Tinuiti.

**Business** and **Service Provider** shall have the meanings given those terms under the California Civil Code section 1798.140 and CCPA.

**CCPA** means the California Consumer Privacy Act.

**Data Protection Laws** means (a) the GDPR and any laws or regulations implementing the GDPR; and (b) all other laws concerning the processing of data relating to living persons, including without limitation the CCPA and other data protection laws of the State of California;

**Data Subject/Consumer** means each identified or identifiable (whether directly or indirectly) natural person to whom any Personal Data relates;

**GDPR** means Regulation (EU) 2016/679 on the protection of natural persons with regard to the processing of personal data and on the free movement of such data, and repealing Directive 95/46/EC (General Data Protection Regulation);

**Personal Data** means any information relating to a Data Subject.  An identifiable natural person is one who can be identified, directly or indirectly, in particular by reference to an identifier such as a name, an identification number, location data, an online identifier or to one or more factors specific to the physical, physiological, genetic, mental, economic, cultural or social identity of that natural person;

**Personal Information** means information that identifies, relates to, describes, is cable of being associated with, or could reasonably be linked, directly or indirectly with a particular consumer or household, and including particular elements of "personal information" as defined under Cal. Civ. Code § 1798.140; and

**Personal Data Breach** means any actual or suspected breach of security leading to the accidental or unlawful destruction, loss, alteration, unauthorised disclosure of, or access to, Personal Data transmitted, stored or otherwise processed.

2.     General terms

(a)     To the extent that Tinuiti processes Personal Data and Personal Information in the course of performing the Services, each party acknowledges that, for the purpose of Data Protection Laws, Client is the controller (under GDPR) and the Business (under the CCPA) of the Personal Data and Tinuiti is the processor (under GDPR) and the Service Provider (under the CCPA).

(b)     Tinuiti shall implement appropriate technical and organizational measures in such a manner that processing will meet the requirements of applicable Data Protection Laws and ensure the protection of the rights of the Data Subject.

**Master Service Agreement**
**Between Revlon Consumer Products Corporation and Tinuiti Inc.**

(c)    Processing by Tinuiti shall be governed by this DPA under applicable Data Protection Laws that are binding on Tinuiti with regard to Client.  The subject-matter and duration of the processing, the nature and purpose of the processing, the type of Personal Data, the categories of data subjects and the obligations and rights of Client are set forth in this DPA (as amended by the parties from time to time).

(d)    Tinuiti shall:

(i)    comply with all applicable Data Protection Laws;

(ii)    only process Personal Data in accordance with the documented instructions of Client (including to the extent necessary to provide the Services and to comply with its obligations under this DPA and the Agreement);

(iii)    inform Client if, in Tinuiti's opinion, any of Client's instructions would breach Data Protection Laws; and

(iv)    assist Client with undertaking an assessment of the impact of processing that Personal Data, and with any consultations with a supervisory authority, if and to the extent an assessment or consultation is required to be carried out under Data Protection Laws.

(e)    Tinuiti certifies that it will not:

(i)    use, retain, sell, rent, release, disclose, disseminate, make available, transfer, or otherwise communicate orally, in writing or by electronic or other means, Personal Information provided by Client to another business or a third party for monetary or other valuable consideration, lease, license, transfer, or otherwise disclose Personal Data other than as necessary to render the Services to Client, except that Tinuiti may disclose Personal Data to its own Service Providers needed to render the Services provided such Service Providers are subject to the same obligations in this DPA and are prohibited from using, retaining, selling, leasing, licensing, transferring, or otherwise disclosing the Personal Data other than as necessary to render the Services to Client; and

(ii)    retain, use, disclose, collect, sell, use, or otherwise process Personal Information for any purpose other than for the specific purpose of performing the Services for Client.  For clarity, Tinuiti may not retain, use, or disclose Personal Information for any other commercial purposes outside of the direct business relationship between Tinuiti and Business.

3.    Data Subject Rights

Tinuiti shall:

(a)    implement appropriate technical and organizational measures for the fulfilment of Client's obligation to respond to requests by Data Subjects to exercise their rights of access, rectification or erasure, to restrict or object to processing of Personal Data, or to data portability; and

(b)    if a Data Subject makes a written request to Tinuiti to exercise any of the rights referred to in Section 2(a) forward the request to Client promptly and shall, upon Client's reasonable written request, comply with Client's instructions regarding such requests and provide Client with all cooperation and assistance reasonably requested by Client in relation to that request to enable Client to respond to that request in compliance with applicable deadlines and information requirements.

**Master Service Agreement**
**Between Revlon Consumer Products Corporation and Tinuiti Inc.**

4.  Security measures

   Tinuiti shall:

   (a)  taking into account the state of the art, the costs of implementation and the nature, scope, context and purpose of processing, as well as the risk of varying likelihood and severity for the rights and freedoms of natural persons, implement and maintain appropriate technical and organizational measures to ensure a level of security appropriate to the risk, including the risk of unauthorized or unlawful processing of Personal Data, and of accidental or unlawful loss, alteration, unauthorized disclosure or destruction of, or damage to, Personal Data; and

   (b)  notify Client within forty-eight (48) hours after becoming aware of a Personal Data Breach, and provide Client with all cooperation and assistance reasonably requested by Client to enable Client to notify the Personal Data Breach to the relevant supervisory authority and relevant Data Subject(s) (as applicable). Client shall have sole control and discretion regarding such disclosures.

5.  Sharing of personal data

   Tinuiti shall:

   (a)  not engage another processor without prior specific authorization of Client and in the case of general written authorization, inform Client of any intended changes concerning the addition or replacement of other processors, thereby giving Client the opportunity to object to such changes;

   (b)  before disclosing Personal Data to any processor, enter into a contract with that processor under which the processor agrees to comply with obligations equivalent to those set out in this DPA; and

   (c)  before disclosing Personal Data to any of its employees and representatives, or the employees or representatives of any of its processors, in each case who have access to the Personal Data, ensure that those persons:

      (i)  have undergone appropriate training in data protection and the care and handling of Personal Data;

      (ii)  are bound to hold the information in confidence to at least the same standard as required under this DPA (whether under a written agreement or otherwise).

6.  Transfers of Personal Data

   Tinuiti shall:

   (a)  not transfer Personal Data to, or process Personal Data in, any third country or territory without the prior written consent of Client (which consent may be conditional upon Tinuiti or the relevant third parties entering into an agreement containing similar terms to this DPA with Client) unless (and for so long as):

      (i)  there has been a European Community finding of adequacy pursuant to Article 25(6) of Directive 95/46/EC or, after 24 May 2018, Article 45 of the GDPR in respect of that country or territory;

      (ii)  the transfer is to the United States to an importing entity that is a certified member of the EU-US Privacy Shield; or

      (iii)  Client and the relevant importing entity are party to a contract in relation to the export of Personal Data incorporating standard contractual clauses in the form adopted by the European Commission

**Master Service Agreement**
**Between Revlon Consumer Products Corporation and Tinuiti Inc.**

under Decision 2010/87/EU or an equivalent data transfer agreement meeting the requirements of Data Protection Laws.

(b)   Where any mechanism for cross-border transfers of Personal Data is found by a supervisory authority, court of competent jurisdiction or other governmental authority to be an invalid means of complying with the restrictions on transferring Personal Data to a third country or territory as set out in Data Protection Laws, the parties shall act in good faith to agree to the implementation of an alternative solution to enable Client to comply with the provisions of the Data Protection Laws in respect of any such transfer.

7.   Compliance

Tinuiti shall:

(a)   promptly notify Client if it receives any complaint, notice or communication which relates directly or indirectly to the processing of Personal Data, or to either party's compliance with Data Protection Laws, and shall fully cooperate and assist Client in relation to any such complaint, notice, communication or non-compliance; and

(b)   upon Client's reasonable written request, provide all information necessary to demonstrate compliance with this DPA, and allow Client or an auditor appointed by Client to carry out audits, including inspections of facilities, equipment, documents and electronic data, relating to the processing of Personal Data by Tinuiti or any processor, to verify compliance with this DPA.

8.   Termination

Tinuiti shall:

(a)   unless expressly stated otherwise in this DPA, upon termination or expiration of the Agreement, Tinuiti  shall, and shall procure that each processor shall, immediately cease to use the Personal Data and shall, at Client's option, return the Personal Data to Client or to a processor nominated by Client or delete the Personal Data and all copies and extracts of the Personal Data unless required to retain a copy in accordance with any law of the European Union or any member state of the European Union; and

(b)   on expiry or termination of the Agreement (however arising) these GDPR Terms shall survive and continue in full force and effect.

9.   Miscellaneous

Tinuiti agrees to indemnify and keep indemnified and defend at its own expense Client against all costs, claims, damages or expenses incurred by Client or for which Client may become liable due to any failure by Tinuiti or its employees or agents to comply with any of its or their obligations under this DPA.

Tinuiti maintains cyber liability insurance covering Tinuiti for cyber liability and  network security in the event of a Personal Data Breach with limits no less than $5,000,000.

If there is any conflict or inconsistency between this DPA and the other terms of the Agreement, this DPA will govern.

**Master Service Agreement**
**Between Revlon Consumer Products Corporation and Tinuiti Inc.**

**IN WITNESS WHEREOF**, the Parties hereto have caused this Data Processing Addendum to be executed by their respective authorized representatives.

Revlon Consumer Products Corporation                    TINUITI, Inc

Signature: *Kiki Gregware*                              Signature:
Kiki Gregware (Jul 1, 2020 16:32 EDT)                   Jesse Eisenberg (Jul 1, 2020 08:03 EDT)

Name:    Kiki Gregware                                  Name:    Jesse Eisenberg

Title:    SVP, Global Consumer Engagement              Title:    Chief Growth Officer

Date:    June 30, 2020                                  Date:    June 30, 2020

# EXHIBIT "B"

## Schedule A6
## Agency Services Scope of Work – North America
## Between Revlon Consumer Products Corporation and Tinuiti, Inc.

Revlon Consumer Products Corporation ("Client" or "Revlon") hereby engages Tinuiti, Inc. ("Agency" or "Tinuiti") to provide Services in accordance with the terms and conditions set forth in this Scope of Work ("SOW") and the Master Services Agreement between Client and Agency dated as of July 1, 2020 (together with any exhibits, Appendixes, schedules and attachments, the "Master Agreement"). Any capitalized term used in this SOW and not defined shall have the meaning ascribed to it in the Master Agreement.

Term: Effective March 15, 2022 the following Services will be provided by Agency to Client for the period March 15, 2022 thru June 30, 2022.

Territories/Markets: US and Canada

Media Types & Service Lines:
Integrated Paid Media (Search, Shopping, Paid Social supported by Client Strategy and Analytics / Insights)
Walmart Media Group (i.e. Search + Connect) & Other Emerging Marketplaces

Brands + Service Lines Covered:

| BRAND | ECOM / DTC | PAID SEARCH | SHOPPABLE MEDIA | PAID SOCIAL | DISPLAY / OTT | MKT. SEARCH | MKT. DISPLAY | CLIENT STRATEGY | REPORTING |
|---|---|---|---|---|---|---|---|---|---|
| American Crew | X | X | X | | | X | X | X | X |
| Revlon | | X | | | | X | X | X | X |
| Almay | | X | | | | X | | X | X |
| John Varvatos | | | | | | | X | | X |
| Fragrances (White Diamonds, Britney Spears, Christina Aguilera) | | | | X | | X | X | X | X |
| Juicy Couture | X | | X | | | | X | | X |
| Elizabeth Arden (EA) | X | X | X | X | | X | X | X | X |

Any addition of a Brand or Service Line not listed on the above chart shall be accompanied by a Change Order which may include an increase in staffing and/or fees.

Agency will provide the services inclusive of strategic execution and ongoing management of each service line above.

<u>REPORTING AND ANALYTICS</u>
Tinuiti will provide services to the Client in the following areas of Measurement, Reporting and Insights for each Media Type by Brand:
 **Primary Focuses:**
Restructuring reporting & measurement by Brand (moving away from DTC/MASS structure)
- o  Countries: US & CA
- o  Brands: Elizabeth Arden, American Crew
Support ad hoc requests (from three primary stakeholders)

**Schedule A6**
**Agency Services Scope of Work – North America**
**Between Revlon Consumer Products Corporation and Tinuiti, Inc.**

- o Examples: Maintenance of Competitive Spend Dashboard, quarterly updates to Purchase Efficiency Report, Halo Analysis, etc.

**Performance Reviews:** Tinuiti will provide the Client's Account Representative with reporting that outlines the performance of campaigns. Tinuiti and Client's Account Representative will have a recurring call to discuss real-time campaign performance, recommended optimizations and changes, new opportunities for consideration, and outstanding tasks.

- D2C Brands Performance Reports and Review: Biweekly

**Quarterly/ Campaign Performance Wrap-Up:** Upon completion of a calendar quarter or flighted campaigns, Tinuiti will provide the Client's Account Representative with a summary of cross channel performance activity for active brands for the campaign flight.

**Monthly Competitor Reports:** Upon Client request, Tinuiti will provide updated Competitor data once a month for each of the agreed to segments: Men's Grooming, Nail, Skincare, Beauty Tools, Hair Color, and Color Cosmetics.

Data will be available to Client's Account Representative via Mobius and will be distributed via email once per month to Client's Account Representative.

Cross Channel Reporting: Customized Tableau reporting views of integrated cross-channel performance data inclusive of online channel performance and attribution for online and offline revenue. Measures the success of marketing initiatives against key metrics (ROAS, conversion rate, revenue, etc.). Tinuiti dashboarding includes integration of Tinuiti-managed marketing channel data. Dashboard reports(s) will be restructured to focus on activity by brand versus mass/ D2C activities. Tinuiti can ingest other data or data sources if Revlon is able to supply data compatible with Tinuiti's requirements at no additional charge. If Revlon is unable to meet these requirements and the data is required, Revlon acknowledges that Tinuiti may charge an incremental one-time set-up fee and/or an ongoing (maintenance) fee based on factors including but not limited to complexity of data, data quality, LOE, mechanism of data delivery including potential automation and business need. Any additional charges must be preapproved by Revlon.

LiveRamp Management: Tinuiti leverages a preferential LiveRamp partnership for data onboarding. Tinuiti utilizes the LiveRamp platform to ensure compliance with data and privacy regulations throughout the world as well as to ensure consistency and matching across multiple platforms. If Client chooses to leverage LiveRamp for data onboarding the monthly fee will be determined off of the LiveRamp Rate Card attached to Addendum No. 3 to Schedule A1 which shall apply to this SOW. These LiveRamp fees represent digital onboarding only (i.e. Client sends CRM list to LiveRamp, Tinuiti leverages CRM list into Facebook Google Ads, etc.). Any data store or offline/online onboarding or the like would be separate fees and can vary greatly depending on complexity and scope.

| ANALYTICS / REPORTING | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| CHANNEL(S) | SCOPE | REPORT TYPE | DELIVERY CADENCE | INSIGHTS ? | Delivery Type | NOTES |

**Schedule A6**
**Agency Services Scope of Work – North America**
**Between Revlon Consumer Products Corporation and Tinuiti, Inc.**

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | Data Feed or Electronic File | |
| ALL | Y | Competitor Report | MONTHLY | YES | Excel / Mobius | Raw Data pull from tools for predetermined competitors. |
| ALL | Y | Bi-Weekly Reporting | BI-WEEKLY | YES | Excel or PPT | CS, Channel teams + Analytics to compile streamlined reports ongoing. |
| ALL | Y | Quarterly / Campaign Performance Wrap-Up | QUARTERLY OR UPON FLIGHT COMPLETION | YES | PPT | To be completed on an ad-hoc basis depending on the campaign in market |
| ALL | Y | Financials | MONTHLY | NO | Excel | Financials budget document for all plans and spend |
| **SELF-SERVE** (Does not apply to Marketplaces except Walmart Search) | | | | | | |
| | | | | | | |
| ALL | Y | Tableau | Daily | Login | YES | Analytics has provided logins to all stakeholders |
| ALL | Y | Daily / Weekly Reporting | DAILY | NO | Feed | Revlon can check daily / weekly performance |

TECHNOLOGY

| TECHNOLOGIES / PLATFORMS | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| System/Platform | Media Partner | CHANNEL(S) | Used Exclusively for .com | WHAT IT DOES | Cost included in Scope |
| SA360 | Google | Paid Search/Shopping | Yes | Bidding and Optimization Platform | Yes |
| Google Analytics | Google | Analytics | No | Data Source, performance metrics, optimization guidance | Yes |
| Google Ads | Google | Paid Search/Shopping | No | Data Source, performance metrics, optimization guidance, campaign manager | Yes |
| Google Tag Manager | Google | Analytics | No | Implementation of Tracking Pixels | Yes |
| Publishers Portal | Facebook/IG | Paid Social | No | Data Source, performance metrics, optimization guidance, campaign manager | Yes |
| Publishers Portal | Pinterest | Paid Social | No | Data Source, performance metrics, optimization guidance, campaign manager | Yes |

**Schedule A6**
**Agency Services Scope of Work – North America**
**Between Revlon Consumer Products Corporation and Tinuiti, Inc.**

| | | | | | |
|---|---|---|---|---|---|
| Publishers Portal | TikTok | Paid Social | No | Data Source, performance metrics, optimization guidance, campaign manager | Yes |
| Publishers Portal | Snapchat | Paid Social | No | Data Source, performance metrics, optimization guidance, campaign manager | Yes |
| Bing Ads | Microsoft | Paid Search/Shopping | No | Data Source, performance metrics, optimization guidance, campaign manager | Yes |
| Connexity | Connexity | Shopping | Yes | Data Source, performance metrics, optimization guidance, campaign manager | Yes |
| Feedonomics, or similar partner dependent on feed size | Feedonomics | Shopping | Yes | Dynamic feed management | Yes |
| MobiusX | Walmart | Marketplaces | No | Preferred vs. Kenshoo | Integration with API, Walmart Management |
| Data Studio | Google | Marketplaces | No | This is what Marketplaces team uses to create their reports. We have Tableau and PPT decks | Data Visualization |
| Publishers Portal | Walmart | Marketplaces | No | View only | Data Source, performance metrics, optimization guidance, campaign manager |

STAFFING

| Tinuiti Resource | | | | |
|---|---|---|---|---|
| *Function / Role* | *Title* | *FTE% for SOW* | *Experience / Skills* | *Experience (Yrs). In Industry* |
| Client Strategy("CS") | Senior Director + Director (billed at Director Rate) | 18% | --Digital marketing agency or client experience overseeing holistic cross-channel strategy and planning (including at least some, if not all, of the following: SEM, Social, Shopping, Display, SEO, CRO, Marketplaces)<br>--Demonstrated ability to bring teams together to support client work<br>--Strong analytical skills and ability to lead a team to utilize insights in campaign planning | 7 - 10 |

## Schedule A6
## Agency Services Scope of Work – North America
## Between Revlon Consumer Products Corporation and Tinuiti, Inc.

| | | | | |
|---|---|---|---|---|
| Client Strategy | Associate Director | 24% | --Digital marketing experience driving end to end execution of integrated strategy in a client or agency setting<br>--Proven ability to interpret goals and objectives, develop target audiences and campaign plans that meet or exceed stated KPIs | 5 - 7 |
| Client Strategy | Manager | 36% | --Digital marketing experience in a client or agency setting<br>--Strong knowledge of digital channels and how they work together | 3 - 5 |
| Client Strategy | Associate Mgr. | 30% | -Strong written, communication, and presentation skills with attention to detail and time management<br>-Ability to lead account elements and develop and present cross channel insights | 1-4 |
| Client Strategy | Project Manager | 18% | --Project management experience, ideally in a marketing or agency setting or function, handling a variety of project types in a fast-paced environment<br>--Clear and decisive decision-making, establishing a strong rapport with internal and external teammates / stakeholders, showcasing excellent written / verbal communication skills | 3 - 5 |
| Analytics, Reporting, Insights | Manager | 12% | --Strong knowledge of multiple digital channels and how they work together (SEM, SEO, CRO, Social, Shopping, Display, etc.)<br>--Leads team of Analysts and provides strategic guidance on reporting, advanced insights, incrementality and testing, as well as attribution, and audience management | 7 - 10 |
| Analytics, Reporting, Insights | Analyst | 42% | --Strong knowledge of multiple digital channels and how they work together (SEM, SEO, CRO, Social, Shopping, Display, etc.)<br>--Drives analysis of marketing campaigns, defines success metrics, makes assessments of marketing channels and operations and helps with marketing campaign optimization efforts.<br>--Provides reports, dashboards, and ad-hoc analyses with recommendations. | 4 - 6 |
| Analytics, Reporting, Insights | Associate Analyst | 42% | --Foundational knowledge of multiple digital channels and how they work together (SEM, SEO, CRO, Social, Shopping, Display, etc.)<br>--Assists with all analytics projects including data analysis, defining success metrics, building | 1 – 3 |

**Schedule A6**
**Agency Services Scope of Work – North America**
**Between Revlon Consumer Products Corporation and Tinuiti, Inc.**

| | | | | |
|---|---|---|---|---|
| | | | dashboards, and providing optimization recommendations | |
| Paid Search | Director | 6% | --Paid Search Team Leadership | 7 - 10 |
| Paid Search | Senior Specialist | 24% | --In-depth experience and knowledge of Paid Search, Google and Microsoft Ads ecosystems, strategy, ecommerce, and digital marketing. --Proactivity, attention to detail, and ability to work across teams effectively. | 3 - 6 |
| Paid Search | Specialist | 48% | --Foundational knowledge of Paid Search campaigns and account management | 1 - 3 |
| Paid Search | Coordinator | 24% | --Executional support of Paid Search programs | 1 - 2 |
| Shoppable Media | Sr. Specialist | 30% | --In-depth experience and knowledge of Shoppable campaigns, product feed strategy, ecommerce, and digital marketing. --Proactivity, attention to detail, and ability to work across teams effectively. | 2 - 5 |
| Shoppable Media | Coordinator | 24% | --Foundational knowledge of Shoppable campaigns and product feed management | 1 – 3 |
| Paid Social | Director | 2.5% | --Act as point of escalation for larger issues --Join & lead QBRs and various planning sessions --Maintain relationships with vendor partners to bring clients strong opportunities & plans | 7 – 10 |
| Paid Social | Senior Manager | 12% | --Lead in QBRs and any other regular strategy sessions --Day to day lead and point of escalation --Stay abreast industry trends and happenings to bring best-in-class recommendations and plans --Management responsibilities internally | 6 - 8 |
| Paid Social | Specialist | 36% | --Design, build and operate best-in-class Paid Social campaigns --Proactively provide recommendations regarding optimizations --Consistently enforce QA processes and assist with all campaign components --Secondary client POC | 2 - 4 |
| Emerging Marketplaces (Execution) | Director | 3.5% | --Emerging Marketplaces Team Leadership | 7 - 10 |
| Emerging Marketplaces (Execution) | Senior Strategist | 24%* | --Digital marketing agency or client experience overseeing Retail Media and/ or Amazon strategy and planning. --Strategic ownership of multi-channel marketplaces | 5 – 10 |

## Schedule A6
## Agency Services Scope of Work – North America
## Between Revlon Consumer Products Corporation and Tinuiti, Inc.

| | | | | |
|---|---|---|---|---|
| | | | --Retail Media and/ or Amazon subject matter expert<br>--Direct point of contact between Retail Media partner, client, and tactical support team | |
| Emerging Marketplaces (Execution) | Senior Specialist | 30%* | --Digital marketing agency or client experience executing digital marketing campaigns<br>--Prior Retail Media and/ or Amazon experience<br>--Build, drive and optimize successful marketing campaigns within Retail Media platforms for Search and/or Display | 3 - 6 |
| Emerging Marketplaces (Execution) | Specialist | 12%* | --Digital marketing agency or client experience executing digital marketing campaigns<br>--Prior Retail Media and/ or Amazon experience preferred<br>--Build, drive and optimize successful marketing campaigns within Retail Media platforms for Search and/or Display | 2 - 4 |
| Totals: | | 5.0%** | | |

\* -- NOTE: Staffing is accurate at time of SOW creation with active Marketplaces being Target DSP, Walmart Search, Walmart DSP, Macy's and Ulta DSP.  Should additional Marketplaces be added (or current Marketplaces be removed) in the future, these staffing allocations will be revised via a Change Order or other mutually acceptable method confirmed in writing (email to suffice).

\*\* -- NOTE: Client auditing efforts in Q2 to be executed as part of the Tinuiti time allocations assigned above. Should auditing time require more than the Q2 allocations allow, additional allocation and fees may be required to cover the auditing efforts.

**MEDIA STRATEGY AND SERVICES, CLIENT STRATEGY**

- Maintain seamless communication with Client media POC's  day to day (no more than 3 anticipated)
- Have knowledge and understanding of all commercial and contractual elements of the relationship between Agency and Client to manage terms and scope of work
- Provide overall quality control and timely delivery of agency work products
- Develop and manage media planning timelines, keeping Client and agency stakeholders apprised of upcoming due dates and deliverables
- Lead and coordinate weekly status meetings key Client stakeholders (no more than three anticipated) and relevant Agency stakeholders
- Work with Client to implement and track agreed Key Performance Indicators (KPIs) to ensure a positive and mutually beneficial relationship.
- Champion and enforce streamlined processes and templates across Agency and Revlon teams as follows:
  - Media Activation Process
    - Media Brief Process: Client Account Representative to brief Tinuiti on finalized campaign details and critical campaign information prior to work initiation on new campaign planning and / or when there are significant revisions (ex. changes to budgets, audience, objectives, etc.) to a previously created Media Plan. Tinuiti to provide template of required information to Client as a guide.
    - Media & Tactical Plan  (Response to Brief)

## Schedule A6
## Agency Services Scope of Work – North America
## Between Revlon Consumer Products Corporation and Tinuiti, Inc.

- Work to begin only with an approved budget.
- Tinuiti to provide response to client-provided brief via a streamlined Media / Tactical plan document. The executional recommendations and details will focus on core channels and will be delivered in Google Sheet / Excel format.
  - Where appropriate, a brief overview in Google Slides / PowerPoint, will accompany the above plan
  - Maximum of two (2) walkthroughs with Revlon Media COE and two (2) revisions (requested by Client in writing, email to suffice) per plan with all walkthroughs and revisions tracked within this plan.
    - Requests in excess of the above may incur additional fees and shall be subject to Client's written approval before incurring additional fees. Campaign timeline delays may be required as well and will be communicated by Tinuiti in writing (email to suffice).
  - Tinuiti will track the adherence to all of the above will provide a Quarterly Summary of activity.
- Translate Client's campaign details into the appropriate communications strategies or 'strategic platforms' that provide the Agency team with clear direction for an effective and standout media plan
- Leverage Agency and syndicated toolset to develop communications strategies and opportunities (See List of Tools, Appendix C)
- Using a third-party platform (e.g. Feedonomics or equivalent depending on feed size by brand), Tinuiti's Shoppable Media team will transform and optimize Client's product feed for use within channels such as Google, Microsoft and Facebook. Depending on brand preference, Client will have to upload the feed to Tinuiti's FTP server or provide access via an HTTP link. It is recommended that Client uploads a new and complete feed at least once per day to ensure the most accurate data.
- Coordinate across Agency crafts to build fully integrated communications plans informed by integrated Revlon briefs
- Use available syndicated and proprietary research, data and tools to design media plans that effectively and/or efficiently connect with designated audiences across all communications touchpoints (See List of Tools, Appendix C)
- Outline channel recommendations and rationale with proper support
- Upon plan approval, ensure that Client commits to media programming in the marketplace for any and all channels via the prescribed Media Authorization Form ("MAF") / Template attached hereto as Exhibit B.
- In collaboration with other crafts, develop measurement approach for each plan/campaign that ties back to campaign goals
- Collaborate with Revlon's Analytics team on program/campaign analysis as it relates to meeting KPIs, including ongoing reporting and wrap reports (see Analytics section for additional details)
- Tinuiti will manage all bidding, making necessary plan revisions and optimizations throughout the campaign based on campaign performance
- Oversee delivery of monthly 'financials' reports reflecting the current status of working media budgets against relevant brands; documents to be delivered via mutually agreed and approved process.
- Build effective and efficient tactical media plans for brands and channels
- Develop go to market buying strategies including marketplace assessments, proposed inflation projections, negotiation strategies and recommended partners
- Elevate media partner relationships to drive Client opportunities, first looks, breakthrough barriers, etc.
- Recommend, develop, and implement test and learn plans
- Negotiate best pricing, program / title mix, integrations promotions, flexibility and other added value with select partners
- Issue order letters/IOs
- Provide asset specifications by partner / channel. Client understands that Tinuiti cannot complete Campaign Creation until Client sends creative assets that meet partner (e.g. Amazon) sizing and file type requirements for all products advertised within a campaign. Tinuiti will complete Campaign Creation in no more than 10 business days after Client

## Schedule A6
## Agency Services Scope of Work – North America
## Between Revlon Consumer Products Corporation and Tinuiti, Inc.

sends all necessary Creative assets that meet sizing and file type requirements. Client may request that Tinuiti design and produce Creative assets for an additional fee.

- Steward buys and required plan and/or schedule changes across duration of the campaign
- Manage collection and accuracy of campaign performance data on weekly basis on a timely basis and accurately report same to Client
- Share insights and findings on a weekly basis, inclusive of actions and implementation of recommended optimizations for ongoing campaigns
- Develop and champion channel-specific best practices, as relevant, e.g. creative formats and length
- Activate and manage all campaigns through execution
- Tag, QA and traffic ad units on all campaigns.  Manage all ad copy and creative and adjust on an ongoing basis providing optimal results based on Clients established goals. Tinuiti will make recommendations for optimization to improve performance based on an analysis of the performance data.
- Manage monthly media actualizations and reforecasting as part of monthly budget process
- Client shall comply with all policies, rules, regulations, and terms of service of Media Providers. Tinuiti shall comply with all policies, rules, regulations, and terms of service of Media Providers in its performance of the Services on behalf of Client. If Client violates Media Provider terms of service, or directs Tinuiti to act in violation of Media Provider terms of service, then Client shall hold Tinuiti harmless with respect to any costs incurred by Tinuiti as a result of any such modification, suspension, cancellation or termination.
- Tinuiti will create, refresh and implement campaign elements, including, but not limited to, audience and remarketing lists, negative keyword lists, geographic, time-of-day, demographic, and device modifiers based on goals, performance and best practices.
- Budget: Tinuiti acknowledges and agrees that all expenditures for the Services, including but not limited to, the expenditures in the Schedule of Fees of this SOW are subject to and limited by the budget issued to Tinuiti by Client (the "Budget"). The Budget shall be agreed upon and both Parties shall execute the Media Briefing Template and MAF for each campaign attached.
- Client shall own all data generated as a result of the Services and any and all accounts with Media Providers shall be in Client's name and owned by Client.


**UNIQUE SERVICES PER MEDIA TYPE**
- Client Strategy
  - Strategic Leadership
    - 
    - Primary points-of contacts
    - Provide **holistic strategic execution recommendations** and guidance through the campaign planning process and activation as requested / required by Revlon Team


- Paid Social
  - **PAID SOCIAL PLATFORMS**
    - Activity across Facebook, Instagram, Snapchat, Pinterest, TikTok platforms included in SOW, any new / additional platforms may incur an additional fee beyond the Media Commission applied.


- Integrated Paid Media (Search & Shopping)
  - **Keyword Creation & Expansion -** Tinuiti will review current keywords and expand the keyword list based on query volume, costs and success metrics. Tinuiti will assess Client's current negative keywords, expanding to

## Schedule A6
## Agency Services Scope of Work – North America
## Between Revlon Consumer Products Corporation and Tinuiti, Inc.

further limit irrelevant or inefficient search queries, or removing if existing negative keywords are blocking desired web traffic.

o **Landing Page Assignment -** Tinuiti will assign landing pages (with Client approval) related to audience, keyword concepts and ad copy based on goals, performance and best practices.

o **Ad Extensions -** Create, refresh & implement any applicable Paid Search Ad Extensions.

**COMMUNICATION CADENCES (Ways of Working)**

- The below turnaround times and communication caps are meant to be guardrails to help manage the expected communication between Client and Tinuiti and failure to adhere to the strict adherence of these guidelines by either Party shall not be deemed a material breach of the terms of this SOW or the Agreement.

- Turnaround Times

  o Up to one (1) business day for confirmation of email receipt, BAU support and to set up meeting requests

  o Minimum two (2) weeks for weeks from Brief for presentation of streamlined Media & Tactical Plan (response to brief)

  o Minimum three (3) business days for Plan Revisions

  o 5 - 10 business days (dependent on complexity and prioritization) for ad hoc requests

- Communication Guardrails

  o Communication streamlined to Tinuiti and Client media POCs (no more than three anticipated)

    ▪ Once budget and strategy have been defined and campaigns are in process of being activated, Marketplaces efforts may require direct communication with Client's sales and creative team

  o Up to three (3) hours per week of calls maximum to include:

    ▪ Weekly one (1) hour Campaign Status Call - discuss D2C, Mass and Marketplace initiatives, budget planning)

    ▪ Biweekly thirty (30) minute Leadership Status Call

    ▪ Performance Reporting Calls (1 hour): As detailed on Page 2.

    ▪ As Needed: Analytics Status Call

    If more than three (3) hours per week are requested by Client, Tinuiti shall have the right to shift to the following week and/or move other deliverable due dates to accommodate Client's request.

  o Mutually agreed-upon guidelines as to what generally necessitates a call (media briefings, media plan walkthroughs, weekly status updates, mid and end of campaign reporting deliverables) vs. email (creative trafficking questions, additional reporting requests, questions on reports, account access process, aligning on measurement questions.

  o If Client agrees in writing (email to suffice) that a channel not covered by this SOW (e.g. OTT, Programmatic, etc.) is approved to be incorporated into a media plan, and Tinuiti accepts such planning assignment including such channel in the media plan, the planned media for such channel shall be subject to the fees identified below.

- Tinuiti will track the adherence to all the above relating to Communication Cadences and Guardrails (by function and person) as part of the SLA Tracker managed by Client Strategy.

**SCHEDULE OF AGENCY FEES**

In consideration for Tinuiti's performance of the Services pursuant to this SOW, Client shall pay Tinuiti in accordance with the following payment structure:

## Schedule A6
## Agency Services Scope of Work – North America
## Between Revlon Consumer Products Corporation and Tinuiti, Inc.

1. Term
   a. The start date of monthly management fees for Services under this SOW shall be March 15, 2022.
2. Pricing
   a. For each month during the Term of this SOW in which Client receives Services under this SOW, Client shall pay Tinuiti a monthly fee ("Monthly Fee"). The amount of the Monthly Fee shall be:
      i. $88,000.00 (the "Fixed Fee"); plus four (4%) percent commission (the "Commission") on fully planned and executed spend.
      ii. Total Minimum Fees ("Minimum Fee") for the Term will be $508,500.00.  In the event this SOW is terminated prior to completion of the Term, the Minimum Fee shall be prorated.  If the actual Monthly Fees billed over the Term are less than the Minimum Fee, Client will be billed the difference between the Minimum Fee and the actual Monthly Fees paid during the Term.
      iii. The commission breakdown is as provided for in the Breakdown of Agency's Fees Section below.
      iv. If the media spend is canceled or shifted to an alternate agency prior to placing the buy, Tinuiti is entitled to invoice Revlon up to 62.5% of anticipated commission for Strategy and Planning services as defined in Section BREAKDOWN OF AGENCY FEES Steps 1 and 2.
      v. Tinuiti will track all media planned but not spent and provide ongoing quarterly updates.
   b. Additional Walkthroughs and Revisions upon Client's prior approval at the rate of $990.00 each.
   c. Tinuiti will provide the Services inclusive of set up (as needed) and ongoing management of each Media Type.  Any efforts not contemplated by this SOW, whether because of a new channel or media partner, may be subject to additional fees to be mutually agreed upon between Tinuiti and Client.

Minimum Fees are partly based on anticipated Client Budget for Q2 (April – June) of $3,500,000.00.  Should a material increase to this budget occur, fee structure may be revisited.

### BREAKDOWN OF AGENCY FEES
Agency's fees are broken down as follows:

**At each stage of process below, Tinuiti and Client shall confirm transition from current to next step of process in writing (email to suffice).**

**STEP 1 - Strategic planning - included in the Fixed Fee:**
- Client briefs Tinuiti on finalized campaign details and critical campaign information.
- Tinuiti to provide template of required information to Client as a planning guide in a Media Brief
- Once in agreement, Client provides Agency with written approval (email to suffice) on the Media Brief. Client should open a PO for the campaign at this stage to ensure it is ready for media execution

**STEP 2 - Tactical media planning - covered by 62.5% of the Commission for Annual Planning Stage of the campaign process at the approved budget level:**
- This step begins only after Client has provided official approval on the Media Brief and confirmed an approved budget to plan against provided in Step 1
- Agency provides streamlined Media/tactical plan in the form of a Google Sheet/Excel format focused on core channels
- If plan is cancelled after tactical plan is complete, Client will incur the tactical media planning fee.

## Schedule A6
## Agency Services Scope of Work – North America
## Between Revlon Consumer Products Corporation and Tinuiti, Inc.

- If campaign needs to be re-planned at the tactical level due to a major shift in budget or priorities, Client will incur the tactical media planning fee
- If plan needs revisions within the same budget or minor product priority shift, that work is included in this step
- Once in agreement, Agency provide a Media Authorization Form ("MAF") to Client for official approval to move forward to Step 3

**STEP 3 - Media Buying/Execution - covered by 37.5% of the Commission for buying stage:**
- This step begins only after Client has signed the Media Authorization Form (or provided email approval is timely action is needed prior to sending the official MAF back)
- Agency executes the approved media recommendation, including campaign build-out, QA, optimization, and reporting

 NOTE: Should there be budget cuts across Amazon and/or e-tail partnerships, Client shall bear responsibility of ensuring the validity / impact to any quarterly/yearly commitments as such budget cuts may impact media costs. This could then impact KPIs, goals, and overall media mix.  Notwithstanding, Agency shall not be responsible for any changes to commitments as a result of any budget cuts.

> **Note: In all cases, the Master Agreement also applies, including rights to terminate, and controls over this SOW and any other document except to the extent provisions of the Master Agreement are expressly superseded or amended by this SOW. In the event that Agency continues to perform Services for Client following the SOW Term, the terms and conditions of this SOW shall continue to apply until a new SOW or similar new agreement is agreed to by the parties in writing.**

Each Party hereby agrees to the terms of this agreement by having a duly authorized officer sign below.

**Revlon Consumer Products Corporation**

By: *Brian Gearhart*
Brian Gearhart (Apr 11, 2022 13:19 EDT)

**Name: Brian Gearhart**

**Title:   VP, Media & Digital Marketing**

Date: Apr 11, 2022

**Tinuiti, Inc.**

By: Jesse Eisenberg (Apr 11, 2022 13:46 EDT)

**Name:  Jesse Eisenberg**

**Title:    Chief Commercial Officer**

Date: Apr 11, 2022

# EXHIBIT "C"

**Schedule D1**
**Agency Services Scope of Work – EMEA**
**Between Revlon Consumer Products Corporation and Tinuiti, Inc.**

Revlon Consumer Products Corporation ("Client") hereby engages Tinuiti, Inc. ("Agency" or "Tinuiti") to provide Services in accordance with the terms and conditions set forth in this Scope of Work ("SOW") and the Master Services Agreement between Client and Agency dated as of July 1, 2020 (together with any exhibits, Appendixes, schedules and attachments, the "Master Agreement"). Any capitalized term used in this SOW and not defined shall have the meaning ascribed to it in the Master Agreement.

Term: Effective July 1, 2021 the following Services will be provided by Agency to Client for the period July 1, 2021 thru July 2, 2022. Notwithstanding anything contained in the Master Agreement or herein to the contrary, Client may, after the sixth (6th) full month after the SOW Start Date, for any reason or no reason at all, without prejudice to any other right or remedy it may have under the Master Agreement, terminate this SOW upon thirty (30) days prior written notice to Tinuiti. In the event of such termination, Tinuiti will continue to perform all Services during such thirty (30) day period (the "Termination Period") and will be entitled to payment for Services performed during the Termination Period.

Territories/Markets:
    UK – England (includes Ireland, Scotland and Wales) – all services
    France – search + shopping
    Germany – search + shopping
    Italy – search + shopping
    Spain – search + shopping

Media Types (full list not necessarily applicable across all brands / regions):
    Paid Social
    Integrated Paid Media (Search & Shopping)

Agency will provide the following services inclusive of set up (as needed) and ongoing management of each Media Type.

REPORTING AND ANALYTICS
Tinuiti will provide services to the Client in the following areas of Measurement / Reporting for each Media Type by Brand:

Reporting:
Automated single channel standard reporting will be made available for each channel (specified below). This Reporting provides a high level view of campaign performance for tracking and pacing purposes. For each platform, only standard dimensions and metrics are supported.

Standard Reporting is available for the following channels and platforms:
- Paid Search and Shopping
    - Google Ads, Bing Ads, SA360, Google Analytics
- Paid Social
    - Facebook, Instagram

Please note that more robust Reporting options are readily available from Tinuiti with an incremental fee.

**Schedule D1**
## Agency Services Scope of Work – EMEA
### Between Revlon Consumer Products Corporation and Tinuiti, Inc.

Exploratory Data Analysis: Examine underlying structures of data sets to determine if they expose trends, relationships, and patterns that can be leveraged for strategic insight – analysis may include site optimization, conversion funnel, campaign optimization and more.

LiveRamp Management:  Tinuiti will utilize Client's LiveRamp account (if one exists) and Client shall be responsible for paying and all LiveRamp fees directly to LiveRamp.

Regular Reports & Calls: Tinuiti will provide the Client's Account Representative with reporting that outlines the performance of campaigns on a weekly basis for UK Mass and UK / EU DTC channels until / unless there is a mutual agreement to move to a bi-weekly basis (especially for UK / EU DTC). Tinuiti and Client's Account Representative will have a regularly recurring call to discuss performance / results, insights, opportunities, and outstanding tasks.

Quarterly Reports: Unless both parties agree in a given quarter that it is not necessary and / or relevant, Tinuiti will provide the Client's Account Representative with a quarterly report that is an executive report summarizing performance and market opportunities. Whenever possible, Tinuiti will include in these quarterly reports benchmarking data.

| ANALYTICS / REPORTING | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| CHANNEL(S) | SCOPE | REPORT TYPE | DELIVERY CADENCE | INSIGHTS? | Delivery Type | NOTES |
| ALL | Y | Regular Reporting | WEEKLY or BIWEEKLY (per above) | YES | PPT | CS + Channel teams to compile reports ongoing. |
| ALL | Y | QBRs | QUARTERLY | YES | PPT | All teams to compile quarterly business reviews with thought leadership and go forward plans |
| ALL | Y | Campaign Wrap Up | AD HOC | YES | PPT | To be completed on an ad-hoc basis depending on the campaign in market |

TECHNOLOGY

| TECHNOLOGIES / PLATFORMS* | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| System/Platform | Media Partner | CHANNEL(S) | Used Exclusively for .com | CS NOTES | WHAT IT DOES | Cost included in Scope |
| SA360 | Google | Paid Search/Shopping | Yes (Mass Only) | Yes currently | Bidding and Optimization Platform | Yes |
| Google Analytics | Google | Analytics | No | All - we use GA directionally for D2C as our KPIs are based on a | Data Source, performance metrics, optimization guidance | Yes |

**Schedule D1**
**Agency Services Scope of Work – EMEA**
**Between Revlon Consumer Products Corporation and Tinuiti, Inc.**

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
|  |  |  |  | balance of platform and GA |  |  |
| Google Ads | Google | Paid Search/Shopping | No | Shopping is D2C only, but Search is both | Data Source, performance metrics, optimization guidance, campaign manager | Yes |
| Google Tag Manager | Google | Analytics | No |  | Implementation of Tracking Pixels | Yes |
| Publishers Portal | Facebook/IG | Paid Social | No | Both | Data Source, performance metrics, optimization guidance, campaign manager | Yes |
| Publishers Portal | Pinterest | Paid Social | No | Eventually for both | Data Source, performance metrics, optimization guidance, campaign manager | Yes |
| Publishers Portal | TikTok | Paid Social | No | Likely for Mass only | Data Source, performance metrics, optimization guidance, campaign manager | Yes |
| Publishers Portal | Snapchat | Paid Social | No | Eventually for both | Data Source, performance metrics, optimization guidance, campaign manager | Yes |
| Publishers Portal | Twitter | Paid Social | No | N/A | Data Source, performance metrics, optimization guidance, campaign manager | Yes |
| Publishers Portal | Criteo | Paid Search | Yes | D2C only | Data Source, performance metrics, optimization guidance, campaign manager | Yes |
| Bing Ads | Microsoft | Paid Search/Shopping | No | Both | Data Source, performance metrics, optimization guidance, campaign manager | Yes |
| Connexity | Connexity | Shopping | Yes | D2C only | Data Source, performance metrics, optimization guidance, campaign manager | Yes |
| Mobius | Google, Microsoft, etc. | Shopping | Yes | D2C only | Dynamic feed management | Yes |

\* NOTE – Technology usage highly dependent on details of differing programs (i.e. Mass vs. DTC) and regions. List above intended to provide the best summary of what could be used, but expectations should not be that all technologies are used on all brands in all regions.

**Schedule D1**
**Agency Services Scope of Work – EMEA**
**Between Revlon Consumer Products Corporation and Tinuiti, Inc.**

STAFFING

| Tinuiti Resource | | | | |
|---|---|---|---|---|
| *Function / Role* | *Title* | *FTE%* | *Role / Responsibilities* | *Experience (Yrs).* |
| Client Strategy (formerly IMS) | Director | 9% | Strategic ownership of relationship, main point-of-contact, integrated media responsibilities | 7 - 10 |
| Client Strategy (formerly IMS) | Manager | 25% | Executional ownership of relationship, direct point-of-contact, integrated media responsibilities | 4 - 7 |
| Client Strategy (formerly IMS) | Coordinator | 15% | Executional / administrative support, indirect point of contact, integrated media responsibilities | 1 - 3 |
| Paid Search + Shopping | Strategist | 6% | Strategic ownership of Paid Search, direct point-of-contact, SEM + mgmt. responsibilities | 5 - 8 |
| Paid Search + Shopping | Senior Specialist | 22% | Executional ownership of Paid Search, direct point-of-contact, SEM responsibilities | 3 - 6 |
| Paid Search + Shopping | Specialist | 50% | Executional support of Paid Search, indirect point-of-contact, SEM responsibilities | 1 - 3 |
| Paid Social | Senior Specialist | 42% | Executional ownership of Paid Social, direct point-of-contact, Paid Social responsibilities | 3 - 5 |
| Paid Social | Coordinator | 30% | Executional support of Paid Search, indirect point-of-contact, SEM responsibilities | 1 - 3 |
| **Totals:** | | **199%** | | |

**Schedule D1**
**Agency Services Scope of Work – EMEA**
**Between Revlon Consumer Products Corporation and Tinuiti, Inc.**


**MEDIA STRATEGY AND SERVICES, CLIENT STRATEGY / IMS**

- NOTE: Tinuiti does not provide linguistics or translation services.
- Agency will develop a thorough knowledge of the Revlon business, its products and services and the category overall to provide relevant and thoughtful recommendations and media opportunities
- Have knowledge and understanding of all commercial and contractual elements of the relationship between Agency and Client to manage terms and scope of work
- Act as a collaborative (with Client Team) consultant to Client on local market Agency services, providing recommendations for Revlon needs where available within the media group
- Provide overall quality control and timely delivery of agency work products
- Develop and manage media planning timelines, keeping Client and agency stakeholders apprised of upcoming due dates and deliverables
- Maintain seamless communication with Client media team day to day
- Lead and coordinate status meetings between Client media team and relevant Agency stakeholders
- Work with Client to implement and track agreed KPIs to ensure a positive and mutually beneficial relationship.
- Work with Client to develop, implement and track mutual Key Performance Indicators (KPIs) and establish quarterly business reviews
- Ensure day to day integration and communication across disciplines within Agency as well as other Revlon agency partners, as relevant
- Champion and enforce established  processes and templates across Agency and Revlon teams as follows:
  - Media Briefing Template (per below and included as Exhibit A).
    - Must be delivered to Agency entirely completed by Client prior to any team planning / activity
    - Must include timelines for all elements, which must be adhered to by Client and Agency
      - For every day of delay on Client end, Client must expect up to two (2) days of delay on Agency end in order to compensate.
    - To move forward Tinuiti team must have  clarity on media budget status when planning begins; locked or tentative
    - Must include Campaign Approval Process by Campaign delivered by Client
      - Details the number of steps and names of approvers
    - Must include KPIs / Goals delivered by Client to Agency for each campaign
    - Any changes to the Media Briefing Template must be approved by Tinuiti as well as Client Representative (including Revlon North America representatives)
  - Maximum of three (3) walkthroughs with the business/marketing category leads and two (2) revisions (accomplished via Client revision to Media Briefing Template) per plan with all walkthroughs and revisions tracked within this plan on the first or last page.
    - Requests in excess of the above may incur additional fees and shall be subject to Client's written approval before incurring additional fees.  Campaign timeline delays may be required as well and will be communicated by Tinuiti in writing (email to suffice).
  - Tinuiti will track the adherence to all of the above relating to the Media Briefing Templates and will provide a Quarterly Summary of activity.
- Translate Client's campaign briefs into the appropriate communications strategies or 'strategic platforms' that provide the Agency team with clear direction for an effective and standout media plan
- Drive smarter, better and broader thinking, beyond only paid media, that generates more interesting and rich territories for a brand to explore, working in creative collaboration with all internal teams as well as Client partner agencies, where relevant – to inspire and inform the creation and design of culturally-led brand experiences

**Schedule D1**
**Agency Services Scope of Work – EMEA**
**Between Revlon Consumer Products Corporation and Tinuiti, Inc.**

- Evaluate new vendors and networks across all channels to determine their potential appropriateness in the Revlon Media Mix
- Leverage Agency and syndicated toolset to develop communications strategies and opportunities (See List of Tools, Appendix C)
- Using a third-party platform (e.g. Feedonomics or equivalent), Tinuiti's Shopping & Feeds team will transform and optimize Client's product feed for use within channels such as Google, Microsoft and Facebook. Depending on brand preference, Client will have to upload the feed to Tinuiti's FTP server or provide access via an HTTP link. It is recommended that Client uploads a new and complete feed at least once per day to ensure the most accurate data.
- Develop consumer profiles and insights using existing Revlon data and available Agency and syndicated tools (See List of Tools, Appendix C)
- Organize and lead, when relevant, brainstorming sessions, both internal and including Clients/Client agency partners
- Provide thought leadership around Revlon-relevant category, media, consumer and culture topics or trends
- Coordinate across Agency crafts, and where available, partner agencies, to build fully integrated communications plans informed by integrated Revlon briefs
- Use available syndicated and proprietary research, data and tools to design media plans that effectively and/or efficiently connect with designated audiences across all communications touchpoints (See List of Tools, Appendix C)
- Outline channel recommendations and rationale with proper support, including rationale for channels considered but not recommended
- Upon plan approval, ensure that Client commits to media programming in the marketplace for any and all channels via the prescribed Approval to Buy process ("ATB") / Template attached hereto as Exhibit B.
- In collaboration with other crafts, develop measurement approach for each plan/campaign that ties back to campaign goals
- Tinuiti will manage all bidding, making necessary plan revisions and optimizations throughout the campaign based on campaign performance
- Build effective and efficient tactical media plans for brands and channels
- Develop go to market buying strategies including marketplace assessments, proposed inflation projections, negotiation strategies and recommended partners
- Elevate media partner relationships to drive Client opportunities, first looks, breakthrough barriers, etc.
- Evaluate ad hoc partner proposal and brand opportunities related to paid media
- Provide real-time POV on updates/changes in the media/technology space
- Evaluate and brief media partners and provide feedback on ideas
- Recommend develop and implement test and learn plans
- Negotiate best pricing, program / title mix, integrations promotions, flexibility and other added value with select partners
- Issue order letters/IOs
- Provide asset specifications by partner / channel.  Client understands that Tinuiti cannot complete Campaign Creation until Client sends creative assets that meet partner (e.g. Amazon) sizing and file type requirements for all products advertised within a campaign. Tinuiti will complete Campaign Creation in no more than 10 business days after Client sends all necessary Creative assets that meet sizing and file type requirements. Client may request that Tinuiti design and produce Creative assets for an additional fee.
- Steward buys and required plan and/or schedule changes across duration of the campaign
- Manage collection and accuracy of campaign performance data on weekly basis on a timely basis and accurately report same to Client
- Share insights and  findings on a weekly basis, inclusive of actions and implementation of recommended optimizations for ongoing campaigns
- Develop and champion channel-specific best practices, as relevant, e.g. creative formats and length

**Schedule D1**
**Agency Services Scope of Work – EMEA**
**Between Revlon Consumer Products Corporation and Tinuiti, Inc.**

- Activate and manage all campaigns through execution
- Tag, QA and traffic ad units on all campaigns.  Manage all ad copy and creative and adjust on an ongoing basis providing optimal results based on Clients established goals. Tinuiti will make recommendations for optimization to improve performance based on an analysis of the performance data.
- Manage monthly media actualizations and reforecasting as part of monthly budget process
- Client shall comply with all policies, rules, regulations, and terms of service of Media Providers. Tinuiti shall comply with all policies, rules, regulations, and terms of service of Media Providers in its performance of the Services on behalf of Client. If Client violates Media Provider terms of service, or directs Tinuiti to act in violation of Media Provider terms of service, then Client shall hold Tinuiti harmless with respect to any costs incurred by Tinuiti as a result of any such modification, suspension, cancellation or termination.
- Tinuiti will create, refresh and implement campaign elements, including, but not limited to, audience and remarketing lists, negative keyword lists, geographic, time-of-day, demographic, and device modifiers based on goals, performance and best practices.
- Budget: Tinuiti acknowledges and agrees that all expenditures for the Services, including but not limited to, the expenditures in the Schedule of Fees of this SOW are subject to and limited by the budget issued to Tinuiti by Client (the "Budget"). The Budget shall be agreed upon and both Parties shall execute the Media Briefing Template and ATB for each campaign attached.
- Client shall own all data generated as a result of the Services and any and all accounts with Media Providers shall be in Client's name and owned by Client.


**UNIQUE SERVICES PER MEDIA TYPE**

- Integrated Paid Media (Search & Shopping)
    - **Keyword Creation & Expansion -** Tinuiti will review current keywords and expand the keyword list based on query volume, costs and success metrics. Tinuiti will assess Client's current negative keywords, expanding to further limit irrelevant or inefficient search queries, or removing if existing negative keywords are blocking desired web traffic.
    - **Landing Page Assignment -** Tinuiti will assign landing pages (with client approval) related to audience, keyword concepts and ad copy based on goals, performance and best practices.
    - **Ad Extensions -** Create, refresh & implement any applicable Paid Search Ad Extensions.


<u>**COMMUNICATION CADENCES (Ways of Working)**</u>
- The below communication caps are meant to be guardrails to help manage the expected communication between Client and Tinuiti and failure to adhere to the strict adherence of these guidelines by either Party shall not be deemed a material breach of the terms of this SOW or the Agreement.
    - Communication Guardrails
        - Up to three (3) hours per week of calls by channel maximum (if more than three (3) hours per week are requested by Client Tinuiti shall have the right to push back to the following week and/or move other deliverable due dates to accommodate Client's request)
        - Up to three (3) hours per week of CStrat + Analytics calls (if more than three (3) hours per week are requested by Client Tinuiti shall have the right to push back to the following week and/or move other deliverable due dates to accommodate Client's request)
        - The above caps on calls do not include Status Calls
        - Mutually agreed-upon guidelines as to what generally necessitates a call (media briefings, media plan walkthroughs, weekly status updates, mid and end of campaign reporting deliverables) vs.

**Schedule D1**
**Agency Services Scope of Work – EMEA**
**Between Revlon Consumer Products Corporation and Tinuiti, Inc.**

email (creative trafficking questions, additional reporting requests, questions on reports, account access process, aligning on measurement questions.

o   Tinuiti will track the adherence to all the above relating to Communication Cadences and Guardrails (by function and person) and will provide a Monthly Summary of activity to Revlon until a transition to Quarterly Summaries is mutually agreed upon.

**SCHEDULE OF AGENCY FEES**

In consideration for Tinuiti's performance of the Services pursuant to this SOW, Client shall pay Tinuiti in accordance with the following payment structure:

1. Term
   a. The start date of monthly management fees for Services under this SOW shall be July 1, 2021.
2. Pricing
   a. Staffing / resourcing will be dependent on actual spend.
   b. For each month during the Term of this SOW in which Client receives Services under this SOW, Client shall pay Tinuiti a monthly fee ("Monthly Fee"). The Monthly Fee and any other fees, costs or expenses shall be in US dollars.  The amount of the Monthly Fee shall be:

**Brand Media (Search + Social)**

| | |
|---|---|
| Geo Scope: | UK (only) |
| Agency Fees: | $16,000.00 + 4% per month of the monthly media placement |
| Estimated Annual Spend: | $3,338,000.00 USD |
| Reporting: | Templated dashboarding by channel |

**Direct to Consumer Search & Shopping (excludes Amazon)**

| | |
|---|---|
| Geo Scope: | UK \| France \| Germany \| Italy \| Spain |
| Agency Fees: | $9,300.00 per month + 4% of the monthly media placement |
| Estimated Annual Spend: | $725,000.00 USD |
| Reporting: | Templated dashboarding by channel (only) |
| Special Instructions: | All activity to be run in English or with translations provided to Tinuiti, translation services NOT included in Services provided by Tinuiti. |

i.   The commission breakdown is as provided for in the Breakdown of Agency's Fees Section below.  If the media spend is canceled prior to placing the buy, Tinuiti is entitled to invoice Revlon up to a 2.5% commission for Strategy and Planning services as defined in Section BREAKDOWN OF AGENCY FEES Steps 2 and 3.

ii.   Tinuiti will track all media planned but not spent and provide ongoing quarterly updates.

iii.   Additional Walkthroughs and Revisions upon Client's prior approval at the rate of $990.00 each.

Tinuiti will provide the Services inclusive of set up (as needed) and ongoing management of each Media Type.  Any efforts not contemplated by this SOW, whether because of a new channel or media partner, may be subject to additional fees to be mutually agreed upon between Tinuiti and Client.

**BREAKDOWN OF AGENCY FEES**

**Schedule D1**
## Agency Services Scope of Work – EMEA
**Between Revlon Consumer Products Corporation and Tinuiti, Inc.**

Agency's fees are broken down as follows:

**STEP 1 - Strategic planning - included in the Fixed Fee:**
- Client provides a complete Media Brief to Agency for the campaign (example attached)
  - Annual, quarterly or by initiative / campaign
  - Media Brief includes business/media goals, products to be supported, budgets (what is known at that point in time), retailer commitments or any parameters that need to be taken into account in planning, etc.
- Agency provides a high level, strategic recommendation, in response to the Media Brief
  - Recommendation to include high level strategic approach, overall allocation by channel, etc.
- Once in agreement, Client provides Agency with written approval (email to suffice) on the strategic direction in order to proceed to the next step, as well as the budget level to plan against

**STEP 2 - tactical planning - covered by 1.5% of the Commission for Annual Planning Stage of the campaign process at the approved budget level:**
- This step begins only after Client has provided official approval on the strategic recommendation provided in step 1
- Agency provides full annual tactical plan recommendation(s), including details by channel and product

**STEP 3 – quarterly authorization – covered by 1.0% of the Commission for Quarterly detail/updates of the campaign process:**
- Agency will manage the quarterly changes and re-plans
  - If campaign/brand support is canceled within the quarter, Client would still be charged the 1.0% planning fee against the authorized budget at the end of step 1
  - If campaign/brand support is shifted between quarters - and not canceled - the 1% planning fee will be billed in the quarter that the media runs
  - If activity is not meeting threshold KPIs and Revlon decides to cut the spend, Client will not be charged the 1% commission related to this type of cut
- Once in agreement, Agency provides an Authorization To Buy to Client for official approval to move into step 3

**STEP 4 - Media Buying/Execution - covered by 1.5% of the Commission for buying stage:**
- This step begins only after Client has signed the Authorization To Buy and the billing process is kicked off for the campaign, including PO creation, etc.
- Agency executes the approved media recommendation, including campaign build-out, QA, optimization, and reporting

NOTE: Should there be budget cuts in these areas, Agency will work with Client to ensure validity of any quarterly/yearly commitments across Amazon and/or e-tail partnerships. This could then impact KPIs, goals, and overall media mix.

**Schedule D1**
**Agency Services Scope of Work – EMEA**
**Between Revlon Consumer Products Corporation and Tinuiti, Inc.**

---

**Note: In all cases, the Master Agreement also applies, including rights to terminate, and controls over this SOW and any other document except to the extent provisions of the Master Agreement are expressly superseded or amended by this SOW. In the event that Agency continues to perform Services for Client following the SOW Term, the terms and conditions of this SOW shall continue to apply until a new SOW or similar new agreement is agreed to by the parties in writing.**

---

Each Party hereby agrees to the terms of this agreement by having a duly authorized officer sign below.

**Revlon International Corporation (UK Branch)**

By: _Hesham Motan_

Name:    Hesham Motan
Title:    VP EMEA Revlon Mass
Date:
            7/2/2021

**Elizabeth Arden (UK), Ltd**

By: _Stephane Bonnet_

Name:    Stephane Bonnet
Title:    Vice President, EMEA Prestige
Date:
            7/6/2021

**Tinuiti, Inc.**

By: _Jesse Eisenberg_

Name:    Jesse Eisenberg
Title:    Chief Growth Officer
Date:
            7/6/2021

**Schedule D1**
**Agency Services Scope of Work – EMEA**
**Between Revlon Consumer Products Corporation and Tinuiti, Inc.**

Exhibit A
Media Briefing Template



Shared Revlon
Mass Media 2H Brief

Exhibit B
Approval to Buy ("ATB") Template



Revlon _ Tinuiti
Standard Authorizat

# EXHIBIT "D"

## Schedule F1
## Agency Services Scope of Work – North America
## Between Revlon Consumer Products Corporation and Tinuiti, Inc.

Revlon Consumer Products Corporation ("Client" or "Revlon") hereby engages Tinuiti, Inc. ("Agency" or "Tinuiti") to provide Services in accordance with the terms and conditions set forth in this Scope of Work ("SOW") and the Media Buying Services Agreement between Client and Agency dated as of July 1, 2020 (together with any exhibits, Appendixes, schedules and attachments, the "Master Agreement"). Any capitalized term used in this SOW and not defined shall have the meaning ascribed to it in the Master Agreement.

Term: The Services identified in this SOW will be provided by Agency to Client for the period commencing September 1, 2021 through and including August 30, 2022 (i.e. 12 Months).

Territories/Markets: US & CA

Brands Supported: Elizabeth Arden, American Crew

Media Types: Affiliate Marketing Management

Agency will provide the following Services inclusive of set up (as needed) and ongoing management of each Media Type.

REPORTING AND ANALYTICS
Tinuiti will provide services to the Client in the following areas of Measurement, Reporting and Insights for each Media Type by Brand:

Reporting (inclusive of Dashboards, Monthly "Deep-Dives" and Quarterly Competitive Reports).  If the output mentioned in SOW B2 (Flow Chart) is still active, Affiliate data will be incorporated so long as all data sources are able to automatically uploaded.

Cross Channel Reporting: Customized Tableau reporting views of integrated cross-channel performance data inclusive of online channel performance and attribution for online and offline revenue. Measures the success of marketing initiatives against key metrics (ROAS, conversion rate, revenue, etc.).  Tinuiti dashboarding includes integration of Tinuiti-managed marketing channel data.  Tinuiti can ingest other data or data sources if Revlon is able to supply data compatible with Tinuiti's requirements at no additional charge.  If Revlon is unable to meet these requirements and the data is required, Revlon acknowledges that Tinuiti may charge an incremental one-time set-up fee and/or an ongoing (maintenance) fee based on factors including but not limited to complexity of data, data quality, LOE, mechanism of data delivery including potential automation and business need. Any additional charges must be preapproved by Revlon.

Exploratory Data Analysis: Tinuiti shall examine underlying structures of data sets to determine if they expose trends, relationships, and patterns that can be leveraged for strategic insight – analysis may include site optimization, conversion funnel, campaign optimization and more.

Reports/dashboards will include the following metrics for the previous month and the previous week (updated as often as partner data flow will allow, no more frequently than daily):

Clicks and Cost. Upon creation of tracking links by the Tinuiti team, placement of appropriate network pixels by Client and QA from the Tinuiti Team, Tinuiti will report upon all possible back end metrics; Commissions, Conversions, Publisher KPIs, Revenue, ROAS/ROI and other conversion metrics.

## Schedule F1
## Agency Services Scope of Work – North America
## Between Revlon Consumer Products Corporation and Tinuiti, Inc.

Weekly Reports & Calls: Tinuiti will provide the Client's Account Representative with reporting that outlines the performance of campaigns on a weekly basis. Tinuiti and Client's Account Representative will have a weekly call to discuss performance / results, insights, opportunities, and outstanding tasks, unless Client has requested a less frequent cadence.

Monthly Summaries (delivered within 7 business days of month-end): Tinuiti will provide the Client's Account Representative with reporting that outlines the performance of campaigns on a monthly basis. These summaries are to be discussed between Tinuiti and Client's Account Representative on established weekly calls to discuss performance / results, insights, opportunities, and outstanding tasks, unless Client has requested a less frequent cadence. To include competitive snapshot in a format to be mutually agreed upon by Client and Tinuiti within first two weeks of engagement.

Quarterly Reports: Tinuiti will provide the Client's Account Representative with a quarterly report that is an executive report summarizing the Brand's performance, market opportunities and Brand position against competitors. Tinuiti will include in these quarterly reports any benchmarking data available via the tools included in this SOW.

| ANALYTICS / REPORTING | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| CHANNEL(S) | SCOPE | REPORT TYPE | DELIVERY CADENCE | INSIGHTS? | Delivery Type | NOTES |
| | | | | | Data Feed or Electronic File | |
| ALL | Y | Weekly Reporting | Weekly | YES | PPT | Affiliate added to weekly reports ongoing |
| ALL | Y | Monthly Summaries | Monthly | YES | PPT | Affiliate added to Monthly Summaries ongoing |
| ALL | Y | QBRs | QUARTERLY | YES | PPT | All teams to compile quarterly business reviews with thought leadership and go forward plans |

TECHNOLOGY

| TECHNOLOGIES / PLATFORMS | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| System/Platform | Media Partner | CHANNEL(S) | Used Exclusively for .com | CS NOTES | WHAT IT DOES | Cost included in Scope |
| Affiliate Platform | Many | Affiliates | No | Commission Junction or any other Affiliate platform chosen in the future | Affiliate program hosted and managed on the platform | No, Revlon pays directly |

### Schedule F1
### Agency Services Scope of Work – North America
### Between Revlon Consumer Products Corporation and Tinuiti, Inc.

| | | | | | | |
|---|---|---|---|---|---|---|
| Affluent | Affiliate Platform | Affiliates | No | | Aggregates CJ data into better views | Yes |
| Grouphigh | N/A | Affiliates | No | Recruitment tool | Affiliate discovery | Yes |
| Brandverity | Google | Affiliates | No | | Paid Search keyword monitoring to inform Affiliate choices | Yes |

STAFFING (NOTE, resources in **BOLD are new to this SOW only**)

| Tinuiti Resource | | | | |
|---|---|---|---|---|
| *Function / Role* | *Title* | *FTE%* | *Role / Responsibilities* | *Experience (Yrs).* |
| Client Strategy (formerly IMS) | Director | 17% | Strategic ownership of relationship, main point-of-contact, integrated media responsibilities | 7 - 10 |
| Client Strategy (formerly IMS) | Manager | 40% | Executional ownership of relationship, direct point-of-contact, integrated media responsibilities | 4 - 7 |
| Client Strategy (formerly IMS) | Coordinator | 40% | Executional / administrative support, indirect point of contact, integrated media responsibilities | 1 - 3 |
| Analytics, Reporting, Insights | Manager | 15% | Strategic ownership of data / reporting, escalation contact, Analytics + mgmt. responsibilities | 7 - 10 |
| Analytics, Reporting, Insights | Analyst | 46% | Executional ownership of relationship, direct point-of-contact, Analytics responsibilities | 4 - 6 |
| Analytics, Reporting, Insights | Associate Analyst | 52% | Executional focus (reporting), indirect point-of-contact, Analytics responsibilities | 1 – 3 |
| **Affiliate Management** | **Strategist** | **48%** | **Strategic ownership of Affiliates, main point-of-contact, thought leadership** | **5 - 10** |
| **Affiliate Management** | **Specialist** | **36%** | **Executional ownership of Affiliate programs, additional point-of-contact** | **3 - 6** |
| **Affiliate Management** | **Coordinator** | **24%** | **Execution of Affiliate programs, indirect point-of-contact, reporting, coordination lead** | **2 - 4** |

**UNIQUE SERVICES PER MEDIA TYPE**
- **Affiliate Marketing - Management**
  - Program Recruitment: Tinuiti will work with publishers to ensure they have the tools and resources to become active within the program for each Property. Recruitment and activation techniques include but are not limited to: using both network, third party and custom recruitment methods to seek incremental partner opportunities; pushing activation programs and promotions to generate program interest and sign-ups; identifying influencers and/or outside business development partnerships; attendance/key representation at industry events/conferences for recruiting and partnering.

  - Program Communication: Tinuiti will develop and release weekly/monthly and ad-hoc publisher communication notifying publishers of upcoming-offers, initiatives, products and general program

## Schedule F1
## Agency Services Scope of Work – North America
## Between Revlon Consumer Products Corporation and Tinuiti, Inc.

information for each Property. Tinuiti will also manage publisher approvals, declines, inquiries and requests; escalating to the Client when needed. Tinuiti will hold status calls with top publishers to get insights and opportunities to optimize the program.

o  Program Creative: Tinuiti will facilitate the building of text links and banner uploads for each Property. Tinuiti will continually analyze and monitor the creative performance, providing insights and recommendations. Tinuiti will also identify paid placement opportunities that remain cost effective and drive strong KPI performance. Tinuiti will also work directly with the Client to understand promotional cadence and provide recommendations and align strategies to upcoming campaigns.

o  Program Compliance: Tinuiti will actively review the affiliate landscape to identify non-compliant behavior including but not limited to: fraud, cookie stuffing, unidentified sites, unapproved toolbars or software, violations, etc. and take necessary action as needed. Actions may include: notifying publisher of non-compliant actions requiring action within certain time frame (depending on infraction), removing Publisher from the program, reducing or revoking commission during time of non-compliant behavior. Tinuiti will also remain compliant on state tax nexus rules.

**COMMUNICATION CADENCES (Ways of Working)**
- The below turnaround times and communication caps are meant to be guardrails to help manage the expected communication between Client and Tinuiti and failure to adhere to the strict adherence of these guidelines by either party shall not be deemed a material breach of the terms of this SOW.
- Turnaround Times
  - o  1 business day (if needed) for any requests for same-day BAU calls / meetings (quarterly finance tracker, invoicing, questions about the media plans, POVs, etc.)
  - o  5 business days minimum after receiving a fully completed Media Brief for Planning
  - o  2 business days minimum for Plan Revisions
  - o  1 - 3 business days (dependent on complexity and defined at the outset) for Ad Hoc Requests
- Communication Guardrails
  - o  Up to three (3) hours per week of calls by channel maximum (if more than three (3) hours per week are requested by Client Tinuiti has the right to push back to following week and / or move other deliverable due dates)
  - o  Any cap on weekly calls does not include Weekly Status Calls
  - o  Mutually agreed-upon guidelines as to what generally necessitates a call (media briefings, media plan walkthroughs, weekly status updates, mid and end of campaign reporting deliverables) vs. email (creative trafficking questions, additional reporting requests, questions on reports, account access process, aligning on measurement questions).
- Tinuiti will track the adherence to all the above relating to Communication Cadences and Guardrails (by function and person) and will provide a Monthly Summary of activity to Revlon until a transition to Quarterly Summaries is mutually agreed upon.

**SCHEDULE OF AGENCY FEES**
In consideration for Tinuiti's performance of the Services pursuant to this SOW, Client shall pay Tinuiti in accordance with the following payment structure:

## Schedule F1
## Agency Services Scope of Work – North America
## Between Revlon Consumer Products Corporation and Tinuiti, Inc.

1. Term
   a. The start date of monthly management fees for Services under this SOW shall be September 1, 2021. Full takeover / launch of the program will be accomplished no later than September 13, 2021.

2. Pricing
   a. For each month during the Term of this SOW in which Client receives Services under this SOW, Client shall pay Tinuiti a monthly fee ("Monthly Fee"). The amount of the Monthly Fee shall be:
      i. $10,000 (the "Fixed Fee"); plus a variable commission (the "Commission) on Gross Affiliate Revenue ("GAR") of .8%.
      ii. If $32,000,000 in Affiliate Channel revenue is achieved over the Term of this SOW, an additional performance bonus of $72,000 will be billed on the 12th monthly invoice.

   b. Additional Walkthroughs and Revisions upon Client's prior approval at the rate of $990.00 each.

Tinuiti will provide the Services inclusive of set up (as needed) and ongoing management of each Media Type. Any efforts not contemplated by this SOW, whether because of a new channel or media partner, may be subject to additional fees to be mutually agreed upon between Tinuiti and Client.

> **Note: In all cases, the Master Agreement also applies, including rights to terminate, and controls over this SOW and any other document except to the extent provisions of the Master Agreement are expressly superseded or amended by this SOW. In the event that Agency continues to perform Services for Client following the SOW Term, the terms and conditions of this SOW shall continue to apply until a new SOW or similar new agreement is agreed to by the parties in writing.**

Each party hereby agrees to the terms of this agreement by having a duly authorized officer sign below.

**Revlon Consumer Products Corporation**

By: _Amy Labroo_____

Name: Amy Labroo

Title: SVP, Digital & IMC

Date: 7/16/2021_____

**Tinuiti, Inc.**

By: _Jesse Eisenberg_____

Name: Jesse Eisenberg

Title: Chief Growth Officer

Date: 7/19/2021_____

# EXHIBIT "E"



June 30, 2022

**Via Email**
TINUITI INC
121 South 13th Street, Floor 3 Philadelphia, PA 19107
Attn:  Zach Morrison
Zach.Morrison@Tinuiti.com

**Re:    Continuation of Schedule F1, Affiliate Services Scope of Work and Addendum 4 to Schedule A1, Continuation and Revision of Schedule A6, Agency Services Scope of Work – North America dated April 11, 2022, between Tinuiti, Inc.  ("Tinuiti" or "Agency") and Revlon Consumer Products Corporation ("Client") with an effective date of July 1, 2022.**

Dear Mr. Morrison,

This letter evidences and confirms, as outlined in Section 4.3 Term and Termination, Revlon Consumer Products Corporation has provided notice of their desire to terminate all services related to Revlon's National and Marketplace Media as outlined in Schedule A6, Agency Services Scope of Work – North America dated April 11, 2022.  If not already completed or specifically agreed between the parties that the service is not required, it is expected that Tinuiti will complete all existing projects and services and assist with all transition activities as are reasonable and customary and/or as outlined in the Scope(s) and Tinuiti will be contemporaneously paid in full for all postpetition work on the completion of all existing projects and services and for assisting with transition activities as set forth in the Scope(s) and that certain Master Service Agreement between Revlon Consumer Products Corporation and Tinuiti Inc. dated July 1, 2020 (the "MSA").

As confirmation and elimination of doubt and notwithstanding the previous paragraph, Agency services for D2C media buying and planning outlined in Schedule A6, Agency Services Scope of Work – North America dated April 11, 2022, and Amendment No. 1 to Schedule F1 Affiliate Services Scope of Work and Addendum No. 4 to Schedule A1 ("LiveRamp") dated January 14, 2022 will remain in effect through September 30, 2022, with fee structures as outlined below and are not subject to this termination notice.   Agency fees and commissions will be billed and paid monthly at the following rate:

o   SOW A6: WITHOUT Client Strategy remaining in place = $35K + 4% of spend, minimum over the first three months of $139K.
o   Amendment 1 to SOW F1:  $10K + a variable commission on Gross Affiliate Revenue ("GAR") of .8%.
o   Addendum 4 to SOW A1:  No agency fee, passthrough cost only.

Tinuiti shall also provide monthly competitor reports upon request for each of the following segments: Men's Grooming, Nail, Skincare, Beauty Tools, Hair Color, and Color Cosmetics should a mutually agreed fee structure for each such request be determined.  Client acknowledges that Tinuiti retains all rights under the Bankruptcy Code.  Please indicate your acceptance by signing below where indicated and returning a fully signed copy to us.  I would like to thank you for the collaborative relationship we have had these past few years and for all that we accomplished towards advancing our brands.

Sincerely,
**Revlon Consumer Products Corporation,**

4856-8490-4233 v1

*Brian Gearhart*

**By:** _____

Name: Brian Gearhart
Title:   VP, Media & Digital Mktg


Agreed and Accepted:
**Tinuiti, Inc.**


*Chaille Brown*

**By:** _____

Name: Chaille Brown
Title: EVP Finance

# EXHIBIT "F"

**AMENDMENT NO. 1**

**TO**

**SCHEDULE A6**

**Agency Services Scope of Work – U.S.+ Canada**

**Between Revlon Consumer Products Corporation and Tinuiti, Inc.**

This Amendment Number 1 ("Amendment") to Schedule A6 Scope of Work effective as of March 15, 2022 ("SOW") pursuant to the Master Services Agreement by and between Tinuiti, Inc., ("Tinuiti") and Revlon Consumer Products Corporation ("Client") effective as of July 1, 2020 (the "Agreement") is made and entered into and effective as of July 1, 2022  (the "Effective Date").

NOW THEREFORE, in consideration of the mutual promises and conditions set forth herein, receipt of which is hereby acknowledged, and intending to be legally bound, the parties hereto agree to modify the SOWs as follows:

    1.   **Modification of Schedule A6**. Effective as of the Effective Date, Schedule A6 shall be modified to the attached Schedule A6 attached hereto as Exhibit 1.

    2.   **Effect of Amendment.**  Terms used herein which are defined or specified in the Agreement or SOW shall have the meanings set forth therein.  Except as amended hereby the SOW shall continue in full force and effect.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Amendment to be executed by their respective authorized representatives.

**Revlon Consumer Products Corporation**

SIGNATURE: *won Park Costof*
NAME:
TITLE:       won Park Costof
DATE:      Head of Elizabeth Arden

          10/31/2022

**Tinuiti, Inc.**

SIGNATURE: *jessica mcdaid*
NAME:
TITLE:       jessica mcdaid
DATE:      Group Vice President, Business Development

          11/1/2022

1



# Exhibit 1

Term: Effective July 1, 2022 the following Services will be provided by Agency to Client for the period July 1, 2022 thru June 30, 2023.

Territories/Markets: US + Canada (single stakeholder, no point-of-contact IN Canada)

Media Types & Service Lines: Integrated Paid Media (Search, Shopping, Paid Social with Reporting))

Brands + Service Lines Covered:

| BRAND | ECOM / DTC | PAID SEARCH | SHOPPABLE MEDIA | PAID SOCIAL | DISPLAY / OTT | MKT. SEARCH | MKT. DISPLAY | CLIENT STRATEGY | REPORTING |
|---|---|---|---|---|---|---|---|---|---|
| American Crew | X | X | X | | | | | | X |
| Elizabeth Arden (EA) | X | X | X | X | | | | | X |

Any addition of a Brand or Service Line not listed on the above chart shall be accompanied by a Change Order which may include an increase in staffing and/or fees.

Agency will provide the services inclusive of execution and ongoing management of each service line above.

<u>REPORTING AND ANALYTICS</u>
Tinuiti will provide services to the Client in the following areas of Measurement and Reporting for each Media Type by Brand.

Primary Focuses:
- Providing reporting & measurement by Brand
- Countries: US
- Brands: Elizabeth Arden, American Crew

Performance Reviews: Tinuiti will provide the Client's Account Representative with reporting that outlines the performance of campaigns. Tinuiti and Client's Account Representative will have a recurring call to discuss real-time campaign performance, recommended optimizations and changes, new opportunities for consideration, and outstanding tasks.

- D2C Brands Performance Reports and Review: Biweekly by channel

Quarterly/ Campaign Performance Wrap-Up: One meeting covering review and planning at the end of July or early August. Tinuiti will provide the Client's Account Representative with a streamlined presentation covering performance activity by channel for active brands for the campaign flight. Quarterly performance details available within dashboard / Mobius.

Competitor Reports: Upon Client request and at a mutually agreed rate incremental to this SOW, Tinuiti will provide updated Competitor data.

tinuiti

Data will be available to Client's Account Representative via Mobius and will be distributed via email once per month to Client's Account Representative.

Channel Reporting: Customized Tableau reporting views of channel performance data. Measures the success of marketing initiatives against key metrics (ROAS, conversion rate, revenue, etc.). Tinuiti dashboarding includes integration of Tinuiti-managed marketing channel data.   Tinuiti can ingest other data or data sources if Revlon is able to supply data compatible with Tinuiti's requirements at no additional charge.  If Revlon is unable to meet these requirements and the data is required, Revlon acknowledges that Tinuiti may charge an incremental one-time set-up fee and/or an ongoing (maintenance) fee based on factors including but not limited to complexity of data, data quality, LOE, mechanism of data delivery including potential automation and business need. Any additional charges must be preapproved by Revlon.

LiveRamp Management:  Tinuiti leverages a preferential LiveRamp partnership for data onboarding. Tinuiti utilizes the LiveRamp platform to ensure compliance with data and privacy regulations throughout the world as well as to ensure consistency and matching across multiple platforms. If Client chooses to leverage LiveRamp for data onboarding the monthly fee will be determined off of the LiveRamp Rate Card attached to Addendum No. 3 to Schedule A1 which shall apply to this SOW. These LiveRamp fees represent digital onboarding only (i.e. Client sends CRM list to LiveRamp, Tinuiti leverages CRM list into Facebook Google Ads, etc.). Any data store or offline/online onboarding or the like would be separate fees and can vary greatly depending on complexity and scope.

| ANALYTICS / REPORTING | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| CHANNEL(S) | SCOPE | REPORT TYPE | DELIVERY CADENCE | INSIGHTS? | Delivery Type | NOTES |
| | | | | | Data Feed or Electronic File | |
| ALL | N | Competitor Report | ON REQUEST* | YES | Excel / Mobius | * must first mutually agree to pricing for this report.  Raw Data pull from tools for predetermined competitors. |
| ALL | Y | Bi-Weekly Reporting | BI-WEEKLY | NO | Excel or PPT | Channel teams + Analytics to compile streamlined reports ongoing. |
| ALL | Y | Quarterly / Campaign Performance Wrap-Up | QUARTERLY OR UPON FLIGHT COMPLETION | NO | PPT | To be completed on an ad-hoc basis depending on the campaign in market |
| ALL | Y | Financials | MONTHLY | NO | Excel | Financials budget document for all plans and spend |
| SELF-SERVE | | | | | | |

3

| ALL | Y | Tableau | DAILY | NO | YES | Analytics has provided logins to all stakeholders |
| ALL | Y | Daily / Weekly Reporting | DAILY | NO | Feed | Revlon can check daily / weekly performance |

TECHNOLOGY

| **TECHNOLOGIES / PLATFORMS** | | | | | |
| | | | | | |
| **System/Platform** | **Media Partner** | **CHANNEL(S)** | **Used Exclusively for .com** | **WHAT IT DOES** | **Cost included in Scope** |
| SA360 | Google | Paid Search/Shopping | Yes | Bidding and Optimization Platform | Yes |
| Google Analytics | Google | Analytics | No | Data Source, performance metrics, optimization guidance | Yes |
| Google Ads | Google | Paid Search/Shopping | No | Data Source, performance metrics, optimization guidance, campaign manager | Yes |
| Google Tag Manager | Google | Analytics | No | Implementation of Tracking Pixels | Yes |
| Publishers Portal | Facebook/IG | Paid Social | No | Data Source, performance metrics, optimization guidance, campaign manager | Yes |
| Publishers Portal | Pinterest | Paid Social | No | Data Source, performance metrics, optimization guidance, campaign manager | Yes |
| Publishers Portal | TikTok | Paid Social | No | Data Source, performance metrics, optimization guidance, campaign manager | Yes |
| Publishers Portal | Snapchat | Paid Social | No | Data Source, performance metrics, optimization guidance, campaign manager | Yes |



| | | | | | |
|---|---|---|---|---|---|
| Bing Ads | Microsoft | Paid Search/Shopping | No | Data Source, performance metrics, optimization guidance, campaign manager | Yes |
| Connexity | Connexity | Shopping | Yes | Data Source, performance metrics, optimization guidance, campaign manager | Yes |
| Feedonomics, or similar partner dependent on feed size | Feedonomics | Shopping | Yes | Dynamic feed management | Yes |

STAFFING

| Tinuiti Resource | | | | |
|---|---|---|---|---|
| Function / Role | Title | FTE% for SOW | Experience / Skills | Experience (Yrs). In Industry |
| Analytics, Reporting, Insights | Analyst | 18% | --Strong knowledge of multiple digital channels and how they work together (SEM, SEO, CRO, Social, Shopping, Display, etc.)<br>--Leads Mobius reporting maintenance & enhancements including data sourcing, data QA, custom dashboard views, data refresh monitoring, etc. | 4 - 6 |
| Analytics, Reporting, Insights | Associate Analyst | 18% | --Foundational knowledge of multiple digital channels and how they work together (SEM, SEO, CRO, Social, Shopping, Display, etc.)<br>--Assists with Mobius reporting maintenance & enhancements including data sourcing, data QA, custom dashboard views, data refresh monitoring, etc. | 1 – 3 |
| Paid Search | Director | 6% | --Paid Search Team Leadership | 7 - 10 |
| Paid Search | Senior Specialist | 30% | --In-depth experience and knowledge of Paid Search, Google and Microsoft Ads ecosystems, strategy, ecommerce, and digital marketing.<br>--Proactivity, attention to detail, and ability to work across teams effectively. | 3 - 6 |



| Paid Search | Specialist | 36% | --Foundational knowledge of Paid Search campaigns and account management | 1 - 3 |
|---|---|---|---|---|
| Shoppable Media | Sr. Specialist | 30% | --In-depth experience and knowledge of Shoppable campaigns, product feed strategy, ecommerce, and digital marketing.<br>--Proactivity, attention to detail, and ability to work across teams effectively. | 2 - 5 |
| Shoppable Media | Coordinator | 24% | --Foundational knowledge of Shoppable campaigns and product feed management | 1 – 3 |
| Paid Social | Director | 3.5% | --Act as point of escalation for larger issues<br>--Join & lead QBRs and various planning sessions<br>--Maintain relationships with vendor partners to bring clients strong opportunities & plans | 7 – 10 |
| Paid Social | Senior Specialist | 30% | --Design, build and operate best-in-class Paid Social campaigns<br>--Proactively provide recommendations regarding optimizations<br>--Consistently enforce QA processes and assist with all campaign components<br>--Secondary client POC | 2 - 4 |
| Paid Social | Coordinator | 30% | --Foundational knowledge of Paid Social campaigns | 1 - 3 |
| **Totals:** |  | **2.26%**** |  |  |

* -- NOTE: Analytics allocations / staffing will come from a team of analysts supporting any Revlon reporting-only requests – not from specifically assigned individuals.

- **MEDIA STRATEGY AND SERVICES**
- Work focused on 2H executions
- Channel teams to communicate with Revlon specifically about their managed platforms only (no Client Strategy Team support).
- Revlon to provide a financial document template in which Channel teams will document actual and forecasted D2C spend by brand and channel only by a set day for the month.
- Maintain seamless communication with Client media POC's day to day (no more than 2 anticipated)
- Have knowledge and understanding of all commercial and contractual elements of the relationship between Agency and Client to manage terms and scope of work
- Provide overall quality control and timely delivery of agency work products



- Develop and manage media planning timelines, keeping Client and agency stakeholders apprised of upcoming due dates and deliverables
- Lead and coordinate bi-weekly status meetings key Client stakeholders (no more than two anticipated) and relevant Agency stakeholders
- Work with Client to implement and track agreed Key Performance Indicators (KPIs) to ensure a positive and mutually beneficial relationship.
- Translate Client's campaign details into the appropriate communications strategies or 'strategic platforms' that provide the Agency team with clear direction
- Using a third-party platform (e.g. Feedonomics or equivalent depending on feed size by brand), Tinuiti's Shoppable Media team will transform and optimize Client's product feed for use within channels such as Google, Microsoft and Facebook. Depending on brand preference, Client will have to upload the feed to Tinuiti's FTP server or provide access via an HTTP link. It is recommended that Client uploads a <u>new and complete</u> feed at least once per day to ensure the most accurate data.
- Outline channel recommendations and rationale with proper support
- Upon plan approval, ensure that Client commits to media programming in the marketplace for any and all channels via the prescribed Media Authorization Form ("MAF") / Template attached hereto as Exhibit B.
- In collaboration with other crafts, develop measurement approach for each plan/campaign that ties back to campaign goals
- Collaborate with Revlon's Analytics team on program/campaign analysis as it relates to meeting KPIs, including ongoing reporting and wrap reports (see Analytics section for additional details)
- Tinuiti will manage all bidding, making necessary plan revisions and optimizations throughout the campaign based on campaign performance
- Monthly financial updates provided in a Revlon-produced budget tracker; via mutually agreed and approved process.
- Develop go to market buying strategies including marketplace assessments, proposed inflation projections, negotiation strategies and recommended partners
- Elevate media partner relationships to drive Client opportunities, first looks, breakthrough barriers, etc.
- Recommend, develop, and implement test and learn plans
- Negotiate best pricing, program / title mix, integrations promotions, flexibility and other added value with select partners
- Issue order letters/IOs
- Provide asset specifications by partner / channel. Client understands that Tinuiti cannot complete Campaign Creation until Client sends creative assets that meet partner sizing and file type requirements for all products advertised within a campaign. Tinuiti will complete Campaign Creation in no more than 10 business days after Client sends all necessary Creative assets that meet sizing and file type requirements. Client may request that Tinuiti design and produce Creative assets for an additional fee.
- Steward buys and required plan and/or schedule changes across duration of the campaign
- Manage collection and accuracy of campaign performance data on weekly basis on a timely basis and accurately report same to Client
- Share findings on a weekly basis, inclusive of actions and implementation of recommended optimizations for ongoing campaigns
- Develop and champion channel-specific best practices, as relevant, e.g. creative formats and length

7



- Activate and manage all campaigns through execution
- Tag, QA and traffic ad units on all campaigns.  Manage all ad copy and creative and adjust on an ongoing basis providing optimal results based on Clients established goals. Tinuiti will make recommendations for optimization to improve performance based on an analysis of the performance data.
- Manage monthly media actualizations and reforecasting as part of monthly budget process
- Client shall comply with all policies, rules, regulations, and terms of service of Media Providers. Tinuiti shall comply with all policies, rules, regulations, and terms of service of Media Providers in its performance of the Services on behalf of Client. If Client violates Media Provider terms of service, or directs Tinuiti to act in violation of Media Provider terms of service, then Client shall hold Tinuiti harmless with respect to any costs incurred by Tinuiti as a result of any such modification, suspension, cancellation or termination.
- Tinuiti will create, refresh and implement campaign elements, including, but not limited to, audience and remarketing lists, negative keyword lists, geographic, time-of-day, demographic, and device modifiers based on goals, performance and best practices.
- Budget: Tinuiti acknowledges and agrees that all expenditures for the Services, including but not limited to, the expenditures in the Schedule of Fees of this SOW are subject to and limited by the budget issued to Tinuiti by Client (the "Budget"). The Budget shall be agreed upon and both Parties shall execute the Media Briefing Template and MAF for each campaign attached.
- Client shall own all data generated as a result of the Services and any and all accounts with Media Providers shall be in Client's name and owned by Client.


**UNIQUE SERVICES PER MEDIA TYPE**

- Paid Social
  - **PAID SOCIAL PLATFORMS**
    - Activity across Facebook, Instagram, Snapchat, Pinterest, TikTok platforms included in SOW, any new / additional platforms may incur an additional fee beyond the Media Commission applied.

- Search & Shoppable Media
  - **Keyword Creation & Expansion -** Tinuiti will review current keywords and expand the keyword list based on query volume, costs and success metrics. Tinuiti will assess Client's current negative keywords, expanding to further limit irrelevant or inefficient search queries, or removing if existing negative keywords are blocking desired web traffic.
  - **Landing Page Assignment -** Tinuiti will assign landing pages (with Client approval) related to audience, keyword concepts and ad copy based on goals, performance and best practices.
  - **Ad Extensions -** Create, refresh & implement any applicable Paid Search Ad Extensions.

**COMMUNICATION CADENCES (Ways of Working)**

- Communication with established POCs only (two anticipated) - final approval to only come from these two POCs with an approver established prior to any new campaign.
- Revlon to manage internal brand team discussions/meetings independently of Tinuiti



- Ad hoc project requests will need to be vetted by individual channel leads to manage deliverable expectations and timing feasibility
- The below turnaround times and communication caps are meant to be guardrails to help manage the expected communication between Client and Tinuiti and failure to adhere to the strict adherence of these guidelines by either Party shall not be deemed a material breach of the terms of this SOW or the Agreement.
- Turnaround Times
  - Up to one (1) business day for confirmation of email receipt, BAU support and to set up meeting requests

  - 5 - 10 business days (dependent on complexity and prioritization) for ad hoc requests
- Communication Guardrails
  - Communication streamlined to Tinuiti and Client media POCs (no more than two anticipated)
    - Once budget and strategy have been defined and campaigns are in process of being activated, Marketplaces efforts may require direct communication with Client's sales and creative team

  - Up to three (3) hours per week of calls maximum to include:
    - Bi-Weekly one (1) hour Campaign Status Call
    - Performance Reporting delivered weekly via email
    -
    - If more than three (3) hours per week are requested by Client, Tinuiti shall have the right to shift to the following week and/or move other deliverable due dates to accommodate Client's request.
  - Mutually agreed-upon guidelines as to what generally necessitates a call (media briefings, walkthroughs, weekly status updates, mid and end of campaign reporting deliverables) vs. email (creative trafficking questions, additional reporting requests, questions on reports, account access process, aligning on measurement questions.

**SCHEDULE OF AGENCY FEES**

In consideration for Tinuiti's performance of the Services pursuant to this SOW, Client shall pay Tinuiti in accordance with the following payment structure:

1. Term
   a. The start date of monthly management fees for Services under this SOW shall be July 1, 2022.
2. Pricing
   a. For each month during the Term of this SOW in which Client receives Services under this SOW, Client shall pay Tinuiti a monthly fee ("Monthly Fee"). The amount of the Monthly Fee shall be:
      i. $35,000.00 (the "Fixed Fee"); plus four (4%) percent commission (the "Commission") on fully planned and executed spend.
      ii. Total Minimum Fees ("Minimum Fee") within the Term will be $500,000.00.  In the event this SOW is terminated prior to completion of



the Term, the Minimum Fee shall be prorated.  If the actual Monthly
Fees billed within the Term are less than the Minimum Fee, Client will
be billed the difference between the Minimum Fee and the actual
Monthly Fees paid during each three month period of the Term.

   iii.   The commission breakdown is as provided for in the Breakdown of
Agency's Fees Section below.

   iv.   If the media spend is canceled or shifted to an alternate agency prior to
placing the buy, Tinuiti is entitled to invoice Revlon up to 62.5% of
anticipated commission for Strategy and Planning services as defined in
Section BREAKDOWN OF AGENCY FEES Steps 1 and 2.

   v.   Tinuiti will track all media planned but not spent and provide ongoing
quarterly updates.

b.  Additional Walkthroughs and Revisions upon Client's prior approval at the rate
of $990.00 each.

c.  Tinuiti will provide the Services inclusive of set up (as needed) and ongoing
management of each Media Type.  Any efforts not contemplated by this SOW,
whether because of a new channel or media partner, may be subject to
additional fees to be mutually agreed upon between Tinuiti and Client.

**BREAKDOWN OF AGENCY COMMISSION**
Agency's Commission is broken down as follows:

**At each stage of process below, Tinuiti and Client shall confirm transition from current to next
step of process in writing (email to suffice).**

**STEP 1 - Tactical media planning - covered by 62.5% of the Commission for Annual Planning
Stage of the campaign process at the approved budget level:**
- This step begins only after Client has provided official approval on the Media Brief and
confirmed an approved budget to plan against
- Agency provides streamlined Media/tactical plan in the form of a Google Sheet/Excel
format focused on core channels
- If plan is cancelled after tactical plan is complete, Client will incur the tactical media
planning fee.
- If campaign needs to be re-planned at the tactical level due to a major shift in budget or
priorities, Client will incur the tactical media planning fee
- If plan needs revisions within the same budget or minor product priority shift, that work
is included in this step
- Once in agreement, Agency provide a Media Authorization Form ("MAF") to Client for
official approval to move forward to Step 2

**STEP 2 - Media Buying/Execution - covered by 37.5% of the Commission for buying stage:**
- This step begins only after Client has signed the Media Authorization Form (or provided
email approval is timely action is needed prior to sending the official MAF back)
- Agency executes the approved media recommendation, including campaign build-out,
QA, optimization, and reporting

10

# EXHIBIT "G"

**AMENDMENT NO. 2**

**TO**

**SCHEDULE F1**

**AFFILIATE SERVICES SCOPE OF WORK**

This Amendment Number 2 ("Amendment") to Schedule F1 Affiliate Services Scope of Work effective as of September 1, 2021 (the "SOW") pursuant to the Media Buying Services Agreement by and between Tinuiti, Inc. ("Tinuiti" or "Agency") and Revlon Consumer Products Corporation ("Client") dated July 1, 2020 (the "Agreement") is made and entered into and effective as of September 21, 2022 (the "Effective Date").

NOW THEREFORE, in consideration of the mutual promises and conditions set forth herein, receipt of which is hereby acknowledged, and intending to be legally bound, the parties hereto agree to modify the SOW as follows:

1.     **Modification of SOW Term:**     Effective as of the Effective Date the Term of the SOW shall be extended through and include June 30, 2023.

2.     **Effect of Amendment.**  Terms used herein which are defined or specified in the Agreement or SOW shall have the meanings set forth therein.  Except as amended hereby the SOW shall continue in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed by their duly authorized representatives as of the date set forth below.

**CLIENT:**
**Revlon Consumer Products Corporation**          **Tinuiti, Inc.**

SIGNATURE: _won Park Costof_          SIGNATURE: _jessica mcdaid_

NAME:     won Park Costof          NAME:     jessica mcdaid

TITLE:     Head of Elizabeth Arden          TITLE:  Group Vice President, Business Development

DATE:     10/28/2022          DATE:  10/31/2022

# EXHIBIT "H"



April 17, 2023

**Via Email**
TINUITI INC
121 South 13th Street, Floor 3 Philadelphia, PA 19107
Attn:  Zach Morrison
Zach.Morrison@Tinuiti.com

**Re:**      Termination of Amendment No. 1 to Schedule A6, Agency Services Scope of Work – U.S. + Canada dated
November 1, 2022, Amendment No. 2 to Schedule F1 Affiliate Services Scope of Work dated October 31, 2022 and
Addendum No. 4 to Schedule A1 ("LiveRamp") dated January 14, 2022 under the Master Service Agreement, dated June
30, 2020 between Tinuiti, Inc.  ("Tinuiti" or "Agency") and Revlon Consumer Products Corporation ("Client") with an
effective date of July 1, 2020.

Dear Mr. Morrison,

This letter evidences and confirms, as outlined in Section 4.3 Term and Termination, Revlon Consumer Products
Corporation has provided notice of their desire to terminate all services related to Revlon's Integrated Paid Media
(Search, Shopping, Paid Social with Reporting)) and Affiliate Services   as outlined in The Scopes of Work referenced
above.  If not already completed or specifically agreed between the parties that the service is not required, it is expected
that Tinuiti will complete all existing projects and services and assist with all transition activities as are reasonable and
customary and/or as outlined in the Scope(s) on or before May 31, 2023.

Please indicate your acceptance by signing below where indicated and returning a fully signed copy to us.  I would like to
thank you for the collaborative relationship we have had these past few years and for all that we accomplished towards
advancing our brands.

Sincerely,
**Revlon Consumer Products Corporation,**


DocuSigned by:
*Brian Gearhart*
**By:** _____
1599F-A444A54DF-4AB...
Name: Brian Gearhart
Title:   VP, Media & Digital Mktg



Agreed and Accepted:
**Tinuiti, Inc.**



**By:** _____
Name:
Title:

# EXHIBIT "I"



# INVOICE

**Tinuiti, Inc.**
, ,

INVOICE #: INV61227
DATE: 04/30/2023

**BILL TO**
Revlon Consumer Products, LLC
Lianna Rodriguez
55 Water Street
Vendor Number: 2039021
New York, NY 10041-0004
United States

| PURCHASE ORDER # | REFERENCE | PAYMENT TERMS | DUE DATE |
|---|---|---|---|
|  | PO 876557 | Net 45 | 06/14/2023 |

| ITEM DESCRIPTION | MEMO | LINE TOTAL |
|---|---|---|
| April 2023 Affiliate Base Fees |  | $10,000.00 |
| April 2023 Affiliate Fees ($2,861,950.36 X .8% ) |  | $22,895.60 |

| | |
|---|---|
| Subtotal | $32,895.60 |
| Total | $32,895.60 |
| Payments/Credits Applied | $0.00 USD |
| **Total Due** | $32,895.60 USD |

**Details**

| | |
|---|---|
| Make all checks payable to - Tinuiti, Inc.<br>P.O. Box 28415<br>New York, NY 10087-8415 | **ACH/WIRE Transfer Instructions**<br>**Remit to Bank Name:** TEXAS CAPITAL BANK<br>**Bank Address:** 2350 Lakeside Blvd. Suite 800, Richardson, TX 75082<br>**Account Holder Name:** TINUITI<br>**Account Number:** ███████<br>**Routing Number:** ███████<br>**SWIFT Code:** ███████ (International)<br>*Please include your account name and invoice number.*<br>**Tax ID:** ███████ |

**THANK YOU FOR YOUR BUSINESS**





# INVOICE

**Tinuiti, Inc.**
, ,

INVOICE #: INV61021

DATE: 04/30/2023

**BILL TO**
Elizabeth Arden
Lianna Rodriguez
55 Water Street
Vendor Number: 2039021
New York, New York 10041-0004
United States

| PURCHASE ORDER # | REFERENCE | PAYMENT TERMS | DUE DATE |
|---|---|---|---|
| | PO 876557 | Net 45 | 06/14/2023 |

| ITEM DESCRIPTION | MEMO | LINE TOTAL |
|---|---|---|
| April 2023 Analytics Base Fees | | $5,300.00 |
| April 2023 Paid Search Base Fees | | $12,600.00 |
| April 2023 Paid Social Base Fees | | $9,100.00 |
| April 2023 Shoppable Media Base Fees | | $8,000.00 |
| | Subtotal | $35,000.00 |
| | Total | $35,000.00 |
| | Payments/Credits Applied | $0.00 USD |
| | **Total Due** | $35,000.00 USD |

| Details |
|---|
| |

| | |
|---|---|
| Make all checks payable to - Tinuiti, Inc.<br>P.O. Box 28415<br>New York, NY 10087-8415 | **ACH/WIRE Transfer Instructions**<br>**Remit to Bank Name:** TEXAS CAPITAL BANK<br>**Bank Address:** 2350 Lakeside Blvd. Suite 800, Richardson, TX  75082<br>**Account Holder Name:** TINUITI<br>**Account Number:** ▮▮▮▮▮▮<br>**Routing Number:** ▮▮▮▮▮▮<br>**SWIFT Code:** ▮▮▮▮▮▮ (International)<br>*Please include your account name and invoice number.*<br>**Tax ID:** ▮▮▮▮▮ |

**THANK YOU FOR YOUR BUSINESS**



# INVOICE

**Tinuiti, Inc.**

, ,

INVOICE #: INV61028
DATE: 04/30/2023

**BILL TO**
Elizabeth Arden
Lianna Rodriguez
55 Water Street
Vendor Number: 2039021
New York, New York 10041-0004
United States

| PURCHASE ORDER # | REFERENCE | PAYMENT TERMS | DUE DATE |
|---|---|---|---|
|  | PO 876557 | Net 45 | 06/14/2023 |

| ITEM DESCRIPTION | MEMO | LINE TOTAL |
|---|---|---|
| April 2023 Paid Search Fees ($88,866.54 X 4% ) |  | $3,554.66 |
| April 2023 Paid Social Fees ($109,920.13 X 4% ) |  | $4,396.81 |
| April 2023 Shoppable Media Fees ($47,399.60 X 4% ) |  | $1,895.98 |

| | |
|---|---|
| Subtotal | $9,847.45 |
| Total | $9,847.45 |
| Payments/Credits Applied | $0.00 USD |
| **Total Due** | **$9,847.45 USD** |

| Details |
|---|
|  |

| | |
|---|---|
| Make all checks payable to - Tinuiti, Inc.<br>P.O. Box 28415<br>New York, NY 10087-8415 | **ACH/WIRE Transfer Instructions**<br>**Remit to Bank Name:** TEXAS CAPITAL BANK<br>**Bank Address:** 2350 Lakeside Blvd. Suite 800, Richardson, TX  75082<br>**Account Holder Name:** TINUITI<br>**Account Number:** ▉▉▉<br>**Routing Number:** ▉▉▉<br>**SWIFT Code:** ▉▉▉ (International)<br>*Please include your account name and invoice number.*<br>**Tax ID:** ▉▉▉ |

**THANK YOU FOR YOUR BUSINESS**