**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| RML, LLC | ) Case No. 22-10784 (DSJ) |
| | ) |
| Reorganized Debtor. | ) |
| | ) |
| Tax I.D. No. N/A | ) |
| | ) |

## DECISION AND ORDER DENYING MOTIONS BY CERTAIN HAIR RELAXER CANCER CLAIMANTS TO PERMIT LATE CLAIM FILING PURSUANT TO FED. R. BANKR. P. 9006(b)(1)

**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**
*Counsel for the Reorganized Debtors*
1285 Avenue of the Americas
New York, NY 10019
By:    Paul M. Basta, Esq.
       Alice Belisle Eaton, Esq.
       Robert A. Britton, Esq.

**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
*Counsel for Certain Hair Relaxer*
*Cancer Claimants*
275 Battery Street, 29th Floor
San Francisco, CA 84111-3339
By:    Robert J. Nelson, Esq.

**WELLER, GREEN, TOUPS & TERRELL, L.L.P.**
*Counsel for Certain Hair Relaxer*
*Cancer Claimants*
Post Office Box 350
Beaumont, TX 77704
By:    Mitchell A. Toups, Esq.

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

The motions[1] before the Court arise from the Chapter 11 bankruptcy of Revlon, Inc. and certain of its affiliates (the "Debtors"). Movants are personal injury claimants who contend that they developed gynecological cancers due to pre-bankruptcy exposure to the Debtors' hair straightener products ("Movants" or "Hair Straightener Claimants").[2] Movants did not file proofs of claim before either the October 2022 General Bar Date (defined below) or an extended bar date of April 11, 2023, which this Court established for any creditor wishing to assert a so-called Hair Straightener Claim (the "Hair Straightener Bar Date"). Movants now seek permission to file late proofs of claim, a request that is governed by the excusable neglect standard established by *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993).

Movants claim that they did not receive notice of and were unaware of the Hair Straightener Bar Date in time to submit a timely claim. Specifically, they contend that "the Reorganized Debtors' notice plan made no effort to reach Afro-Caribbean and Afro-Latina hair relaxer consumers, particularly Movants from the Territory of Puerto Rico, through publication of the notice in Spanish and certainly not in more widely read regional and local media[.]" [ECF No. 273 ¶ 5]. Debtors object to the Motions and stress that their court-approved notice plan provided unknown claimants like Movants with more than constitutionally sufficient constructive notice of the General Bar Date and the Hair Straightener Bar Date. They further note that some of the

---

[1] *Corrected Motion by Lieff Cabraser Heimann & Bernstein, LLP on Behalf of Certain Hair Relaxer Cancer Claimants to Permit Late Claim Filing Pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1)* [ECF No. 145]; *Motion by Lieff Cabraser Heimann & Bernstein, LLP on Behalf of Certain Hair Relaxer Cancer Claimants to Permit Late Claim Filing Pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1)* [ECF No. 89]; *Motion by Certain Hair Relaxer Claimants to Permit Late Claim Filing Pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1)* [ECF No. 152]; and the *Response of Debra Denice Cook [sic] to Debtor's Notice of Objection to Proof of Claim* [ECF No. 154] (collectively, the "Motions").

[2] The parties use the terms "hair straightener, -ing" and "hair relaxer" interchangeably to describe the products at the center of the National Institutes of Health study that underlie the Movants' personal injury claims. *See infra* pp. 4–5. For the sake of consistency the Court will use the term "hair straightener."

Movants' criticisms of the Debtors' notice program are unsupported by fact or expert evidence, and are contradicted by evidence that Debtors have presented, such as Debtors' placement of digital advertisements in online publications with substantial Black readership, and the use of digital outlets with an "auto-translate" feature that would translate notice advertisements into Spanish on devices for which Spanish was selected as the user's default language.

The Court is sympathetic to Movants, all of whom allege they had or have cancer caused by Revlon's hair straightener products. But the Bankruptcy Code and Rules and the case law construing them impose strict requirements for a creditor to obtain leave to file a claim after a bar date has passed. For the reasons discussed below, the Hair Straightener Claimants have not satisfied these requirements. Their Motions to permit late claim filing accordingly are denied.

## I.

### BACKGROUND

#### A.  The Bankruptcy Case and Claims Process

Revlon, Inc. ("Revlon") describes itself as a global leader in the beauty industry with many brands including Revlon and Elizabeth Arden. [Main Case, ECF No. 30 ¶ 6].[3] Revlon develops, manufactures, sells, and markets its products around the world. [*Id.*]. The Motions relate to Revlon's line of hair straightener products which were used predominantly by African-American women.

Debtors experienced financial difficulty and filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on June 15, 2022 (the "Petition Date"). On June 16, 2022, the Court entered an order directing joint administration of these chapter 11 cases under Case No. 22-10760. [Main Case, ECF No. 51]. The Court confirmed a plan of reorganization on April 3, 2023.

---

[3] Citations to the docket for *In re RML, LLC* No. 22-10784 will be referred to as "RML, ECF No. ___." Citations to the docket for main case No. 22-10760 will be referred to as "Main Case, ECF No. ___."

3

[Main Case, ECF No. 1746].  On May 30, 2023, the Court entered an Order closing all but one of the affiliated chapter 11 cases and directing that all motions, notices, and other pleadings related to any of the affiliated debtors be filed in the above-captioned case.  [Main Case, ECF No. 1920].

### 1.   The October 2022 General Bar Date

Pursuant to Fed. R. Bankr. P. 3003(c)(2), by Order dated September 12, 2022, the Court established October 24, 2022 as the last date upon which proofs of claim could be filed against Debtors (the "General Bar Date").  [Main Case, ECF No. 688].  Notice and instructions regarding the General Bar Date, together with a proof of claim form, were mailed or emailed to all of Debtors' known creditors.  [Main Case, ECF No. 733].  In addition, Debtors published notice of the General Bar Date in English in the national editions of *The New York Times* and *USA Today*, and in the national edition of *The Globe and Mail* in Canada.  [Main Case, ECF No. 758].

### 2.   The NIH Study and Related Litigation

On October 17, 2022, one week before the General Bar Date, the United States National Institutes of Health ("NIH") reported findings that women who frequently used hair straighteners or relaxers were more than twice as likely to develop uterine cancer compared to those who did not use the products.[4]  The authors of the study noted that "[b]ecause Black women use hair straightening or relaxer products more frequently and tend to initiate use at earlier ages than other races and ethnicities, these findings may be even more relevant for them[.]"[5]

Since the release of the NIH study, nearly 60 hair relaxer cancer lawsuits have been filed against makers of chemical hair straightener products, including Revlon and Revlon Consumer Products Corp.  On February 6, 2023, the United States Judicial Panel on Multidistrict Litigation

---

[4] *See* Press Release, National Institutes of Health, Hair straightening chemicals associated with high uterine cancer risk (Oct. 17, 2022), https://www.nih.gov/news-events/news-releases/hair-straightening-chemicals-associated-higher-uterine-cancer-risk.
[5] *Id*.

4

consolidated these actions into a multidistrict litigation (MDL) in the U.S. District Court for the

Northern District of Illinois. *See In re Hair Relaxer Marketing, Sales Practices, and Products*

*Liability Litigation*, MDL No. 3060, 2023 WL 1811836 (J.P.M.L. Feb. 6, 2023).

### 3. The April 2023 Supplemental Hair Straightener Bar Date and Revlon's Noticing Efforts

At the end of January 2023, certain Hair Straightener Claimants moved to extend the

General Bar Date for filing Hair Straightener Claims on the grounds that they did not receive actual

or constructive notice of the commencement of these chapter 11 cases or the General Bar Date,

and that relief was warranted in light of the circumstances surrounding these chapter 11 cases

including the issuance of the NIH's report just one week before the General Bar Date. [*See, e.g.*,

Main Case., ECF No. 1387 ¶¶ 16, 20-21]. Debtors initially opposed the motions, contending that

the Hair Straightener Claimants failed to establish "excusable neglect" under *Pioneer*.

Shortly before the March 7, 2023 hearing on the motions, however, Debtors agreed at least

in principle to an extended bar date for Hair Straightener Claims on conditions including that the

Court would impose a new bar date for such claims of April 11, 2023, with supplemental notice to

be provided. On March 7, 2023, after holding a substantive hearing, the Court entered the Hair

Straightener Bar Date Order, extending the time by which any claimant must file any Hair

Straightener Claim against a Debtor that arose, or was deemed to have arisen, prior to the Petition

Date. The new deadline for Hair Straightener Claims was April 11, 2023, at 5:00 p.m. [Main

Case, ECF No. 1574]. More specifically, the Court's order provided, in relevant part, that:

- The Hair Straightening Proof of Claim Form must be completed by any Hair Straightening Claimant seeking to file a Proof of Claim on account of a Hair Straightening Claim. [*Id*. ¶ 4].

- Any entity or person who is required, but fails, to file a Hair Straightening Proof of Claim in accordance with this order on or before April 11, 2023 at 5:00 p.m., prevailing Eastern Time shall be prohibited from participating in any distribution in these chapter

11 cases on account of such Hair Straightening Claim, or receiving further notices regarding such Hair Straightening Claim. [*Id*. ¶ 15].

- By not later than March 17, 2023, Kroll shall publish notice of the Hair Straightening Bar Date, in substantially the form of the Hair Straightening Publication Notice, in the national editions of the *New York Times* and *USA Today*, and the national edition of *The Globe and Mail* in Canada. Kroll shall file proof of such publication as soon as reasonably practicable. The Debtors shall provide internet notice of the Hair Straightening Bar Date through the worldwide web and social media outlets substantially in accordance with representations made on the record at the Hearing. [*Id*. ¶ 16].

- The manner of notice of the Hair Straightening Bar Date by publication of the Hair Straightening Publication Notice as set forth herein is hereby approved and shall be deemed good, adequate, and sufficient notice for all relevant purposes, including to all Hair Straightening Claimants of their rights and obligations in connection with prepetition claims they may assert against the Debtors or their estates in these chapter 11 cases. [*Id*. ¶ 17].

- Pursuant to Bankruptcy Rule 3003(c)(2), any Hair Straightening Claimant that is required to file a Hair Straightening Proof of Claim in these Chapter 11 Cases pursuant to the Bankruptcy Code, the Bankruptcy Rules, or this order with respect to a particular prepetition Hair Straightening Claim, but that fails to do so properly by the Hair Straightening Bar Date, shall be forever barred, estopped, and enjoined from: (a) asserting such Hair Straightening Claim against the Debtors and their chapter 11 estates (or filing a Proof of Claim with respect thereto), and the Debtors and their properties and estates shall be forever discharged from any and all indebtedness or liability with respect to such Hair Straightening Claim and (b) voting upon, or receiving distributions under, any chapter 11 plan in these Chapter 11 Cases or otherwise in respect of or on account of such Hair Straightening Claim, and such Person or Entity shall not be treated as a creditor with respect to such Hair Straightening Claim for any purpose in these Chapter 11 Cases. [*Id*. ¶ 21].

On March 10, 2023, Debtors executed a newspaper, internet, and social media supplemental noticing program (the "Notice Plan") in accordance with the Hair Straightener Bar Date Order as follows:

The Notice Plan commenced on March 10, 2023 and was completed on April 6, 2023. In total, the Notice Plan reached an estimated 84% of the target audience (*i.e.*, African American women between the ages of 18-64), on average 3.5 times. This was accomplished through (a) newspaper publication, (b) online display and keyword search ads, and (c) social media ads, which are each described in detail below. Collectively, the Notice Plan delivered more than 46,600,000 online impressions (*i.e.*, opportunities to see the notice message). Further, the visibility

generated by the Notice Plan resulted in over 10,600 users visiting the Debtors' Hair Straightening Proof of Claim landing page and official restructuring website: https://media.ra.kroll.com/revlon/hairstraighteningclaim/index.html. This online noticing campaign complemented traditional newspaper publication notice in the national editions of the *New York Times*, *USA Today*, and *Globe & Mail (Canada)*.

[RML, ECF No. 238 ¶¶ 3–4 (internal footnotes omitted)].

Debtors presented written testimony supplemented by live testimony at the August 29 hearing from Jeanne C. Finegan, a Managing Director of Kroll and the Head of Kroll Notice Media Solutions, the developer of Debtors' Notice Plan. [RML, ECF No. 238 ¶ 1; ECF No. 416 (August 29, 2023 Hearing Transcript ("Hearing Tr.") at 55–62]. Ms. Finegan explained that, in addition to English-language notices in national-distribution newspapers as is a customary means of providing bankruptcy notices, "[w]e took extensive measures to target African American individuals. That was part of our measured plan. We bought data on online display advertising specifically geared toward African American individuals[,] [Hearing Tr. 57:6–9] and published "in specific publications such as BET.com, EBONY.com and the VIBE.com, among others[,]" publications which were targeted to African-American readers. [Hearing Tr. 59:7–12]. As to whether the Notice Plan made adequate efforts to reach Spanish-speakers, Ms. Finegan testified that "[t]here wasn't a compelling reason, given that 90 percent of this group of purchasers of the specific projects are English speakers at home and 95 percent or more have the ability to speak English." [Hearing Tr. 55:16-19]. Ms. Finegan disagreed with Movants' criticisms of the Notice Plan's outreach efforts to reach Spanish-speakers via social media because "Meta, namely Facebook and Instagram [have] the ability based on an individual's device setting to translate information and content to that individual. So if a user is a Spanish speaker, more than likely their device is set to Spanish." [Hearing Tr. 57:23–25; 58:1–2]. Further, "Meta will translate an ad for you. It will be delivered – if you are a Spanish speaker and your device language setting is to Spanish, all your

incoming advertising is translated into that preferred language." [Hearing Tr. 58:6–10]. Debtors' social media campaign targeted individuals residing in the United States, including its Territories, and according to Ms. Finegan reached 17,000 "profiles," or online users, "in the territories." [Hearing Tr. 55:20–25; 56:1–2]. Neither Movants nor any other party sought to cross-examine Ms. Finegan [Hearing Tr. 62:15–18]. The Court fully credits Ms. Finegan's live testimony presented during the August 29 hearing.

### 4. Plan Confirmation, Number of Timely Hair Straightener Claims, and Plan Effectiveness and Consummation

Following notice and a hearing, on April 3, 2023 (less than a month after entry of the Hair Straightener Bar Date Order and eight days before the extended Hair Straightener Bar Date of April 11, 2023), the Court entered an Order confirming Debtors' Third Amended Joint Plan of Reorganization (the "Plan"). [Main Case, ECF No. 1746]. No objections relating to the Hair Straightener Bar Date were raised in connection with confirmation of the Plan. [Main Case, ECF No. 1751 (April 3, 2023 Confirmation Hearing Transcript) 24:15-18 (MR. BRITTON: "Thank you, Your Honor. So with that, I would like to turn to the only objection we have, which is the objection filed by the Office of the United States Trustee")].

Debtors have represented that approximately 30,000 timely Hair Straightener Claims were filed on or before April 11, 2023. [ECF No. 240 ¶ 22]. Between April 5, 2023 and April 11, 2023, the law firm of Lieff Cabraser Heimann & Bernstein, LLP filed fifteen proofs of claim on behalf of alleged Hair Straightener Claimants.[6] [*Id*. ¶ 10]. On April 6, 2023, the law firm of Weller, Green, Toups & Terrell, L.L.P. filed three proofs of claim on behalf of alleged Hair Straightener Claimants.[7] [*Id*.]. These two firms now represent Movants.

---

[6] *See* Claim Nos. 15745, 19737, 19870, 19980, 20157, 20216, 20249, 20689, 24459, 25200, 25628, 26440, 27386, and 30511.
[7] *See* Claim Nos. 24557, 28699, and 30571.

On May 2, 2023, Debtors filed a Notice disclosing that the Effective Date (as defined in the Plan) occurred on May 2, 2023, that the Plan was substantially consummated, and that the Debtors had emerged from chapter 11. [Main Case, ECF No. 1869].

### 5. The Motions to Permit Late Claim Filing

The Motions were filed on June 9, 2023, and June 14, 2023, on behalf of thirty-seven claimants who did not file claims by the extended Hair Straightener Bar Date of April 11, 2023. *See supra* note 1. The Court heard argument on the Motions on August 29, 2023. [ECF No. 416].

## II.

## APPLICABLE LEGAL STANDARDS

### A. Proofs of Claim and the Claim Objection Process

"Section 501(a) of the Bankruptcy Code provides that '[a] creditor . . . may file a proof of claim'" which serves as a written statement of the creditor's claim against a debtor's bankruptcy estate. *In re Roman Cath. Diocese of Rockville Ctr., N.Y.*, No. 20-12345, 2023 WL 4497418, at *3 (Bankr. S.D.N.Y. July 12, 2023) (hereafter "*Diocese of Rockville Ctr.*") (quoting 11 U.S.C. § 501(a)). "Section 502(a) provides that a claim or interest, properly filed, 'is deemed allowed, unless a party in interest . . . objects.'" *Id.* (quoting 11 U.S.C. § 502(a)). Federal Rule of Bankruptcy Procedure ("Fed. R. Bankr. P.") 3001(f) provides that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Section 502(b) sets out multiple bases for disallowing filed claims. 11 U.S.C. § 502(b).

### B. Objections to Claims Filed After Adequate Notice of Bar Date

Section 502 provides generally for "the disallowance of late-filed claims where there has been adequate notice of the deadline for submitting proofs of claim." *Diocese of Rockville Ctr.*,

2023 WL 4497418, at *4. The statute provides, in relevant part, that "if [an] objection to a claim is made, the court, after notice and a hearing, shall . . . allow such claim . . . except to the extent that . . . proof of such claim is not timely filed . . . ." *Diocese of Rockville Ctr.*, 2023 WL 4497418, at *4 (quoting 11 U.S.C. § 502(b)(9)). The Bankruptcy Rules authorize bankruptcy courts to set claim filing deadlines, providing, "[t]he court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." *Id.* (quoting Fed. R. Bankr. P. 3003(c)(3)).

A late-filed claim can be disallowed pursuant to § 502 and Rule 3003(c)(3) only "where adequate notice of the bar date is provided." *Id.* "Bankruptcy courts 'sensibly assume that the general norms of fair notice, as set forth in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 489–91, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 797–800, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), and other such cases, apply to bankruptcy as to other settings in which a person's legal right is extinguished if he fails to respond to a pleading.'" *Id.* (quoting *Fogel v. Zell*, 221 F.3d 955, 962 (7th Cir. 2000)). "The Supreme Court has held that 'notice must be of such nature as reasonably to convey the required information . . . .'" *Id.* (quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. 652).

"What type of notice is required depends on whether a creditor is 'known' or 'unknown' to the debtor." *Id.* (citing *In re XO Commc'ns, Inc.*, 301 B.R. 782, 792 (Bankr. S.D.N.Y. 2003)). "A known creditor is one whose identity is either known or 'reasonably ascertainable by the debtor.'" *Id.* (citing *Pope*, 485 U.S. at 490). "An 'unknown' creditor is one whose identity or claim is not 'reasonably ascertainable' or is merely 'conceivable, conjectural, or speculative.'" *Id.* (citing *In re Thomson McKinnon Sec., Inc.*, 130 B.R. 717, 720 (Bankr. S.D.N.Y. 1991)). "If the creditor is unknown to the debtor, constructive notice is generally sufficient." *Id.* (citing *XO*

*Commc'ns*, 301 B.R. at 792). "Constructive notice can be satisfied through publication notice since 'in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights.'" *Id*. (quoting *Mullane*, 339 U.S. at 317, 70 S.Ct. 652); *see also Pope*, 485 U.S. at 490.

## C.  The *Pioneer* Excusable Neglect Test

Bankruptcy Rule 9006(b)(1) allows a court to enlarge the time period for filing a claim, "on motion made after the expiration of the specified period . . . where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006.  The movant has the burden of proving excusable neglect.  *Diocese of Rockville Ctr.,* 2023 WL 4497418, at *5 (citing *In re Enron Corp*., 419 F.3d 115, 121 (2d Cir. 2005)).  "Whether neglect is 'excusable' under Rule 9006(b)(1) is an equitable determination based on 'all relevant circumstances surrounding the party's omissions.'" *Id*. (citing *Pioneer*, 507 U.S. at 395).  "In *Pioneer*, the Supreme Court considered four factors in determining whether neglect may be considered 'excusable':

> (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith."

*Id*. (citing *Pioneer*, 507 U.S. at 395).  "The Second Circuit takes a 'hard line' in applying the *Pioneer* test that focuses on and emphasizes the third factor:  the reason for the delay, including whether it was within the reasonable control of the movant." *Id*. (citing *In re Enron Corp.*, 419 F.3d at 122).  Indeed, the Second Circuit's rigorous test has created an "expect[ation] that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *In re Enron Corp*., 419 F.3d at 123.

11

"'[T]he four *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import.  While prejudice, length of delay, and good faith might have more relevance in a close[ ] case, the reason-for-delay factor will always be critical to the inquiry.'" *Diocese of Rockville Ctr.,* 2023 WL 4497418, at *5.  Case law from within the Second Circuit instructs that a creditor's unfamiliarity with bankruptcy proceedings does not constitute excusable neglect.  *See In re Glob. Aviation Holdings Inc.*, 495 B.R. 60, 66 (Bankr. E.D.N.Y. 2013).

## III.

## <u>DISCUSSION</u>

For reasons detailed below, the Court denies the Motions because Movants have failed to satisfy the governing *Pioneer* test.  Briefly put, Debtors provided reasonable and more than constitutionally sufficient notice of the extended Hair Straightener Bar Date, with prior Court authorization and in keeping with the Court's orders, so as to reasonably inform creditors and enable Hair Straightener Claimants to assert timely claims.  The reason for the untimeliness of Movants' claims is legally attributable to them and not to Debtors because information about the potential of hair straightener chemicals to cause cancer was known and publicized at least as of October 2022, and because Debtors' bankruptcy case and the applicable bar dates were properly noticed and readily discoverable by any would-be claimant who diligently pursued a claim.  As the case law of this jurisdiction recognizes, the other *Pioneer* factors carry less weight than the reason for a late filing.

The Court also finds that Debtors, their insurers, the Hair Straightener Claimants that filed timely Hair Straightener Proofs of Claim, and all other parties-in-interest would suffer significant prejudice if the Movants were allowed to file late proofs of claim.  A two-month delay might be excusable in some other circumstances but here the delay comes on top of a nearly six-month

accommodation that the Court already provided to holders of Hair Straightener Claims by extending the original claim bar date, and the delay has heightened significance because of the subsequent occurrence of the confirmation and consummation of Debtors' Plan. The Plan has been in effect since May 2, 2023. It was negotiated and agreed to based largely in reliance on the economic model developed at that time, which included the Hair Straightener Bar Date and mechanisms for resolving and compensating timely Hair Straightener Claims while precluding untimely claims. The fourth factor, Movants' good faith, cuts in their favor, but does not outweigh the three other *Pioneer* factors.

## A. Debtors Provided Adequate Notice

### 1. Movants Were Not "Known Creditors" of Revlon

A threshold inquiry in late claim allowance motions is whether the debtor provided adequate notice of the applicable claims bar date. *See Diocese of Rockville Ctr.,* 2023 WL 4497418, at *4.

There is no dispute that constructive or publication notice is all that the Movants were due. [*See* Hearing Tr. 22:5–14 (COURT: "You rely on some form of publication notice when people are what bankruptcy law calls unknown claimants, right, or, that is, not known, not reasonably identifiable individually by the Debtor. So do you agree that's what we're looking at here? MR. WHITE: Your Honor, I do agree that's what we're looking at.")]. "A known creditor is one whose identity is either known or 'reasonably ascertainable by the debtor.'" *Diocese of Rockville Ctr.,* 2023 WL 4497418, at *4 (citing *Pope*, 485 U.S. at 490). "If a creditor is 'known' to a debtor, actual notice of a debtor's bankruptcy filing and bar date must be given to the creditor in order to achieve a legally effective discharge of the creditor's claim." *In re XO Commuc'n, Inc.*, 301 B.R. at 792. If, however, the creditor is "'unknown' to the debtor . . . constructive notice is generally

13

sufficient." *Id*. "Constructive notice can be satisfied through publication notice since 'in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights.'" *Id*. at 793–94 (quoting *Mullane*, 339 U.S. at 317).

Accordingly, the Court must determine whether the Movants were afforded constructive notice that meets the requirements of due process.

### 2. Movants Were Given Appropriate Notice

Debtors presented unrebutted evidence that establishes that they provided constructive notice of the Hair Straightener Bar Date in multiple ways, the combined effect of which was to exceed the minimum requirements of due process, as construed in well-established case law. Debtors' Notice Plan also complied with all applicable orders of this Court. As detailed above, all unknown creditors, including Movants, were provided constructive notice of the Hair Straightener Bar Date through a Court-approved publication program that included (a) newspaper publication, (b) online display and keyword search ads, and (c) social media ads, many targeted to African-American users of Revlon's relevant products, with adequate provision for Spanish-speaking users given the low percentage of non-English-speakers in the relevant consumer group and the availability of auto-translate features on Meta platforms. [*See* discussion *supra* Section I.A.3].

As is common and appropriate in bankruptcy cases affecting widely dispersed groups of people, Debtors published notice of the Hair Straightener Bar Date in the national editions of *The New York Times* and *USA Today*, and in the national edition of *The Globe and Mail* in Canada. While not disputing that nationwide publication notice like this is one appropriate measure, Movants argue that the Notice Plan was insufficient here at least as to them because it "made no effort to reach Afro-Caribbean and Afro-Latina hair relaxer consumers, particularly Movants from

the Territory of Puerto Rico, through publication of notice in Spanish and certainly not in more widely read regional and local media, such as *Primera Hora* and *El Nuevo Dia*. Nor were the other Movants specifically targeted with notice in newspapers or magazines specifically appropriate to the targeted audience." [RML, ECF No. 273 ¶ 5].

But Movants' objections are unsupported by the evidence they advance, and are rebutted by Debtors' evidence. As noted above, Debtors presented evidence demonstrating that their Notice Plan included digital advertisements that targeted African-American users of hair straightener products, including through online outlets with wide African-American readership and through a social media campaign targeting relevant consumer audiences. Further, their campaign reached consumers including 17,000 unique "profiles" in the Territories (such as Puerto Rico), and use of the Meta services Facebook and Instagram would result in notices or advertisements being translated into whatever language was selected as the default setting of the device on which the notice was viewed, thus at least reasonably attempting to reach the 5 to 10 percent of the target audience that was non-English-speaking. [*See* discussion *supra* Section I.A.3]. Further, Movants presented no expert testimony to back their criticisms of the Notice Plan, and they declined the opportunity to cross-examine Ms. Finegan, the witness through whom Debtors established these facts.

These notice efforts more than satisfy the requirements of due process, which recognize that "[i]t is impracticable . . . to expect a debtor to publish notice in every newspaper a possible unknown creditor may read." *In re Best Prods. Co., Inc.*, 140 B.R. 353, 358 (Bankr. S.D.N.Y. 1992). "As the Supreme Court stated in *Mullane*, " impracticable and extended searches are not required in the name of due process.'" *Id*. (quoting *Mullane*, 339 U.S. at 317–318); *see also In re Charter Co.*, 113 B.R. 725, 727 (M.D. Fla. 1990) (reversing bankruptcy court's decision that

15

debtor had to publish in newspapers to which unknown tort claimants were likely to subscribe and finding, instead, that notice by publication in national and local newspapers was sufficient to satisfy due process rights not only of unknown trade creditors, but of unknown persons with tort claims). The Court accordingly cannot and does not find that Debtors provided constitutionally insufficient notice so as to excuse Movants' late filings here.

Indeed, when asked at the August 29 hearing whether Movants had any law supporting their contention that there is a due process requirement to provide Spanish-language notice when there is a good faith basis to believe that the target audience is 90–95% English speaking, Movants' counsel acknowledged "we don't have a direct case that we can point you to at this time on this point," and, instead, invited the Court to consider the "facts and circumstances." [Hearing Tr. 17:25-18:4]. Separately during the hearing, Movants stated they were relying on the *Mullane* decision "just generally stating notice due process principles." [Hearing Tr. 104:15–23]. In reality, Debtors' Notice Plan compares favorably to many prior noticing protocols that this and other courts have approved. [ECF No. 238 ¶ 20 (citing *In re Endo Int'l plc*, No. 22-22549 (Bankr. S.D.N.Y. 2022); *In re Paddock Enters., LLC*, No. 20-10028 (Bankr. D. Del. 2020); *In re Mallinckrodt plc*, No. 20-12522 (Bankr. D. Del. 2020))]. And the Court is persuaded by Debtors' unrebutted and un-cross-examined testimony that the Notice Plan here, in fact, was well suited to the "facts and circumstances."

Without pointing to a written decision, Movants repeatedly invoke one case, *DeHoyos v. Allstate Corp.*, No. SA-01-CA-1010 (W.D. Tx. 2001), which they characterize as providing support for the notion that English-language notice programs are constitutionally insufficient to provide notice to the Spanish-speaking Movants who live in Puerto Rico. But Movants' reliance on *DeHoyos* is factually and legally misplaced. First, Movants identified no decision in *DeHoyos*

holding that due process required Spanish-language notice, and the Court's independent research likewise has found no such decision.  Moreover, here, unlike in the situation Movants describe *DeHoyos* as presenting, Debtors' Notice Plan included a digital advertising and social media campaign designed to reach the relevant consumer audience, at least 90% of whom spoke English in the home, and the campaign used the Facebook and Instagram social media platforms for notice messages that would be automatically translated into Spanish by readers whose devices were set to Spanish as their preferred language.  Debtors presented unrebutted testimony that this campaign was seen by 17,000 users (or "profiles") "in the territories."  Further, here the target audience was diffuse in many respects, although united by prior use of Revlon hair straightener products.  Thus, a broadly targeted campaign such as the one Debtors conducted was both a necessity, and well calculated to reach the target audience.  Accordingly, *DeHoyos* is materially distinguishable, and does not establish the insufficiency of the Notice Plan.

Lastly, although not conclusive, the adequacy of the Notice Plan is at least somewhat supported by the existence of 30,000 Hair Straightener Claims that were timely filed by the April 11 bar date.  That number is not so low as to suggest that the campaign was clearly ineffective.

Thus, the Court finds that Debtors provided an overall Notice Plan with respect to the Hair Straightener Bar Date that more than satisfied the requirements of due process, including as to Movants.

## B.  Reason for the Delay

Given the existence of adequate notice, the question becomes whether Movants have satisfied the four-part *Pioneer* test.  The Court begins with the test's third prong, the reason for the delay in the filing of the claim, because courts often consider it most important.  *See, e.g.*, *In re Motors Liquidation Co*., No. 19-CV-5666, 2020 WL 3120379, at *6 (S.D.N.Y. June 12, 2020)

(citing *Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 415–16 (2d Cir. 2004) ("it is the third

factor — the reason for the delay — that predominates, and the other three are significant only in

close cases")).

Specifically, the third *Pioneer* factor requires the Court to consider Movants' reason for

the delay in filing their Hair Straightener Claims, including whether it was within the reasonable

control of Movants.  *See In re AMR Corp.*, 492 B.R. 660, 666 (Bankr. S.D.N.Y. 2013).  Movants

claim that their delay in filing Hair Straightener Claims was not within their reasonable control for

three reasons.  First, they assert that the tardiness of their filings "was purely a result of ignorance

of the process and deadline."  Second, they argue that the relative recency of the NIH study caused

them to be less likely to be aware of their potential claim.  Third, Movants argue that the fact that

some of the Movants live in U.S. territories and/or are not English speakers makes their delay

excusable.

Debtors maintain that Movants' effort to blame them for their untimely filing of Hair

Straightener Claims fails "due to the simple fact that the Reorganized Debtors provided substantial

and constitutional notice to all of their unknown creditors, including the Hair Straightening

Claimants."  [ECF No. 240 ¶ 15].  Thus, they argue, "Movants' lack of any viable reason for delay

– the predominant factor in the *Pioneer* test – alone warrants denial of their motions."  [*Id.* ¶ 26].

Movants support their Motions with short and formulaic declarations that do not support

their contention that the inadequacy of Debtors' Notice Plan caused their untimely filings.  No

Movant attended the August 29 hearing, notwithstanding that remote attendance or testimony via

Zoom for Government could have been arranged, and thus no Movant was available to testify in

person or to be cross-examined.  Five of the Movants were deposed before the August 29 hearing.

During the hearing, Debtors' counsel identified inconsistencies between those five Movants'

sworn declarations and their deposition testimony.  For example, paragraph 3 of each declaration states that the claimant learned of the alleged link between hair relaxer products and cancer through legal advertisements in Spanish after the April 11 Hair Straightening Bar Date.  [*See, e.g.*, RML, ECF No. 273-7 (Declaration of Dilma Sanchez Green) p. 4 ¶ 3].  But Ms. Sanchez Green testified during her deposition that she learned of this alleged causal link in February, well ahead of the April 11 Hair Straightening Bar Date, and from a family member rather than an advertisement. [RML, ECF No. 401-5 (Deposition Transcript of Dilma Sanchez Green taken August 18, 2023) 29:23–25; 30:1–25].  When asked about this discrepancy, Ms. Sanchez Green testified that her understanding of paragraph 3 was that Revlon banned the use of hair relaxers on April 11.  [*Id.*] Other Movants also testified that they were told of the alleged causal link by friends or family members, not legal advertisements, and well ahead of the April 11 Hair Straightening Bar Date. [*See, e.g.,* RML, ECF No. 401-1 (Deposition Transcript of Mariana Del Pilar Montanez taken July 26, 2023) 32:22–25; 33:2–25; 34:2–21; ECF No. 401-2 (Deposition Transcript of Ivette Vicente Cruz taken July 26, 2023) 45:8–25; 46:2–25; ECF No. 401-3 (Deposition Transcript of Daysha Ramos Ramos taken August 2, 2023) 25:14–25; 26:2–22].

During the August 29 hearing, the Court declined to receive in evidence the declarations of Movants who were not deposed due to their unavailability for cross-examination.  The Court did receive the declarations of five Movants who were deposed, and deemed their deposition transcripts to constitute the relevant cross-examination for purposes of the hearing.  Having considered these five declarations and the deposition testimony elicited by Debtors, the Court concludes that Movants have not established their lack of responsibility for their untimely claim filings.  Nor have Movants established that Debtors are responsible for the tardy filings due to some asserted deficiency in the Notice Plan (or for any other reason).

Indeed, as Debtors' counsel pointed out during the August 29 hearing, nothing in Movants' declarations or deposition testimony actually calls into question the reasonableness of the Notice Plan. [Hearing Tr. 64:23–25; 65:1–8]. Despite Movants' complaints that Debtors chose to advertise in national U.S. and Canadian newspapers with little Puerto Rican readership, the deposition testimony establishes that the Movants did not routinely read *any* newspapers. For example, Ms. Ivette Vincente Cruz testified that she stopped reading newspapers "since the pandemic started," [RML, ECF No. 401–2, Cruz Depo. Tr. 19:23–25; 20:1–13], and each of the other four movants similarly testified that they do not read newspapers. [*See* RML, ECF No. 401-1, Montanez Depo. Tr. 36:16–17; ECF No. 401-3, Ramos Depo. Tr. 18:4–5; ECF No. 401-4, Mas Alicea Depo. Tr. 36:22–23; ECF No. 401-5, Green Depo. Tr. 32:6–7]. Thus, the omission of Puerto Rican newspapers from Debtors' Notice Plan cannot have caused Movants' alleged failure to receive timely notice of the Hair Straightener Bar Date.

Movants' deposition testimony also supports Debtors' use of Facebook and Instagram as part of their Notice Plan. Ms. Del Pilar Montanez, Ms. Vicente Cruz, Ms. Ramos, and Ms. Mas Alicea each testified that they use Facebook and/or Instagram and have seen advertisements on those platforms. [*See* RML, ECF No. 401-1, Montanez Depo. Tr. 37:15–21; ECF No. 401–2, Cruz Depo. Tr. 23:7–13; ECF No. 401-3, Ramos Depo. Tr. 16:15–19; ECF No. 401-4, Mas Alicea Depo. Tr. 38:2–21]. This testimony undermines Movants' criticism about the asserted lack of Spanish language notices, because, as noted, advertisements on Facebook and Instagram would appear in Spanish for any individual who selected Spanish as their device's language setting.

Movants had ample opportunity to diligently pursue their possible legal rights in connection with their illnesses, and attempts to do so would not have been fruitless. During the August 29 hearing, the Court asked and no counsel contended that any Movant was recently

diagnosed or otherwise lacked reason or opportunity to inquire as to whether her condition might give rise to claims or legal entitlements. [Hearing Tr., 83:16–24]. And information about the asserted causal link between hair straightener products and certain cancers (which Revlon does not concede exists) was available well before the applicable bar date. Debtors point to studies dating from 2021 and 2022 suggesting a possible causal link or heightened correlation between the use of hair straightener products and reproductive cancers. [*See* RML, ECF No. 239 ¶¶ 3–5]. The possible link between certain cancers and hair straightener products was the subject of media attention before the General Bar Date and the Hair Straightener Bar Date, further demonstrating that attentive inquiry could and would have alerted potential claimants to the applicable claim deadline. *See* News Release, National Institutes of Health, Hair straightening chemicals associated with higher uterine cancer risk (Oct. 17, 2022), https://www.nih.gov/news-events/news-releases/hair-straightening-chemicals-associated-higher-uterine-cancer-risk; Amelia Pollard, Revlon faces claims that its hair relaxer causes cancer as bankruptcy case nears end, LOS ANGELES TIMES (March 7, 2023), https://www.latimes.com/business/story/2023-03-07/revlon-faces-hair-relaxer-cancer-claims-as-bankruptcy-nears-end; Morgan Young, Mark Smith, 'I'm concerned': Customers alleging Revlon hair relaxers caused cancer, health issues have just weeks to file their claims, WFAA (March 10, 2023), https://www.wfaa.com/article/news/local/investigates/customers-alleging-revlon-hair-relaxers-caused-cancer-health-issues-have-just-weeks-to-file-their-claims/287-99d947ec-c521-494d-a20b-3cb353e6ede7#:~:text='I'm%20concerned'%3A,risk%20of%20developing%20uterine%20cancer. In fact, Ms. Ramos testified during the deposition that after she was diagnosed with cancer in April 2022, she came to understand "that there are certain chemicals that are involved or have a role in some kinds of cancer." She testified that in June 2022 she "started to look for information [online] about

what I could do to take care of myself so that I wouldn't get cancer in any other party of my body."
[ECF No. 401-3, Ramos Depo. Tr. 25:21–25; 26:2–22].

While the Court sympathizes with Movants, the Court concludes that Movants are responsible for the untimeliness of their claims. This conclusion is buttressed by a large body of case law recognizing that "Courts generally have held that a mere lack of knowledge is not sufficient to show that a delay was reasonable or that the delay was not within the movant's control." *In re Tronox Incorporated*, 626 B.R. 688, 729 (Bankr. S.D.N.Y. 2021) (collecting cases); *see also PacifiCorp. v. W.R. Grace & Co*., No. 05-764, 2006 WL 2375371 at *14 (D. Del. Aug. 16, 2006) (confirming that ignorance of a claim does not by itself suffice to show excusable neglect); *In re Best Prods. Co., Inc*., 140 B.R. at 359 ("Even ignorance of one's own claim does not constitute excusable neglect"). As *Tronox* instructs, "[i]n particular, whether movants' lack of 'actual knowledge' of their injuries or their legal options was within the movants' own control depends on the amount of information that was readily available to persons who chose to investigate such matters." *In re Tronox Incorporated*, 626 B.R. at 729.

Thus, reasonably diligent potential claimants had ready access to adequate information both about the Hair Straightener Bar Date and about the reported link between use of hair straightener products and certain cancers. Accordingly, and for the reasons stated above in more detail, the third *Pioneer* factor weighs against Movants, and favors Debtors.

## C. Prejudice

The remaining *Pioneer* factors are somewhat mixed, but two of the three at least moderately favor Debtors.

The first factor is whether allowing late-filed claims would cause prejudice to Debtors. Movants argue that there is little danger of prejudice because there are only 37 Movants and

Debtors are already dealing with tens of thousands of timely filed claims. Debtors respond that granting the Motions would be significantly prejudicial because administering 37 new claims would be a meaningful undertaking that is contrary to all parties' understandings in the now-effective confirmed Plan, and because granting the Motions could open the "floodgates" to similar untimely claims.

"In determining whether permitting the late filing of claims would cause a debtor prejudice, courts in this district have weighed a number of considerations, including: (1) 'the size of the late claim in relation to the estate;' (2) 'the disruptive effect that the late filing would have on a plan close to completion or upon the economic model upon which the plan was formulated and negotiated;' and (3) 'whether a disclosure statement or plan [of reorganization] has been filed or confirmed with knowledge of the existence of the claim.'" *Diocese of Rockville Ctr.*, 2023 WL 4497418, at *7 (citing *In re Enron Corp.*, 298 B.R. 513, 525 (Bankr. S.D.N.Y. 2003)).

First, Movants argue that the value of their claims is "marginal" when compared to the value of the rest of Debtors' estates, and that the value of their claims is compensable only by Debtors' insurance policies as set out in Article IX.6A of the Plan. Debtors counter that additional claims could reduce Debtors' available insurance coverage and/or reduce insurance proceeds available to Hair Straightener Claimants that filed timely Hair Straightener Proofs of Claim, if ultimately allowed. When asked during the August 29 hearing to expand on this, Debtors' counsel explained "it's important to note that this is a fixed pre-petition general insurance liability policy here that the Debtors may need to draw on for other purposes. So, it's not only affecting other claimants, but it is directly affecting the Debtors as well." [RML, Hearing Tr. 85:18-24]. But Debtors did not identify any other current material demands on their liability insurance protection.

Second, Debtors claim that granting the Motions would obliterate the certainty and finality that the General Bar Date and the Hair Straightener Bar Date established, and they fear "an opening of the floodgates if the Motion is granted." [RML, ECF No. 240 ¶¶ 29–30]. Debtors further argue that, although the number of Movants is limited, more than 1,000 late Hair Straightener Claims have been filed against Debtors, the amount sought by each of these claimants is typically large, and Debtors will be required to perform intensive work and potentially incur substantial liability on each late claim if the April 11 Hair Straightener Bar Date is not enforced. Debtors contend they will incur significant administrative costs and a significant disruption to processing such claims even if their insurers ultimately cover the amounts of any allowed claims.

The third recognized factor of the prejudice analysis weighs against granting Movants relief. Debtors' Plan has been confirmed and has gone effective. Debtors' bankruptcy was a complex and high-profile event with far-reaching economic consequences. Myriad creditors relied on the Plan's financial terms when voting to support confirmation. During the confirmation hearing, and despite the recent adoption of the extended Hair Straightener Bar Date and its approaching expiration, no representative of any Hair Straightener Claimant objected to the Plan or sought any sort of accommodation in order to pursue untimely claims. The Plan provided specifically that timely Hair Straightener Claims would be referred for resolution in the MDL proceedings in the Northern District of Illinois, with payment of any awards or settlements restricted to Debtors' liability insurance policy or policies, and with any untimely Hair Straightener Claims barred from recovery under the Plan. [*See* Main Case, ECF No. 1727, pp. 92–93].

While Movants' arguments have superficial appeal and some of Debtors' concerns seem speculative or exaggerated (such as that they may lose the ability to draw on their insurance protection as against potential unrelated claims that they have never identified), on balance the

Court concludes that granting Movants leave to file late proofs of claim would cause Debtors

prejudice within the meaning of *Pioneer*. The Court is persuaded that ignoring the extended Hair

Straightener Bar Date would create a serious risk of exposing Debtors and their limited resources

to a deluge of financially and administratively burdensome claims. If Movants were to prevail, it

is hard to believe that other potential claimants would not point to Movants and argue that because

they are similarly situated they, too, are entitled to a favorable ruling. While Movants argue that

any future motions would be made well after the Hair Straightener Bar Date and so could easily

be denied under *Pioneer*, the Court is persuaded that Debtors would likely face a serious litigation

burden if the Motions were granted, contrary to assumptions and express provisions in the

confirmed Plan. This concern falls within the broad category of "prejudice" that courts recognize

in construing *Pioneer*. *See In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995) (*Pioneer*

"prejudice" involves "a number of considerations" including "the size of the late claim in relation

to the estate, whether a disclosure statement or plan has been filed or confirmed with knowledge

of the existence of the claim, the disruptive effect that the late filing would have on a plan close to

completion or upon the economic model upon which the plan was formulated and negotiated").

"Floodgates" concerns, in particular, have repeatedly been credited in case law applying

*Pioneer*. *See, e.g.*, *In re Tronox Inc.*, 626 B.R. at 725 ("It is well-settled that if the allowance of

late-filed claims on the grounds of excusable neglect would 'open the floodgates' to a large number

of new claims, and if those additional claims would have a large impact on the recoveries of other

creditors, then permitting the late-filed claims would be a form of prejudice that weights against a

finding of 'excusable neglect.'") (citing *Black v. Diamond*, 163 Fed. App'x 58, 60–61 (2d Cir.

2006) (reductions in other claimants' recoveries is a form of prejudice that is relevant under the

*Pioneer* factors)). While the impact on creditor recoveries here is mitigated by the fact that

insurance coverage is the sole source of payment to Hair Straightener Claimants, it is reasonably likely that expanding the number of claimants eligible to pursue recoveries could dilute the recoveries of timely-filed Hair Straightener Claimants, and would require the expenditure of estate funds on litigation that would deplete funds that would otherwise be available to compensate all creditors.

Thus, Debtors will be prejudiced if the Movants' late-filed claims are allowed. The first *Pioneer* factor therefore favors Debtors.

**D.    Length of Delay and Impact on Judicial Proceedings**

The second *Pioneer* factor considers the length of delay in filing a claim and its potential impact on judicial proceedings. *Diocese of Rockville Ctr.*, 2023 WL 4497418, at *9. The Second Circuit has held that "'[n]otwithstanding the centrality of bar dates . . . [no] court has established a bright-line rule governing when the lateness of a claim will be considered 'substantial.' Rather, when determining whether to allow a late-filed proof of claim, 'courts generally consider the degree to which, in the context of a particular proceeding, the delay may disrupt the judicial administration of the case.'" *Id.* (citing *In re Enron Corp.*, 419 F.3d at 128). Where, as here, a chapter 11 plan has been consummated, "courts must exercise 'added caution' in evaluating arguments based on excusable neglect." *In re Motors Liquidation Co.*, 598 B.R. 744, 757 (Bankr. S.D.N.Y. 2019).

Movants argue that there will be no negative impact on judicial proceedings if their late-filed claims are deemed timely. They stress that their claims were filed within approximately two months of the Hair Straightener Bar Date, and that collectively they have filed only 37 claims which will not disrupt the judicial administration of Debtors' estates. Movants point to *In re Roman Catholic Diocese of Syracuse, New York*, 638 B.R. 33, 40 (Bankr. N.D.N.Y. 2022) for its

holding that a claim filed four months after the bar date is not excessively tardy for purposes of the "length of delay" *Pioneer* factor. Debtors respond that Movants understate the Motions' potential impact on estate administration because more than 1,000 *additional* claims were filed after the Hair Straightener Bar Date, any or all of which may spring to life if the Motions are granted.

As discussed in relation to the prejudice factor, the Court agrees with Debtors that they will likely face many similar motions if the Movants prevail here, thus creating a substantial risk of burdening judicial administration of the estates and draining already limited resources. Debtors have expended considerable funds in connection with the initial motions to file late Hair Straightener Claims – a Motion for Reconsideration, and two appeals from the Hair Straightener Bar Date Order – and are currently responsible for administering over 30,000 Hair Straightener Proofs of Claim both in this Court and via the Hair Straightener MDL. Continuing to defend against numerous motions to submit late-filed claims would further burden already significantly burdened Debtors.

Nor does the relatively brief time that passed between expiration of the Hair Straightener Bar Date and the filing of the Motions – approximately two months – overcome these considerations. First, focusing exclusively on the two months that passed from expiration of the Hair Straightener Bar Date ignores the reality that the Court already granted a nearly six-month extension of the original General Bar Date. And, although Movants are right that in *In re Roman Catholic Diocese of Syracuse, New York*, a four-month filing delay was excused, that case was in its early stages and no plan had been confirmed. Here, by contrast, Debtors' Plan has been confirmed and gone effective, with a specific mandate that timely Hair Straightener Claims would be resolved in the MDL proceedings and paid for out of available insurance, while untimely Hair

27

Straightener Claims would receive no compensation from the estate. Courts considering the length-of-delay *Pioneer* factor focus not just on the number of days that a claim is late, but on the stage of the case and the possible impact on the proceedings. *See, e.g., In re Motors Liquidation Co.*, 598 B.R. at 757–59 (denying a finding of excusable neglect where the creditor filed its motion after the plan of reorganization was substantially consummated); *In re Dana Corp.*, No. 06-10354, 2008 Bankr. LEXIS 2241, *15, *19 (Bankr. S.D.N.Y. July 28, 2008) (denying a finding of excusable neglect where the creditor filed its motion after the debtors had emerged from bankruptcy). No Hair Straightener Claimant objected to confirmation of Debtors' Plan, including its strict timeliness requirements for eligibility of such claimants to be compensated by the estate. That unchallenged expectation is entitled to be enforced, and setting it aside would disrupt both judicial proceedings, and the reasonable reliance of all case participants on the existing bar date provisions and the Plan's resulting treatment of Hair Straightener Claims.

### E.  Good Faith

The Court has no reason to doubt Movants' good faith. Movants are people who have experienced serious illness and wish to assert claims against Debtors alleging that its hair straightener products caused their illnesses. Case law discussing the "good faith" factor recognizes that it rarely comes into play in a way that cuts against claimants. *See In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 104 (Bankr. S.D.N.Y. 2007); *In re Ditech Holding Corp.*, 2021 WL 3435453, at *6 (Bankr. S.D.N.Y. Aug. 4, 2021) ("Typically, the length of the delay, the danger of prejudice, and the movant's good faith usually weigh in favor of the party seeking the extension."); *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003) ("In the typical case, the first two *Pioneer* factors will favor the moving party . . . . And rarely in the decided cases is the absence

of good faith at issue"). Here, the Court finds good faith on the part of Movants, or at least does not question their good faith.

The Court, however, concludes that the good-faith factor does not carry the day, as it is outweighed by the Court's conclusion that all other relevant factors weigh in favor of denying the Motions. To recap key considerations, first and most importantly, the "reason for the delay" is chargeable to Movants because Debtors provided more than adequate notice while Movants failed to take available steps that would have allowed them to file a timely claim. Further, the bankruptcy case is at an advanced stage where many parties have settled expectations based on the existing bar date provisions, granting the Motions likely would complicate, multiply, and extend judicial proceedings, and granting the Motions would prejudice the estate, its creditors, and all who relied on the existing bar date structure and the terms of the confirmed plan.

## CONCLUSION

For the reasons stated above, although the Court sympathizes with Movants' medical conditions and the consequences of their having failed to meet the demands of the bankruptcy process, Movants have not met the stringent governing legal test for allowance of untimely filed claims. Accordingly, their Motions are hereby DENIED. It is so ordered.

Dated: New York, New York
      December 20, 2023

                                 *s/ David S. Jones*
                                 HONORABLE DAVID S. JONES
                                 UNITED STATES BANKRUPTCY JUDGE