UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

| | |
|---|---|
| In re: | Chapter 11 |
| RML, LLC[1] | Case No. 22-10784 (DSJ) |
| Reorganized Debtor. | |
| Tax I.D. No. N/A | |

**BENCH MEMORANDUM DECISION[2] SUSTAINING OBJECTION TO CERTAIN CLAIMS OF HAIR STRAIGHTENING CLAIMANTS WHO TIMELY FILED PROOFS OF CLAIM BUT FAILED TO TIMELY FILE REQUIRED PLEADINGS IN MULTI-DISTRICT LITIGATION**

This Decision concerns Reorganized Debtors' objection to six proofs of claim filed by individuals (the "Claimants")[3] who assert that they sustained illness caused by use of Revlon hair straightener products. [ECF No. 870 (the "Eleventh Omnibus Objection")]. Reorganized Debtors seek the expungement of these six individuals' claims because, although the Claimants timely filed proofs of claim, they failed to meet the confirmed plan of reorganization's requirement that all individuals seeking compensation from the estate for asserted injuries allegedly caused by use of Revlon hair straightener products must file a complaint in pending multi-district litigation ("MDL") proceedings by September 14, 2023, or have their claims "disallowed." The six

---

[1] On May 30, 2023, the Court entered the *Order (I) Consolidating the Administration of the Remaining Matters at the Remaining Case, (II) Entering a Final Decree Closing the Affiliate Cases, (III) Changing the Case Caption of the Remaining Case, and (IV) Granting Related Relief*, *In re Revlon, Inc., et al.*, No. 22-10760 [Main Case, ECF No. 1920], closing the affiliated chapter 11 cases and directing that all motions, notices, and other pleadings related to any of the affiliated debtors be filed in this case. The location of RML, LLC's service address for purposes of these Chapter 11 Cases is: 55 Water St., 43rd Floor, New York, NY 10041-0004. In this Decision, citations to the docket for *In re RML, LLC*, No. 22-10784, will read "[ECF No. ___]." Citations to the docket for the main case, *In re Revlon, Inc.*, No. 22-10760, will read "[Main Case, ECF No. ___]."

[2] The Court terms this a "Bench Memorandum Decisions" to indicate that it is the written equivalent of a decision that might have been rendered orally, with less formality or extensiveness than might be used in traditional written opinions.

[3] The affected individuals are Sherold Haynes (Claim 28279), Peggy Lofton (Claim 26357), Vickie Swinson (Claim 25492), Jackie Vaden (Claim 27688), Allinda Whitney (Claim 26712), and Star Williams (Claim 25611).

1

Claimants who are the subject of this Decision all acknowledge that they did not file an MDL complaint as required by the confirmed plan of reorganization, but they argue that Debtors failed to provide sufficient notice of this obligation, or, in the alternative, that their failure to realize they needed to file an MDL complaint constitutes excusable neglect and thus warrants denial of the Eleventh Omnibus Objection as to them.

The Court sympathizes with these individual claimants, who assert they have suffered serious medical harms that they contend Revlon caused. The Court nevertheless disagrees with their contentions as a matter of law and sustains Reorganized Debtors' objections to their claims.

In brief, there is no dispute that the Claimants are among those who the confirmed plan of reorganization mandated file a complaint in the MDL proceedings by September 14, 2023. That requirement reflected a negotiated agreement by multiple parties in interest, including Revlon's insurers and representatives of other Hair Straightening Claimants,[4] and was approved by this Court after specific discussion of the treatment of this category of claims, to which no party objected. The Plan further explicitly provided that, if such an action was not timely commenced by an individual asserting a Hair Straightening Claim, the claim would be disallowed such that no compensation from the estate would be available. These requirements were explicit, they are permissible, they were publicly filed and readily accessible by anyone who diligently pursued relief in connection with their use of Revlon hair straightener products, the Claimants here had notice of the applicable bar date and Plan, and they accordingly were not inappropriately

---

[4] Terms capitalized but not defined herein have the meanings ascribed to them in the Third Amended Joint Plan of Reorganization of Revlon, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan") [Main Case, ECF No. 1746 at 99-218].

2

impeded from ascertaining that pursuing relief from the estate required them to timely file an MDL complaint. As a result, the law requires disallowance of their claims.

## BACKGROUND

This Decision assumes familiarity with the extensive procedural history of the Revlon bankruptcy, and, specifically, prior litigation involving hair straightener claims. Particularly pertinent is this Court's December 2023 decision denying motions for leave to file untimely claims by a number of persons who wished to assert claims based on prior use of Revlon hair straightener products. *See In re RML, LLC*, 657 B.R. 709 (Bankr. S.D.N.Y. 2023) [ECF No. 484]. The Court sets out relevant background to this Decision as follows.

On September 12, 2022, the Court entered an initial claims bar date order, titled "Order (I) Establishing Deadlines for (A) Submitting Proofs of Claim and (B) Requests for Payment Under Bankruptcy Code Section 503(b)(9), (II) Approving the Form, Manner, and Notice Thereof, and (III) Granting Related Relief" [Main Case, ECF No. 688] (the "Bar Date Order"), establishing certain dates and deadlines for filing proofs of claim in these chapter 11 cases. The Bar Date Order set deadlines in October and December 2022 for the submission of proofs of claim by, respectively, non-governmental claimants and governmental claimants. *Id.* at ¶¶ 4, 7. On November 29, 2022, the Court granted the Debtors authority to file omnibus objections to claims. [Main Case, ECF No. 1117]. Subsequently a motion was filed arguing that recently published medical studies reporting a possible correlation between hair straightener products and gynecological cancers warranted extending the original bar dates solely as to claims based on the use of hair straightener products. On March 7, 2023, with Debtors' consent, the Court entered a Hair Straightening Bar Date Order, establishing April 11, 2023, as the deadline for the filing of Hair Straightening Proofs of Claim in these Chapter 11 Cases. [Main Case, ECF No. 1574].

Meanwhile, on April 3, 2023, the Court entered an order confirming the Plan. Findings of Fact, Conclusions of Law, and Order Confirming the Third Amended Joint Plan of Reorganization of Revlon, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (the "Confirmation Order") [Main Case, ECF No. 1746 at 1-97]. On May 2, 2023, the Reorganized Debtors filed the Notice of (I) Entry of Confirmation Order, (II) Occurrence of Effective Date, and (III) Final Deadlines for Filing Certain Claims, disclosing that the Effective Date (as defined in the Plan) occurred on May 2, 2023, the Plan was substantially consummated, and the Debtors emerged from chapter 11. [Main Case, ECF No. 1869].

The confirmed Plan includes a specifically negotiated provision regarding the treatment of Hair Straightening Claims, as follows:

> [E]ach Hair Straightening Claimant that has properly filed a Hair Straightening Proof of Claim shall file a complaint naming the applicable Debtor(s) in the Hair Straightening MDL or, if the Hair Straightening MDL has terminated or is otherwise the inapplicable forum for such action, in the United States District Court for the Southern District of New York consistent with the applicable provisions of 28 U.S.C. §§ 157 and 1334, for the purpose of liquidating such Hair Straightening Claim against the applicable Debtor(s) (any such action, a "Hair Straightening Liquidation Action"). All Hair Straightening Liquidation Actions must be commenced no later than the later of (a) September 14, 2023, (b) 90 days after entry of the MDL Direct Filing Order, and (c) solely with respect to a Hair Straightening Claimant who is diagnosed after the Hair Straightening Bar Date, six (6) months from the date of the applicable diagnosis by a licensed medical doctor. **Any Hair Straightening Claim for which a Hair Straightening Liquidation Action is not timely commenced pursuant to the foregoing sentence shall be disallowed.**

Plan at Art. IX.A.6 (emphasis added). It is undisputed that the Plan as confirmed by this Court required each of the Claimants at issue here to file Hair Straightening Liquidation Actions in the MDL by September 14, 2023.

4

The Eleventh Omnibus Objection now before the Court raises the question of what to do when an individual filed a proof of claim before the expiration of the April 11, 2023 Hair Straightening Bar Date but failed to file a complaint in the MDL proceedings as required by the confirmed Plan, assertedly due to lack of awareness of the requirement to file an MDL complaint. As noted, the Plan – which this Court has confirmed and which is now effective – expressly requires the disallowance of claims in this circumstance.

The six Claimants opposing the Objection respond that the requirement to file an MDL complaint is not usually required to assert a proof of claim, that the Plan did not sufficiently highlight the requirement, that they received no prominent, individualized warning about this requirement, and that they meet the admittedly high bar for allowance of untimely claims.

**DISCUSSION – CLAIMANTS ARE BOUND BY THE PLAN'S REQUIREMENT TO TIMELY COMMENCE AN MDL PROCEEDING AND HAVE NOT ESTABLISHED EXCUSABLE NEGLECT**

The Objection presents a straightforward argument: the confirmed Plan explicitly required each of the Claimants to file an MDL complaint by September 14, 2023, or their claims would be "disallowed." [ECF No. 870 at ¶¶ 31-35; *id.* at 470, 653, 989, 1038, 1090, and 1110]. These six Claimants subject to the Objection never filed a complaint in the MDL. Therefore, according to Reorganized Debtors, the Court must disallow their claims under the Plan's terms.

Claimants' response to the Objection [ECF No. 894 (the "Response")] emphasizes that, ordinarily, a timely filed proof of claim is deemed allowed unless a party in interest objects, and that the Objection does not present evidence sufficient to overcome the typically presumed validity of Claimants' claims. Response at 3. The Response objects that the Plan's requirement that Hair Straightening Claimants also file an MDL complaint or have their claims disallowed is contrary to the ordinary workings of the Bankruptcy Code and Rules under which timely claims

5

generally are presumed allowed, unless subject to a successful objection in Bankruptcy Court. *Id.* at 4-5. The Claimants further contend that, particularly because the Plan departs from the normal claim allowance or disallowance process and because the Plan's relevant requirements appeared without particular emphasis within a large and complex document, good cause exists to excuse Claimants' admitted failure to timely satisfy the requirement that they file complaints in the MDL proceedings by September 14, 2024. *Id.* at 4-7. Claimants explain that the "reason for the delay was an innocent misunderstanding," *id.* at ¶ 12, and they argue that the equities favor excusing Claimants' acknowledged oversight given the assertedly modest marginal impact on the estate of denying the Objection as to the Claimants contrasted with the severe impact on Claimants of disallowing their claims. *Id.* at 7.

The Court sympathizes with the Claimants yet must agree with the Reorganized Debtors that the law requires sustaining the Objection and disallowing the Claimants' claims under the plain terms of the Plan.

As Reorganized Debtors' Omnibus Reply [ECF No. 906 ("Reply")] observes, to the extent the Claimants suggest that the Plan's provisions regarding allowance and satisfaction of Hair Straightening Claims transgress the Bankruptcy Code, their position constitutes an "improper collateral attack" on the confirmed Plan and the Confirmation Order, which took effect more than one year ago, with many parties relying on their effectiveness. Reply at 2-3. As Reorganized Debtors observed during the Hearing on the Objection, the Plan's process for reconciling Hair Straightening Claims "was negotiated with counsel representing thousands of hair straightening claimants and the debtor's insurance carriers. It expanded rights [that] had previously been cut off . . . in a manner that balanced fairness for hair straightening claimants and finality for the reorganized debtors." [ECF No. 919 (Hearing Transcript ("Tr.")) 28:12-17].

6

Claimants observe that the requirement to proceed to the governing MDL forum does not exist in many bankruptcies and was not singled out to their attention in individualized notices. They do not, however, dispute that they had notice of the Plan and the Confirmation Order, which establish procedures for the treatment of claims generally and Hair Straightening Claims specifically.

Claimants do not dispute Reorganized Debtors' characterization of the process that led to the Plan, including its treatment of Hair Straightening Claims, nor do Claimants identify any basis to disturb the approved and effective Plan. In light of arguments that the Plan's provisions regarding Hair Straightening Claims were insufficiently prominent, the Court asked whether Claimants "ha[d] any due process law that's tailored to formatting or prominence of disclosure requirements," and Claimants' counsel candidly replied, "No, Your Honor, I don't." *Id.* at 33:13-16. Nor do Claimants identify anything impermissible about the Plan's provisions regarding Hair Straightening Claims, including the requirement that they be pursued in pre-existing MDL proceedings which would be defended in that forum, that they can challenge at this point. Likewise, they do not dispute that that approach was negotiated by, among others, counsel for other Hair Straightening Claimants to efficiently but fairly resolve a large universe of similar tort claims. Claimants acknowledge receipt of the Plan; their objection argues merely that the MDL filing requirement was "buried" in a large document, not that it was not provided to them. *Id.* at 41:4-8.

Given the Plan's confirmation and effectiveness and Claimants' failure to identify any way in which they could challenge its provisions now, the Court declines to set aside the Plan's requirements, including its requirement that Hair Straightening Claimants file a complaint in the MDL proceedings before September 14, 2023. Claimants' failure to file timely MDL complaints

7

thus requires "disallowance" of their claims unless they can prevail on their second argument, which is that the untimeliness of their filing should be excused under the familiar and demanding *Pioneer* standard. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993).

On that question, Claimants fail to satisfy the *Pioneer* standard, and thus the Court declines to excuse their failure to timely file MDL complaints as required by the Plan.

Bankruptcy Rule 9006(b)(1) allows a court to enlarge the time period for filing a claim, "on motion made after the expiration of the specified period . . . where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1). The claimant has the burden of proving excusable neglect. *In re Roman Cath. Diocese of Rockville Centre,* 2023 WL 4497418, at *4 (Bankr. S.D.N.Y. July 12, 2023) (citing *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005)). "Whether neglect is 'excusable' under Rule 9006(b)(1) is an equitable determination based on 'all relevant circumstances surrounding the party's omissions.'" *Id*. at *5 (citing *Pioneer*, 507 U.S. at 395). The Supreme Court in *Pioneer* listed four factors in determining whether a court may find neglect 'excusable' under Rule 9006(b)(1):

> (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.

*Id*. (citing *Pioneer*, 507 U.S. at 395). "The Second Circuit takes a 'hard line' in applying the *Pioneer* test that focuses on and emphasizes the third factor: the reason for the delay, including whether it was within the reasonable control of the movant." *Id*. (citing *In re Enron Corp.*, 419 F.3d at 122). Indeed, the Second Circuit's rigorous test has created an "expect[ation] that a party

8

claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *In re Enron Corp.*, 419 F.3d at 123 (internal citations omitted).

"[T]he four *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import. While prejudice, length of delay, and good faith might have more relevance in a close[ ] case, the reason-for-delay factor will always be critical to the inquiry." *Diocese of Rockville Centre,* 2023 WL 4497418, at *5 (further citations omitted). Case law from within the Second Circuit instructs that a creditor's unfamiliarity with bankruptcy proceedings does not constitute excusable neglect. *See In re Glob. Aviation Holdings Inc.*, 495 B.R. 60, 66 (Bankr. E.D.N.Y. 2013).

Claimants' position here cannot be squared with extensive case law including the directly on-point decision in *Global Aviation*. Claimants candidly acknowledge that their failure to timely commence MDL proceedings resulted from an "innocent misunderstanding," Response at ¶ 12, which is simply another way of saying the "creditor's unfamiliarity with bankruptcy proceedings" that *Global Aviation* held to be insufficient. The same conclusion follows from *Diocese of Rockville Centre* and *Enron*, which gave particular weight to whether the "reason for the delay" was "within the reasonable control of the movant." *See also In re Motors Liquidation Co.*, No. 19-CV-5666, 2020 WL 3120379, at *6 (S.D.N.Y. June 12, 2020) ("it is the third factor — the reason for the delay — that predominates, and the other three are significant only in close cases") (citing *Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 415-16 (2d Cir. 2004)); *In re Tronox Inc.*, 626 B.R. 688, 729 (Bankr. S.D.N.Y. 2021) ("Courts generally have held that a mere lack of actual knowledge is not sufficient to show that a delay was reasonable or that the delay was not within the movant's control.") (collecting cases).

Applying the standards set by this well-developed law, the "reason for the delay" fell within the reasonable control of Claimants. Claimants acknowledge receipt of the Plan, Tr. at 41:4-9, which had a table of contents identifying portions governing the treatment of claims [Main Case, ECF No. 1746 at 102-03], and the text of the Plan included the express procedural requirements that Claimants failed to follow, *id.* at 196-97. The Court does not question that Claimants innocently failed to identify and follow the Plan's requirements, but that does not mean making a timely filing fell outside their "reasonable control."

The three remaining *Pioneer* factors do not tilt the calculus in Claimants' favor; in substantial part, they favor the Reorganized Debtors.

First, Reorganized Debtors correctly assert that substantial prejudice would result were the Court not to enforce the Plan's express negotiated provisions requiring timely commencement of MDL proceedings by Hair Straightening Claimants. "In determining whether permitting the late filing of claims would cause a debtor prejudice, courts in this district have weighed a number of considerations, including: (1) 'the size of the late claim in relation to the estate;' (2) 'the disruptive effect that the late filing would have on a plan close to completion or upon the economic model upon which the plan was formulated and negotiated;' and (3) 'whether a disclosure statement or plan [of reorganization] has been filed or confirmed with knowledge of the existence of the claim.'" *Diocese of Rockville Centre*, 2023 WL 4497418, at *7 (citing *In re Enron Corp.*, 298 B.R. 513, 525 (Bankr. S.D.N.Y. 2003)). Here, although the size of the six claims at issue may not be large compared to the size of the overall pool of Hair Straightening Claims, setting aside the orderly claim resolution process imposed by the Plan would have a "disruptive effect" on the negotiated, intended operation of the Plan and the claim reconciliation process, on which Debtors relied and on which Revlon's insurers relied in agreeing to take on responsibility for reconciling

Hair Straightening Claims and compensating certain claims. Further, the third prejudice factor favors Reorganized Debtors, because this Court confirmed the Plan roughly a year ago. [Main Case, ECF No. 1746 at 97].

The second *Pioneer* factor considers the length of delay in filing a claim and its potential impact on judicial proceedings. *Diocese of Rockville Centre*, 2023 WL 4497418, at *9. The Second Circuit has held that "'[n]otwithstanding the centrality of bar dates . . . [no] court has established a bright-line rule governing when the lateness of a claim will be considered 'substantial.' Rather, when determining whether to allow a late-filed proof of claim, 'courts generally consider the degree to which, in the context of a particular proceeding, the delay may disrupt the judicial administration of the case.'" *Id.* (quoting *In re Enron Corp.*, 419 F.3d at 128) (internal citations omitted). Where, as here, a chapter 11 plan has been consummated, "courts must exercise 'added caution' in evaluating arguments based on excusable neglect." *In re Motors Liquidation Co.*, 598 B.R. 744, 757 (Bankr. S.D.N.Y. 2019).

First, here, the Court considers the length of time that passed before Claimants sought relief to be substantial, and the Court agrees with the Reorganized Debtors that they will likely face many similar motions or oppositions to objections to untimely claims if the Movants prevail here, thus creating a substantial risk of burdening judicial administration of the estates and draining already limited resources. Courts considering the length-of-delay *Pioneer* factor focus not just on the number of days that a claim is late, but on the stage of the case and the possible impact on the proceedings. *See, e.g., id.* at 757-59 (denying a finding of excusable neglect when the creditor filed its motion after the plan of reorganization was substantially consummated); *In re Dana Corp.*, No. 06-10354, 2008 Bankr. LEXIS 2241, at *15, *19 (Bankr. S.D.N.Y. July 23, 2008) (denying a finding of excusable neglect when the creditor filed its motion after the debtors had emerged from

11

bankruptcy). No Hair Straightening Claimant objected to confirmation of the Debtors' Plan, including the strict timeliness-in-filing requirements it imposed on such claimants for them to be compensated by the estate. [Main Case ECF No. 1751 at 24:15-18]. The Reorganized Debtors have the right to enforce that unchallenged expectation. Setting it aside would disrupt judicial proceedings and all case participants' reasonable reliance on the existing bar date provisions, including the Plan's treatment of Hair Straightening Claims.

Finally, the Court finds that the fourth *Pioneer* factor – the claimant's good faith – does weigh in Claimants' favor. Nothing about a person who developed cancer or another serious illness seeking compensation from a party the individual thinks caused that condition suggests bad faith. Despite this, Claimants' good faith cannot overcome the reality that the three other factors, including the one given the most weight by case law, all favor the Reorganized Debtors' position. *Cf. In re Ditech Holding Corp.*, 2021 WL 3435453, at *6 (Bankr. S.D.N.Y. Aug. 4, 2021) ("Typically, the length of the delay, the danger of prejudice, and the movant's good faith usually weigh in favor of the party seeking the extension.") (internal quotations omitted); *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003) ("In the typical case, the first two *Pioneer* factors will favor the moving party . . . . And rarely in the decided cases is the absence of good faith at issue").

To recap key considerations, first and as the case law instructs is most important, the Court must charge the "reason for the delay" to Claimants because they received notice of the confirmed Plan which explicitly required them to timely file an MDL complaint if they wished to pursue compensation from the estate. This notice satisfied all applicable requirements imposed by the Court, the Bankruptcy Code and Rules, and due process. Further, Claimants sought relief from the timely-filing requirement well after it expired, the bankruptcy case has reached an advanced stage,

and many parties have settled expectations based on the existing bar date provisions. Denying the Objection as to the Claimants' claims likely would complicate, multiply, and extend judicial proceedings to the prejudice of the estate, its creditors, and all who relied on the existing bar date structure and the terms of the confirmed plan.

## CONCLUSION

For the reasons stated above, the Court sustains the Eleventh Omnibus Objection as to Claimants. The Reorganized Debtors shall submit an appropriate proposed order to effectuate this ruling. Claimants' time to appeal will run from entry of that order. So ordered.

Dated: New York, New York
      May 20, 2024

                                            *s/ David S. Jones*
                                            Honorable David S. Jones
                                            United States Bankruptcy Judge