**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

<u>**FOR PUBLICATION**</u>

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| RML, LLC[1] | ) | Case No. 22-10784 (DSJ) |
|  | ) |  |
| Reorganized Debtor. | ) |  |
|  | ) |  |
| Tax I.D. No. N/A | ) |  |
|  | ) |  |

## DECISION ON REORGANIZED DEBTORS' SECOND OMNIBUS MOTION TO ENFORCE THE PLAN INJUNCTION

The motion before the Court arises from the Chapter 11 bankruptcy of Revlon and many affiliated companies ("Revlon"). Revlon describes itself as a world leader in the beauty industry. Before, during, and after its bankruptcy, Revlon made and sold innumerable consumer products, some of which contained talc. As is typical, during the course of the bankruptcy case, this Court imposed a bar date requiring anyone seeking compensation on account of a pre-petition claim against the debtors to file a proof of claim by a certain date. After that date passed, Revlon sought and obtained confirmation of a plan of reorganization that specified the treatment of allowed claims while discharging all associated debts and enjoining further efforts to collect on any claims other than through the distribution process established by the confirmed plan. Revlon's plan is now effective, and Revlon and its associated debtor entities are now termed the Reorganized Debtors, called simply "Revlon" or the "Debtors" in this opinion.

---

[1] On May 30, 2023, the Court entered the *Order (I) Consolidating the Administration of the Remaining Matters at the Remaining Case, (II) Entering a Final Decree Closing the Affiliate Cases, (III) Changing the Case Caption of the Remaining Case, and (IV) Granting Related Relief, In re Revlon, Inc.*, No. 22-10760 (Bankr. S.D.N.Y. May 30, 2023), ECF No. 1920, closing the affiliated chapter 11 cases and directing that all motions, notices, and other pleadings related to any of the affiliated debtors be filed in this case.

Despite the plan's discharge and injunction provisions barring continuing efforts to pursue compensation outside the bankruptcy on account of pre-petition claims, Revlon finds itself a defendant in forty-two lawsuits by individuals (termed "Talc Claimants" by this decision)[2] asserting entitlement to compensation for injury or illness allegedly caused by asbestos-contaminated talc in Revlon products. As explained below, although almost all the claimants at issue report that they were diagnosed after Debtors' plan was confirmed, it nevertheless is undisputed that the claims all arise from pre-bankruptcy exposure to Revlon products that allegedly contained asbestos. The law is clear that, as a result of the pre-bankruptcy alleged causation of the Talc Claimants' asserted injuries, these claims all accrued or arose before Revlon filed its bankruptcy petition.

The Debtors have moved for an order enforcing the discharge and injunction provisions of their plan of reorganization against the Talc Claimants' continuation of their lawsuits against Revlon. The Debtors argue that their Third Amended Joint Plan of Reorganization (the "Plan"), which this Court confirmed on April 3, 2023, extinguished the underlying claims and enjoined any action to collect on them outside of the bankruptcy case.

Certain threshold issues are not in serious dispute but are necessary to the motion's resolution: the Talc Claimants hold claims as that term is defined under the Bankruptcy Code, and, under both the Code and Revlon's Plan, unless some exception exists as to a particular claim, the Plan and the order confirming it discharged those claims and enjoined all non-

---

[2] Caplin & Drysdale, Chartered represents forty Talc Claimants. List of Certain Post-Bankruptcy Talc Claimants, ECF No. 1051-1. There are two additional Talc Claimants. *See* Notice of Obj. to Mot. to Enforce Plan Inj., ECF No. 1052.

bankruptcy collection efforts. Thus, the Talc Claimants can prevail only if they establish some

reason that they are not subject to the generally applicable discharge and injunction of the Plan.

The Talc Claimants raise two main contentions in opposition, both of which the Court

rejects for reasons discussed below. First, they contend that the Bankruptcy Code requires

debtors to employ and satisfy the asbestos-specific provisions of 11 U.S.C. § 524(g) to discharge

asbestos-based products liability claims. Second, they contend that the discharge does not bar

their pursuit of a recovery from the Debtors because the Debtors failed to provide sufficient

notice of the bankruptcy case and/or the claim bar date to satisfy the Constitution's requirement

of due process.

In brief, the Court rejects the Talc Claimants' arguments based on Section 524(g) because

those arguments clash with well-established case law and, most fundamentally, with the statute's

plain language, which is permissive and allows but does not require use of certain mechanisms

for dealing with latent asbestos-related injuries. The Court rejects the Talc Claimants' notice-

based arguments because the Debtors provided notice that meets the recognized requirements of

due process, which among other things authorizes the use of publication notice as to creditors

whose identities are "unknown" to the debtor. The Court accordingly grants Revlon's motion.

<u>BACKGROUND</u>

**A.    Revlon's Bankruptcy, Bar Date, and Confirmed Plan Including Claim
Discharge and Injunction Provisions**

The Debtors filed a voluntary Chapter 11 bankruptcy petition on June 15, 2022. *In re
Revlon, Inc.*, No. 22-10760 (Bankr. S.D.N.Y. June 15, 2022) (the "Main Case"), Petition 4, ECF
No. 1. In papers accompanying the petition, Revlon, which carried substantial corporate debt,

attributed its need for financial relief primarily to an inability to meet its financing costs due to business challenges including decreased sales associated with the COVID-19 pandemic followed by supply chain challenges that hindered Revlon's ability to achieve its full sales and revenue potential. Main Case, Declaration of Robert M. Caruso ¶ 9, ECF No. 30. While not characterizing tort or product liability exposure as driving their need to file for bankruptcy, on their schedules and statements of financial affairs the Debtors listed certain pre-petition court cases in which plaintiffs claimed the Debtors' products tortiously injured them by exposing them to asbestos. *See, e.g.*, Main Case, Revlon, Inc. Stmt. of Fin. Affairs 35, ECF No. 426 (listing, among other cases, *Chamberlain v. Avon Prods., Inc.* and *Kendrick v. Avon Prods. Inc.*); Complaint ¶ 75, *Chamberlain v. Avon Prods., Inc.*, No. GD-22-5532 (Pa. C.P. Allegheny Cnty. May 5, 2022); Complaint ¶¶ 27-28, *Kendrick v. Avon Prods., Inc.*, No. CACE-21-014417 (Fla. Cir. Ct. 17th July 19, 2021).

The Debtors promptly retained Kroll Restructuring Administration LLC as their claims and noticing agent and provided notice of their bankruptcy filing by a number of methods, including notices sent by Kroll to Revlon's lenders, its major unsecured creditors, the U.S. Trustee, and numerous government agencies. Main Case, Order Appointing Kroll Restructuring Administration LLC, ECF No. 66; Main Case, Aff. of Service of Notice of Commencement Ex. A, ECF No. 54. In addition, the Debtors published notice of their bankruptcy case in the *New York Times*. Main Case, Certificate of Publication, June 27, 2022, ECF No. 128.

On August 23, 2022, the Debtors moved for entry of an order "(a) establishing deadlines for creditors to submit (i) proofs of claim and . . . (b) approving the form, manner, and notice thereof." Main Case, Appl. For Entry of an Order Establishing Last Day to File Proofs of Claim 2, ECF No. 536 (the "Bar Date Application"). Those deadlines are the "Bar Dates." *Id.* ¶ 9(d).

In the Bar Date Application, the Debtors stated, "Given the size and scope of the Debtors' businesses, the Debtors have determined that it would be in the best interest of their estates to give notice by publication to certain creditors, including: (i) those creditors to whom no other notice was sent and who are unknown or not reasonably ascertainable by the Debtors, (ii) known creditors with addresses unknown by the Debtors, and (iii) potential creditors with Claims unknown by the Debtors." *Id.* ¶ 25. To that end, the Bar Date Application proposed "to publish notice of the Bar Dates in substantially the form as [an exhibit to the Bar Date Application] in the national editions of the *New York Times* and *USA Today*, and the national edition of the *Globe and Mail* in Canada by no later than September 27, 2022" because "[i]n the Debtors' judgment, publication in widely read national newspapers is likely to reach the largest possible audience of creditors that may not otherwise have notice of these Chapter 11 Cases." *Id.* ¶ 26.

On September 12, 2022, this Court approved the Bar Date Application. Main Case, Order (I) Establishing Deadlines for (A) Submitting Proofs of Claim and (B) Reqs. for Payment Under Bankruptcy Code Section 503(b)(9), (II) Approving the Form, Manner, and Notice Thereof, and (III) Granting Related Relief, ECF No. 688 (the "Bar Date Order"). The Bar Date Order set October 24, 2022 as the "General Bar Date" but also stated the Court would deem timely claims from claimants asserting "a personal injury claim arising from a disease allegedly caused by the exposure to cosmetic talc allegedly contained in the Debtors' products" filed before the date of confirmation of the Debtors' bankruptcy plan if "such disease was diagnosed by a licensed medical doctor for the first time after the Petition Date." *Id.* ¶¶ 4, 6 ("Any such Talc PI Claim filed after the General Bar Date but prior to the confirmation date of a bankruptcy plan, without leave of the Court, shall be deemed timely filed as an unsecured, unliquidated claim."). In the Bar Date Order, the Court approved a form of publication notice (the "Publication Notice") and

"the manner of providing notice of the Bar Dates as described in the [Bar Date] Application." *Id.*
¶¶ 2, 28, Ex. 3 (showing the Publication Notice).

The Publication Notice made no explicit mention of talc or asbestos claimants but did
state that the Bar Date applied to "each person . . . that holds or seeks to assert a claim (as
defined in section 101(5) of the Bankruptcy Code) that arose, or is deemed to have arisen, prior
to the Petition Date . . . no matter how remote or contingent . . . including claims for potential
unmatured injuries." *Id.* Ex. 3. Review of the claims register shows no claimants with names
matching those of the Talc Claimants. The Debtors published the Publication Notice on
September 22, 2022, in *USA Today* and the *New York Times*; they published it the next day in the
*Globe and Mail*. Main Case, Certificate of Publication, Sept. 27, 2022, ECF No. 758.

As the bankruptcy case progressed, the Debtors proposed and sought confirmation of a
plan of reorganization. In their disclosure statement accompanying their proposed plan, the
Debtors explained that, although they believed all future liability claims that may ultimately be
asserted for prepetition use of Revlon talc products were properly dischargeable, they could face
future liability claims on account of talc use and those claims could be "adverse and material" to
the Reorganized Debtors. Main Case, Solicitation Version of Disclosure Statement 179 (Part
XII.A.18), ECF No. 1511. Revlon further explained that it would retain its liability insurance
coverage including with respect to Talc Personal Injury Claims. *Id.* 48 (Part § V.R).

On April 3, 2023, this Court entered an order confirming the Plan. Main Case, Findings
of Fact, Conclusions of Law, and Order Confirming the Third Am. Joint Plan of Reorganization
of Revlon, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, ECF
No. 1746 (the "Confirmation Order"). Under the Confirmation Order, "the distributions, rights,
and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and

release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever . . . whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties," *id.* ¶ 140, and the Confirmation Order enjoined any action to collect on any claims discharged by the Plan, *id.* ¶ 145.

As is undisputed, the Plan does not attempt to employ or satisfy the requirements of 11 U.S.C. § 524(g), which, as discussed below, establishes one available means of providing for and satisfying the entitlements of individuals asserting claims based on pre-petition exposure to asbestos. Among other things, the Plan did not appoint a future claims representative, win approval of 75% of the Talc Personal Injury Claim claimants with respect to each debtor, or create a trust compliant with 11 U.S.C. § 524(g)(4)(B) or 11 U.S.C. § 524(g)(5).

The motion now before the Court presents the key issue of whether the Debtors' decision not to provide for asbestos-related claims using the means established by Section 524(g) limits the effect of the Plan's discharge and injunction on the Talc Claimants.

### B.    The Talc Claimants' Lawsuits and This Motion

After entry of the Confirmation Order, the Talc Claimants sued the Debtors in various courts alleging that the Debtors injured them by exposing them to asbestos-containing talc in the Debtors' products. Second Omnibus Mot. to Enforce Plan Inj. and Confirmation Order (the "Motion") Ex. B, Annex 1, ECF No. 960 (annex titled Table of Noncompliant Pending Actions). The Talc Claimants generally state that they were diagnosed after the confirmation date with illnesses that they assert were caused by pre-petition use of Revlon talc products.

The Debtors have moved for an order enforcing the Plan's injunction against the Talc Claimants, arguing that their lawsuits are impermissible actions to collect on claims that were both discharged by the Plan and subject to the Plan's injunction. *Id.* ¶ 5. The Talc Claimants opposed, contending that the Bar Date Order and Plan injunction do not preclude their suits for two broad reasons: first, that the Debtors' decision not to provide for asbestos-related claims in keeping with 11 U.S.C. § 524(g) renders the discharge and injunction inapplicable to individuals like the Talc Claimants who seek compensation for prepetition exposure to asbestos; and second, that the Debtors provided insufficient notice of the Bar Date such that the Bar Date and subsequent Plan discharge and injunction provisions cannot permissibly apply to the Talc Claimants. *See, e.g.*, Opp'n to Mot., ECF No. 1051 (the "Caplin Opposition").

The Court heard argument on June 27, 2024, and reserved decision. A transcript of the argument appears at ECF No. 1081 (the "Talc Hr'g Tr.").

## DISCUSSION

It is undisputed that "[e]ach of the [Talc Claimants' lawsuits] asserts a claim for alleged damages arising from the use of or exposure to the Debtors' talc products on or prior to June 15, 2022." Motion 20 (Edward P. Abbot Decl. ¶ 5).

In brief and as the parties agree, the Bar Date Order in this case is typical of orders issued in most Chapter 11 cases as a means to permit debtors to identify, challenge or quantify, and plan for the satisfaction of all allowed claims against them. This is a key means of achieving the Bankruptcy Code's objectives of ensuring the orderly and just treatment of creditors while facilitating the reorganization of debtors' affairs.

The Bankruptcy Code further authorizes debtors to propose and courts to confirm plans of reorganization, which must provide for the treatment of claims, 11 U.S.C. § 1123(a), may

provide for the discharge of claims, 11 U.S.C. § 1123(b)(1), and may enjoin all current or future

enforcement or collection efforts on account of claims that are subject to the Plan, *id.* "[T]he

confirmation of a plan discharges the debtor from any debt that arose before the date of such

confirmation . . . whether or not- (i) a proof of the claim based on such debt is filed or deemed

filed under section 501 of this title; (ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan." 11 U.S.C.A. § 1141(d)(1)(A) (West).

Furthermore, "A discharge in a case under this title (1) voids any judgment at any time obtained,

to the extent that such judgment is a determination of the personal liability of the debtor with

respect to any debt discharged under section 727, 944, 1141, 1192, 1228, or 1328 of this title,

whether or not discharge of such debt is waived; [and] (2) operates as an injunction against the

commencement or continuation of an action, the employment of process, or an act, to collect,

recover or offset any such debt as a personal liability of the debtor, whether or not discharge of

such debt is waived." 11 U.S.C.A. § 524(a) (West).

A threshold question here, then, is whether under the Bankruptcy Code the Talc

Claimants held prepetition "claims" against the Debtors. They did. The Bankruptcy Code defines

a "claim" to include any "right to payment, whether or not such right is reduced to judgment,

liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,

equitable, secured, or unsecured." 11 U.S.C.A. § 101(5)(A) (West). Consistent with this broad

definition, "[i]n the context of future asbestos claimants, courts have repeatedly found that

prepetition exposure to asbestos giving rise to a post-petition injury manifesting constitutes a

prepetition claim in bankruptcy." *In re Johns-Manville Corp.*, 552 B.R. 221, 237 (Bankr.

S.D.N.Y. 2016) (citing cases), *aff'd sub nom. Berry v. Graphic Packaging Int'l, Inc. (In re Johns-*

*Manville Corp.)*, 623 B.R. 242 (S.D.N.Y. 2020), *aff'd sub nom. Berry v. Graphic Packaging Int'l*

*(In re Johns-Manville Corp.)*, No. 20-3693-BK, 2022 WL 4487889 (2d Cir. Sept. 28, 2022). Per

the Declaration of Edward P. Abbot, which the Talc Claimants have not challenged, all the Talc

Claimants bring claims "arising from the use of or exposure to the Debtors' talc products on or

prior to June 15, 2022 [the petition date]," Motion 20 (Edward P. Abbot Decl. ¶ 5), making them

prepetition claimants. To the questionable extent the Talc Claimants assert otherwise (they have

not mounted a serious argument on this point), the Court rejects their argument as inconsistent

with the evidence presented in support of the motion, the plain statutory language quoted

immediately above, and case law including *Johns-Manville*.

Thus, the Court turns to the Talc Claimants' two main arguments, which are, respectively,

that the Plan cannot discharge or bar their claims because the Plan does not provide for the

treatment of their claims in keeping with 11 U.S.C. § 524(g), and that their claims are not

extinguished because they received insufficient notice and therefore cannot be bound by the

discharge and injunction consistent with the constitutional requirements of due process.

**Issue 1: 11 U.S.C. § 524(g)**

"[I]nterpretation of the Bankruptcy Code starts where all such inquiries must begin: with the

language of the statute itself." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69 (2011) (internal

quotations omitted).

Congress added Subsection (g) to Section 524 of the Bankruptcy Code in 1994.

Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 111, 108 Stat. 4106 (codified at 11

U.S.C. § 524(g)). The opening text of this subsection reads, "After notice and hearing, a court

that enters an order confirming a plan of reorganization under chapter 11 **may issue**, in

connection with such order, an injunction in accordance with this subsection **to supplement the**

**injunctive effect of a discharge under this section**." 11 U.S.C.A. § 524(g)(1)(A) (West)

(emphasis added). As noted above, Section 524(a) already enjoins any act to collect on a debt

discharged under Section 1141. Section 524(g) goes further and includes a detailed scheme that

meets the special needs of bankruptcy cases in which the debtor faces extensive liability on

account of asbestos-related claims. Such cases often involve an insolvent debtor seeking to

provide for an enormous number of claimants whose illnesses may not manifest for many years;

they also frequently involve claimants' simultaneous and continuing efforts to recover from

solvent non-debtor parties, including insurers. *See, e.g.*, *Parra v. Marsh USA, Inc. (In re Johns-*

*Manville Corp.)*, 551 B.R. 104, 107-13 (S.D.N.Y. 2016).

Section 524(g) uses unmistakably permissive or optional language – *e.g.*, a plan "may"

include such provisions – and nothing in the statute's text terms the provision the exclusive or

mandatory way debtors must treat claims that stem from asbestos exposure. To the extent that

alone were not dispositive, reading Section 524(g) in context with the generally applicable

discharge provisions of Bankruptcy Code Section 1141(d) confirms that Section 524(g) is not the

exclusive means of dealing with asbestos claims for at least two reasons. First, Section 524(g)

refers to itself as available "to supplement the injunctive effect of a discharge under this section,"

11 U.S.C. § 524(g)(1)(A), thus suggesting that the Code's separate discharge provisions remain

applicable and are "supplemented" – not disturbed or eliminated – by the additional relief that

Section 524(g) authorizes. Second, no part of Section 1141(d) carves out any exception to

discharge for asbestos claims or refers to Section § 524(g) as an exclusive or required method of

accomplishing a discharge of asbestos-exposure liability. *See* 11 U.S.C. § 1141(d).

Further, as recently explained by the Supreme Court, at least one main purpose of 11

U.S.C. § 524(g) is to extend the protection of a plan injunction to non-debtors in the narrow

context of asbestos-related cases: "For asbestos-related bankruptcies—and only for such

bankruptcies—Congress has provided that, '[n]otwithstanding' the usual rule that a debtor's

discharge does not affect the liabilities of others on that same debt, [11 U.S.C.] § 524(e), courts

may issue 'an injunction ... bar[ring] any action directed against a third party' under certain

statutorily specified circumstances." *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071, 2085

(2024) (quoting 11 U.S.C. § 524(g)).

In keeping with the statute's permissive and non-mandatory text, none of the cases cited

by the Talc Claimants hold the use of 11 U.S.C. § 524(g) to be mandatory for debtors to obtain

the discharge of prepetition asbestos claims against them. One decision refers to itself as "a

cautionary tale for debtors attempting to circumvent § 524(g)," but nowhere holds that the debtor

needed to structure its bankruptcy plan using Section 524(g) to discharge asbestos claims. *In re

Energy Future Holdings Corp*, 949 F.3d 806, 825 (3d Cir. 2020). Another does not rule on an

asbestos-related claim at all, rendering its remarks on Section 524(g) dicta. *See Morgan Olson

L.L.C. v. Frederico (In re Grumman Olson Indus., Inc.)*, 467 B.R. 694, 697-99 (S.D.N.Y. 2012).

The remaining cases cited by the Talc Claimants address whether third parties who did

not file for bankruptcy nevertheless may secure non-consensual releases from a bankruptcy case

in which they were not a debtor. *See Parra*, 551 B.R. at 120-124 (S.D.N.Y. 2016); *Deutsche

Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d

136, 142-43 (2d Cir. 2005); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 237 & n.50 (3d Cir.

2004), *as amended* (Feb. 23, 2005). By contrast, the Talc Claimants now before this Court assert

claims against the Debtors in this case, not against non-debtor parties who never filed for

bankruptcy. The third-party release cases that the Talc Claimants cite do not rule or even shed

light on the question of whether *debtors* must use the provisions of 11 U.S.C. § 524(g) if they wish to obtain a discharge of *their own* asbestos-related liabilities.

Meanwhile, the Debtors point out that the Second Circuit has rejected the argument that the lack of a future claims representative, which the Talc Claimants assert the Bankruptcy Code and due process require, amounted to a denial of due process as to a claimant who brought an asbestos-liability claim against a debtor that had gone through bankruptcy. *See Berry*, 2022 WL 4487889, at *3 ("Mr. Berry argues that because the MFP bankruptcy lacked a Future Claims Representative ("FCR"), Mrs. Berry was denied due process. But he is unable to cite any binding decision in which a court has held that a FCR is *necessary* to comport with constitutional due process. . . . We thus conclude that Mrs. Berry received constitutionally adequate due process.").

Having reviewed the unmistakably non-mandatory and discretion-conferring text of 11 U.S.C. § 524(g) along with its express provision for channeling injunctions protecting non-debtor parties as a means of resolving potentially sweeping asbestos-related claims, and having studied relevant case law including that cited by the parties, the Court concludes that that Section 524(g) does not affect the ability of a debtor in bankruptcy to obtain a discharge from asbestos-related liability through a plan that does not employ the means established by Section 524(g). Rather, that provision supplements other available relief, including by authorizing resolution of asbestos liability that extends to non-debtor third parties in ways that the Code otherwise would not allow. This conclusion is reinforced by the Supreme Court's recent *Purdue Pharma* decision: "We do not read § 524(g) to 'impair' or 'modify' authority previously available to courts in bankruptcy." 144 S. Ct. at 2085 n.5. Thus, Section 524(g) does not override or defeat a debtor's ability to secure a discharge of asbestos-related liabilities *as against the debtor* under the more general provisions of 11 U.S.C. §§ 1141(d)(1)(A), 524(a).

**Issue 2: Notice**

The Talc Claimants further argue that ineffective notice deprives the Plan of the power to discharge their claims. *See* Caplin Opposition ¶ 24 ("[T]he Debtors' notice program was wholly insufficient. Accordingly, enforcement of a discharge against those claimants would be unconstitutional.").

There is no real factual dispute about what steps the Debtors took to provide notice of the relevant bar date, which the parties appear to agree was, for purposes of this motion, the key event for which notice was required. Having obtained Court approval to do so, the Debtors published their general bar date notice in national editions of the *New York Times*, *USA Today*, and Canada's *Globe and Mail*. Main Case, Certificate of Publication, Sept. 27, 2022, ECF No. 758. That notice stated that all persons holding claims "no matter how remote or contingent such right to payment or equitable remedy may be (including claims for potential unmatured injuries), with certain limited exceptions as set forth in the Bar Date Order, **MUST FILE A PROOF OF CLAIM** on or before 5:00 p.m., prevailing Eastern Time, on October 24, 2022 (the 'General Bar Date')." Bar Date Order Ex. 3 (emphasis in original). It further advised that "**ANY PERSON OR ENTITY THAT IS REQUIRED TO FILE A PROOF OF CLAIM IN THESE CHAPTER 11 CASES WITH RESPECT TO A PARTICULAR CLAIM AGAINST THE DEBTORS, BUT THAT FAILS TO DO SO PROPERLY BY THE APPLICABLE BAR DATE, SHALL BE FOREVER BARRED, ESTOPPED AND ENJOINED FROM: (A) ASSERTING SUCH CLAIM AGAINST THE DEBTORS AND THEIR ESTATES** . . . ." *Id.* (emphasis in original). As the Debtors acknowledge, the Publication Notice did not include or specifically reference the words "asbestos" or "talc," and it did not include any more detailed information or guidance directed specifically to talc or asbestos claimants. *See id.*

14

The Debtors also published notice of their confirmation hearing in the *New York Times*, *USA Today*, and Canada's *Globe and Mail*. Main Case, Certificate of Publication, Mar. 14, 2023, ECF No. 1601. That notice stated that "[i]f confirmed, the Plan shall bind all Holders of Claims" but that Talc Personal Injury Claims against non-debtors would remain unaffected. *See id.*

As a general rule, to bind any holder of a claim against a debtor, a debtor's bankruptcy plan must provide that creditor with "notice sufficient to satisfy due process," *Daewoo Int'l (Am.) Corp. Creditor Tr. v. SSTS Am. Corp.*, No. 02 CIV. 9629 (NRB), 2003 WL 21355214, at *3 (S.D.N.Y. June 11, 2003), and a discharge and plan injunction enforcing a bar date do not extinguish the claim of a creditor who did not receive sufficient notice. *Grant v. U.S. Home Corp. (In re U.S.H. Corp. of N.Y.)*, 223 B.R. 654, 658 (Bankr. S.D.N.Y. 1998) ("Thus, if a creditor is not given reasonable notice of the bankruptcy proceeding and the relevant bar dates, its claim cannot be constitutionally discharged."). As a general matter, due process requirements are met when a debtor provides "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Waterman S.S. Corp. v. Aguiar (In re Waterman S.S. Corp.)*, 157 B.R. 220, 221 (S.D.N.Y. 1993) (quoting *Mullane v. Central Hanover Bank & Tr. Co.,* 339 U.S. 306, 314 (1950)).

"[W]hat constitutes 'reasonable notice' principally depends on the status of the parties and whether the creditor is a 'known' creditor or an 'unknown' creditor. While actual notice is required if the creditor is a 'known' creditor, constructive notice is sufficient where a creditor is 'unknown.'" *DePippo v. Kmart Corp.*, 335 B.R. 290, 295–96 (S.D.N.Y. 2005) (further citations omitted). "This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more

adequate warning. Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 317 (1950) (further citations omitted); *see also, e.g.*, *DePippo*, 335 B.R. at 296 (quoting *id.*).

Extensive case law defines "known" and "unknown" creditors in the bankruptcy context. A "'known' creditor is one whose identity is either known or 'reasonably ascertainable by the debtor.'" *DePippo*, 335 B.R. at 296 (citing *Tulsa Pro. Collection Servs., Inc. v. Pope*, 485 U.S. 478, 490 (1988)). "A creditor's identity is 'reasonably ascertainable' if that creditor can be identified through 'reasonably diligent efforts.'" *Id.* (quoting *Grant*, 223 B.R. at 659). "Reasonable diligence does not require 'impracticable and extended searches . . . in the name of due process.'" *Grant*, 223 B.R. at 659 (quoting *Mullane*, 339 U.S. at 317-18). "The requisite search instead focuses on the debtor's own books and records. Efforts beyond a careful examination of these documents are generally not required." *Id.*

The burden of proving inadequate notice lies with the party contending that a plan's discharge or injunction does not apply – here, the Talc Claimants. *In re Chemtura Corp.*, No. 09-11233 (JLG), 2016 WL 11651714, at *8 (Bankr. S.D.N.Y. Nov. 23, 2016) ("As the parties challenging enforcement of the Discharge Injunction, the Benzene Claimants bear the burden of proving that it does not bar their actions." (citing *Waterman S.S. Corp. v. Aguiar (In re Waterman S.S. Corp.)*, 200 B.R. 770, 774-75 (Bankr. S.D.N.Y. 1996))). None of the Talc Claimants filed their lawsuits against the Debtors before the Debtors filed bankruptcy, and the Talc Claimants admit they are unknown creditors for purposes of due process. *See* Motion Ex. B, Annex 1; Talc

16

Hr'g Tr. 44:4-7. The Talc Claimants also do not dispute that they at most had the right to

publication notice. Talc Hr'g Tr. 44:19-20.

The Talc Claimants argue, however, that the published notices the Debtors gave failed to

satisfy due process requirements, largely because the bar date notice did not mention talc at all.

*See* Caplin Opposition ¶¶ 26-29, 35.[3] The Talc Claimants point out that cases cited by the

Debtors in which debtors exerted themselves to provide notice to specific groups of potential

toxic-tort plaintiffs provide little support to the Debtors in this case, because the Debtors made

no such effort with respect to the Talc Claimants and persons in their position. *Compare* Bar Date

Application ¶¶ 25-26 *and* Bar Date Order ¶ 2 *and id.* Ex. 3 (nowhere mentioning talc or asbestos)

*with* In re Energy Future Holdings Corp*, 949 F.3d 806, 823 (3d Cir. 2020)* (discussing extensive

efforts to give notice to potential asbestos claimants) *and* Transcript of Hearing at 26:21-28:20,

*In re Chemtura Corp.*, No. 09-11233 (JLG) (Bankr. S.D.N.Y. Jan. 31, 2013) (ECF No. 5818).

However, those cases did not hold that due process required such exertions. *See* In re Energy

Future Holdings Corp*, 949 F.3d at 822–23* (holding debtors' extensive noticing program

sufficient to satisfy due process, but nowhere holding a program of such extent necessary);

Gabauer v. Chemtura Corp. (In re Chemtura Corp.)*, 505 B.R. 427, 431 (S.D.N.Y. 2014)* (same).

Furthermore, as a practical matter, it is unclear what sort of targeted or more-focused messaging

the Debtors could have achieved with respect to the Talc Claimants and persons in their position,

and the Talc Claimants have suggested no method for doing so. Further, well-reasoned precedent

---

[3] It is unclear to the Court whether the Talc Claimants assert that they were given insufficient notice of the
bankruptcy case itself, as opposed to the bar date. Any claim of insufficient notice of the bankruptcy case would fail.
As noted, the Debtors served a large group of creditors with specific notice of the bankruptcy case and provided
publication notice of the bankruptcy case. Main Case, Aff. of Service of Notice of Commencement Ex. A, ECF No.
54; Main Case, Certificate of Publication, June 27, 2022, ECF No. 128. The acknowledged reality that the Talc
Claimants were unknown creditors means that publication notice of the bankruptcy case is all that was required, and,
for the same reasons discussed as to the bar date notice, the publication notice provided here met all applicable
requirements as to notice of the case itself, including those of due process.

from outside this circuit explicitly holds such efforts unnecessary. *Williams v. Placid Oil Co. (In re Placid Oil Co.)*, 753 F.3d 151, 158 (5th Cir. 2014) ("We have never required bar date notices to contain information about specific potential claims. To the contrary, we have determined that publication in the national edition of the *Wall Street Journal* discharges the pre-confirmation claims of unknown creditors."); *Chemetron Corp. v. Jones*, 72 F.3d 341, 348 (3d Cir. 1995) ("It is impracticable . . . to expect a debtor to publish notice in every newspaper a possible unknown creditor may read.") (internal quotations omitted).

Meanwhile, of the numerous cases that the parties cite, the Court concludes that *In re Chemtura Corp.*, No. 09-11233 (JLG), 2016 WL 11651714 (Bankr. S.D.N.Y. Nov. 23, 2016), presents facts most like those here. That case involved claims brought by unknown creditors who suffered from prepetition exposure to benzene in the debtors' products. *In re Chemtura Corp.*, 2016 WL 11651714, at *5-7. In that case, the claimants argued that lack of notice prevented the confirmed bankruptcy plan from discharging their claims because, among other things, the debtors' published bar date notice did not mention benzene. *Id.* at *14. Furthermore, in that case, the debtors' publication process made no effort to target users of the debtors' products, although it did target localities where the debtors had faced environmental contamination and workplace-exposure toxic tort claims. *Id.* at *3, *14. The debtors published their general bar date notice in the *New York Times* and *USA Today*, stating that "[a]cts or omissions that occurred before March 18, 2009 may give rise to Claims that are subject to the Bar Date, even if the Claims *may not have become known or fixed or liquidated until after March 18, 2009*." *Id.* at *15 (quoting *In re Chemtura Corp.*, No. 09-11233 (Bankr. S.D.N.Y. Aug. 21, 2009) (order granting motion to approve setting a bar date)) (emphasis in text of quoted decision). That notice also "advised unknown creditors that the failure to file a proof of claim by the Bar Date would result in the

18

claim being 'FOREVER BARRED.'" *Id.* (quoting *In re Chemtura Corp.*, No. 09-11233 (Bankr. S.D.N.Y. Aug. 21, 2009) (order granting motion to approve setting a bar date) (capitalized text in internally quoted notice)).

In such circumstances, which are much like those here, the *Chemtura* court ruled that "The Bar Date notice contained more than adequate information and language that placed parties on notice of the opportunity to assert claims (and even potential claims) against the Debtors (including the Debtors' predecessors) by the Bar Date, and was disseminated to different geographical regions of the country intended to maximize the reach of unknown creditors, such as the Benzene Claimants." *Id.* So the Court concludes here: the bar date notice did not specify talc claimants as among its intended audience, but it described the claims covered in broad terms that clearly encompassed the Talc Claimants, stating that all persons holding claims "no matter how remote or contingent such right to payment or equitable remedy may be (including claims for potential unmatured injuries)" were obliged to file a timely claim or be forever barred from collecting from the Debtors. Bar Date Order Ex. 3. Effective and sufficient notice required nothing more.

Other cases cited by the Talc Claimants do not better support their position. They cite one case that observed that "[a] creditor who is notified of the bankruptcy but not of his claim is in the same position as a creditor who has notice of his claim, but not of the bankruptcy." *Acevedo v. Van Dorn Plastic Mach. Co.*, 68 B.R. 495, 499 (Bankr. E.D.N.Y. 1986) (allowing claim to proceed). However, in *Acevedo*, a non-debtor worker sued a non-debtor manufacturer for a products-liability tort arising from an injury caused by a machine in the plaintiff's workplace, and the defendant asserted a claim against the plaintiff-worker's employer, the reorganized debtor, for indemnity and contribution. *Id.* at 496–97. As the injury occurred prepetition and on

the premises of the future debtor, for whom the plaintiff worked as an employee, *see id.*, a diligent search of the debtor's books and records would be much more likely to have revealed that accident and any potential claims exposure the debtor would have faced than a search of Revlon's books and records would have been to reveal the Talc Claimants, who were mere consumers of Revlon products and whose apparently still-latent injuries were not practicably identifiable by Revlon. The toxic-products-exposure facts of *Chemtura* fit this case better than the workplace-injury situation in *Acevedo*.

The Talc Claimants also argue that if a claimant could not have predicted the effect of a notice when they received it, the notice cannot satisfy due process. *See Johns-Manville Corp. v. Chubb Indem. Ins. (In re Johns-Manville Corp.), 600 F.3d 135, 157 (2d Cir. 2010)* ("In order to comprehend that the contemplated channeling injunction would bar Chubb's *in personam,* non-derivative claims against Travelers, the recipient of this Notice would have to predict that the bankruptcy court would exceed its *in rem* jurisdiction in entering the 1986 Orders. Such a recipient would also have to be presumed to know—or to be able to discern from the 1984 Notice document—the factual extent of Travelers' relationship with Manville, which ultimately served as the lynchpin of the bankruptcy court's 2004 interpretation of the 1986 Orders."). In that case, the Second Circuit concluded that Chubb, an insurer of the bankrupt Johns-Manville Corporation, lacked notice that 1986 orders of the bankruptcy court barred Chubb from bringing contribution and indemnity claims against co-insurer Travelers Insurance with respect to "statutory direct actions" and "common law direct actions" asserted by asbestos claimants against Chubb when no asbestos claimants had raised those two theories of liability at the time of the entry of the 1986 orders. *Id.*; *see also id.* at 158 (describing Chubb's claims against Travelers as "unimaginable" at the time of the entry of the 1986 orders). By contrast, here, the plain

language of the Publication Notice explained that all claims against the Debtors, "no matter how remote or contingent . . . including claims for potential unmatured injuries," needed to be filed by the appropriate bar date. Bar Date Order Ex. 3. The Publication Notice thus precisely describes the Talc Claimants' claims against Revlon, which amount to typical asbestos-exposure claims that either had or had not manifested in illness and that flowed from use of Revlon products. This reality negates any comparison with the logical leap Chubb would have needed to make to comprehend the notice at issue in *In re Johns-Manville Corp.*

Two opinions in the Waterman Steamship Corporation bankruptcy case also do not tip the balance in favor of the Talc Claimants. The Bankruptcy Court held that "no future Asbestosis Claimant could be deemed to have relinquished substantive rights when, even if that individual had read the 'notice,' those individuals would have remained completely unaware that their substantive rights were affected." *Waterman S.S. Corp. v. Aguiar (In re Waterman S.S. Corp.),* 141 B.R. 552, 558 (Bankr. S.D.N.Y. 1992), *vacated* 157 B.R. 220 (S.D.N.Y. 1993). The District Court vacated the Bankruptcy Court's holding but stated that the Bankruptcy Court's logic should stand as to claimants who had not manifested symptoms of asbestos-related diseases at the time of notice. *Waterman S.S. Corp. v. Aguiar (In re Waterman S.S. Corp.),* 157 B.R. 220, 222 (S.D.N.Y. 1993). However, the Bankruptcy Court ruled for the claimants in that case on the basis that the claimants counted as known creditors. *Waterman S.S. Corp.,* 141 B.R. at 558 ("Of the 'tens of thousands' of Waterman employees, Waterman knew other employees were exposed to asbestos, yet never listed them on its schedules, or amended its schedules to include this contingent class of claimants. We find that Waterman knew other non-settling former employees had contingent claims in the form of unmanifested asbestos-related diseases prior to confirmation. Thus, Asbestosis Claimants were known creditors entitled to actual notice."). The

decisions in *In re Waterman S.S. Corp.* had some reason to classify the asbestos claimants as known claimants or otherwise conclude that the debtor had some higher duty towards them, because, despite lacking records of them, the debtor had employed each one of them and presumably understood that its workforce constituted a high-risk group. *See id.* at 554, 558. By contrast, and contrary to the express finding of *Waterman S.S. Corp.*, in the case now before the Court the Talc Claimants' counsel conceded at hearing that the Talc Claimants belong to the set of Revlon's unknown creditors. Talc Hr'g Tr. 44:4-20. Furthermore, the Talc Claimants do not allege, and nothing in the record suggests, that the Debtors could have known about either the claimants' identities or the extent of asbestos exposure the Talc Claimants faced from the Debtors' products to the same degree that the *Waterman S.S. Corp.* debtors knew about the exposure of their workforce to asbestos on their ships. For these reasons, the *In re Waterman S.S. Corp.* cases are inapposite.

Lastly, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), is inapposite for two reasons. First, the Supreme Court in *Amchem* declined to rest its ruling on the question of notice. 521 U.S. at 628 ("Because we have concluded that the class in this case cannot satisfy the requirements of common issue predominance and adequacy of representation, we need not rule, definitively, on the notice given here."). Second, *Amchem* is a class-action case, not a bankruptcy case, which affects the notice analysis a court performs. *See In re Chemtura Corp.*, 2016 WL 11651714, at *14 ("However, *Amchem* was a class action case, not a bankruptcy case. . . . [I]t is inappropriate to apply the subjective notice standards under class action law in evaluating the adequacy of a bar date notice in a bankruptcy case."); *In re Johns-Manville Corp.*, 552 B.R. 221, 244 (Bankr. S.D.N.Y. 2016) ("Notice in a bankruptcy case is not for the purpose of allowing a creditor to retain the right to sue the debtor at a later time. The discharge created by the

Bankruptcy Code permanently enjoins any right to sue on a prepetition claim. The reasoning in *Amchem* simply does not apply here."), *aff'd sub nom. Berry v. Graphic Packaging Int'l, Inc. (In re Johns-Manville Corp.)*, 623 B.R. 242 (S.D.N.Y. 2020), *aff'd sub nom. Berry v. Graphic Packaging Int'l (In re Johns-Manville Corp.)*, No. 20-3693-BK, 2022 WL 4487889 (2d Cir. Sept. 28, 2022). *Stephenson v. Dow Chem. Co.*, 273 F.3d 249 (2d Cir. 2001), is inapposite for the same reasons. As the Second Circuit has recognized, *in rem* proceedings conducted by bankruptcy courts have due process standards different from those in *in personam* class action proceedings. *Johns-Manville Corp. v. Chubb Indem. Ins. (In re Johns-Manville Corp.)*, 600 F.3d 135, 154 (2d Cir. 2010) ("But, because the 1986 Orders purport to bind Chubb's *in personam* claims, the better due process analogy in terms of notice and representation principles is to class action settlements, not *in rem* bankruptcy proceedings.").

The Court thus concludes that the weight of the law favors the Debtors and that the Talc Claimants have failed to carry their burden of showing the Debtors provided inadequate notice.

<u>**CONCLUSION**</u>

For the reasons stated above, the Court grants the Second Omnibus Motion to Enforce the Plan Injunction and Confirmation Order. The Debtors shall submit an appropriate proposed order to effectuate this ruling. The Talc Claimants' time to appeal will run from entry of that order. It is so ordered.

Dated: New York, New York
       August 12, 2024

                                        *s/ David S. Jones*
                                        Honorable David S. Jones
                                        United States Bankruptcy Judge