# <u>Exhibit A</u>

## Declaration of Keith McKenna

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| RML, LLC[1] | ) | Case No. 22-10784 (DSJ) |
| Reorganized Debtor. | ) | |
| Tax I.D. No. N/A | ) | |

**DECLARATION OF KEITH MCKENNA IN CONNECTION WITH REORGANIZED DEBTORS' MOTION TO ENFORCE THE PLAN AND CONFIRMATION ORDER**

I, Keith McKenna, declare under penalty of perjury:

1. I am an attorney at Cohen Ziffer Frenchman & McKenna LLP ("Cohen Ziffer"), a law firm with its principal offices at 1325 Avenue of the Americas, New York, NY 10019. I am a member in good standing of the Bar of the State of New York and admitted to practice in this Court.

2. Cohen Ziffer has served as coverage counsel for the Debtors and Reorganized Debtors for more than three years.

3. I respectfully submit this declaration in connection with the Reorganized Debtors' *Motion to Enforce the Plan and Confirmation Order* (the "Motion"),[2] filed concurrently herewith.

---

1 On May 30, 2023, the Court entered the *Order (I) Consolidating Remaining Matters Under the Remaining Case, (II) Entering Final Decree Closing Certain of the Chapter 11 Cases, (III) Changing the Case Caption of the Remaining Case, and (IV) Granting Related Relief*, *In re Revlon, Inc., et al.*, No. 22-10760 (DSJ) [Docket No. 1920], closing the affiliated chapter 11 cases and directing that all motions, notices, and other pleadings related to any of the affiliated debtors be filed in this case. Items filed on the docket of *In re RML, LLC*, shall be identified as "RML Docket No. [●]." The location of RML, LLC's service address for purposes of these Chapter 11 Cases is: 55 Water St., 43rd Floor, New York, NY 10041-0004.

2 Capitalized terms used herein but not otherwise defined shall have the meanings given to such terms in the Motion.

4. Attached hereto are true and correct copies of the following documents referenced in the Motion:

a) **Exhibit 1** is a true and correct copy of the August 14, 2023 letter from Lisa E. Chonarzewski of Zurich American Insurance Company to Seth Fier of Revlon setting forth Zurich's coverage position concerning the Hair Straightening MDL, together with its enclosures, Tab A (schedule of Zurich primary policies), Tab B (summary of policy terms), and Tab C (table of tendered suits and policies).[3]

b) **Exhibit 2** is a true and correct copy of the September 7, 2023 letter from Keith McKenna of Cohen Ziffer Frenchman & McKenna LLP to Lisa E. Chonarzewski of Zurich American Insurance Company responding to Zurich's August 14, 2023 coverage position letter concerning the Hair Straightening MDL.

c) **Exhibit 3** is a true and correct copy of the December 8, 2023 letter from Keith McKenna of Cohen Ziffer Frenchman & McKenna LLP to Gabriel E. Darwick of Coughlin Midlige & Garland LLP responding to Zurich's coverage position concerning the Hair Straightening MDL.

d) **Exhibit 4** is a true and correct copy of the September 2, 2025 letter from Keith McKenna of Cohen Ziffer Frenchman & McKenna LLP to Gabriel E. Darwick of White and Williams LLP responding to Zurich's coverage correspondence concerning the Hair Straightening MDL, including defense obligations, deductibles, and allocation of defense costs.

e) **Exhibit 5** is a true and correct copy of the July 31, 2026 email from Keith McKenna of Cohen Ziffer Frenchman & McKenna LLP to Gabriel E. Darwick of White and Williams LLP (attachments omitted).

f) **Exhibit 5.A** is a true and correct copy of the first two tabs of the spreadsheet attachment to the July 31, 2026 email from Keith McKenna of Cohen Ziffer Frenchman & McKenna LLP to Gabriel E. Darwick of White and Williams LLP.[4]

g) **Exhibit 6** is a true and correct copy of the September 4, 2026 letter from Gabriel E. Darwick of White and Williams LLP to Keith McKenna responding on behalf of Zurich to the September 2, 2025 letter and July 31, 2026 email.

---

[3] The letter incorrectly states that only eighteen rather than nineteen policies were issued from July 1, 2004 through July 1, 2023.

[4] Exhibit 5.A is an excerpted version of the spreadsheet containing relevant summary tabs only. Tabs containing detailed and voluminous backup information have been omitted but were provided to Zurich with the July 31, 2026 email.

h) **Exhibit 7** is a true and correct copy of the Zurich American Insurance Company commercial general liability policy issued to MacAndrews & Forbes Holdings, Inc., Policy No. GLO 3737031-10, for the policy period July 1, 2014 through July 1, 2015, including its coverage forms and endorsements.

i) **Exhibit 8** is a true and correct copy of the Zurich American Insurance Company commercial general liability policy issued to MacAndrews & Forbes Incorporated, Policy No. GLO 3737031-14, for the policy period July 1, 2018 through July 1, 2019, including its coverage forms and endorsements.

5. Revlon first provided notice of Hair Straightening Claimants' bodily injury claims to Zurich on March 14, 2023.

6. To date, the Reorganized Debtors have incurred costs and expenses defending the claims of Hair Straightening Claimants in the Hair Straightening MDL totaling more than [redacted] More than [redacted] of those defense costs consists of General Defense Costs incurred through June 2026.

7. Despite numerous requests by Revlon over the course of more than three years, Zurich has refused to pay anything toward the Reorganized Debtors' defense costs for the Hair Straightening MDL.

8. As of the date of the Motion, over 5,000 actions against the Debtors and Reorganized Debtors remain pending in the Hair Straightening MDL. Many of the plaintiffs in those actions allege use of hair straightening products spanning more than three decades. For more than three years, the Reorganized Debtors have actively defended those actions through fact and expert discovery, bellwether selection, motion practice, depositions, case-specific investigation, settlement evaluation, and trial preparation in the Hair Straightening MDL. In addition, the Reorganized Debtors have expended significant resources defending against Hair Straightening Claims in this Court, which has resulted in the dismissal of tens of thousands of claims against the Reorganized Debtors. These efforts have required substantial legal, financial, and operational resources as the reorganized enterprise has sought to stabilize operations after emergence.

9. The Hair Straightening MDL is currently focused on eight bellwether claims against the Debtors, and the defense costs unique to each such claim exceed $100,000.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: October 6, 2026

*/s/ Keith McKenna*
Name: Keith McKenna
Title: Partner
Cohen Ziffer Frenchman & McKenna LLP

**Exhibit 1**

**August 14, 2023 Letter**

ZURICH

Lisa E. Chonarzewski, AVP
Latent & Environmental Claims
Direct: (847) 330-1117
Lisa.Chonarzewski@zurichna.com

August 14, 2023

**VIA EMAIL ONLY to Seth.Fier@revlon.com**

Seth Fier, Esq.
Deputy General Counsel
REVLON
55 Water Street, 43rd Floor
New York, New York 10041

**Re: Revlon Hair Straightener MDL Litigation**
Claim No.: 9120132027
Insureds: Revlon Inc. and Revlon Consumer Products Corp.

Dear Mr. Fier:

**Latent & Environmental Claims**
1299 Steadfast Way
Schaumburg, IL 60196-1056
USA

Phone 847.605.6155

Revlon Inc. and Revlon Consumer Products Corp. (collectively "Revlon") have tendered their defense and indemnity to Zurich American Insurance Company for several lawsuits filed in the above-referenced litigation ("MDL") under eighteen consecutive annual commercial general liability policies issued to Revlon and/or its parent company, MacAndrews & Forbes, Inc. ("M&F"), incepting on July 1, 2004 and expiring on July 1, 2023 ("ZAIC Policies")[1]. Zurich anticipates that Revlon will be named in many other hair straightener lawsuits over the coming months. For efficiency purposes, Zurich proposes that this coverage position letter serve to set forth Zurich's position on all hair straightener and relaxer litigations unless and until it issues a supplemental or amended position letter. As new suits are tendered, Zurich will respond by identifying those suits it will defend or not and under which policies. For the suits that have been tendered, Zurich identifies on TAB C which suits it will defend and under which policies. Zurich's defense of those suits is subject to a reservation of rights set forth below.

[1] Revlon has also requested coverage under certain high level excess policies allegedly issued by Zurich Reinsurance Company Ltd., formerly Zurich International (Bermuda) Ltd., including policy numbers ZIB-72, 571-85-C, ZIB-72, 572-85-C and ZIB-72, 603-85-C. To the extent Revlon has located complete copies of such alleged policies, please provide copies at your earliest convenience. Zurich reserves all rights with respect to such alleged policies and waives none.

## I. CLAIM BACKGROUND

### A. Hair Straightener Claims

Beginning in the fall of 2022, claimants began to file lawsuits against various beauty companies alleging that they suffered injuries from the use of straighteners and relaxers. Revlon, Inc. and Revlon Consumer Products Corporation (collectively "Revlon") had declared bankruptcy months earlier and thus were immune from suit at the time. Since Revlon has emerged from bankruptcy, it has been named as a defendant in over twenty lawsuits, identified on TAB C.

Rather than describe the allegations in each complaint, we will focus on the allegations more generally because they are either typically redundant or at least substantially similar. The complaints generally allege that the defendants manufactured, sold, or distributed hair relaxers and straighteners that contain hormonally active and carcinogenic compounds, such as phthalates, parabens, bisphenol A (BPA), cyclosiloxanes and diethanolamine, but the packaging does not identify these chemicals as being in the product. All of these products allegedly included endocrine disrupting chemicals (EDCs). According to the complaints, EDCs interfere with the normal activity of the endocrine system and thus interfere with the body's hormonal homeostasis in various ways. EDCs are allegedly linked to numerous adverse health outcomes, including uterine cancer and breast cancer. Many of the claimants allege that their use of hair straighteners and/or relaxers resulted in these cancers or in other diseases or injuries, such as fibroids.

The complaints include a variety of causes of action, but typically assert strict liability claims premised on failure to warn, design and manufacturing defect, and breach of express and implied warranty. They also regularly assert negligence, gross negligence, and negligent misrepresentation, as well as fraud, fraudulent concealment, and violation of a particular state's deceptive trade practices act. In the fraud causes of action, some complaints allege that the Defendants, without specifying who, knew or should have known that the products were not safe to use given their increased risk of uterine and breast cancer. Nevertheless, the Defendants falsely represented that they were safe.

In February 2023, the judicial panel on multidistrict litigation agreed to consolidate all pending and future hair straightener litigations in the United States District Court for the Northern District of Illinois, under Case 1:23-cv-00818. Three months later, in May 2023, the claimants filed a master long form bodily injury complaint, naming the following entities as defendants: L'Oreal USA, Inc., L'Oreal USA Products, Inc., Soft Sheen Carson LLC, Revlon, Inc., Revlon Consumer Products Corporation, Strength of Nature, LLC,

Godrej SON Holdings, Inc., Dabur International Ltd., Dabur International USA Ltd., Namaste Laboratories, LLC, Demoviva Skin Essentials, Inc., AFAM Concept, Inc. d/b/a JF Labs, Inc., Parfum de Coeur, Ltd. d/b/a/ PDC Brands, McBridge Research Laboratories, Inc., Avlon Industries, Beauty Bell Enterprises, LLC d/b/a/ House of Cheatham, Luster Products, Inc., Sally Beauty Holdings d/b/a Silk Elements. The Master Complaint states that it is not intended to consolidate for any purpose the separate claims of the plaintiffs, but that an individual plaintiff may adopt the Master Complaint and the causes of action herein through the use of a separate Master Short Form Complaint for Individual Claims. The sample Short Form Complaint permits a plaintiff to identify which products were used, when they used those products, the types of injuries suffered and the dates of diagnosis. To date, Revlon has not tendered any short form complaints to Zurich.

The Master Complaint is similar to the individual complaints that we generally described above. It alleges that the defendants manufactured, sold, distributed, advertised and promoted toxic hair relaxer products that caused the plaintiffs to develop cancers and other injuries. The Master Complaint alleges that the defendants hair products include EDCs that consist of phthalates, parabens, cyclosiloxanes, di-(2-ethylhexyl), octamethylcyclotetrasiloxane, lye, and formaldehyde. The Master Complaint alleges that certain EDCs are present in the hair products under the guise of “fragrance” and “perfumes.” The Master Complaint further alleges that none of the defendants identified these EDCs on their labels. According to the Master Complaint, studies have determined that women who used hair relaxers had an increased risk of developing certain cancers, like uterine and ovarian cancer.

The Master Complaint asserts the following causes of action (1) Negligence and/or Gross Negligence; (2) Negligent Misrepresentation; (3) Negligence *Per Se*; (4) Strict Liability: Design Defect; (5) Strict Liability: Failure to Warn; (6) Breach of Implied Warranty of Merchantability/Fitness for a Particular Use; (7) Breach of Express Warranty under state law and the Magnuson-Moss Warranty Act; (8) Fraud/Fraudulent Misrepresentation; (9) Fraudulent Concealment; (10) U.S. State and Territory Statutory Consumer Protection and Unfair or Deceptive Trade Practices Claims; (11) Unjust Enrichment; (12) Wrongful Death; (13) Survival Action; (14) Loss of Consortium; and (15) Punitive Damages.

We will not address each of these causes of action. But generally speaking, the Master Complaint alleges that the defendants owed a duty of reasonable care to the plaintiffs in the manufacturing, designing, researching, testing, producing, supplying, inspecting, marketing, labeling, packaging, selling, and distributing hair relaxer products, including the duty to warn plaintiffs and other consumers of the risks and dangerous associated with these products. The Master Complaint alleges that the defendants knew or should

have known that there were safety risks associated with their product and that the representations they were making about their safety was not accurate. It further alleges the defendants breached their duty of care because they knew the products had EDCs that significantly increased the risk of cancer and other negative health conditions and failed to guard against this risk by a variety of alleged negligent conduct.

With respect to the fraud causes of action, the Master Complaint alleges that the defendants knowingly, falsely, deceptively and inaccurately designed and represented that their hair relaxer products were safe, with the intent to mislead and deceive consumers including the plaintiffs. It further alleges that the defendants willfully and intentionally failed to disclose and concealed material facts and made false representations regarding the dangers and safety concerns of their hair relaxer products.

The unjust enrichment cause of action alleges that "[a]s an intended and expected result of their conscious wronging set forth in this Complaint, Defendants have profited and benefited from payments Plaintiffs and other consumers made for their hair relaxer products." It further alleges that the Defendants are obligated to pay restitution of their wrongful revenues, profits and benefits because that conduct.

The Master Complaint seeks compensatory and punitive damages, monetary restitution, medical monitoring and equitable relief.

Recently, Revlon served interrogatories identifying those hair straighteners or relaxers that were manufactured by or for Revlon and marketed and sold by Revlon. They include the following product lines: Crème of Nature, Fabulaxer, Revlon Realistic, African Pride, French Perm, Revlon Professional, Herba Rich and All Ways Natural. These products are the same as those identified in the Confirmation Plan as being subject to the Hair Straightener Claims.

**B. Revlon Corporation Transactions**

By purchase and sale agreement dated February 18, 2000, Revlon sold its ethnic hair straightening and relaxing products to Beauty Care Professional Products Luxembourgh, S.a.r.l ("Beauty Care"), which sale appears to have included the following brands: Crème of Nature, African Pride, Fabulaxer, French Perm, Revlon Realistic, Revlon Professional, All Ways Natural and Herba Rich.

In or around 2009, either Roux Laboratories or Beauty Care sold the African Pride line of products to Strength of Nature, LLC.

In 2012, Revlon, as licensor, entered into a license agreement with Sectrim Limited, as licensee, for the Revlon Realistic line. This agreement granted Sectrim the exclusive, nontransferable right to manufacture, market and sell the Realistic line in the United States and throughout the world.

In October 2013, Revlon acquired The Colomer Group ("TCG"), and with it, the Crème of Nature, Fabulaxer, French Perm, Revlon Realistic, Revlon Professional, All Ways Natural and Herba Rich line of products.

## II. THE ZURICH POLICIES

Zurich has considered whether defense and indemnity is available to Revlon in connection with the tendered litigations identified on TAB C under commercial general liability policies incepting on July 1, 2004 and expiring on July 1, 2023 ("ZAIC"). We list the policies in TAB A and identify the relevant terms, conditions and exclusions in Tab B. For the purposes of this letter, Zurich will utilize the terms, conditions and exclusions in policy number GLO 3737031-09, effective July 1, 2014 to July 1, 2015, except where stated otherwise. These terms are the same or are substantially similar to the terms in the other ZAIC Policies. We nevertheless encourage you to review the full terms of the ZAIC Policies.

## III. COVERAGE POSITION

### A. Zurich Will Defend Revlon Under a Reservation of Rights

Under the ZAIC Policies, Zurich has a duty to defend lawsuits alleging damages because of "bodily injury" that "occurs during the policy period" and which is caused by an "occurrence." Based on the allegations in the complaints, Zurich will agree to defend Revlon under those policies in effect when a claimant allegedly used a Revlon hair straightener or relaxer, subject to the reservations of rights set forth below. Conversely, Zurich has no duty to defend under those policies in effect when a claimant did not allegedly use a Revlon hair straightener or relaxer. We identify on Tab C which lawsuits tendered to Zurich it will participate in the defense of Revlon and under which policies.

*First*, Zurich reserves its right to deny a duty to defend and indemnify Revlon under Mods 0 – 08 of the ZAIC Policies (GLO 3737031-00 – 08) on the ground that Revlon did not manufacture, distribute or sell any of the brands implicated by the MDL during those policy periods. The ZAIC Policies provide coverage for "those damages that the insured becomes legally obligated to pay as damages because of 'bodily injury'…to which this insurance applies." The insurance applies only to "bodily injury" that "occurs during the policy period" and is caused by an "occurrence." The complaints filed in the

MDL and the yet to be served short form complaints, allege that the claimants were exposed to Crème of Nature, African Pride, Fabulaxer, French Perm, Revlon Realistic, Revlon Professional, All Ways Natural or Herba Rich. Based on the available information, Revlon did not manufacture, distribute or sell these products during the July 1, 2004 to July 1, 2013 policy periods (Mods 0-08). To the extent claimants seek and/or recover damages because of "bodily injury" occurring during the July 1, 2004 to July 1, 2013 period because of exposure to those products during that period, such damages are not covered by the ZAIC Policies. Accordingly, Zurich reserves its right to deny any duty to defend and indemnify Revlon for those alleged bodily injuries. Please immediately tender Revlon's defense and indemnity to Beauty Care and Beauty Care/TCG's insurers on the risk during the relevant timeframe.

*Second,* Zurich reserves its right to deny a duty to defend and indemnify Revlon under Mods 08 – 18 of the ZAIC Policies (GLO 3737031-08 – 18) for those complaints alleging bodily injury in those policy periods because of exposure to Revlon Realistic during those policy periods on the ground that Revlon did not manufacture, distribute or sell that product between 2012 and present. Certain of the complaints filed in the MDL and yet to be served short form complaints allege that a claimant was exposed to Revlon Realistic. Based on the available information, Sectrim Limited and/or its parent, affiliate or subsidiary companies manufactured, distributed, and sold that line of products between late 2012 and present. To the extent claimants seek and/or recover damages because of bodily injury occurring during the time Revlon Realistic was licensed to Sectrim because of exposure to Revlon Realistic during that period, such damages are not covered by the ZAIC Policies. Accordingly, Zurich reserves its right to deny any duty to defend and indemnify Revlon for those alleged bodily injuries. Please immediately tender Revlon's defense and indemnity to Sectrim and Sectrim's insurers on the risk during the relevant timeframe.

*Third*, Zurich reserves its rights to deny a duty to defend and indemnify Revlon under Mods 0 – 18 of the ZAIC Policies (GLO 3737031-00 –18) for those complaints alleging bodily injury in those policy periods because of exposure to African Pride during those policy periods on the ground that Revlon did not manufacture, distribute or sell that product at any point while Zurich insured Revlon. Certain of the complaints filed in the MDL and yet to be served short form complaints allege that a claimant was exposed to African Pride. Based on the information available, Revlon sold African Pride in 2000 and did not re-acquire it. To the extent claimants seek and/or recover damages because of bodily injury occurring during the July 1, 2004 to July 1, 2023 period because of exposure to African Pride during that period, such damages are not covered by the ZAIC Policies. Accordingly, Zurich reserves its right to deny any duty to defend and indemnify Revlon for those alleged bodily injuries. Please immediately tender Revlon's defense and indemnity to Sectrim and Sectrim's insurers on the risk during the relevant timeframe

and to Strength of Nature and Strength of Nature's insurers on the risk during the relevant timeframe.

**B. Insured Status**

Revlon has not explicitly tendered the defense and indemnity of Revlon Group Holdings LLC ("RGH") to Zurich, although that entity is named as a defendant in several of the complaints. RGG is not a named insured under the ZAIC Policies. Based on publicly available information, RGH was incorporated on April 12, 2023. Since it did not exist before that date, it does not qualify as an insured under any of the ZAIC Policies with the potential exception of Mod 18. Mod 18 includes a Broad Form Named Insured – Including Joint Ventures Endorsement that will confer named insured coverage in certain circumstances. Please advise of RGH's relationship to Revlon so that we can evaluate whether RGH is entitled to coverage under Mod 18.

**C. The Number of Occurrences and Applicable Deductible Obligations**

Based on the allegations in the complaints, it is Zurich's view that each claimant's continued and repeated exposure to the allegedly dangerous chemicals in hair straighteners and relaxers in multiple policy periods constitutes at least one occurrence per policy period.

Each ZAIC Policy is subject to a $100,000 deductible per occurrence, with no aggregate, and each deductible endorsement requires Revlon to pay allocated loss adjustment expense (ALAE), either on a pro rata basis, within the deductible amount, or outside limits. ALAE includes attorney's fees and expenses.

Given the foregoing, Zurich believes the most efficient method to allocate costs among the deductibles is to allocate defense costs by claimant and then pro rata to each policy period triggered by that claimant's allegations. It is therefore critical that defense counsel and Revlon open a separate file per claimant and that counsel bill claimant specific costs by claimant.

For those costs that cannot be allocated to a specific claimant, Zurich proposes that the costs be billed to a general file and, at the close of each quarter, the costs will be allocated among all claimants.

**D. Other Reservation of Rights**

Zurich further reserves its rights in connection with any and all hair straightener lawsuits filed against Revlon on the following grounds:

- No coverage is available unless a claimant suffered "bodily injury" or "property damage" during the policy period;
- No coverage is available unless a claimant suffered "bodily injury" or "property damage" caused by an "occurrence;"
- The Expected or Intended Injury Exclusion may preclude coverage;
- The Contractual Liability exclusion may preclude coverage;
- No coverage is available for punitive damages;
- No coverage is available for voluntary payments;
- Trigger of coverage; and
- The other insurance clause.

## IV. <u>SELECTION OF COUNSEL</u>

Under the ZAIC Policies, Zurich has the right and duty to defend suits seeking damages to which the insurance applies. With this comes the right to select defense counsel. As a courtesy to a valued partner, Zurich provided Revlon with the opportunity to interview the attorneys from the law firm Cozen O'Connor, counsel selected by Zurich to defend Revlon. That interview went forward on July 20, 2023. Cozen O'Connor attorneys John McDonough, Patrick Sardino and Janet Davies explained their credentials, thoroughly addressed Revlon's questions and demonstrated without question that they are right fit for this matter. Having not heard any objections during that call or in the weeks since, Zurich is moving forward with Cozen O'Connor as counsel for Revlon. Please have Revlon' current counsel, Paul, Weiss, execute the necessary change of attorney forms and provide Cozen O'Connor with their file.

## V. <u>CONCLUSION AND REQUEST FOR INFORMATION</u>

The foregoing sets forth Zurich's coverage position at present based on presently available information in connection with the hair straightener claims and will serve as Zurich's overall position for all tendered lawsuits until such time as a supplemental or amended coverage position letter may be issued. As suits are tendered, Zurich will issue brief letters with tables that identify the suits for which Zurich will or will not participate in Revlon's defense and under which policies.

To effectively defend this matter, we also require your assistance in obtaining additional information and in taking certain actions. Our requests are as follows:

1. Provide the purchase agreement for Revlon's acquisition of TCG, with all addenda, schedules and exhibits;

2. Clarify whether Revlon sold the Realistic and Professional lines of products to Beauty Care;

3. Provide copies of all commercial general liability policies issued to or providing coverage to TCG and/or Beauty Care between 2000 and July 1, 2013;

4. To the extent not already done, immediately tender Revlon's defense and indemnity to Beauty Care and it and/or TCG's insurers on the risk during the 2000 to 2012 time period;

5. Provide copies of all commercial general liability policies issued to Sectrim between 2012 and present;

6. To the extent not already done, immediately tender Revlon's defense and indemnity to Sectrim and Sectrim's insurers on the risk from 2012 to present;

7. Provide the agreement through which Strength of Nature acquired African Pride, with all addenda, schedules and exhibits;

8. Provide copies of all commercial general liability policies issued to Strength of Nature between 2009 and present;

9. To the extent not already done, immediately tender Revlon's defense and indemnity to Strength of Nature and Strength of Nature's insurers on the risk from 20109 to present;

10. Provide all policy and carrier contact information for all primary, umbrella and excess policies insuring Revlon for the period 1970 to present. If you have a policy chart or spreadsheet that contains this information, that would be helpful as well.

Zurich does not waive the right to raise other facts, terms, conditions, and/or exclusions that may become applicable to the claims presented as they become known to Zurich.

Zurich does not intend to limit or waive its position and to the contrary, specifically reserves its rights to rely on other bases to deny or limit coverage, whether those bases relate to facts or policy language, at some future date if and when appropriate. Along the same lines, should Revlon come into the possession of any new or additional information at any time that it believes would affect Zurich's coverage position, please submit said information for our review and consideration.

If you believe Zurich's coverage position is incorrect or incomplete at this time, either factually or legally, please provide us with information that supports that belief. Upon receipt of that information, Zurich will review its coverage position and revise that position, if warranted.

Please do not hesitate to contact the undersigned if you have any questions regarding this letter.

Kind regards,
ZURICH AMERICAN INSURANCE COMPANY

Lisa E. Chonarzewski

Lisa E. Chonarzewski
AVP | Latent & Environmental Claims
Zurich North America
1299 Zurich Way
Schaumburg, Illinois 60196
847.330.1117
lisa.chonarzewski@zurichna.com

cc: Alexandra Gerber (Alexandra.Gerber@Revlon.com)
Keith McKenna (KMcKenna@CohenZiffer.com)
Jillian Raines (JRaines@CohenZiffer.com)
Susan LaBar (SLaBar@Lockton.com)
Caren Huminski (Caren.Huminski@Lockton.com)

# TAB A

| MOD | Policy No. | Issuing Company | First Named Insured | Effective Dates | Limits | SIR/Deductible |
|---|---|---|---|---|---|---|
| 00 | GLO 3737031-00 | Zurich American Insurance Company | MAFCO Holdings Inc. | 07/01/04-07/01/05 | $1M occ/$4M agg | $100K occ. Deductible (ALAE pro rata) |
| 01 | GLO 3737031-01 | Zurich American Insurance Company | MacAndrews & Forbes Holdings, Inc. | 7/01/05-7/01/06 | $1M occ/$4M agg | 100K occ. Deductible (ALAE pro rata) |
| 02 | GLO 3737031-02 | Zurich American Insurance Company | MacAndrews & Forbes Holdings, Inc. | 7/01/06-7/01/07 | $1M occ/$4M agg | 100K occ. Deductible (ALAE pro rata) |
| 03 | GLO 3737031-03 | Zurich American Insurance Company | MacAndrews & Forbes Holdings, Inc | 7/1/07-7/1/08 | $1M occ/$4M agg | 100K occ. Deductible (ALAE pro rata) |
| 04 | GLO 3737031-04 | Zurich American Insurance Company | MacAndrews & Forbes Holdings, Inc | 7/1/08-7/1/09 | $1M occ/$4M agg | 100K occ. Deductible (ALAE pro rata) |
| 05 | GLO 3737031-05 | Zurich American Insurance Company | MacAndrews & Forbes Holdings, Inc | 7/1/09-7/1/10 | $1M occ/$4M agg | 100K occ. Deductible (ALAE pro rata) |
| 06 | GLO 3737031-06 | Zurich American Insurance Company | MacAndrews & Forbes Holdings, Inc | 7/1/10-7/1/11 | $1M occ/$4M agg | 100K occ. Deductible (ALAE pro rata) |
| 07 | GLO 3737031-07 | Zurich American Insurance Company | MacAndrews & Forbes Holdings, Inc | 7/1/11-7/1/12 | $1M occ/$4M agg | 100K occ. Deductible (ALAE pro rata) |
| 08 | GLO 3737031-08 | Zurich American Insurance Company | MacAndrews & Forbes Holdings, Inc | 7/1/12-7/1/13 | $1M occ/$4M agg | 100K occ. Deductible (ALAE pro rata) |

| MOD | Policy No. | Issuing Company | First Named Insured | Effective Dates | Limits | SIR/Deductible |
|---|---|---|---|---|---|---|
| 09 | GLO 3737031-09 | Zurich American Insurance Company | MacAndrews & Forbes Holdings, Inc | 7/1/13-7/1/14 | $1M occ/$4M agg | 100K occ. Deductible (ALAE pro rata) |
| 10 | GLO 3737031-10 | Zurich American Insurance Company | MacAndrews & Forbes Holdings, Inc | 7/1/14-7/1/15 | $1M occ/$4M agg | 100K occ. Deductible (ALAE within deductible) |
| 11 | GLO 3737031-11 | Zurich American Insurance Company | MacAndrews & Forbes Inc | 7/1/15-7/1/16 | $1M occ/$4M agg | 100K occ. Deductible (ALAE within deductible) |
| 12 | GLO 3737031-12 | Zurich American Insurance Company | MacAndrews & Forbes Inc | 7/1/16-7/1/17 | $1M occ/$4M agg | 100K occ. Deductible (ALAE within deductible) |
| 13 | GLO 3737031-13 | Zurich American Insurance Company | MacAndrews & Forbes Inc | 7/1/17-7/1/18 | $2M occ/$4M agg | 100K occ. Deductible (ALAE within deductible) |
| 14 | GLO 3737031-14 | Zurich American Insurance Company | MacAndrews & Forbes Inc | 7/1/18-7/1/19 | $2M occ/$4M agg | 100K occ. Deductible (ALAE within deductible) |
| 15 | GLO 3737031-15 | Zurich American Insurance Company | MacAndrews & Forbes Inc | 7/1/19-7/1/20 | $2M occ/$4M agg | 100K occ. Deductible (ALAE within deductible) |
| 16 | GLO 3737031-16 | Zurich American Insurance Company | MacAndrews & Forbes Holdings, Inc. | 7/1/20-7/1/21 | $2M occ/$4M agg | 100K occ. Deductible (ALAE within deductible) |

Confidential \ Non Personal Data

| MOD | Policy No. | Issuing Company | First Named Insured | Effective Dates | Limits | SIR/Deductible |
|---|---|---|---|---|---|---|
| 17 | GLO 3737031-17 | Zurich American Insurance Company | MacAndrews & Forbes Holdings, Inc. | 7/1/21-7/1/22 | $2M occ/$4M agg | 100K occ. Deductible (ALAE insured's responsibility |
| 18 | GLO 3737031-18 | Zurich American Insurance Company | Revlon, Inc.[1] | 7/1/22-7/1/23 | $2M occ/$4M agg | 100K occ. Deductible (ALAE insured's responsibility) |

[1] By endorsement effective May 2, 2023, the first named insured was changed to Revlon Group Holdings LLC.

Confidential \ Non Personal Data

# TAB B

In this TAB B we refer to the terms and conditions in the commercial general liability policy issued to McAndrews & Forbes Holdings, Inc. under policy number GLO 3737031-10, for the policy period of July 1, 2014 to July 2015 (the "2014 Zurich Primary Policy"), except where stated otherwise.

The 2014 Zurich Primary Policy's insuring agreement states:

> **SECTION I – COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages…
>
> . . .
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> **(2)** The "bodily injury" or "property damage" occurs during the policy period; and
>
> **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.
>
> **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed

under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d**. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

The 2014 Zurich Primary Policy includes a Broad Form Named Insured Endorsement, which provides:

> McAndrews & Forbes Holdings, Inc., it's predecessors, if McAndrews & Forbes Holdings, Inc. has assumed their liability by contract, and any and all of its subsidiaries, divisions, associated and/or affiliated companies in a line of corporate succession now existing or hereafter created or acquired, and their financially controlled or actively managed organizations or undertakings, and any other organization, entity or person, including partnerships and joint ventures which they have agreed to insure.
>
> It is intended by the above that coverage be included for liability of the named insured as a result of an interest in any organization or undertaking, and any restriction of coverage pertaining to partnerships or joint ventures is deleted.

The 2014 Zurich Primary Policy includes the following relevant exclusions:

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement;…

Section IV., Conditions, provides:

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

. . .

The 2014 Zurich Primary Policy includes the following relevant definitions:

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death resulting from bodily injury, sickness or disease.[1]

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**16.** "Products-completed operations hazard":

[1] As amended, by endorsement. The 2020 Zurich Primary Policy (GLO 0235498-03) amends this definition to mean, "bodily injury, sickness or disease sustained by a person This includes mental anguish, mental injury, shock, fright or death resulting from bodily injury, sickness or disease."

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work"…

. . .

**21.** "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

…

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

…

The 2014 Zurich Primary Policy includes a Deductible Endorsement. Under that Endorsement, there is a $100,000 per occurrence deductible and, for Allocated Loss Adjustment Expense, Option 3 is selected. Option 3 states: "[a]s respectes each "occurrence", each "claim" or each "accident *(as applicable)*, "ALAE" is reimbursed and included in the Deductible Amount.[2]

The Endorsement further states in part:

A. How This *(These)* Deductible(s) Apply(ies);

You agree to reimburse us for each "occurrence", each "claim" or each "accident up to the Deductible amount shown in the Schedule above:

1. All sums payable for other than "ALAE"; plus

[2] Some other ZAIC Policies treat ALAE differently and have different terms. Please review those endorsements.

2. All “allocated loss adjustment expense” as respect each “occurrence”, “claim” or “accident”:

   a. When you have elected Option 1 in the Schedule above, in addition to and not limited by the deductible amount, or

   b. When you have elected Option 2 in the Schedule above, in addition to but not limited by the deductible amount if sums payable for other than “ALAE” are equal to or less than the deductible amount; or a prorate share of total “ALAE” if the sums payable for other than “ALAE” exceed the deductible amount, or

   c. When you have elected Option 3 in the Schedule above, as part of the deductible amount.

***

C. Definitions:

1. Each “Occurrence” means:

   For any coverage described in the Schedule to which the each “occurrence” basis applies, to all sums payable for other than “ALAE” as the result of an accident, including continuous or repeated exposure to substantially the same harmful conditions, “regardless of the number of persons or organizations who sustain damages or to whom sums are payable because of that “occurrence.”

***

4. “Allocated loss adjustment expense” is an expense directly allocable to a specific claim and shall include but not be limited to all Supplementary Payments as defined under the Policy; all court costs, fees and expenses; costs of all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution; interest; investigation services, non-employee adjusters, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation, and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or loss under the Policy. “Allocated loss adjustment expense” shall not include the fees, charges or costs of a third party administrator engaged to provide claim service or related services.

# TAB C[1]

| Claimant | Product | Exposure Period | Date of Diagnosis | Duty to Defend | Policies |
|---|---|---|---|---|---|
| Brown, Chejuan | African Pride, Crème of Nature | Unknown | 1/2020 | Yes | GLO 3737031-00 – 16 |
| Burns, Kassanda | Crème of Nature | 1986-2017 | 9/2017 | Yes | GLO 3737031-00 – 13 |
| Chatman, Davida | Crème of Nature, Revlon Professional | 1982-2019 | 2019 | Yes | GLO 3737031-00 – 15 |
| Crump, Anita | Crème of Nature | 1971-2018 | 2018 | Yes | GLO 3737031-00 - 14 |
| Davis, Irene | Crème of Nature, Revlon Professional | 1971-2018 | 2018 | Yes | GLO 3737031-00 - 14 |
| Drumm, Martha | Crème of Nature | 1985-2021 | 6/2021 | Yes | GLO 3737031-00 – 16 |
| Dugan, Kristen | African Pride | 1990-2005 | 2005 | Yes | GLO 3737031-00 – 01 |
| Freeman, Tijuana | Crème of Nature, African Pride | 1974- | 7/2020 | Yes | GLO 3737031-00 – 16 |
| Gentry, Tracy | Crème of Nature | 1982-2006 | 2/2006 | Yes | GLO 3737031-00 - 01 |
| Goodwin, Sharmia | African Pride | 1985-2009 | 2009 | Yes | GLO 3737031-00 - 05 |
| Gorham, Theodora | Revlon, Crème of Nature, African Pride | 1971-2020 | 7/2020 | Yes | GLO 3737031-00 – 16 |
| Hagwood, Harris | Crème of Nature, Revlon Professional | 1971-2015 | 6/2015 | Yes | GLO 3737031-00 – 10 |

[1] Tab A does not include the seventeen new complaints filed in the MDL that were recently tendered to Zurich on 8/9/23 and which Zurich is in the process of evaluating. Zurich reserves all rights with respect to such Complaints and waives none.

| | | | | | |
|---|---|---|---|---|---|
| Hasan, Khalilah | Revlon | 1971-2020 | 2/2020 | Yes | GLO 3737031-00 – 15 |
| Hendrix, Gillian | No product | 1975- | 8/2021 | Yes | GLO 3737031-00 – 17 |
| Johnson, Alicia | African Pride, Crème of Nature | 1985-2015 | 6/2022 | Yes | GLO 3737031-00 - 11 |
| Johnson-Salaam, Zakiyyah | Crème of Nature | 1971-2020 | 2020 | Yes | GLO 3737031-00 - 16 |
| Myesha, Jones | Revlon | 1991-2011 | 2011 | Yes | GLO 3737031-00 - 07 |
| May, Dorothy | Crème of Nature | 1982-2016 | 2022 | Yes | GLO 3737031-00-12 |
| McConnell, Evelyn | Revlon | 1971-2010 | 8/2010 | Yes | GLO 3737031-00 - 06 |
| McFarlane, Dianna | Crème of Nature | 1989-1992 | 9/2020 | No | |
| Miles, Gloria | Crème of Nature, African Pride | 1978-2017 | 2017 | Yes | GLO 3737031-09 - 13 |
| Montgomery, Cheryl | African Pride, Crème of Nature | Unknown | 7/22/2021 | Yes | GLO 3737031-00 – 17 |
| Mouhon, Robin | Crème of Nature, Revlon Professional | 1984-2021 | 7/2021 | Yes | GLO 3737031-00 – 17 |
| Murray, Lakesha | Crème of Nature | 1984-2013 | 6/2012 | Yes | GLO 3737031-00 - 07 |
| Pace, Tamara | African Pride | 1998-2015 | 2015 | Yes | GLO 3737031-00 - 11 |
| Patterson, Veronica | African Pride, Crème of Nature | 2000- | 8/2020 | Yes | GLO 3737031-00 – 16 |
| Phillips, Maurisa | African Pride, Crème of Nature | Unknown | 9/2020 | Yes | GLO 3737031-00 – 16 |

| | | | | | |
|---|---|---|---|---|---|
| Pierre-Louis, Brenda | Crème of Nature, Revlon Realistic | 1978-2021 | 4/2021 | Yes | GLO 3737031-00 - 16 |
| Reaves, Colleen | African Pride, Crème of Nature | -2023 | 3/2023 | Yes | GLO 3737031-00 – 18 |
| Speed, Carmilla | African Pride, Crème of Nature | 1975-1979 | 1979 | No | |
| Sudduth, Shondra | African Pride | 1996-2021 | 5/2021 | Yes | GLO 3737031-00 - 16 |
| Watkins, Shanna | African Pride | 1990-2021 | 5/2021 | Yes | GLO 3737031-00 - 16 |

Confidential \ Non Personal Data

# <u>Exhibit 2</u>

## September 7, 2023 Letter

COHEN
ZIFFER
FRENCHMAN
& MCKENNA

**Keith McKenna**
212.584.1830 D
kmckenna@cohenziffer.com

1325 Avenue of the Americas
New York, NY 10019

212.584.1890 P
212.584.1891 F

September 7, 2023

**VIA EMAIL**

Zurich American Insurance Company
c/o Lisa E. Chonarzewski, AVP Latent & Environmental Claims
1299 Zurich Way
Schaumburg, Illinois 60196
lisa.chonarzewski@zurichna.com

**RE:** ***In Re: Hair Relaxer Marketing Sales Practices and Products Liability Litigation*, No. 1:23-cv-00818 (the "Hair Relaxer Litigation") – Revlon's Response to Zurich's August 14, 2023 Coverage Position Letter**

Dear Ms. Chonarzewski:

As you know, we represent Revlon and its subsidiaries as coverage counsel with respect to the above-referenced matter. This letter responds to your August 14, 2023 letter on behalf of Zurich American Insurance Company ("Zurich"), in which Zurich sets forth various disclaimers to coverage and otherwise reserves all rights (the "ROR"). We address below several of Zurich's coverage positions that are particularly without merit and request that Zurich confirm that it will revise those positions. Our focus on these particular issues, however, does not mean that Revlon necessarily agrees with other positions that Zurich has taken regarding coverage for the Hair Relaxer Litigation. Your letter is lengthy and takes numerous positions regarding coverage for the Hair Relaxer Litigation. To the extent that this letter does not specifically respond to certain of Zurich's reservations, that does not mean and should not be construed as agreement with or acceptance of any positions taken by Zurich. To the contrary, on behalf of all insureds, Revlon reserves all rights under the ZAIC Policies,[1] pursuant to applicable law, and in equity. We also note that Revlon's other primary insurers have not yet issued coverage positions respecting the Hair Relaxer Litigation, and thus Revlon reserves all rights to supplement the positions set out herein as further information becomes available.

[1] Capitalized terms used herein have the same meaning as set forth in the ROR, unless separately defined.

## I. Zurich's "Trigger of Coverage" and "Number of Occurrences" Positions are Without Merit, and Zurich Fails To Acknowledge Its Policy Language Supports "All Sums" Allocation

One of the most concerning positions repeated throughout the ROR is Zurich's contention that coverage is not triggered under several ZAIC policy periods based on when Revlon purportedly manufactured, distributed, or sold various hair straightener or hair relaxer products.[2] In sum, Zurich appears to assert that Revlon's manufacture, distribution, or sale date of a given hair straightener or hair relaxer product is the appropriate "trigger" date to determine which ZAIC Policy periods of coverage apply. This is not how occurrence-based commercial general liability insurance works. The manufacture, distribution, or sale of the subject products during a policy period is irrelevant. Rather, it is the occurrence of bodily injury during a subject policy period that triggers coverage. *See, e.g.*, Zurich Policy No. GLO 3737031-10 (the 2014 Zurich Primary Policy) at § I.1(a) (Zurich will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies."); *id.* at § I.1(b)(2) (recognizing coverage applies if "[t]he 'bodily injury' occurs during the policy period").[3] Accordingly, the ZAIC Policies provide no support for Zurich's blanket contention that it may avoid coverage altogether for exposures during policy periods when Revlon allegedly did not manufacture, distribute, or sell certain of the subject products. As addressed further below, such contention also misstates (or disregards) Revlon's actual corporate chronology and hair relaxer or straightener product history. We request that Zurich withdraw this position.

Equally concerning are Zurich's conclusory contentions as to the number of occurrences and the methodology that should be used to allocate of costs among Zurich's policies—both of which lack any principled basis and find no support under the ZAIC Policies or applicable law. Initially, Zurich posits that "each claimant's continued and repeated exposure . . . in multiple policy periods constitutes ***at least one*** occurrence per policy period." ROR at 7 (emphasis added). But Zurich provides no rationale to support the finding of multiple occurrences per claimant under any applicable ZAIC Policy period, let alone any legal support for such a blanket claim. At most, each claimant's exposure to Revlon hair relaxer products would constitute a single occurrence.

Zurich then suggests that a "pro rata" allocation should apply under the guise of both "efficiency" and acknowledgement of its defense participation. *Id.* This argument, too, lacks support under the plain language of the ZAIC Policies and well-established law. Specifically, Zurich suggests that costs should be allocated "by claimant and then ***pro rata*** to each policy period triggered by that claimant's allegations." *Id.* (emphasis added). Tab C then purports to

---

[2] *See* ROR at 5 (reserving rights to deny "on the ground that Revlon did not manufacture, distribute or sell any of the brands implicated by the MDL" during the policy periods beginning July 1, 2004 and expiring July 1, 2013); *id.* at 6 (alleging no coverage for exposure to Revlon Realistic from 2012 to present "on the ground that Revlon did not manufacture, distribute or sell that product between 2012 and present"); *id.* (alleging no coverage for exposure to African Pride during the July 1, 2004 to July 1, 2023 period because "Revlon sold African Pride in 2000 and did not re-acquire it").

[3] Revlon generally references the 2014 Zurich Primary Policy as an exemplar of the ZAIC Policies' terms and conditions. Although Zurich accurately identified this 2014 Zurich Policy by its policy number in Tab B, Zurich misidentified the policy number as GLO 3737031-09 in its ROR. *See* ROR at 5.

identify, by claimant, which such ZAIC Policy periods are triggered for purposes of Zurich's duty to defend. But Zurich's desire for a "pro rata" allocation, like its position on the number of occurrences, reflects nothing more than a transparent attempt to inappropriately shift as much exposure as possible to Revlon through application of multiple $100,000 deductibles.[4] And critically, the ZAIC Policies directly refute application of a "pro rata" allocation in this case.

Indeed, where insurance policies contain provisions recognizing that they cover continuing injuries that take place both inside and outside the policy period—like the continuing coverage and non-cumulation provisions in the ZAIC Policies at issue here—courts apply an "all sums" allocation methodology, not a "pro rata" allocation methodology. *In re Viking Pump, Inc.*, 52 N.E.3d 1144, 1146, 1156 (N.Y. 2016); *see also, e.g.*, 2014 Primary Policy at § I.1.c (absent prior knowledge, "bodily injury" during the policy period "includes any continuation, change or resumption of that 'bodily injury' . . . after the end of the policy period"); Policy No. GLO 3737031-12 (the "2016 Primary Policy") at Two Or More Of Our Policies Endorsement. Under the applicable "all sums" allocation methodology, the insured may allocate all costs incurred in connection with an occurrence to *any* policy in effect during the periods of injury or damage. *Viking Pump*, 52 N.E.3d at 1149. Accordingly, Revlon may allocate all defense and settlement costs incurred in connection with an occurrence to *any* triggered ZAIC Policy year, and we request that Zurich acknowledge this fact.[5]

Notwithstanding Revlon's clear entitlement to an "all sums" allocation under the ZAIC Policies, we also note that there are other insurance companies and insurance policies that provide coverage to Revlon for the Hair Relaxer Litigation, and Revlon has not received coverage positions from the majority of these other insurance companies. Nor has Revlon received responses to its requests for all applicable policies, including copies of all ZAIC Policies. Thus, Revlon presently reserves all rights to allocate coverage for the Hair Relaxer Litigation under one or more of the applicable ZAIC Policies, including but not limited to those identified in Tab C, after it has been provided with all of the relevant information necessary to make such an election.[6]

In the interim, however, Zurich must correct Tab C, which, without basis or explanation, omits several complaints for which Revlon tendered notice to Zurich and other insurers even *prior* to August 9, 2023. *See* Enclosure A (identifying those complaints tendered before August

---

[4] Zurich's attempts to shift all defense exposure to Revlon via multiple deductibles also illustrates existing conflicts of interest and Revlon's right to independent defense counsel, which is addressed in my separate correspondence to Zurich dated August 22, 2023, and which will not be rehashed here.

[5] Allocating intertwined defense costs also presents challenges given that the Hair Relaxer Litigation implicates a multi-district litigation and consolidated class claims interconnected with various claimants' proofs of claim filed in connection with Revlon's bankruptcy proceeding. Revlon presently reserves all rights accordingly.

[6] Although Zurich does not provide any source of support for its conclusions reflected in Tab C, it appears that Tab C is based on Zurich's review of initial pleadings, including alleged (albeit unconfirmed) "exposure periods" and "dates of diagnosis." Revlon reserves all rights with respect to Zurich's conclusions summarized in Tab C, including without limitation to the extent Zurich fails to capture the applicable policy periods based on present or future allegations, claimants, product usage and/or frequency, and alleged latency periods.

9, 2023 and missing from Tab C).[7] Accordingly, Zurich must acknowledge its defense obligation with respect to the complaints listed in Enclosure A, as well as those provided by Revlon since August 9, 2023.

## II. Revlon Group Holdings LLC ("RGH") Is An "Insured"

Zurich also should retract its mistaken assertion that RGH "is not a named insured under the ZAIC Policies." ROR at 7. As Zurich already separately acknowledges by noting a "potential exception of Mod 18" (*id.*)—upon Revlon's emergence from bankruptcy on May 2, 2023, RGH was expressly added as a "named insured" by Endorsement No. 004 to ZAIC Policy No. GLO 3737031-18 issued for the July 1, 2022 to Jully 1, 2023 policy period. This endorsement was previously negotiated and agreed by Zurich, and thus Zurich may not engage in post-issuance underwriting by belatedly seeking to investigate anew "RGH's relationship to Revlon."

## III. Zurich Misconstrues or Ignores Pertinent Facts Relating to Revlon's Hair Relaxer and Straightener Product History, and Omits Entirely the 2014 Primary Policy's "Prior Injury or Damage" Endorsement Providing Retroactive Coverage to TCG

Finally, as noted above, Zurich denies coverage for exposures during certain ZAIC policy periods on the basis that Revlon purportedly did not manufacture, distribute, or sell the subject products during these periods. In taking this position, Zurich requests that Revlon tender the Hair Relaxer Litigation claims to certain other entities, including Beauty Care and the insurers of The Colomer Group, Sectrim, and Strength of Nature, on the grounds that those entities, not Zurich, have responsibility for products manufactured during those time periods. Such requests largely ignore the relevant facts already communicated to Zurich regarding Revlon's corporate and product history, as well as Zurich's own policy language. We address each, in turn, below.

First, your August 14 letter notes that Revlon sold certain of its business assets, including certain ethnic hair relaxer product lines—such as Crème of Nature, African Pride, Fabulaxer, French Perm, Revlon Realistic, Revlon Professional, All Ways Natural, and Herba Rich—to Beauty Care/The Colomer Group in 2000 and then reacquired certain of those assets and product lines—including the Crème of Nature, Fabulaxer, French Perm, Revlon Realistic, Revlon Professional, All Ways Natural, and Herba Rich line of products—in 2013 when it acquired The Colomer Group. ROR at 4-6. Because Revlon "did not manufacture, distribute or sell these products during the July 1, 2004 to July 1, 2013 policy periods," Zurich's letter suggests that, "[t]o the extent claimants seek and/or recover damages because of "bodily injury" occurring during the July 1, 2004 to July 1, 2013 period because of exposure to those products during that period, such damages are not covered by the ZAIC Policies" and Revlon should "immediately tender Revlon's defense and indemnity to Beauty Care and Beauty Care/TCG's insurers on the risk during the relevant timeframe. This position is without merit. As discussed above, coverage exists for these claims regardless of the date of manufacture, distribution, or sale. Even were this not the case, your letter wholly ignores that Zurich expressly *agreed* to cover Colomer Group

[7] Out of caution, Revlon reserves all rights respecting all additional complaints that have been tendered to Zurich from August 9, 2023 through present.

exposures for injuries during the July 1, 2004 to July 1, 2013 time period. When Revlon acquired The Colomer Group in October 2013, Zurich affirmatively *agreed* to add retroactive coverage for Colomer Group claims that involved injuries during Zurich's policy periods covering the July 1, 2004 to July 1, 2013 policy periods. *See* 2014 Primary Policy at "Prior Injury or Damage" Endorsement (extending retroactive coverage for TCG back to December 31, 2004). This coverage was added because, as Revlon noted in its August 1, 2023 email to Zurich, Revlon assumed The Colomer Group's liabilities and The Colomer Group only maintained claims-made coverage during the 2004-2013 timeframe that is unavailable to cover the claims at issue here.

Second, Zurich similarly wrongly contends that there is no coverage for claims seeking to recover damages for injuries occurring in late 2012 to the present arising out of the "Revlon Realistic" product line, because "[i]n 2012, Revlon, as licensor, entered into a license agreement with Sectrim Limited, as licensee, for the Revlon Realistic line" and "Sectrim Limited and/or its parent, affiliate or subsidiary companies manufactured, distributed, and sold that line of products between late 2012 and present." ROR at 6. For this reason, Zurich also requests that Revlon tender its defense and indemnity to Sectrim and Sectrim's insurers during the time period from 2012 through present. ROR at 6. As discussed, however, this position is without merit, because coverage is based on when claimants' injuries allegedly occurred, not when the products allegedly causing those injuries were manufactured. Moreover, Revlon confirms that the "Revlon Realistic" brand was used for hair relaxer products prior to and after Revlon entered into the license agreement with Sectrim. Revlon is currently investigating any potential indemnification rights as to Sectrim and has requested insurance documentation. Revlon will provide further information in that regard when that investigation is concluded. However, even if Revlon has a potential indemnification claim against Sectrim, that fact does not eliminate Zurich's own defense and indemnification obligations.

Third, Zurich erroneously contends that there is no coverage for any claims involving injuries during its policy period arising from the "African Pride" product line because that product line was sold to Beauty Care/The Colomer Group in 2000 and that group later re-sold the product line to Strength of Nature LLC in or around 2009. Zurich requests that Revlon tender its defense and indemnity for claims implicating "African Pride" to Sectrim and Sectrim's insurers, as well as to Strength of Nature and Strength of Nature's insurers for the time period from July 1, 2004 to July 1, 2023. *Id.* at 6-7. These positions are without merit. Revlon itself sold the "African Pride" product line prior to 2000. It also agreed to indemnify Beauty Care for Colomer Group liabilities when it purchased that group in 2013. As discussed, Zurich is responsible for any injuries during its policies period regardless of when the products causing those injuries were manufactured or sold. Zurich also expressly agreed to cover Colomer Group exposures for injuries during the July 1, 2004 to July 1, 2013 time period. Moreover, Revlon is unaware of any connection between Sectrim and the African Pride line of products. Please provide us with the basis for your understanding otherwise. Concerning Strength of Nature, as Zurich has previously been informed, on November 18, 2022, Revlon received the enclosed letter from Strength of Nature LLC asserting that Revlon must indemnify Strength of Nature based on the September 9, 2009 Purchase Agreement entered into between Roux Labs and Strength of

Nature.[8] Revlon has not accepted such indemnification and presently reserves all rights. As Revlon continues to investigate any obligation it owes respecting Strength of Nature, we enclose herewith the September 9, 2009 Purchase Agreement requested by Zurich, and direct Zurich's attention to Section 9 thereof (governing indemnification).

## IV. Zurich's Requests for Information

Finally, Zurich requested ten categories of information in the ROR. Revlon responds to each of those requests as follows:

**1. Provide the purchase agreement for Revlon's acquisition of TCG, with all addenda, schedules and exhibits;**

See enclosure.

**2. Clarify whether Revlon sold the Realistic and Professional lines of products to Beauty Care;**

When Revlon sold its professional/salon/multicultural business in March 2000, Revlon retained ownership of the REVLON trademark, and licensed it to the buyer for use with REVLON PROFESSIONAL (and REVLON REALISTIC) products. Revlon Professional Realistic was rebranded to Revlon Realistic. Revlon Professional was (and is) used in the salon channel, and Revlon Realistic was (and is) used for multicultural hair products.

Revlon Professional Holding Company LLC was set up as a legal entity to own the REVLON PROFESSIONAL trademark in countries where it was commercially reasonable to do so. Revlon owned a majority of Revlon Professional Holding Company LLC, and a Colomer Group entity owned a small percentage of Revlon Professional Holding Company LLC until 2013, when Revlon reacquired this business.

The Colomer Group sold the Revlon Realistic business to Sectrim/Amka (with Revlon's approval). Revlon retained ownership of the REVLON trademark, and continues to license the use of REVLON in connection with REVLON REALISTIC. Amka owns trademark registrations for REALISTIC.

**3. Provide copies of all commercial general liability policies issued to or providing coverage to TCG and/or Beauty Care between 2000 and July 1, 2013;**

As noted above, and Zurich was previously informed by email dated August 1, 2023, Revlon understands Beauty Care/TCG's policies were claims-made policies during this time period and thus do not apply.

[8] As additional Hair Relaxer Litigation claims have been filed, additional indemnification demands have been made by Strength of Nature to Revlon.

**4. To the extent not already done, immediately tender Revlon's defense and indemnity to Beauty Care and it and/or TCG's insurers on the risk during the 2000 to 2012 time period;**

See response to RFI No. 3.

**5. Provide copies of all commercial general liability policies issued to Sectrim between 2012 and present;**

Revlon does not presently have copies of any such policies, but has requested them.

**6. To the extent not already done, immediately tender Revlon's defense and indemnity to Sectrim and Sectrim's insurers on the risk from 2012 to present;**

As noted above, no tender has been made to date; however, Revlon is investigating any legal indemnification rights and obligations relating to Sectrim.

**7. Provide the agreement through which Strength of Nature acquired African Pride, with all addenda, schedules and exhibits;**

See enclosure.

**8. Provide copies of all commercial general liability policies issued to Strength of Nature between 2009 and present;**

Revlon does not presently have copies of any such policies, but has requested them.

**9. To the extent not already done, immediately tender Revlon's defense and indemnity to Strength of Nature and Strength of Nature's insurers on the risk from 20109 *[sic]* to present;**

As noted above, no tender has been made to date and Revlon has received indemnification demands from Strength of Nature. Revlon has reserved all rights respecting any such indemnification and continues to investigate its legal rights and obligations relating to Strength of Nature.

**10. Provide all policy and carrier contact information for all primary, umbrella and excess policies insuring Revlon for the period 1970 to present. If you have a policy chart or spreadsheet that contains this information, that would be helpful as well.**

Revlon previously sent to Zurich a chart containing carrier contact information on August 1, 2023. Revlon has not yet received all requested policy documentation or coverage position responses from applicable carriers and is therefore unable to provide a more fulsome response at this time.

Revlon continues to reserve all rights under its insurance policies, applicable law, and in equity, with respect to this matter. Should you need any further information, please do not hesitate to contact me.

Sincerely,

Keith McKenna

Enclosures

cc: Gabe Darwick, gdarwick@cmg.law
Seth Fier, Seth.Fier@revlon.com
Alexandra Gerber, Alexandra.Gerber@revlon.com
Andrew Kidd, Andrew.Kidd@revlon.com
Jillian Raines, jraines@cohenziffer.com

# Exhibit 3

## December 8, 2023 Letter

COHEN
ZIFFER
FRENCHMAN
& MCKENNA

**Keith McKenna**
212.584.1830 D
kmckenna@cohenziffer.com

1325 Avenue of the Americas
New York, NY 10019

212.584.1890 P
212.584.1891 F

December 8, 2023

**CONFIDENTIAL VIA EMAIL**

Gabriel Darwick
Coughlin Midlige & Garland LLP
Wall Street Plaza
88 Pine Street, 28th Floor
New York, NY 10005
gdarwick@cmg.law

**RE:** ***In Re: Hair Relaxer Marketing Sales Practices and Products Liability Litigation,*** **No. 1:23-cv-00818 (the "Hair Relaxer Litigation") – Revlon's Response to Zurich's October 12, 2023 and November 27, 2023 Letters**

Dear Gabe:

As you know, we represent Revlon and its subsidiaries as coverage counsel with respect to the above-referenced matter. This letter supplements our prior correspondence to you, all of which is incorporated by reference herein, and specifically responds to the following letters that you have sent on behalf of Zurich American Insurance Company ("Zurich"): the October 12, 2023 letter, in which Zurich expands certain reservations and disclaimers to coverage (the "Supplemental ROR" or "Supp. ROR"); the November 27, 2023 letter accepting tender of certain additional claims (the "Nov. 27 Letter"); the November 27, 2023 letter concerning Zurich's premature tenders to Revlon's commercial partners (the "Tender Response"); and the November 30, 2023 letter disputing certain Paul Weiss invoices submitted for reimbursement (the "Invoice Response"). To the extent that this letter does not specifically respond to any point raised in the Supplemental ROR, the Nov. 27 Letter, the Tender Response, or the Invoice Response, that does not mean and should not be construed as Revlon's agreement with or acceptance of any positions taken by Zurich. To the contrary, on behalf of all insureds, Revlon continues to reserve all rights

under the ZAIC Policies,[1] pursuant to applicable law, and in equity. Revlon also reserves all rights to supplement the positions set out herein as further information becomes available.

## I. Revlon's Potential Indemnification Rights and Obligations

The overarching suggestion in Zurich's Supplemental ROR and Zurich's Tender Response—that Revlon has been "reluctant" to tender its defense to Beauty Care, Sectrim, or Strength of Nature—not only lacks merit, it also distracts from more gating issues concerning the finalization of Revlon's Hair Relaxer Litigation defense, including as set out in my October 18, 2023 letter (the "Oct. 18 Defense Letter"), to which Revlon still awaits Zurich's response. Indeed, while your November 30, 2023 Invoice Response disputes coverage for reasonable defense costs incurred to date and memorializes Zurich's unwillingness to reimburse Paul Weiss invoices at the rate compromise proposed by Revlon—which Revlon will address separately in due course—Zurich has still not formally confirmed its consent to Hawkins Parnell without condition on acceptance of Zurich's unreasonable "collaboration" requirements.

Additionally, for all of the reasons set out in my October 31, 2023 letter addressed to you—including, without limitation, the fact that Zurich has neither acknowledged coverage without reservation nor paid any amounts toward Revlon's defense entitling it to subrogation—Zurich's unilateral tender of the Hair Relaxer Litigation to Revlon's commercial partners through coverage counsel was inappropriate.[2] It was also premature, and your Tender Response nowhere addressed that this unilateral tender, purportedly on Revlon's behalf, risked prejudicing Revlon's broader defense as the specific products and time periods at issue in the Hair Relaxer Litigation remain uncertain and continue to be refined. Revlon maintains that indemnification pursuits must be carefully evaluated in context with Revlon's strategic defense and demands that further efforts on this point be coordinated through Revlon's actual defense counsel—not insurer coverage counsel—going forward.[3] Revlon will otherwise continue to investigate any and all rights of defense and indemnity from third parties and/or their insurers and continue to work with defense counsel at Paul Weiss and/or Hawkins Parnell to preserve all mitigation avenues.

Notwithstanding the above, we address certain of Zurich's Supplemental ROR and Tender Response positions respecting indemnification below.

---

[1] Capitalized terms used herein have the same meaning as set forth in the Supplemental ROR, unless separately defined.

[2] The claim in Zurich's Tender Response that Zurich has agreed to defend Revlon in 96% of the claims tendered thus far is meritless. Zurich has not even formally consented to defense counsel, and, despite receiving invoices, has not paid or committed to pay a dime.

[3] Zurich's attempt to justify its unilateral and premature tenders by citing its purported "notice" within the Supplemental ROR, does not remediate Zurich's misconduct. *See generally* Tender Response at 2. Following receipt of Zurich's October 12 Supplemental ROR, Revlon wrote to Zurich (and Insurance Company of North America) on October 18, 2023, noting a response to the Supplemental ROR would be forthcoming and requesting agreement surrounding the terms of Revlon's actual defense arrangements for the Hair Relaxer Litigation. Rather than respond to that letter or provide a draft tender communication to Revlon, Revlon's coverage counsel, or Revlon's defense counsel in advance, Zurich elected to unilaterally tender the claim and asked for a "response to Revlon's request" while copying Revlon's Deputy General Counsel who, of course, was never shown, much less asked to consent to, the tender communications. Meanwhile, Zurich has still not fully responded to Revlon's Oct. 18 Defense Letter, instead sending the Invoice Response inappropriately disputing coverage for various costs submitted for reimbursement and refusing Revlon's compromise proposal concerning Paul Weiss' reasonable rates.

**A. Beauty Care / The Colomer Group**

Concerning tender to Beauty Care respecting claims involving products manufactured, sold, or distributed by The Colomer Group between February 18, 2000 and August 3, 2013, Zurich's premature efforts to shift its coverage risks do not withstand scrutiny. As set out in Revlon's September 7, 2023 letter, and as discussed further below, Zurich expressly agreed to cover The Colomer Group exposures for injuries during the July 1, 2004-forward time period. *See* 2013-14 ZAIC Policy at End't No. 11.

But even were that not the case (and it is), Zurich's blanket contention that Revlon is owed indemnification from Beauty Care pursuant to select provisions in the February 18, 2000 Purchase Agreement (the "2000 Purchase Agreement") reflects an incomplete analysis of the operative agreements. For starters, Zurich fails to take into consideration certain other relevant provisions in the 2000 Purchase Agreement, including, for instance, those referring to certain liability thresholds that must be met before any indemnification may be triggered. More importantly, Zurich's blanket indemnification conclusions fail to analyze the August 3, 2013 Agreement (the "2013 Purchase Agreement"), pursuant to which Revlon repurchased The Colomer Group.

As set out below, Revlon is amenable to discussing indemnification efforts to date with Zurich and Revlon's other insurance carriers, and otherwise reserves all rights respecting any indemnification rights and obligations concerning Beauty Care.

**B. Sectrim**

As to Zurich's contention that Revlon did not respond to Zurich's tender requests pertaining to Sectrim, or that "it required Zurich's prompting for Revlon to even consider tendering its defense and indemnity to Sectrim and its insurers" (Supp. ROR at 3-4), this is not remotely true or relevant at this early stage. Revlon must, accordingly, request that Zurich cease its attempts to manufacture disputes where none exist.

As previously stated, Revlon is undertaking diligence to locate and assess all potentially operative agreements with Sectrim for purposes of evaluating Revlon's rights and obligations under the same. Revlon has also requested available insurance information from Sectrim, which it will provide to Zurich upon receipt. Revlon further highlights to Zurich that the December 19, 2012 Licensing Agreement between the parties requires Sectrim to procure $5 million in general liability coverage and name Revlon as an additional insured on a non-contributory basis. Revlon will continue to work collaboratively with defense counsel to assess and preserve all of Revlon's rights vis-à-vis Sectrim.

Equally important, however, is the fact that Revlon has not yet incurred any liability to any underlying claimant in the Hair Relaxer Litigation for which Sectrim owes indemnification. This is so notwithstanding Zurich's efforts to prematurely shift its own exposure without considering the posture of the underlying claim and impact on Revlon's business and broader defense. Indeed, the Hair Relaxer Litigation is in its factual infancy, and the exact products at issue, policy periods implicated, and parties potentially responsible for any alleged liabilities

are not yet determined. Revlon will continue to work with defense counsel to maximize its defensive positions.

### C. Strength of Nature

As Zurich knows, pursuant to the September 2, 2009 Asset Purchase Agreement (the "Strength of Nature APA"), Strength of Nature has taken the position that it did not assume product liability of Roux with respect to products manufactured, sold, or shipped on or prior to the Closing. Strength of Nature has thus made an indemnification demand on Revlon respecting the Hair Relaxer Litigation in light of Revlon's repurchase of Roux in 2013. However, as Zurich has also already been informed, Revlon presently disputes that it owes Strength of Nature any affirmative indemnification, including under Article 9 of the Strength of Nature APA. Instead, Revlon contends that, pursuant to Article 9.3, indemnification flows *to* Roux *from* Strength of Nature, even for Roux-manufactured products, except if there is a showing that any such product did not comply with mutually agreed upon product specifications, which does not presently appear to be applicable.

Thus, as previously explained to Zurich, Revlon has tendered Hair Relaxer Litigation claims involving Strength of Nature to Zurich only out of an abundance caution. Revlon reserves all rights to pursue affirmative coverage for such claims under the ZAIC Policies, in the event that Strength of Nature prevails in establishing that Revlon bears any direct or contractual liability for any such claim (no matter how unlikely). Zurich is incorrect, however, that coverage would not extend to Roux or Revlon under any ZAIC Policies incepting on and after July 1, 2013 unless a Roux product sold before September 2, 2009 caused injury after July 1, 2013. The post-July 1, 2013 policies cover Revlon and Roux for any sums that they become legally obligated to pay because of bodily injury or property damage occurring during their policy periods. Moreover, as noted below, Zurich expressly agreed to provide retroactive coverage for claims made or "suits" brought against The Colomer Group precisely for bodily injuries occurring *prior to* the July 1, 2013 policy period and as far back as July 1, 2004.

All this said, given the present uncertainties regarding the indemnification dispute between Revlon and Strength of Nature, Revlon recommends that further discussions concerning any indemnification owed to Beauty Care for The Colomer Group liabilities or owed to Revlon by Zurich be tabled for the present. Further discussion can take place if it is later determined that Revlon owes any indemnification obligation.

## II. <u>The 2013 ZAIC Policy Provides Retroactive Coverage for The Colomer Group</u>

One of Zurich's Supplemental ROR arguments that may be dismissed readily, however, is Zurich's continued position disclaiming coverage for The Colomer Group exposures based on Zurich's purported deletion of the "Prior Injury or Damage Endorsement" from the 2014 ZAIC Policy. Supp. ROR at 1. For the reasons stated below, this position is without merit and Zurich clearly is required to cover any of The Colomer Group exposures.

First, Zurich has not established that the endorsement it included with its recent Tender Response was actually added to the 2014 ZAIC Policy or that it "deleted" all coverage for The

Colomer Group that was provided by the Prior Injury or Damage Endorsement attached to that policy. *See* Tender Response at 2. The endorsement appears to be an incomplete draft on its face. It is not completely filled in, it is not signed, it does not reference the correct form number, and it contains no endorsement number. Even if Zurich could establish the endorsement was added to the 2014 ZAIC Policy, moreover, it does not say what Zurich suggests it does. The Endorsement reads: "It is understood and agreed that *as respects* Form UGL-1114-A Prior Injury or Damage Endorsement *is deleted* from the above policy." (Emphasis added). This sentence fails to clearly and unambiguously state *what* is being deleted *as respects* the Prior Injury or Damage Endorsement. If Zurich intended simply to delete the endorsement in its entirety, the words "as respects" would not have been included. Zurich may not retroactively read the "as respects" language out of the endorsement. At a minimum, the intent of the endorsement is ambiguous, and that ambiguity must be construed in Revlon's favor under applicable law.

Second, even if Zurich's contention were correct, which (as discussed above) is not clear from the purported endorsement Zurich enclosed with its Supplemental ROR, Zurich fails to note in either its Supplemental ROR or its Tender Response that the same Prior Injury or Damage Endorsement indisputably also was added to the 20**13** ZAIC Policy in effect when Revlon repurchased The Colomer Group. *See* 2013 ZAIC Policy at End't No. 11.[4] Thus, regardless of whether the 2014 ZAIC Policy also covers The Colomer Group, it is indisputable that Zurich expressly agreed to cover The Colomer Group exposures being repurchased by Revlon under the 2013 ZAIC Policy, and Zurich must withdraw its dispute concerning such retroactive coverage.

## III. Zurich's Other Coverage Reservations

### A. Trigger of Coverage

Revlon appreciates Zurich's attempt at clarification that it is "not tying the trigger to when Revlon manufactured, distributed or sold the product." Supp. ROR at 4. However, Zurich's statement that it nonetheless reserves rights "to disclaim coverage to Revlon for injuries caused by hair straighteners and relaxers at times when Revlon did not manufacture, distribute or sell the products" does **not** clarify what Zurich does believe is the appropriate trigger of coverage under the ZAIC Policies. Revlon requests that Zurich more fully set out its position so that Revlon may consider and respond. Revlon presently reserves all rights.

### B. Number of Occurrences

Revlon further disagrees with Zurich's blanket contention that it is "well-supported by New York law" that the Hair Relaxer Litigation triggers multiple occurrences, including separate occurrences for any given claimant. Supp. ROR at 4. Indeed, Zurich's position that "[t]ort claims arising from exposure to harmful conditions or harmful actions have consistently been treated as separate occurrences" is a misleading overstatement of New York law based on distinguishable caselaw that Zurich fails even to analyze against the preliminary facts alleged

[4] Even the 2013 ZAIC Policy that Zurich recently provided to Revlon contains this endorsement.

in connection with the Hair Relaxer Litigation. *See id.*[5]

First, Zurich's Supplemental ROR nowhere acknowledges that the ZAIC Policies expressly distinguish between an "occurrence" and a "claim" and define "occurrence" for purposes of the "each 'occurrence'" deductibles in a manner that contemplates that a single occurrence could involve injury to more than one person.[6] Second, no case that Zurich cited supports the contention that there may be multiple occurrences *per claimant* under New York law; in fact, Zurich's referenced cases stand for the exact opposite—that all instances of a claimant's continued and repeated exposure to harmful conditions will be treated as a single occurrence. *See, e.g.*, *Am. Home Assur. Co. v. Port Auth. of N.Y. and N.J.*, 2017 WL 5890776, *aff'd*, 166 A.D.3d 464 (1st Dep't 2018) (recognizing "*each underlying claimant's* alleged injury" as the incident giving rise to liability pursuant to a policy that lacked any "occurrence" definition); *Int'l Flavors & Fragrances, Inc. v. Royal Ins. Co. of Am.*, 46 A.D.3d 224 (1st Dep't 2007) (finding only thirty discrete occurrences where thirty victims were "continuously and repeatedly exposed to diacetyl" on "different occasions, extending over different time periods").

In sum, Zurich's broad and blanket contention that New York law necessarily requires each claim against Revlon to be treated as involving one or more separate occurrences is not supported.

**C. Allocation**

Zurich's contention that it only owes an obligation to pay a *pro rata* share of covered costs is also not supported. As explained in further detail in Revlon's September 7, 2023 letter, New York's highest court has held that where an insurance policy contains provisions which cover continuing injuries that take place within and outside the policy period—like the continuing coverage and non-cumulation-type provisions in the ZAIC policies at issue here—courts will apply an "all sums" allocation methodology as opposed to a "pro rata" allocation methodology. *In re Viking Pump, Inc.*, 52 N.E.3d 1144, 1146, 1156 (N.Y. 2016); *Olin Corp. v. American Home Assur. Co.*, 704 F. 3d 89, 94, 102 (2d Cir. 2012).

Zurich's reliance on *Danaher Corp. v. Travelers Indemnity Co.* is misplaced. First, the *Danaher* court did not address the "continuing injury" provisions like those in Zurich's policies. *See Danaher*, 414 F. Supp. 3d 436 (S.D.N.Y. 2019). Second, that court recognized that where policies contain non-cumulation clauses similar to those in *Viking Pump*, all sums allocation is

[5] *See also, e.g.*, *Roman Cath. Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 21 N.Y.3d 139, 149 (2013) (non-product liability case where multiple incidents of sexual abuse were determined to be multiple occurrences and noting "the incidents are not part of a singular causal continuum"); *Appalachian Ins. Co. v. Gen. Elec. Co.*, 8 N.Y.3d 162, 174 (2007) (determining multiple occurrences based on a lack of spatial and temporal connection between incidents of asbestos exposure across multiple GE turbine sites).

[6] *See, e.g.*, 2013 ZAIC Policy at Commercial General Liability Deductible End't, § C.1 (defining the each "occurrence" deductible to mean those sums payable "as the result of an accident, including continuous or repeated exposure to substantially the same harmful conditions, ***regardless of the number of persons or organizations who sustain damages*** or to whom sums are payable ***because of that "occurrence"***) (emphasis added); *id.* at New York Changes – Commercial General Liability Coverage Form End't, §§ A.1.b(3), A.1.c, A.1.d., C; *id.* at Commercial General Liability Deductible Endorsement (distinguishing between "each 'occurrence', each 'claim' or each 'accident'").

appropriate. *See id.* Key to the court's determination as to what constituted a "non-cumulation clause" was the policy's use of "temporal language [that] references prior or successive policies, thereby evincing the parties' understandings that the same injury or occurrence could trigger multiple prior or successive policies covering different periods." *Id.* at 459. In concluding that a materially different "Limits of Liability, Two or More Policies" clause in certain Travelers policies did not constitute non-cumulation provisions, the *Danaher* court found that the applicable clause did *not* contemplate "the possibility of a loss being 'covered by more than . . . one policy period." *Id.* at 460. What Zurich fails to note is that, *unlike* the operative language at issue in *Danaher*, the "Two or More of Our Policies Endorsement" in certain policies that Zurich issued to Revlon *does* contemplate that the loss will be covered by more than one policy period. Indeed, it explicitly references "*all* of our policies" and notes "[t]he Limits of Insurance per Section I. above of this endorsement apply separately to each consecutive annual period . . . ." *See* 2018 ZAIC Policy at Two or More Of Our Policies End't.

Zurich's position regarding the general purpose or effect of continuing coverage clauses is unsupported by relevant case law and irrelevant to the question of allocation under New York law. New York law is clear that, because continuing coverage provisions like those in the ZAIC Policies contemplate a policy's protections extending "beyond the policy period for continuing injuries," application of a pro rata allocation would render such continuing coverage clauses "irrelevant." *In re Viking Pump, Inc.*, 52 N.E.3d 1144, 1154-1155 (finding *Olin's* holding based on similar continuing injury provision supported all-sums allocation).[7]

Moreover, allocation under New York law is a policy- and fact-specific analysis and one case's holding cannot be blindly applied to a different set of policy language and facts, such as is present here. *Keyspan Gas East Corp. v. Munich Reinsurance Am. Inc.*, 73 N.Y.S. 3d 113, 117 (2018) ("[T]he method of allocation is governed foremost by the particular language of the relevant insurance policy."). In addition to the continuing coverage and non-cumulation provisions, the Zurich Policies also contain other language that is inconsistent with Zurich's current contention that its insuring agreements only cover a "pro rata" portion of loss. For example, Zurich's policies expressly reference "pro rata" allocations in numerous provisions when Zurich only intends to pay or reimburse a "pro rata" share of an amount.[8] However,

[7] *Compare Olin Corp.*, 704 F. 3d at 99-100 (continuing coverage provision provided "[I]n the event that personal injury . . . arising out of an occurrence covered hereunder is continuing at the time of termination of this Policy, Underwriters will continue to protect the Assured for Liability in respect of such personal injury . . . ."); *with* 2013 ZAIC Policy at New York Changes – Commercial General Liability Coverage Form End't, § A.1.c (continuing coverage provisions provide that covered "bodily injury" occurring during the policy period, if unknown prior to policy inception, "includes any continuation, change or resumption of that 'bodily injury' . . . after the end of the policy period.").

[8] *See*, *e.g.*, 2013 ZAIC Policy at DISCLOSURE OF IMPORTANT INFORMATION RELATING TO TERRORISM RISK INSURANCE ACT (discussing "pro rata allocation in accordance with procedures established by the Secretary of Treasury"); FLORIDA - DISCLOSURE OF IMPORTANT INFORMATION RELATING TO TERRORISM RISK INSURANCE ACT (same); CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM ENDORSEMENT (same); FLORIDA CHANGES – CANCELLATION AND NONRENEWAL ENDORSEMENT (stating that "If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata."); OREGON CHANGES – YOUR RIGHT TO CLAIM INFORMATION ENDORSEMENT (same); VIRGINIA CHANGES – CANCELLATION AND NONRENEWAL ENDORSEMENT (stating that "[w]e will compute return premium pro rata" and "[w]hen this policy is cancelled at your request . . . we will return 90% of the pro rata unearned premium, rounded to the next higher whole dollar. . . ."); NEW YORK CHANGES –

Zurich nowhere states in its insuring agreements that it will only pay a "pro rata" share of covered defense or indemnity costs. To the contrary, it expressly states without qualification that it will defend any "suit" and "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Further, Zurich's position regarding the general purpose of continuing coverage clauses is unsupported by relevant case law. Citations from Pennsylvania, North Carolina, and Massachusetts are inapplicable to the facts of this claim.

**D. Tendered Suits**

As a point of final clarification, and as Revlon has previously informed Zurich, Revlon has tendered lawsuits which name Strength of Nature out of caution given the pending indemnification dispute, as set forth above. Any other lawsuits that have been tendered and do not explicitly name Revlon have been tendered because of an understanding from defense counsel that Revlon will be named imminently as a party to that lawsuit. Revlon expects Zurich will address and confirm coverage as complaints are filed in each of these actions. Revlon, through defense counsel, will also continue to keep Zurich apprised of dismissals and any other relevant updates in the *Hatcher* case and otherwise.

That said, it bears mention that, contrary to Zurich's Tender Response, Zurich has not agreed to defend Revlon in 80 of the Hair Relaxer Litigation lawsuits *without* reservation. Nor has Zurich paid or agreed to pay any of Revlon's significant defense cost invoices to date, or identified to Revlon which of the previously distributed invoices Zurich will be paying. To the contrary, Zurich has expressly taken the position that "many of these [submitted] costs are not covered" in its Invoice Response and failed to identify any specific amounts that Zurich *will* pay. The Invoice Response also reflects Zurich's attempt to avoid its obligation to pay for dual-purpose defense costs incurred in connection with Revlon's broader defense against *all* claimants' allegations. Indeed, as Zurich is well aware, Revlon's defense against the Hair Relaxer Litigation is occurring on two fronts—both the formal MDL proceedings and in connection with Revlon's bankruptcy proceedings. This deliberate and intertwined defense strategy benefits Zurich and all carriers, which is obvious from Zurich's and other carriers' several and frequent requests for updates about the overlapping issues being litigated before the bankruptcy court. Accordingly, Zurich may not avoid its defense obligation respecting costs incurred in defense of the Hair Relaxer claims simply because that defensive work was performed before the bankruptcy court.

The Invoice Response also asserts that Zurich has no obligation to pay until Revlon has allocated its defense costs incurred in connection with its broad defense in the MDL to an individual claimant's suit. However, most of the work presently being performed is necessary for all of the matters and thus is fully allocable to any one of the claimants. To the extent work

CANCELLATION AND NONRENEWAL ENDORSEMENT (stating that "[i]f we cancel, the refund will be pro rata", "[i]f the first Named Insured cancels, the refund may be less than pro rata", and "when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata"); LOUISIANA CHANGES – CANCELLATION AND NONRENEWAL ENDORSEMENT (stating that, depending on the coverages, if the first Named Insured cancels, "the refund will not be less than 90% of the pro rata unearned premium, rounded to the next higher whole dollar" or "the refund will not be less than 75% of the pro rata unearned premium, rounded to the next higher whole dollar", and "[i]f we cancel, the refund will be pro rata").

performed is only for a particular claimant or group of claimants, Revlon will ask its defense counsel to reflect that fact on its invoices to the extent they are reasonably able to do so. And while Revlon appreciates Zurich's representation that it acknowledges at least *potential* coverage for several Hair Relaxer Litigation claims, subject to reservation, Zurich's actual position respecting potential defense and the basis therefore remains unclear.

Specifically, Revlon requests that Zurich clarify its position concerning which of the ZAIC Policy(ies) Zurich believes apply to the various claims tendered by Revlon and under which Zurich has "accepted" coverage to date, including through Zurich's latest November 27, 2023 letter and its Schedule A. For example, Zurich acknowledges a duty to defend for claimant Keiko Aikawa under the 2014 ZAIC Policy even though the claimant's exposure period, according to Zurich, purportedly spans from 2002-2023. On what basis does Zurich contend only the 2014 ZAIC Policy applies? This is just one example. Zurich also has not detailed the source of the information included in Schedule A nor confirmed this information was prepared in collaboration with defense counsel. None of Zurich's coverage letters to date have explained Zurich's methodology behind which ZAIC Policies potentially apply to which claims and Revlon requests that Zurich please clarify its position.

***

Finally, Zurich's letter requests The Colomer Group's claims-made policies. Revlon reiterates that it does not have these policies, but our records demonstrate the historical claims-made program structure, which of course was the very reason that Revlon requested, and Zurich agreed, to the addition of the Prior Injury or Damage Endorsement in the 2013 and/or 2014 ZAIC Policies. Revlon remains available to further discuss any remaining questions on this point.

Revlon continues to reserve all rights under its insurance policies, applicable law, and in equity, with respect to this matter. Should you need any further information, please do not hesitate to contact me.

Sincerely,



Keith McKenna

Enclosures

cc: Seth Fier, Seth.Fier@revlon.com
Alexandra Gerber, Alexandra.Gerber@revlon.com
Andrew Kidd, Andrew.Kidd@revlon.com
Jillian Raines, jraines@cohenziffer.com

# Exhibit 4

## September 2, 2025 Letter

COHEN
ZIFFER
FRENCHMAN
& MCKENNA

**Keith McKenna**
212-584-1830
kmckenna@cohenziffer.com

1325 Avenue of the Americas
New York, NY 10019

212-584-1890 P
212-584-1891 F

September 2, 2025

**VIA EMAIL**
Gabriel Darwick
White and Williams LLP
One Gateway Center, Suite 910
Newark, NJ 07102
darwickg@whiteandwilliams.com

**RE: In Re: Hair Relaxer Marketing Sales Practices and Products Liability Litigation, No. 1:23-cv-00818 (the "Hair Relaxer Litigation") – Revlon's Response to Insurers' March 3, 2025, May 19, 2025, and July 23, 2025 Letters**

Dear Gabe:

As you know, we represent Revlon and its subsidiaries (collectively, "Revlon") as insurance coverage counsel with respect to the above-referenced matter. This letter follows up on certain correspondence we previously sent to you and responds to your recent letters, including your March 3, 2025 letter ("March Letter"), May 19, 2025 letter ("May Letter"), and July 23, 2025 letter ("July Letter") (collectively, the "Zurich Letters") sent on behalf of Zurich American Insurance Company and other Zurich entities (collectively, "Zurich"). To the extent this letter does not address any assertions or statements made in the Zurich Letters, Insurers should not construe that as Revlon's acceptance of or agreement with any such assertions or statements. Revlon continues to reserve all rights under all applicable policies, at law, and in equity.

## I. ZURICH'S DEFENSE OBLIGATION

As an initial matter, Revlon continues to dispute Zurich's contention that each Hair Relaxer claimant's claim is a separate "occurrence," that Revlon's defense costs must be distributed "pro rata" among each of the claims, that Zurich's defense obligations only materialize once the pro rata costs allocated to a specific claim exceed $100,000, and that "[b]ased on the total costs incurred thus far, no deductibles have been satisfied." March Letter at 1–2. For example, the Deductible Endorsement on Zurich's 2014/15 primary policy expressly negates Zurich's suggestion that a deductible applies separately to each person's claim. The Schedule shows that, for "Bodily Injury and Property Damage Liability," the deductible applies on an "each 'occurrence'" basis to "*[a]ll* persons or organization" and expressly "DOES NOT APPLY" on an

"each 'claim'" basis to an "*[a]ny one* person or organization." (Emphasis added). The Deductible Endorsement also states that when Option 3 in the Schedule is checked—which is the case, for example, on the 2014/15 Deductible Endorsement—then "allocated loss adjustment expense" or "ALAE" is reimbursable "as respects each 'occurrence'" "as part of the deductible amount." However, it further defines "each 'occurrence'" to mean "all sums payable *for other than 'ALAE'* as the result of an accident, including continuous or repeated exposure to substantially the same harmful conditions, 'regardless of the number of persons or organizations who sustain damages or to whom sums are payable because of that 'occurrence.'" (Emphasis added). These provisions are conflicting, and the latter language reasonably could be read to exclude ALAE from any "each 'occurrence'" deductible. But even if the deductible applies to defense costs, the deductible provisions are reasonably read to require Zurich to pay all defense costs for accidental conduct allegedly causing injury to one or more persons once those defense costs exceed the $100,000 deductible amount. That circumstance has occurred, as Revlon thus far has incurred approximately [redacted] in defending against the hair relaxer litigation. Further, even if Zurich were correct that each claimant's claim were deemed a separate "occurrence," the vast majority of the defense work to date—such as producing documents relating to the Revlon insureds' manufacturing, sale or distribution of hair relaxer products—was necessary for *any* one of the claims and thus is properly attributed to any one of them. Moreover, contrary to Zurich's contention otherwise, Revlon is entitled under New York law to allocate all such defense costs to any one applicable policy period. It is not required to spread them on a "pro rata" basis. Each Zurich primary policy includes a "duty to defend the insured against any 'suit,'" not just a portion of a suit. *American Precision Indus., Inc. v. Federal Ins. Co.*, 648 F.Supp.3d 442, 449 (W.D.N.Y. 2022) (citing cases), *appeal dismissed and remanded*, 2025 WL 1088231 (2d Cir. Apr. 11, 2025). And Zurich's coverage is not limited to injuries taking place during the policy period. The 2014/15 policy, for example, expressly covers the Colomer Group of companies for injuries dating back to December 31, 2004. And so long as bodily injury was not known prior to its policy period, which is the case here, each Zurich primary policy expressly agrees to pay for any bodily injury that continues, changes or resumes outside the policy period as well as for "damages claimed by any person or organization for care, loss of services or resulting at any time from 'bodily injury.'" Under New York law, an "all sums" allocation is appropriate where, as here, policy coverage is not limited to bodily injury that occurs during the policy period. *Mineweaser v. One Beacon Ins. Co.*, 2018 WL 7079526 (W.D.N.Y. May 30, 2018) ("As further support for all sums allocation, the Seaton policy also contains a continuing coverage provision extending the policy's protections for continuing injuries beyond the policy period, which would be irrelevant under pro rata allocation, which further supports all sums allocation.") (citing *In re Viking Pump, Inc.*, 27 N.Y.3d 244, 262 (2016)). In short, the approximately [redacted] in defense costs that Revlon has paid in connection with the hair relaxer litigation has more than satisfied any deductible obligation.

Even if the facts were otherwise, Zurich entities would still have defense obligations under certain excess policies covering Revlon during the 1978-1986 time period. As you know, underlying policies in those years were exhausted by payments made in connection with the Rhone-Poulenc Action.

The Zurich Letters suggest that Revlon submit its defense costs under a "Master Agreement" and "Specifications" that Zurich entered into with MacAndrews and Forbes in 2014.

March Letter at 2–3. Revlon does not have a copy of the "Master Agreement" or "Specifications" referenced in the March Letter, and requests that Zurich provide these documents. Based on your description of the "Master Agreement" in the March Letter, however, it appears that Zurich is suggesting that, under this agreement, "Revlon will be billed for claim payments within the Loss Limit(s), plus related expenses and assessments," and that Revlon will be required to "fund the Loss Fund" to pay for supposedly unsatisfied deductibles, effectively asking Revlon to continue to self-fund its defense costs through a TPA. For the reasons discussed, Revlon's approximately [redacted] in defense payments to date has more than satisfied any applicable deductible obligation such that Zurich should now be paying all defense costs. If Zurich makes this commitment, Revlon can discuss with Zurich how best to accomplish payment.

## II. THE FINANCIAL STRAIN CAUSED BY INSURERS' BREACH OF THEIR DEFENSE OBLIGATIONS

Revlon's January 16, 2025 letter identified the significant economic prejudice and harm that insurers' failure to honor their coverage obligations has caused Revlon. The Zurich Letters ask that "Revlon advise when it believes it may no longer be in a position to fund its obligation under the Zurich Primary Policies, Master Agreement and Specifications and provide your most recent financial statements, including balance sheets and income statements." July Letter. For the reasons stated, any obligations owed by Revlon have been satisfied. Revlon continues to suffer economic hardship because of its Insurers' continued refusals to fund Revlon's covered defense costs. This circumstance has forced Revlon to divert critical operating funds away from supporting Revlon's brands and, instead, use those funds to defend itself in the Hair Relaxer Litigation. Revlon currently is able to fund a defense while it pursues recovery from its insurers, including Zurich. Revlon will advise Zurich and the Insurers if that circumstance changes and/or if defense efforts must be curtailed for further lack of available resources. The Insurers', including Zurich's, abandonment of Revlon and refusal to fund the defense in these unique circumstances where only the Insurers will face liability exposure defies logic and reflects reckless judgment on the part of Zurich and the Insurers, in addition to harming Revlon.

## III. PRODUCTS PREVIOUSLY SOLD BY A.P. PRODUCTS

The Zurich Letters state that "several of the products at issue in the Hair Relaxer Litigation . . . were sold by A.P. Products before Revlon acquired some or all of that company in 1998," and ask for a copy of the acquisition agreement and whether Revlon has tendered its defense and indemnity to A.P. Products' insurers. *See, e.g.*, July Letter at 2. A copy of the 1998 purchase agreement is enclosed. Revlon has not tendered its defense to A.P. Products[1] and has very limited information regarding A.P. Products' insurers during the relevant time period. For example, there is a schedule to the 1998 purchase agreement identifying certain insurance policies but it is not entirely clear which if any of those would provide products liability coverage. Revlon has located a certificate of insurance listing a Zurich policy as providing commercial general liability coverage

[1] The agreement likely would be deemed non-executory, and thus unenforceable as against A.P. Products, in light of Revlon's bankruptcy proceedings and satisfaction of all material obligations by both parties.

for the 1996-1997 time period. A copy is enclosed. Please advise if Zurich is willing to participate in the defense against Revlon insureds under this policy or other policies that it may have issued to A.P. Products.

## IV. ZURICH'S DOCUMENT REQUESTS

The Zurich Letters contends that Zurich requested "certain documents" in Section VI of its May Letter that have not been provided. Revlon confidentially encloses certain of the documents referenced in the February 18, 2000 purchase agreement that Zurich has requested and which could be located. Revlon was able to locate and encloses herein: (1) the Revlon Marks License Agreement; (2) the Color Lock License Agreement; and (3) the Interactives License Agreement. Revlon has searched for and is unable to locate the Disclosure Letter. As to your request for plaintiffs' "fact sheets," as Revlon's defense counsel has noted on its monthly calls, those sheets are subject to protective orders and cannot be disclosed to insurers. However, Revlon's defense counsel is working to see if plaintiffs will allow disclosure of at least those fact sheets relating to the selected bellwether cases. If the underlying plaintiffs agree to this, then Revlon will provide the information to Zurich and its other insurers.

## V. REVLON'S DOCUMENT REQUESTS TO ZURICH

Finally, Revlon reiterates its requests to Zurich for claim services agreements relating to Revlon's policies. Many of the Insurers' policies reference claim service agreements and thus these agreements may inform Revlon's understanding of its full rights under the policies. Further, Revlon disputes Zurich's contention that Zurich has provided exhaustion information for policies applicable to the Hair Relaxer Litigation. We are unaware of Zurich having provided any exhaustion information for its policies, and request that Zurich provide exhaustion information in its possession relating to Revlon policies. This should include not only exhaustion information for all of Zurich's primary policies but also all exhaustion information in Zurich's possession relating to Revlon's excess coverage. As explained above and in other correspondence, Revlon is informed that that some lower-layer policies covering Revlon were exhausted in connection with the Rhone-Poulenc Action, an HIV/Aids-related litigation involving Armour Pharmaceuticals, a former Revlon subsidiary, and that a third-party claims administrator regularly sent invoices for payment and exhaustion information to Zurich and other insurers. We request that Zurich identify all such information in its possession and provide it to Revlon. If Zurich contends that it already provided this information, please identify the correspondence providing the information.

* * *

Revlon continues to reserve all rights under its insurance policies, applicable law, and in equity, including without limitation the right to further address Zurich's and other insurers' substantive coverage positions after Revlon has received sufficient responses to its outstanding requests for information from Zurich and the other insurance companies. Should you need any further information, please do not hesitate to contact me.

Sincerely,



Keith McKenna

cc: Seth Fier, Seth.Fier@revlon.com
Alexandra Gerber, Alexandra.Gerber@revlon.com
Jillian Raines, jraines@cohenziffer.com

# <u>Exhibit 5</u>

## July 31, 2026 Email

**From:** Keith McKenna
**To:** Darwick, Gabriel
**Cc:** Schwartz, David; Young, James; Jillian Raines
**Subject:** Revlon
**Date:** Friday, July 31, 2026 1:42:00 PM
**Attachments:** K.McKenna Ltr. to G. Darwick (9-2-25).pdf
2025-09-02 Enclosures.zip
image001.png
image002.png
image003.png
2026.07.30 Revlon - Bellwether defense summary (PRIVILEGED AND CONFIDENTIAL).xlsx

---

Gabe,

I have no record of Zurich responding to our letter dated September 2, 2025 (attached). If a response was sent, please resend. If you have not responded, please do so.

In addition, as you know, since we sent our September 2, 2025 letter, Revlon's defense has focused on bellwether cases and its costs continue to accrue. Even if Zurich were correct that defense costs need to be spread among claimants and that each claimant's alleged exposure to Revlon's hair relaxer products constitutes a separate "occurrence" subject to a separate $100,000 per occurrence deductible, which Revlon disputes, Zurich still has an immediate obligation to pay Revlon's current defense costs for the bellwether cases because those costs indisputably exceed any applicable deductible. Attached is a spreadsheet summarizing Revlon's defense costs through approximately June 2026. As you will see, they currently exceed $[redacted], with bellwether-related costs alone totaling more than $[redacted]. We have added tabs to the spreadsheet showing that, even if "general" bellwether costs were spread among the relevant bellwether claims as Zurich claims must be done, the costs attributable to each bellwether claim would exceed $100,000. Thus, although Revlon believes that all general defense costs are properly attributable to any single underlying claimant because such costs would have had to be incurred regardless of other claimants (and Revlon reserves all rights accordingly), Revlon requests that Zurich at least confirm that the deductible has been satisfied for and that it will pay all of Revlon's defense costs above the deductible relating to the following bellwether cases:

| |
|---|
| Smith, Karla |
| Fields, Elendra |
| Ford, Gloria |
| Hix, Joyce |
| Boatwright, Bridget (Aesha) |
| Wallace , Jeanette NMI Thomas (Deceased) |
| Jones, Joanne |
| Jackson, Areecia Denise |
| Wade, Roxanne |
| |

| | |
|---|
| Felton, Eunice Marie |
| Fennell, Charlene Annette |

We look forward to your prompt response. Please treat all information provided as Confidential and Privileged Information. Revlon reserves all legal and equitable rights.

KEITH MCKENNA
Partner
D 212.584.1830 / M 201.988.4461
kmckenna@cohenziffer.com

---

**From:** Keith McKenna
**Sent:** Wednesday, September 3, 2025 9:54 AM
**To:** Darwick, Gabriel <darwickg@whiteandwilliams.com>
**Cc:** Fier, Seth <Seth.Fier@revlon.com>; Alexandra Gerber (Alexandra.Gerber@Revlon.Com) <alexandra.gerber@revlon.com>; Jillian Raines <jraines@cohenziffer.com>
**Subject:** Revlon

Gabe,

Please see the attached letter and enclosures.

KEITH MCKENNA
Partner
D 212.584.1830 / M 201.988.4461
1325 Avenue of the Americas, 31st Floor
New York, NY 10019
kmckenna@cohenziffer.com

**Exhibit 5.A**

**Excerpted Spreadsheet Attachment to July 31, 2026 Email**

**Categorization of defense costs through June 30, 2026**

| Category | Amount | % of total |
|---|---|---|
| Bellwether plaintiff-specific | $ [redacted] | [redacted]% |
| General bellwether pre-April 2026 | $ [redacted] | [redacted]% |
| General bellwether April 2026 and later | $ [redacted] | [redacted]% |
| Non-bellwether plaintiff specific | $ [redacted] | [redacted]% |
| Unspecified general | $ [redacted] | [redacted]% |
| **Grand total** | **$ [redacted]** | **[redacted]%** |

Note: Of the $[redacted]M in "non-bellwether plaintiff specific", we are confident that $[redacted]M are plaintiff-specific and non-bellwether. For the remaining $[redacted]M, the majority are plaintiff-specific and nonbellwether but there is some amount of overlap with physician/witness/location references such that some portion of the $[redacted] million may appropriately belong in the unspecified-general category.

**Bellwether defense costs by plaintiff**

| Bellwether plaintiff name | Specific to plaintiff name | Pre-April 2026 general bellwether | April 2026 and later general bellwether | Total |
|---|---|---|---|---|
| Smith, Karla | $ [redacted] | [redacted] | [redacted] | [redacted] |
| Fields, Elendra | $ [redacted] | [redacted] | [redacted] | [redacted] |
| Ford, Gloria | $ [redacted] | [redacted] | [redacted] | [redacted] |
| Hix, Joyce | $ [redacted] | [redacted] | [redacted] | [redacted] |
| Boatwright, Bridget (Aesha) | $ [redacted] | [redacted] | [redacted] | [redacted] |
| Wallace , Jeanette NMI Thomas (Deceased) | $ [redacted] | [redacted] | [redacted] | [redacted] |
| Jones, Joanne | $ [redacted] | [redacted] | [redacted] | [redacted] |
| Jackson, Areecia Denise | $ [redacted] | [redacted] | [redacted] | [redacted] |
| Wade, Roxanne | $ [redacted] | [redacted] | [redacted] | [redacted] |
| Felton, Eunice Marie | $ [redacted] | [redacted] | [redacted] | [redacted] |
| Fennell, Charlene Annette | $ [redacted] | [redacted] | [redacted] | [redacted] |
| Smith, Barbara Jean | $ [redacted] | [redacted] | [redacted] | [redacted] |
| Fullard, Felicia Denise | $ [redacted] | [redacted] | [redacted] | [redacted] |
| Robinson, Rosa M. | $ [redacted] | [redacted] | [redacted] | [redacted] |
| Hunter, Beverly J . | $ [redacted] | [redacted] | [redacted] | [redacted] |
| Edgar, Joanne | $ [redacted] | [redacted] | [redacted] | [redacted] |
| Weeks, Tawanna | $ [redacted] | [redacted] | [redacted] | [redacted] |
| Roland, Karen Elisa | $ [redacted] | [redacted] | [redacted] | [redacted] |
| Garrett, Vicki Janeen | $ [redacted] | [redacted] | [redacted] | [redacted] |
| Alexander, Gwendolyn | $ [redacted] | [redacted] | [redacted] | [redacted] |
| Blaxton, Kimberly | $ [redacted] | [redacted] | [redacted] | [redacted] |
| Wade, Laura | $ [redacted] | [redacted] | [redacted] | [redacted] |
| **TOTAL** | **$** [redacted] | [redacted] | [redacted] | [redacted] |

**Methodology notes:**

- A narrative must contain both the first and last name of the plaintiff somewhere in the description in order to be attributable to that plaintiff. This is because there are several plaintiffs with the same common last names (e.g. Smith, Jones) that could show up as false positives, even when limiting to the Bellwether matter or file names
- A general bellwether cost comes from either (i) a narrative that contains some variation of the term "bellwether" and does not contain a specific plaintiff name, or (ii) a timecard belonging to a general bellwether matter, as identified by the vendor (e.g., "HAIR STRAIGHTENERS - BELLWETHER SELECTION AND TRIAL PREP").

• If a narrative contains multiple plaintiff names (whether bellwether, non-bellwether, or a mix) then the amount is split proportionally to the number of plaintiff IDs from the PFS that match to that narrative
• Context from counsel indicates DWMRC is all bellwether since June 2025; any non-name-specified costs from that vendor since June 2025 are treated as bellwether
• Where the bellwether plaintiff name is indicated in the matter, we allow that to be the dominant allocation logic rather than scanning the narrative description for plaintiff names

# **Exhibit 6**

**September 4, 2026 Letter**

White and Williams LLP

**Gabriel E. Darwick**
**Austin D. Moody**

163 Madison Avenue, Suite 503 | Morristown, NJ 07960
Direct 201.368.7228 | Fax 973.718.4352
darwickg@whiteandwilliams.com | whiteandwilliams.com

September 4, 2026

By E-Mail kmckenna@cohenziffer.com

Keith McKenna
Cohen Ziffer Frenchman & McKenna
1325 Avenue of the Americas
New York, NY 10019

**RE: In Re: Hair Relaxer Marketing Sales Practices and Products Liability Litigation, No. 1:23-cv-00818 (the "Hair Relaxer Litigation")**

Dear Keith:

We write on behalf of our clients Zurich American Insurance Company, American Zurich Insurance Company, and Zurich Reinsurance Company Ltd. formerly Zurich International (Bermuda) Ltd. ("ZIB") (collectively "Zurich") to respond to your letter dated September 2, 2025 and your email dated July 31, 2026. We will start with your July email.

In your July email, you assert that even if defense costs are spread among claimants and that each claimant's alleged exposure to a hair relaxer product is a separate "occurrence" subject to a $100,000 per occurrence deductible, defense costs shown on the spreadsheet you provided exceed the deductible amount. We are still evaluating the methodology used by Revlon to allocate bellwether costs and reserve all rights to contest it. Notwithstanding, even accepting it as accurate (which we do not), the costs do not exceed the $100,000 deductible in any single year. For example, Karla Smith alleges she used Revlon hair relaxers from 1980 to 2019. Spreading her defense costs over 39 years results in [redacted] per year, far below the deductible. Elandra Fields alleges she used Revlon products from 1972 – 1985. Per Zurich's coverage position letter dated August 14, 2023, Zurich has no duty to defend against this claim. But even if the trigger period for this claimant went from date of first use to diagnosis in 2017, allocating defense costs over the triggered policies would be far below the deductibles. Ms. Wallace does not appear to allege use of any Revlon products in her plaintiff fact sheet, so please clarify why any defense costs are being allocation to her. The other bellwether claimants likewise allege long periods of use of Revlon product and thus would require allocation of costs evenly to the triggered policy periods.

As for your September letter, we have already addressed many of the positions set forth therein and thus it remains unclear what you believe is outstanding. For example, that letter expresses disagreement with Zurich's multi-occurrence and pro rata position. We have repeatedly and thoroughly set forth our position to you on this subject in writing, including on August 14, 2023, October 12, 2023, and March 3, 2025. Zurich's position on application of defense costs to the deductibles in the ZAIC Policies remains unchanged.

The September letter also claims financial strain from continued payment of defense costs. This too has been addressed by Zurich in multiple letters, including on March 3, 2025. If any circumstances have changed such that Revlon is currently unable to fund its defense pursuant to its deductible obligations, please advise and provide documentation supporting that position.

As for AP Products, Zurich is currently searching for any policies issued by a Zurich company to AP Products and will provide you with the results of its search. If you have any of the policies, please forward them.

If there are any other issues that are outstanding, please let us know.

Very truly yours,

WHITE AND WILLIAMS LLP

*/s/ Gabriel E. Darwick*

Gabriel E Darwick
Austin D. Moody

GED:me



Confidential \ Non Personal Data

# Exhibit 7

## 2014 Primary Policy

**COMMERCIAL INSURANCE**

**COMMON POLICY DECLARATIONS**

Policy Number GLO 3737031-10 Renewal of Number GLO 3737031-09

Named Insured and Mailing Address
MACANDREWS & FORBES HOLDINGS, INC.
35 EAST 62ND STREET
NEW YORK, NY 10065-8014

Producer and Mailing Address
AON RISK SERVICES NORTHEAST INC
199 WATER ST FL 32ND
NEW YORK, NY 10038-3526

Producer Code 50522-000

Policy Period: Coverage begins 07-01-2014 at 12:01 A.M.; Coverage ends 07-01-2015 at 12:01 A.M.

The name insured is ☐ Individual ☐ Partnership ☒ Corporation
☐ Other:

This insurance is provided by one or more of the stock insurance companies which are members of the Zurich-American Insurance Group. The company that provides coverage is designated on each Coverage Part Common Declarations. The company or companies providing this insurance may be referred to in this policy as "The Company", we, us, or our. The address of the companies of the Zurich-American Insurance Group are provided on the next page.

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE(S):**

| | | | |
|---|---|---|---|
| GENERAL LIABILITY COVERAGE<br>issued by ZURICH AMERICAN INSURANCE COMPANY | PREMIUM | $ | 191,337.00 |
| FL HURRICANE CATASTROPHE FUND | | $ | 67.00 |
| FL FIGA 2012 | | $ | 7.00 |
| KY SURCHARGE | | $ | 1.00 |
| NJ PROP LIAB INS GUAR ASSOC SURCHARGE | | $ | 193.00 |
| VA BIRTH-RELATED NEUROLOGICAL INJURY COMP FUND | | $ | 1.00 |
| WA REGULATORY SURCHARGE | | $ | 1.00 |

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**THIS PREMIUM MAY BE SUBJECT TO AUDIT.** **TOTAL** **$** 191,337.00
This premium does not include Taxes and Surcharges. SEE INSTALLMENT SCHEDULE

**Taxes and Surcharges** **TOTAL** **$** 270.00
SEE INSTALLMENT SCHEDULE

The Form(s) and Endorsement(s) made a part of this policy at the time of issue are listed on the **SCHEDULE of FORMS and ENDORSEMENTS.**

Countersigned this day of

Authorized Representative

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART FORM(S), FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

# Important Notice – In Witness Clause

ZURICH®

In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).

Nancy D. Mueller

President

Corporate Secretary

**QUESTIONS ABOUT YOUR INSURANCE?** Your agent or broker is best equipped to provide information about your insurance. Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1400 American Lane
Schaumburg, Illinois 60196-1056
**1-800-382-2150** (Business Hours: 8am - 4pm [CT])
**Email**: info.source@zurichna.com

**COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS**

Policy Number: GLO 3737031-10

# ZURICH AMERICAN INSURANCE COMPANY

Named Insured MACANDREWS & FORBES HOLDINGS,

Policy Period: Coverage begins 07-01-2014 at 12:01 A.M.; Coverage ends 07-01-2015 at 12:01 A.M.

Producer Name: AON RISK SERVICES NORTHEAST INC Producer No. 50522-000

**Item 1.** Business Description: MANUFACTURER

**Item 2.** Limits of Insurance

| | | |
|---|---|---|
| GENERAL AGGREGATE LIMIT | $ 4,000,000 | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ 4,000,000 | |
| EACH OCCURRENCE LIMIT | $ 1,000,000 | |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $ 500,000 | Any one premises |
| MEDICAL EXPENSE LIMIT | $ 10,000 | Any one person |
| PERSONAL AND ADVERTISING INJURY LIMIT | $ 1,000,000 | Any one person or organization |

**Item 3.** Retroactive Date **(CG 00 02 ONLY)**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" offense which occurs before the Retroactive Date, if any, shown here: NONE

(Enter Date or "None" if no Retroactive Date applies)

**Item 4.** Form of Business and Location Premises

Form of Business: CORPORATION

Location of All Premises You Own, Rent or Occupy: **See Schedule of Locations**

**Item 5.** Schedule of Forms and Endorsements

Form(s) and Endorsement(s) made a part of this Policy at time of issue:
**See Schedule of Forms and Endorsements**

**Item 6.** Premiums

| | |
|---|---|
| Coverage Part Premium: | 191,337 |
| Other Premium: | |
| Total Premium: | 191,337 |

**EMPLOYEE BENEFIT LIABILITY COVERAGE PART – OCCURRENCE DECLARATIONS**

Policy Number: GLO 3737031-10

Named Insured: MACANDREWS & FORBES HOLDINGS,

Policy Period: Coverage begins 07-01-2014 at 12:01 A.M.; Coverage ends 07-01-2015 at 12:01 A.M.

Producer Name: AON RISK SERVICES NORTHEAST INC

Producer No. 50522-000

**Item 1.** Limits of Insurance

**$** 4,000,000 Aggregate Limit

**$** 1,000,000 Each Act, Error or Omission Limit

**Item 2.** Form of Business:

☐ Individual ☐ Partnership ☐ Joint Venture ☒ Corporation

☐ Other

**Item 3.** Premium Schedule:

| Code No. | Premium Basis (Estimated Number of Employees) | Rate | | Advance Premium |
|---|---|---|---|---|
| 92100 | IF ANY | $ | Per Employee | $ INCL |
| | | $ 150.000 | Flat Charge | $ INCL |

Total Advance Premium For This Coverage Part: $ INCL

Audit Period: ☒ Annual ☐ Semi-annual ☐ Quarterly ☐ Monthly

**Forms And Endorsements Applicable To This Coverage Part:**

**SEE SCHEDULE OF FORMS AND ENDORSEMENTS**

**Policy Number**
**GLO 3737031-10**

## SCHEDULE OF FORMS AND ENDORSEMENTS

**Zurich American Insurance Company**

Named Insured MACANDREWS & FORBES HOLDINGS,

Effective Date: 07-01-14
12:01 A.M., Standard Time

Agent Name AON RISK SERVICES NORTHEAST INC

Agent No. 50522-000

COMMON & GENERAL LIABILITY FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| U-GU-D-310-A | 01-93 | COMMON POLICY DECLARATIONS |
| U-GU-319-F | 01-09 | IMPORTANT NOTICE - IN WITNESS CLAUSE |
| U-GL-D-1115-B CW | 09-04 | COMMERCIAL GL COVERAGE PART DECLARATIONS |
| U-GL-D-851-B CW | 09-04 | EMPLOYEE BENEFITS LIAB (OCCURRENCE) COV |
| U-GU-619-A CW | 10-02 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| U-GU-406-A | 07-94 | INSTALLMENT PREMIUM SCHEDULE |
| U-GL-1114-A CW | 10-02 | PRIOR INJURY OR DAMAGE ENDORSEMENT |
| U-GU-630-C | 12-07 | DISCLOSURE OF IMPORTANT INFO REL TO TRIA |
| CG 00 01 | 04-13 | COMMERCIAL GENERAL LIABILITY COV FORM |
| U-GL-1016-B CW | 05-04 | LEAD LIABILITY EXCLUSION |
| U-GL-1036-A NY | 05-01 | NEW YORK CHANGES ENDORSEMENT |
| U-GL-1055-A CW | 12-01 | BODILY INJURY REDEFINED |
| UGL1171ACW | 07-03 | FUNGI OR BACTERIA EXCLUSION |
| U-GL-1175-F CW | 04-13 | ADDL INSD-AUTO-OWNERS LESSEES CONTRACTR |
| U-GL-1178ACW | 07-03 | ASBESTOS EXCLUSION ENDORSEMENT |
| U-GL-1296-A NY | 05-07 | FIRST NAMED INSURED INDEMNIFICATION ENDT |
| U-GL-1446-A CW | 05-10 | NOTIFICATION TO OTHERS OF CANCELLATION |
| U-GL-1517-B CW | 04-13 | RECORD OR DISTRB OF MATRL OR INFO EXCL |
| U-GL-851-B CW | 06-04 | EMPLOYEE BENEFITS LIAB (OCCURRENCE) COV |
| U-GL-872-B CW | 04-09 | PREMIUM & REPORTS AGREEMENT-COMP RATED |
| U-GL-915-C CW | 08-04 | FELLOW EMPLOYEE COVERAGE ENDORSEMENT |
| U-GL-916-B NY | 11-08 | FOREIGN COVERAGE - WORLDWIDE |
| U-GL-917-C CW | 08-04 | INCIDENTAL MEDICAL MALPRACTICE COV ENDT |
| U-GL-918-B CW | 08-04 | NEWLY FORMED ORGANIZATIONS COVERAGE ENDT |
| U-GL-921-A CW | 12-97 | AMENDMENT OF REPRESENTATIONS CONDITION |
| U-GL-922-B CW | 12-01 | NOTICE OF ERROR IN CLAIM REPORTING ENDT |
| U-GL-925-B CW | 12-01 | WAIVER OF SUBROGATION (BLANKET) ENDT. |
| U-GU-1016-A CW | 06-10 | KNOWLEDGE BY POSITION OR DEPARTMENT |
| CG 01 02 | 04-13 | NEW HAMPSHIRE CHANGES |
| CG 01 04 | 12-04 | NEW YORK CHANGES - PREMIUM AUDIT |
| CG 01 23 | 03-97 | INDIANA CHANGES POLLUTION EXCLUSION |
| CG 01 44 | 10-11 | SOUTH DAKOTA CHANGES |
| CG 01 47 | 11-13 | UT CHANGES - COMMON INTEREST ASSOCIATION |
| CG 01 63 | 07-11 | NY CHANGES-COMM GEN LIAB COV FORM |
| CG 01 79 | 07-10 | VIRGINIA CHANGES |
| CG 02 20 | 03-12 | FL CHANGES - CANCELLATION & NONRENEWAL |
| CG 04 24 | 10-93 | COVERAGE FOR INJURY TO LEASED WORKERS |
| CG 20 11 | 04-13 | ADDL INSD-MANAGERS/LESSORS OF PREMISES |
| CG 20 12 | 04-13 | ADDL INS-ST,GOV AGY,SUB,POL SUB-PERM |
| CG 20 15 | 04-13 | ADDL INSD-VENDORS |
| CG 20 26 | 04-13 | ADDL INSD-DESIGNATED PERSON/ORGANIZATION |
| CG 20 28 | 04-13 | ADDL INSD-LESSOR OF LEASED EQUIPMENT |
| CG 20 37 | 04-13 | ADDL INSD-OWNERS/LESSEES/CONTR-COMP OPS |
| CG 21 47 | 12-07 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 49 | 09-99 | TOTAL POLLUTION EXCL ENDT |
| CG 21 55 | 09-99 | TOTAL POLLUTION EXCL. WITH HOSTILE FIRE |
| CG 24 04 | 05-09 | WAIVER OF TRANSFER RIGHTS OF RECOVERY |
| CG 26 21 | 10-91 | NY CHANGES - TRANSFER OF DUTIES |
| IL 00 03 | 09-08 | CALCULATION OF PREMIUM |
| IL 00 17 | 11-98 | COMMON POLICY CONDITIONS |
| IL 00 21 | 09-08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDT |
| IL 01 38 | 11-11 | VIRGINIA CHANGES |
| IL 01 61 | 03-12 | RHODE ISLAND CHANGES - CIVIL UNION |

**Policy Number**
**GLO 3737031-10**

## SCHEDULE OF FORMS AND ENDORSEMENTS

**Zurich American Insurance Company**

Named Insured MACANDREWS & FORBES HOLDINGS,

Effective Date: 07-01-14
12:01 A.M., Standard Time

Agent Name AON RISK SERVICES NORTHEAST INC

Agent No. 50522-000

| | | |
|---|---|---|
| IL 02 34 | 09-08 | NORTH DAKOTA CHANGES-CANC & NONRENL |
| IL 02 37 | 04-12 | DELAWARE CHANGES-TERMINATION PROVISIONS |
| IL 02 68 | 01-14 | NEW YORK CHANGES-CANC & NONRENL |
| IL 02 77 | 03-12 | LOUISIANA CHANGES-CANC & NONRENL |
| U-GU-773-A | 04-08 | FL-DISCLOSURE IMPORTANT INFO REL TO TRIA |
| U-GU-767-A CW | 01-08 | CAP ON LOSSES FROM CERTIFIED ACTS OF TER |
| U-GL-1114-A CW | 10-02 | BROAD FORM NAMED INSURED ENDORSEMENT |
| U-GL-1114-A CW | 10-02 | DIFERENCE IN LIMITS-GL-CANADIAN UND COV |
| U-GL-1114-A CW | 10-02 | NOTICE OF CANCELLATION/NON RENEWAL ENDT |
| U-GL-1114-A CW | 10-02 | EXCLUSION - SPECIFIED ENTITIES/OPERATION |
| U-GL-1114-A CW | 10-02 | DEDUCTIBLE ENDORSEMENT |
| U-GL-1114-A CW | 10-02 | EMPLOYED LAWYERS PROFESSIONAL LIAB COV |
| U-GL-1114-A CW | 10-02 | INSURANCE AGENTS & BROKERS PROF. LIAB. |
| U-GL-1114-A CW | 10-02 | DECLARATIONS-EMPLOYED LAWYERS-INS AGENTS |
| U-GL-924-B CW | 08-04 | TOBACCO HEALTH HAZARD EXCLUSION |
| CG 01 34 | 08-03 | MISSOURI CHANGES -POLLUTION EXCLUSION |
| CG 01 54 | 12-07 | VERMONT CHANGES-POLLUTION |
| CG 21 67 | 12-04 | FUNGI OR BACTERIA EXCLUSION |
| U-GL-920-A CW | 12-97 | NONOWNED WATERCRAFT COVERAGE ENDT |
| U-GU-1169-A CO | 06-13 | CO CIVIL UNION ACT POLICYHOLDER NOTICE |
| U-GU-1177-A MN | 09-13 | MN CIVIL MARRIAGE POLICYHOLDER NOTICE |
| UGL 1195B | 06-04 | FUNGI/BACTERIA EXCLUSION DISCLOSURE |
| UGL1203A | 04-04 | POLLUTION LIABILITY EXCLUSION DISCLOSURE |

**INSTALLMENT PREMIUM SCHEDULE**

The total premium shown in the Declarations of this policy is made payable in installments, on the dates and in the amount shown below.

| NAMED INSURED | POLICY NUMBER |
|---|---|
| MACANDREWS & FORBES HOLDINGS, | GLO 3737031-10 |

| PAYMENT DUE | STANDARD PREMIUM | TAXES PREPAID | TOTAL PREMIUM |
|---|---|---|---|
| 07/01/14 | $ 47,835.00 | $ 270.00 | $ 48,105.00 |
| 10/01/14 | $ 47,834.00 | | $ 47,834.00 |
| 01/01/15 | $ 47,834.00 | | $ 47,834.00 |
| 04/01/15 | $ 47,834.00 | | $ 47,834.00 |
| TOTAL | $ 191,337.00 | $ 270.00 | $ 191,607.00 |

Failure to pay the Installment Premium by the Date Due shown shall constitute non-payment of premium for which we may cancel this policy.

**Policy Number**
**GLO 3737031-10**

**ENDORSEMENT**

# ZURICH AMERICAN INSURANCE COMPANY

| | | | |
|---|---|---|---|
| Named Insured | MACANDREWS & FORBES HOLDINGS, | Effective Date: | 07-01-14<br>12:01 A.M., Standard Time |
| Agent Name | AON RISK SERVICES NORTHEAST INC | Agent No. | 50522-000 |

## PRIOR INJURY OR DAMAGE ENDORSEMENT

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. PRIOR INJURY OR DAMAGE EXTENSION

SOLELY WITH RESPECT TO THOSE CLAIMS MADE OR "SUITS" BROUGHT AGAINST THE COLOMER GROUP:

1. PARAGRAPH B.(2) OF 1. INSURING AGREEMENT UNDER SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY IS REPLACED BY THE FOLLOWING:
   (2) THE "BODILY INJURY" OR "PROPERTY DAMAGE" OCCURS:
      A. DURING THE POLICY PERIOD SHOWN IN THE DECLARATIONS; OR
      B. BEFORE THE POLICY PERIOD SHOWN IN THE DECLARATIONS, BUT NOT BEFORE DECEMBER 31, 2004.
2. THE FOLLOWING IS ADDED TO PARAGRAPH 1.INSURING AGREEMENT UNDER SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

   "BODILY INJURY" OR "PROPERTY DAMAGE" WHICH OCCURS BEFORE THE POLICY PERIOD SHOWN IN THE DECLARATIONS, BUT NOT BEFORE DECEMBER 31, 2004 AND WAS NOT, DURING OR PRIOR TO SUCH TIME PERIOD, KNOWN TO HAVE OCCURRED BY ANY INSURED LISTED UNDER PARAGRAPH 1. OF SECTION II- WHO IS AN INSURED OR ANY "EMPLOYEE" AUTHORIZED BY YOU TO GIVE OR RECEIVE NOTICE OF AN "OCCURRENCE" OR CLAIM, INCLUDES ANY CONTINUATION, CHANGE OR RESUMPTION OF THAT "BODILY INJURY" OR "PROPERTY DAMAGE" AFTER THE END OF SUCH TIME PERIOD.

B. ADDITIONAL EXCLUSIONS

SOLELY WITH RESPECT TO PARAGRAPH A. OF THIS ENDORSEMENT, THE INSURANCE PROVIDED DOES NOT APPLY TO ANY CLAIM OR "SUIT":

1. FIRST BROUGHT TO ANY PRIOR INSURER;
2. BROUGHT TO US BECAUSE THE LIMITS OF INSURANCE UNDER ANY PREVIOUS POLICY HAVE BEEN EXHAUSTED DUE TO THE PAYMENT OF CLAIMS;
3. BROUGHT TO US BECAUSE OF THE INSOLVENCY OR BANKRUPTCY OF ANY PRIOR INSURER;
4. COVERED BY ANY OTHER VALID AND COLLECTIBLE INSURANCE, INCLUDING ANY EXTENDED REPORTING PERIOD PROVISIONS;
5. NOT COVERED OR NOT PAID UNDER ANY PRIOR INSURANCE POLICY BECAUSE OF THE APPLICATION OF A DEDUCTIBLE OR SELF INSURED RETENTION;
6. KNOWN TO THE COLOMER GROUP BEFORE THE EFFECTIVE DATE OF THIS COVERAGE PART; OR

C. LIMITS OF INSURANCE

THE LAST PARAGRAPH UNDER SECTION ILL - LIMITS OF INSURANCE DOES NOT APPLY AND ALL COVERED LOSSES APPLICABLE TO SUCH PARAGRAPH A. OF THIS ENDORSEMENT SHALL BE CONSIDERED WITHIN THE LIMITS OF INSURANCE FOR THE POLICY PERIOD SHOWN IN THE DECLARATIONS.

**Policy Number**
**GLO 3737031-10**

**ENDORSEMENT**

# ZURICH AMERICAN INSURANCE COMPANY

Named Insured MACANDREWS & FORBES HOLDINGS, Effective Date: 07-01-14
12:01 A.M., Standard Time

Agent Name AON RISK SERVICES NORTHEAST INC Agent No. 50522-000

## PRIOR INJURY OR DAMAGE ENDORSEMENT

PART A, SECTION 2 OF THIS ENDORSEMENT DOES NOT SUPERSEDE THE KNOWLEDGE OF OCCURRENCE ENDORSEMENT.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

ZURICH

**THIS DISCLOSURE IS ATTACHED TO AND MADE PART OF YOUR POLICY.**

# DISCLOSURE OF IMPORTANT INFORMATION RELATING TO TERRORISM RISK INSURANCE ACT

**SCHEDULE***

| |
|---|
| Premium attributable to risk of loss from certified acts of terrorism for lines of insurance subject to TRIA:<br>1% (INCLUDED) |

*Any information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure of Premium**
In accordance with the federal Terrorism Risk Insurance Act ("TRIA"), as amended, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of premium attributable is shown in the Schedule above. The premium shown in the Schedule above is subject to adjustment upon premium audit, if applicable.

**B. Disclosure of Federal Participation in Payment of Terrorism Losses**
The United States Government may pay a share of insured losses resulting from an act of terrorism. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the insurer retention. The insurer retention equals 20% of the insurer's prior calendar year direct earned premium associated with lines of insurance subject to TRIA. TRIA is scheduled to expire on December 31, 2014.

**C. Disclosure of $100 Billion Cap on All Insurer and Federal Obligations**
If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a Program Year (January 1 through December 31) and an insurer has met its deductible under the program, that insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**D. Availability**
As required by TRIA, we have made available to you for lines subject to TRIA coverage for losses resulting from acts of terrorism certified under TRIA with terms, amounts and limitations that do not differ materially from those for losses arising from events other than acts of terrorism.

**E. Definition of Act of Terrorism under TRIA**
TRIA defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:

1. to be an act of terrorism;
2. to be a violent act or an act that is dangerous to human life, property or infrastructure;
3. to have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and
4. to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

Copyright © 2007 Zurich American Insurance Company
Includes copyrighted material of ISO Properties, Inc. with its permission

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

 © Insurance Services Office, Inc., 2012 

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

 © Insurance Services Office, Inc., 2012 

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

 © Insurance Services Office, Inc., 2012 

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

 © Insurance Services Office, Inc., 2012 

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

 © Insurance Services Office, Inc., 2012 

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".


© Insurance Services Office, Inc., 2012

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

 © Insurance Services Office, Inc., 2012 

**COVERAGE C – MEDICAL PAYMENTS**

1. **Insuring Agreement**

   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

      (1) On premises you own or rent;

      (2) On ways next to premises you own or rent; or

      (3) Because of your operations;

      provided that:

      (a) The accident takes place in the "coverage territory" and during the policy period;

      (b) The expenses are incurred and reported to us within one year of the date of the accident; and

      (c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

      (1) First aid administered at the time of an accident;

      (2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

      (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

   We will not pay expenses for "bodily injury":

   a. **Any Insured**

      To any insured, except "volunteer workers".

   b. **Hired Person**

      To a person hired to do work for or on behalf of any insured or a tenant of any insured.

   c. **Injury On Normally Occupied Premises**

      To a person injured on that part of premises you own or rent that the person normally occupies.

   d. **Workers' Compensation And Similar Laws**

      To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

   e. **Athletics Activities**

      To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

   f. **Products-Completed Operations Hazard**

      Included within the "products-completed operations hazard".

   g. **Coverage A Exclusions**

      Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

 © Insurance Services Office, Inc., 2012 

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

 © Insurance Services Office, Inc., 2012 

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**


© Insurance Services Office, Inc., 2012

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A;** and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

 © Insurance Services Office, Inc., 2012 

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

 © Insurance Services Office, Inc., 2012 

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.


© Insurance Services Office, Inc., 2012

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.


© Insurance Services Office, Inc., 2012

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.


© Insurance Services Office, Inc., 2012

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

 © Insurance Services Office, Inc., 2012 

# Lead Liability Exclusion

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and **Coverage B - Personal And Advertising Injury Liability**:

This insurance does not apply to:

**Lead**

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of or caused by the actual or alleged:

**(a)** exposure to or existence of lead, paint containing lead, or any other material or substance containing lead; or

**(b)** manufacture, distribution, sale, resale, re-branding, installation, repair, removal, encapsulation, abatement, replacement or handling of lead, paint containing lead, or any other material or substance containing lead,

whether or not the lead is or was at any time airborne as a particle contained in a product ingested, inhaled, transmitted in any fashion, or found in any form whatsoever;

**(2)** Any legal obligation of any insured for indemnification or contribution due to damages arising out of "bodily injury", "property damage" or "personal and advertising injury" caused by lead, paint containing lead, or any other substance or material containing lead;

**(3)** Any loss, cost, expense or damages, whether direct or consequential, arising out of any:

**(a)** request, demand or order that any insured or others test for, monitor, clean up, remove, abate, contain, treat, or neutralize lead, paint containing lead, or any other substance or material containing lead, or in any way respond to, or assess the effects of lead; or

**(b)** claim or suit relating to testing for, monitoring, cleaning up, removing, abating, containing, treating, or neutralizing lead, paint containing lead, or any other substance or material containing lead or in any way responding to or assessing the effects of lead.

# New York – Transfer Of Duties When A Limit Of Insurance Is Used Up

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:
**Employee Benefits Liability – Occurrence Coverage Form**

The following Condition is added to the Employee Benefits Liability Conditions (Section III):
**Transfer of Duties When a Limit of Insurance is Used Up.**

A. If we conclude that, based on any act, error or omission, claims or "suit" which have been reported to us and to which this insurance may apply, the:

(1) Aggregate Limit; or

(2) Each Act, Error or Omission Limit

is likely to be used up in the payment of judgments or settlements, we will notify the first Named Insured, in writing, to that effect.

B. When a limit of insurance described in paragraph a. above has actually been used up in the payment of judgements or settlements:

(1) We will notify the first Named Insured, in writing, as soon as practicable, that:

(a) Such a limit has actually been used up: and

(b) Our duty to defend "suits" seeking damages subject to that limit has also ended.

(2) We will initiate, and cooperate in, the transfer of control, to any appropriate insured, of all claims and "suits" seeking damages which are subject to that limit and which are reported to us before that limit is used up. That insured must cooperate in the transfer of control of said claims and "suits".

We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

We will take no action whatsoever with respect to any claim or "suit" seeking damages that would have been subject to that limit, had it not been used up, if the claim or "suit" is reported to us after that limit of insurance has been used up.

(3) The first Named Insured, and any other insured involved in a "suit" seeking damages subject to that limit, must arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us. Absent any such agreement, arrangements for the defense of such "suit" must be made as soon as practicable.

C. The first Named Insured will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with paragraph b. (2) above.
The duty of the first Named Insured to reimburse us will begin on:

(1) The date on which the applicable limit of insurance is used up, if we sent a notice in accordance with paragraph a. above; or

(2) The date on which we sent notice in accordance with paragraph b. (1) above, if we did not send notice in accordance with paragraph a., above.

D. The exhaustion of any limit of insurance by the payments of judgements or settlements, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this Condition.

# Bodily Injury Redefined

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Form**

The definition of "bodily injury" in SECTION V – DEFINITIONS is replaced by the following:

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death resulting from bodily injury, sickness or disease.

# Fungi Or Bacteria Exclusion Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions** of **Section I. – Coverage A – Bodily Injury And Property Damage Liability** and paragraph **2. Exclusions** of **Coverage B – Personal And Advertising Injury Liability**:

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

A. "Bodily injury", "property damage" or "personal and advertising injury " caused directly or indirectly by the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any:

1. "Fungi"or "bacteria"; or
2. Substance, vapor or gas produced by or arising out of any "fungi" or "bacteria".

B. Loss, costs or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or "bacteria", by any insured or by any other person or entity.

C. For the purposes of this exclusion, the following definitions are added:

1. "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, "spores", scents or byproducts produced or released by fungi.
2. "Spores" means reproductive bodies produced by or arising out of "fungi".
3. "Bacteria" means any type or form of bacteria and any materials or substances that are produced or released by bacteria.

This exclusion does not apply to any "fungi"or "bacteria" that are, are on, or are contained in, an edible good or edible product intended for human or animal consumption.



Includes copyrighted material of Insurance Services Office, Inc. with its permission

# Additional Insured – Automatic – Owners, Lessees Or Contractors

ZURICH®

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Named Insured**: MACANDREWS & FORBES HOLDING, INC

**Address (including ZIP Code)**:

35 EAST 62ND STREET

NEW YORK, NY 10065

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**A.** Section **II – Who Is An Insured** is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf,

in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or failure to render, any professional architectural, engineering or surveying services including:

**a.** The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**C.** The following is added to Paragraph **2.** Duties In The Event Of Occurrence, Offense, Claim Or Suit of Section **IV – Commercial General Liability Conditions**:

The additional insured must see to it that:

1. We are notified as soon as practicable of an "occurrence" or offense that may result in a claim;
2. We receive written notice of a claim or "suit" as soon as practicable; and
3. A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured may be an insured in any capacity. This provision does not apply to insurance on which the additional insured is a Named Insured if the written contract or written agreement requires that this coverage be primary and non-contributory.

**D.** For the purposes of the coverage provided by this endorsement:

1. The following is added to the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

   **Primary and Noncontributory insurance**

   This insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided that:

   **a.** The additional insured is a Named Insured under such other insurance; and

   **b.** You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured.

2. The following paragraph is added to Paragraph **4.b.** of the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

   This insurance is excess over:

   Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", offense, claim or "suit". This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by a written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

**E.** This endorsement does not apply to an additional insured which has been added to this policy by an endorsement showing the additional insured in a Schedule of additional insureds, and which endorsement applies specifically to that identified additional insured.

**F.** With respect to the insurance afforded to the additional insureds under this endorsement, the following is added to Section **III – Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the written contract or written agreement referenced in Paragraph **A.** of this endorsement; or
2. Available under the applicable Limits of Insurance shown in the Declarations,

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Asbestos Exclusion Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions** of **Section I - Coverage A – Bodily Injury And Property Damage Liability** and **Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Asbestos**

**A.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of or which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, release, leakage, leaching, friability, flaking, escape or presence of asbestos, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to the injury or damage; or

**B.** Any sums that any insured or other entity must pay, repay or reimburse because of any:

1. Request, demand, order, statutory or regulatory requirement, direction or determination that any insured or others test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or
2. Claim or "suit" for damages arising out of or relating in any way to any request, demand, order, statutory or regulatory requirement, direction or determination that any insured or others test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

**C.** Any other loss, cost or expense arising out of or relating in any way to asbestos.



Includes copyrighted material of Insurance Services Office, Inc. with its permission.

ZURICH

# Fungi / Bacteria Exclusion Disclosure Notice

**This insurance does not apply to or provides limited coverage as respects fungi or bacteria. You should refer to the specific fungi or bacteria endorsements indicated below for determination of specific terms and conditions as respects exclusion of any fungi or bacteria exposures that you may have. The following fungi or bacteria endorsements that are checked ☒ apply in the indicated areas of the "coverage territory":**

ISO FORM CG 00 01

| | | |
|---|---|---|
| ☒ | Fungi or Bacteria Exclusion Endorsement<br>U-GL-1171 A CW | All states in the "coverage territory" except: |
| ☐ | Fungus Exclusion Endorsement<br>U-GL-1063 A CW; **or** | Applicable in the following states: |
| ☐ | Limited Fungus Exclusion Endorsement<br>U-GL-1046 A CW | |
| ☐ | Fungi or Bacteria Exclusion<br>ISO form CG 2167 | Applicable in the following states: |
| ☐ | Georgia Limited Fungi or Bacteria Coverage - Small Businesses CG 32 01* | GA |
| ☐ | Other | Applicable in the following states: |

*Applicable only to risks with less than 25 employees or annual revenues less than $2.5 million.

ZURICH

# Pollution Liability Exclusion Disclosure Notice

**This insurance policy does not apply to or provides very limited coverage as respects pollution liability. You should refer to the specific pollution liability policy exclusions or pollution liability exclusion endorsements of your policy for determination of specific terms and conditions as respects exclusion of any pollution liability exposures that you may have. The policy exclusions of the Commercial General Liability Coverage Part, form CG 00 01, apply to pollution exposures in the "coverage territory" unless replaced or modified, as indicated in the applicable endorsement, by one or more of the following pollution exclusion endorsements. The pollution exclusion endorsements that are checked ☒ apply to pollution exposures in the indicated area(s) of the "coverage territory":**

ISO FORM CG 00 01

| | | |
|---|---|---|
| ☐ | Total Pollution Exclusion Endorsement, ISO Form CG 21 49 | All states in the "coverage territory" except: |
| ☒ | Total Pollution Exclusion - Hostile Fire Exception, ISO Form CG 21 55 | All states in the "coverage territory" except:<br>Only applicable in the following state(s) |
| ☐ | Total Pollution Exclusion with a Building Heating Equipment Exception and a Hostile Fire Exception ISO Form CG 21 65 | All states in the "coverage territory" except:<br>Only applicable in the following state(s) |

**Other State Endorsements**:

| | | |
|---|---|---|
| ☐ | Indiana Changes - Pollution Exclusion, ISO Form CG 01 23 | Indiana |
| ☐ | Missouri Changes - Pollution Exclusion, ISO Form CG 01 34; or | Missouri |
| ☐ | Missouri Changes – Gasoline Risks - Pollution Exclusion, ISO Form CG 01 35; | Missouri |
| ☐ | Vt. Changes - Pollution, ISO form CG 01 54 | Vermont |
| ☐ | Other | Applicable in the following states: |

ZURICH

# First Named Insured Indemnification Endorsement

| Policy No. | Exp. Date of Pol. | Eff. Date of End. | Agency No. | Addl. Prem. | Return Prem. |
|---|---|---|---|---|---|
| | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Named Insured:**
**Address (including ZIP Code):**

This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage Part**

**THIS ENDORSEMENT APPLIES SOLELY WITH RESPECT TO ENTITIES REGISTERED, DOMICILED OR HAVE ONGOING OPERATIONS IN 'NON-ADMITTED JURISDIC-TIONS'.**

**I.** **SECTION I. Coverages A, B** and **C** , **1. Insuring agreement**, are amended as follows; these endorsement provisions supercede any policy provisions which may be contrary to these provisions:

A. With respect to a "qualified entity", we will indemnify the first Named Insured for sums that the first Named Insured has agreed to indemnify or reimburse a "qualified entity" for its:

(1) legal liability because of "bodily injury" , "property damage" or "personal and advertising injury";

(2) payment of medical expenses for "bodily injury", and

(3) reasonable defense costs incurred with our consent,

those sums to which this insurance would apply if the "qualified entity" were an insured under this policy.

B. **Coverages A**, **B** and **C** do not apply to a "qualified entity". In a "non-admitted jurisdiction" where we are prohibited by law from the investigation, settlement or defense of any claim made, "suit" brought or proceeding instituted against any insured, we will indemnify the Named Insured for reasonable defense costs incurred in the "non-admitted jurisdiction".

**II.** **SECTION IV., COMMERICAL GENERAL LIABILITY CONDITIONS,** is amended to include the following additional condition:

**Duties as respects claims or suits in non-admitted jurisdictions**

The duties and requirements imposed upon any insured under this Policy shall not apply in any "non-admitted jurisdiction"**.** However, with respect to any claim made or "suit" brought in a "non-admitted jurisdiction", it shall be the duty of the first Named Insured to do or to cause the applicable "qualified entity" to do such things as would be required of such insured if **Coverage A**, **Coverage B** or **Coverage C** applied directly to such claim or "suit", as the case may be.

When the amount of damages is determined by an agreed settlement or on a final judgment against a "qualified entity", we will promptly indemnify the first Named Insured, at the mailing address listed in item 2. of the Declarations, the amount of damages covered under the terms of this policy.

If the first Named Insured or any "qualified entity" recovers from any third party all or part of any amount that we have paid pursuant to this endorsement, the first Named Insured shall promptly reimburse the amount of any such recovery to us.

**III. SECTION V. DEFINITIONS,** is amended to include the following additional definition:

"Non-admitted jurisdiction" means any country or political subdivision in which we are not authorized to insure risks and where doing so would violate the insurance laws and regulations of such jurisdiction.

"Qualified entity" means an entity, person or organization that would qualify as an insured under this policy, but for the fact that the entity is registered, domiciled or has ongoing operations in "non-admitted jurisdictions".

**All other terms and conditions of the policy not affected by this endorsement continue to apply as currently written.**

Countersigned ________________________________________

Authorized Representative Date

# Notification to Others of Cancellation

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| AGNL BLUSH LLC C/O ANGELO, GORDON & CO. LP | 30 |
| 245 PARK AVE., 26TH FL NEW YORK, NY 10167 | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| DIGITAL CINEMA DISTRIBUTION COALITION LLC | 30 |
| C/O WARNER BROS. ENT. INC. | |
| 4000 WARNER BLVD. | |
| BURBANK, CA 91522 USA | |
| | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION | 30 |
| 10 RIVERVIEW DRIVE | |
| DANBURY, CT 06810 | |
| | |
| | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation

ZURICH®

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| DOITT | 30 |
| 255 GREENWICH STREET, 9TH FLOOR | |
| NEW YORK, NY 10007 | |
| | |
| | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation

ZURICH®

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| DANIEL J. EDELMAN | 30 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation

ZURICH®

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| BERKADIA COMMERCIAL MORTGAGE | 30 |
| P.O. BOX 14447 | |
| DES MOINES, IA 50306 | |
| | |
| | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation

ZURICH®

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation:

  **1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

  **2.** At least 10 days prior to the effective date of the cancellation, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| AGNL BLUSH L.L.C. | 30 |
| C/O ANGELO, GORDAN & CO. LP. | |
| 245 PARK AVENUE, 26TH FL. | |
| NEW YORK, NY 10167 | |
| | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation

ZURICH®

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation:

1. To the name and address corresponding to each person or organization shown in the Schedule below; and
2. At least 10 days prior to the effective date of the cancellation, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| TRUSTEE OF THE CSU | 30 |
| CALIFORNIA STATE UNIVERSITY, LONG BEACH | |
| 1250 BELLFLOWER BLVD. | |
| LONG BEACH, CA 90840-0123 | |
| | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation

ZURICH®

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION | 30 |
| INSURANCE PROCESSING ATTN: 8734531-009 | |
| P.O. BOX 35705 | |
| BILLINGS, MT 59107-5705 | |
| | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Recording And Distribution Of Material Or Information In Violation Of Law Exclusion

ZURICH®

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**A.** Exclusion **q. Recording And Distribution Of Material Or Information In Violation Of Law** of Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" directly or indirectly arising out of or based upon any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, or any other legal liability, at common law or otherwise, that addresses, prohibits, or limits the printing, dissemination, disposal, monitoring, collecting, recording, use of, sending, transmitting, communicating or distribution of material or information.

**B.** Exclusion **p. Recording And Distribution Of Material Or Information In Violation Of Law** of Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" directly or indirectly arising out of or based upon any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, or any other legal liability, at common law or otherwise, that addresses, prohibits, or limits the printing, dissemination, disposal, monitoring, collecting, recording, use of, sending, transmitting, communicating or distribution of material or information.

All other terms and conditions of this policy remain unchanged.


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Employee Benefits Liability - Occurrence Coverage Form

This Coverage Form provides *occurrence* coverage. Please read the entire form carefully.

**Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.**

**Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us", and "our" refer to the Company providing this insurance.**

Other words and phrases that appear in quotes have special meaning. Refer to the Definitions Section.

## Section I. Coverage - Employee Benefit Liability

### 1. Insuring Agreement

**A.** We will pay those sums that the "insured" becomes legally obligated to pay as damages because of any act, error, or omission of the "insured" in the "administration" of the "insured's" "employee benefit programs". We will have the right and duty to defend the "insured" against any suit seeking those damages. However, we will have no duty to defend the "insured" against any "suit" seeking damages for any act, error, or omission for which this insurance does not apply. We may, at our discretion, investigate any claim and settle any "suit" that may result; but:

**1.** The amount we pay for damages is limited as described in Section II. - Limits of Insurance of this Coverage Part; and

**2.** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under this Employee Benefit Liability coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments of this Coverage Part.

**B.** This insurance applies to an act, error or omission only if:

**1.** The act, error, or omission takes place in the "coverage territory";

**2.** The "insured" had no knowledge of and could not have reasonably foreseen any circumstances which might result in a claim or "suit"; and

**3.** The act, error, or omission occurs during the policy period.

### 2. Exclusions

This insurance does not apply to any:

**A.** "Bodily injury", "property damage" or "personal and advertising injury";

**B.** Any "claim" or "suit" arising out of any dishonest, fraudulent, criminal or malicious act;

**C.** Any "claim" or "suit" arising out of discrimination or humiliation;

**D.** Any "claim" or "suit" arising out of an insurer's or other provider's failure to perform its contract;

**E.** Any "claim" or "suit" arising out of your failure to comply with any workers compensation, unemployment insurance, social security, or disability benefits law;

**F.** Any "claim" or "suit" arising out of the failure of any of your "employee benefit plans" to meet obligations due to insufficient funds;

**G.** Any "claim" or "suit" arising out of:

**a.** Advice given to any person to participate or not participate in a plan or program included in "employee benefit programs";

**b.** The appointment of, or failure to appoint, any investment manager, administrator, trustee, actuary, advisor, counsel, accountant, custodian, or consultant;

**c.** Any investment activity, including the management, administration, or disposition of assets of your "employee benefit programs"; or

**d.** Failure of any investment to perform as represented by any "insured".

**H.** Any "claim or "suit" arising out of an "Insured's" liability as a fiduciary under:

a. The Employee Retirement Income Security Act of 1974 (PL93-406) and its amendments; or

b. The Internal Revenue Code of 1986 (including the Internal Revenue Code of 1954) and its amendments.

3. **Supplementary Payments**

We will pay, in addition to the applicable Limits of Insurance, with respect to any claim we investigate or settle or "suit" we defend:

A. All expenses incurred by us, all costs taxed against the "insured" in any "suit" defended by us, and all interest on the full amount of any judgment which accrues after entry of the judgment and before we have paid or tendered or deposited in court, that part of the judgment which does not exceed the limit of our liability.

B. Premiums on appeal bonds required and on bonds to release attachments in any "suit". We do not have to furnish these bonds.

C. All reasonable expenses incurred by the "insured" at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

D. Prejudgment interest awarded against the "insured" on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

## II. Limits of Insurance

A. The Limits of Insurance shown in the Declarations and the rules below establish the most we will pay regardless of the number of:

(1) "Insureds";

(2) Claims made or "suits" brought; or

(3) "Employees" or dependents or beneficiaries of "employees" making claims or bringing "suits".

B. The Aggregate Limit is the most we will pay for all damages because of all "claims" or "suits" arising from the "administration" of your "employee benefit programs" during the policy period.

C. Subject to the Aggregate Limit provisions in **B.** above, the Each Act, Error, or Omission Limit is the most we will pay for all damages sustained by any one "employee", including the "employee's" dependents and beneficiaries, because of acts, errors, or omissions committed in the "administration" of your "employee benefit programs".

D. The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## III. Conditions

A. **Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of our obligations.

B. **Duties in the Event of an Act, Error, Omission, Claim or Suit**

(1) Regardless of whether the loss exceeds any applicable deductible amount, you must see to it that we are notified as soon as practicable of any act, error, or omission which may result in a claim. To the extent possible, notice should include:

a. How, when, and where the act, error, or omission took place;

b. The names and addresses of any injured "employee", dependents, or beneficiaries of any "employee" and witnesses.

(2) If a claim is received by any "insured", you must:

a. Immediately record the specifics of the claim and the date received; and

b. Notify us as soon as practicable.

You must see to it that we receive written notice of the claim as soon as practicable.

(3) You and any other involved "insured" must:

a. Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit";

b. Authorize us to obtain records and other information;

c. Cooperate with us in the investigation, settlement, or defense of the claim or "suit"; and

d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury to which this insurance may also apply.

(4) No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

C. **Legal Action Against Us**

No person or organization has a right:

**(1)** To join us as a party or otherwise bring us into a "suit" asking for damages from an "insured"; or

**(2)** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured" obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the "insured", and the claimant or the claimant's legal representative.

**D. Other Insurance**

**(1)** This Coverage Part is primary insurance, except when stated, to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which applies to the loss on an excess or contingent basis, the amount of our liability under this Coverage Part shall not be reduced because of such other insurance.

**(2)** When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess, or contingent, we shall not be liable for a greater proportion of the loss than that stated in the applicable contribution provision below:

**a. Contribution by Equal Shares**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

**b. Contribution by Limits**

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**E. Separation of Insureds**

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**(1)** As if each Named Insured were the only Named Insured; and

**(2)** Separately to each "insured" against whom claim is made or "suit" is brought.

**F. Transfer Of Rights Of Recovery Against Others To Us**

If the "insured" has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The "insured" must do nothing after loss to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

**IV. Definitions**

**A.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**(1)** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**(2)** Regarding web-sites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**B.** "Administration" means:

**(1)** Counseling "employees", including their dependents and beneficiaries, with respect to "employee benefit programs";

**(2)** Handling records in connection with "employee benefit programs"; or

**(3)** Effecting or terminating an "employee's" participation in a plan included in "employee benefit programs".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**D.** "Coverage territory" means:

**(1)** The United States of America (including its territories and possessions), Puerto Rico, and Canada; or

**(2)** All parts of the world if the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **D.(1)** above, or in a settlement to which we agree.

**E.** "Employee" means:

Your officers and employees, whether actively employed, disabled, or retired.

**F.** "Employee benefit programs" mean:

Group life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, workers compensation, unemployment insurance, salary continuation

plans, social security, disability benefits insurance, savings plans, vacation plans, or any other similar plans or programs.

**G.** "Insured" means:

You and any of your partners, executive officers, directors, members, stockholders or "employees", provided such "employee" is authorized to act in the "administration" of your "employee benefit programs".

**H.** "Personal and advertising injury" means:

Injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**(1)** False arrest, detention, or imprisonment;

**(2)** Malicious prosecution;

**(3)** The wrongful eviction from wrongful entry into, or invasion of the right of private occupancy of, a room, dwelling, or premises that a person occupies by or on behalf of its owner, landlord, or lessor;

**(4)** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

**(5)** Oral or written publication,' in any manner, of material that violates a person's right of privacy;

**(6)** The use of another's advertising idea in your "advertisement"; or

**(7)** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**I.** "Property damage" means:

**(1)** Physical injury to tangible property, including all resulting loss of use of that property.

**(2)** Loss of use of tangible property that is not physically injured.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications, software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**J.** "Suit" means:

A civil proceeding in which damages to which this insurance applies is alleged. "Suit" includes:

**(1)** An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

**(2)** Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

# Premium And Reports Agreement – Composite Rated Policies

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under any of the following:
**Commercial General Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**
**Owners Contractors Protective Coverage Part**
**Railroad Protective Coverage Part**

**Schedule**

1. **Unit of Exposure:**

| | | |
|---|---|---|
| ☐ Gross sales | ☐ Area | ☐ Gallons |
| ☐ Each | ☐ Rooms | ☐ General Liability Payroll |
| ☐ Admissions | ☐ Units | ☐ Rounds played |
| ☐ Total Cost | ☐ Total Operating Expenditures | ☐ Occupied rooms |
| ☐ Licensed Autos | ☐ Workers Compensation Payroll | ☒ Other GROSS DOMESTIC SALES |

2.

| Coverage / Description | Unit of Exposure | Rate(s) | Estimated Premium(s) |
|---|---|---|---|
| GROSS | 1,680,286,220 | .113872 | $ 191,337 |
| DOMESTIC SALE | | | |
| TAXES | | | $ 270 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

(Add more rows as required)

3. **Deposit Premium:** $ 191,337
4. **Minimum Premium:** $ 191,337

Condition **5, Premium Audit**, of Section **IV**, **Commercial General Liability Conditions**, is replaced by the following:

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part according to our rules and the composite rates shown in the Schedule above or attached hereto.

**b.** For policies other than Annual Reporting, the deposit premium shown in the Schedule is due and payable on the first day of the policy period. The first Named Insured will pay, within 20 days following the mailing or delivery of the statement of audited premium for each audit period, the earned premium due.

**c.** Within 180 days after this Coverage Part expires we will conduct an audit, which may not be waived. We will compute the earned premium for the policy period by multiplying the composite rate against the total developed exposure. If the earned premium is greater than the sum of the deposit and any interim adjustment premiums, the first Named Insured will pay us the excess; if less, we will return the unearned portion to the first Named Insured. However, the earned premium will not be less than the Minimum Premium as shown in the Schedule.

**d.** The first Named Insured must maintain records of the information we need for premium computation and send us copies at such times as we may request.

**e.** The units of exposure shown in the Schedule are defined as follows:

1. **Admissions** means the total number of persons, other than employees of the named insured, admitted to events conducted on the insured premises whether on paid admissions, tickets, complimentary tickets or passes.
2. **Gallons** means the total number of gallons of liquefied petroleum gasses invoiced on any basis to any customer, whether or not the insured actually takes possession of such gases.
3. **Gross sales** means gross sales invoiced, before discounts, but does not include taxes collected for any governmental unit.
4. **Licensed "auto"** means the final average of the number of "autos" at policy inception and the number of "autos" at policy termination.
5. **Occupied rooms** means the number of rooms actually rented during the policy year in a hotel or other place of lodging.
6. **General Liability payroll** means total remuneration for all "employees" of the insured as defined in our rating manuals.
7. **Workers Compensation payroll** means total remuneration for all "employees" of the insured as defined in our rating manuals.
8. **Rounds played** means the number of both paid and gratuitous rounds of golf played on an 18 hole golf course during the policy year. Rounds that are less then 10 holes will be counted as a half round toward the total number of rounds of golf played.
9. **Each** means the total number of exposure units as described in the exposure basis.
10. **Rooms** mean the total number of rooms available for rent in a hotel or other place of lodging.
11. **Total cost** means the total cost of all work let or sublet in connection with each specified project including the cost of all labor, material and equipment furnished, used or delivered in the execution of the work, however, do not include the cost of finished equipment installed but not furnished by the subcontractor if the subcontractor does no other work on or in connection with such equipment; and all fees, bonuses or commissions made, paid or due.
12. **Total Operating Expenditures** means expenditures (including grants, entitlements and shared revenue) without regard to source of revenue, including accounts payable.
13. **Units** means a single room or group of rooms intended for occupancy as separate living quarters by a family, by a group of unrelated persons living together, or by a person living alone.
14. **Area** means the total number of square feet of floor space at the insured premises they occupy or lease to others.
15. **Other** means the unit of exposure as defined in the Unit of Exposure Schedule of this endorsement

# Fellow Employee Coverage Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**1.** It is agreed that paragraph **2. a. (1)** of **SECTION II - WHO IS AN INSURED** is deleted and replaced by the following:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company);

(b) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1) (a) above; or

(c) Arising out of his or her providing or failing to provide professional health care services.



Includes copyrighted material of Insurance Services Office, Inc. with its permission.

ZURICH®

# Foreign Coverage - Worldwide

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **4.**, "Coverage territory" under **Section V – Definitions** is replaced by the following:

**4.** "Coverage territory" means:

**a.** Anywhere in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America; and

**b.** International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place excluded in Paragraph **a.** above.

**B.** Under Paragraph **1.a.**, **Insuring Agreement** of **Section I** – **Coverage A**, **Bodily Injury and Property Damage Liability** and Paragraph **1.a.**, **Insuring Agreement** of **Section I** - **Coverage B**, **Personal and Advertising Injury Liability**, the second sentence is replaced by the following:

We will have the right and duty to defend the insured against any "suit" seeking those damages, provided the "suit" is brought within the United States of America (including its territories and possessions), Puerto Rico or Canada.

We shall have no duty to defend any "suit" brought in a country where the laws of that country do not permit us to defend that "suit". Subject to our prior authorization, we will reimburse defense costs actually incurred by an insured in conducting the insured's defense of such a "suit" that seeks damages for "bodily injury" or "property damage" to which this insurance applies. Our duty to defend applies only to those countries in the "coverage territory" where legal circumstances permit. In those countries in the "coverage territory" where legal circumstances do not permit us to defend, we will reimburse you for costs of defense, subject to our prior authorization.

**C.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and **Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to any "bodily injury", "property damage" or "personal and advertising injury" for which any insured under this policy may be held liable:

**1.** If Commercial General Liability Insurance Coverage provided to such insured is also provided under any "foreign insurance policy"; or

**2.** If Commercial General Liability Insurance Coverage would be provided to such insured under any "foreign insurance policy" described in Paragraph **1.** above, except for:

**a.** Exhaustion of the amount of insurance; or

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**b.** Forfeiture of coverage

under such "foreign insurance policy".

**D.** The following definition is added to **Section V – Definitions**:

"Foreign insurance policy" means a primary policy of commercial general liability insurance coverage providing substantially the same coverage as this policy effective on or after the inception of this policy and which has been issued to provide coverage for your premises or operations, or the products and completed operations in a country within the "coverage territory" other than the United States of America (including its territories and possessions), Puerto Rico or Canada.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Incidental Medical Malpractice Coverage Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**I.** Sections **2.a.(1)(d)** of **Section II. WHO IS AN INSURED** are deleted and replaced by the following:

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insured for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(d)** Arising out of his or her providing or failing to provide professional health care services, except any "bodily injury" or "personal and advertising injury" arising out of:

**(1)** medical or paramedical services to persons performed by any physician, dentist, nurse, emergency medical technician, paramedic or other licensed medical care person employed by you to provide such services: or

**(2)** emergency cardiopulmonary resuscitation (CPR) or first aid services performed by any other employee of yours who is not a licensed medical professional.

**II.** Any insurance coverage provided by this endorsement is excess over any other valid and collectible insurance.



Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Newly Formed Organizations Coverage Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**I.** Part 3. of Section II - WHO IS AN INSURED is deleted and replaced by the following:

**3.** Any organization you newly acquire or form and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage A. does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization;

**c.** Coverage B. does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization;

**d.** If the organization is a joint venture or partnership, coverage is afforded only to the extent of the percentage of ownership interest of any insured in the organization.



Includes copyrighted material of Insurance Services Office, Inc. with its permission.



New York Free Trade Zone

# Amendment of Representations Condition Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following is added to the Representations Condition of Section IV - Commercial General Liability Conditions:

Coverage will continue to apply if you:

- unintentionally fail to disclose all hazards existing at the inception of this policy, or
- unintentionally make an error, omission, or improper description of premises or other statement of information stated in this policy.

You must notify us as soon as possible after the discovery of any hazards or any other information that was not provided to us prior to the acceptance of this policy.

# Notice of Error In Claim Reporting Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following is added to **Duties In The Event Of Occurrence, Offense, Claim or Suit** of **Section IV - Commercial General Liability Conditions**:

**e.** In the event that an insured reports an "occurrence" to the workers compensation carrier of the named insured, and this "occurrence" later develops into a General Liability claim covered by this policy, the failure to report such "occurrence" to us at the time of the "occurrence" shall not be deemed in violation of this condition. You must, however, give us notice as soon as practicable after being made aware that the particular claim is a General Liability rather than a Workers Compensation claim.

# Waiver Of Subrogation (Blanket) Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following is added to the **Transfer Of Rights Of Recovery Against Others To Us Condition**:

If you are required by a written contract or agreement, which is executed before a loss, to waive your rights of recovery from others, we agree to waive our rights of recovery. This waiver of rights shall not be construed to be a waiver with respect to any other operations in which the insured has no contractual interest.

# Knowledge by Position or Department

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Business Auto Coverage Part**
**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**
**Railroad Protective Liability Coverage Part**

**SCHEDULE**

| | |
|---|---|
| **Position or Department:** | KNOWLEDGE BY THE RISK MANAGER. |
| | |
| | |
| | |

The following Condition is added:

**Knowledge By Your Employee**

**1.** Knowledge of an "accident", "occurrence", offense, "injury", claim, "suit" or loss by your employee will not in and of itself be considered your knowledge of the "accident", "occurrence", offense, "injury", claim, "suit" or loss unless an employee who:

**a.** Holds a position; or

**b.** Is a member of a department;

shown in the Schedule of this endorsement receives such knowledge.

**2.** This endorsement does not apply unless the Schedule of this endorsement indicates at least one Position or Department.

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW HAMPSHIRE CHANGES

This endorsement modifies insurance provided under the following:

OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definitions of "auto" and "mobile equipment" in the **Definitions** section are replaced by the following:

**1.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**2.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment, such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment.

 © Insurance Services Office, Inc., 2012 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – PREMIUM AUDIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **b.** of the **Premium Audit** Condition **Section IV** is replaced by the following:

**PREMIUM AUDIT**

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. An audit to determine the final premium due or to be refunded will be completed within 180 days after the expiration date of the policy. But the audit may be waived if the total annual premium attributable to the auditable exposure base is not reasonably expected to exceed $1500. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

**B.** Except as provided in Paragraph **A.** above, the **Examination Of Your Books And Records** Common Policy Condition continues to apply.

 © ISO Properties, Inc., 2003 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES - POLLUTION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Subparagraph **f., Pollution** of Paragraph **2., Exclusions** of **Bodily Injury And Property Damage Liability Coverage (Section I - Coverages)** and to Paragraph **2., Exclusions** of **Personal And Advertising Injury Liability Coverage (Section I - Coverages)** or to any amendment to or replacement thereof:

This Pollution Exclusion applies whether or not such irritant or contaminant has any function in your business, operations, premises, site or location.

 Copyright, Insurance Services Office, Inc., 1996 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SOUTH DAKOTA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The **Legal Action Against Us** Condition (Section **IV** – Conditions) is replaced by the following:

**Legal Action Against Us**

No person or organization has a right under this Coverage Part to join us as a party or otherwise bring us into a "suit" asking for damages from an insured.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

 © Insurance Services Office, Inc., 2011 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UTAH CHANGES – COMMON-INTEREST ASSOCIATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** **Section II – Who Is An Insured** is amended to include the following as an insured:

Each individual unit-owner or each individual lot-owner of the insured association, but only with respect to liability arising out of:

**1.** the unit-owner's or lot-owner's ownership interest in the common elements and facilities;

**2.** the unit-owner's or lot-owner's membership in the association; and

**3.** maintenance, repair, or replacement of common elements and facilities.

**B.** The following paragraph is added to **Section IV – Commercial General Liability Conditions:**

**Acts Or Omissions By Unit-Owners Or Lot-Owners**

No act or omission by any unit-owner or lot-owner, unless acting within the scope of the unit-owner's or lot-owner's authority on behalf of the association, will void the policy or be a condition to recovery under the policy.

**C.** The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us (Section IV – Commercial General Liability Conditions):**

We waive any rights, which the Transfer Of Rights Of Recovery Against Others To Us Condition may give us against:

**a.** any unit-owner or lot-owner; and

**b.** any person residing with the unit-owner or lot-owner, if the unit-owner resides in the unit or lot-owner resides on the lot.

 © Insurance Services Office, Inc., 2013 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **1. Insuring Agreement** of Section **I – Coverage A Bodily Injury And Property Damage Liability** is replaced by the following:

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

 © Insurance Services Office, Inc., 2010 

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**B.** Paragraph **1.a.** of Section **I – Coverage B Personal And Advertising Injury Liability** is replaced by the following:

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** and **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**C.** The following is added as Paragraph **e.** to the **Duties In The Event Of Occurrence, Offense, Claim Or Suit** Condition (Paragraph **2.** of **Section IV – Commercial General Liability Conditions**):

**e.** Notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us.

**D.** Paragraph **3.** of **Section IV – Commercial General Liability Conditions** is replaced by the following:

**3. Legal Action Against Us**

**a.** Except as provided in Paragraph **b.,** no person or organization has a right under this Coverage Part:

**(1)** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**(2)** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**b.** With respect to "bodily injury" and "personal and advertising injury" claims, if we deny coverage or do not admit liability because an insured or the injured person, someone acting for the injured person or other claimant fails to give us written notice as soon as practicable, then the injured person, someone acting for the injured person or other claimant may bring an action against us, provided the sole question is whether the denial of coverage or nonadmission of liability is based on the failure to provide timely notice.

However, the injured person, someone acting for the injured person or other claimant may not bring an action if within 60 days after we deny coverage or do not admit liability, we or an insured:

**(1)** Brings an action to declare the rights of the parties under the policy; and

**(2)** Names the injured person, someone acting for the injured person or other claimant as a party to the action.

 © Insurance Services Office, Inc., 2010 

**E.** The following provision is added and supersedes any provision to the contrary:

Failure to give notice to us as required under this Coverage Part shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide such timely notice has prejudiced us. However, no claim made by the insured, injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

**F.** The definition of "loading or unloading" in the **Definitions** Section does not apply.

 © Insurance Services Office, Inc., 2010 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **f.(1)(a)(i)** under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**(i)** "Bodily injury" or "property damage" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

 © Insurance Services Office, Inc., 2010 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Of Policies In Effect**

**a. For 90 Days Or Less**

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

**(a)** A material misstatement or misrepresentation; or

**(b)** A failure to comply with the underwriting requirements established by the insurer.

**b. For More Than 90 Days**

If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** The policy was obtained by a material misstatement;

**(3)** Failure to comply with underwriting requirements established by the insurer within 90 days of the effective date of coverage;

**(4)** A substantial change in the risk covered by the policy; or

**(5)** The cancellation is for all insureds under such policies for a given class of insureds.

If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(b)** 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in Paragraph **2.b.**

**B.** Paragraph **3.** of the **Cancellation** Common Policy Condition is replaced by the following:

**3.** We will mail or deliver our notice to the first Named Insured at the last mailing address known to us.

 © Insurance Services Office, Inc., 2011 

**C.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

**D.** The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

**1.** If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

 © Insurance Services Office, Inc., 2011 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COVERAGE FOR INJURY TO LEASED WORKERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

With respect to the Employer's Liability exclusion (Section **I**) only, the definition of "employee" in the DEFINITIONS Section is replaced by the following:

"Employee" does not include a "leased worker" or a "temporary worker".

 Copyright, Insurance Services Office, Inc., 1992 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Designation Of Premises (Part Leased To You):**<br>ONLY THOSE PREMISES WHERE REQUIRED BY WRITTEN CONTRACT |
| **Name Of Person(s) Or Organization(s) (Additional Insured):**<br>ONLY THOSE PERSONS OR ORGANIZATIONS WHERE REQUIRED BY WRITTEN CONTRACT |
| **Additional Premium:** INCL. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

**1.** Any "occurrence" which takes place after you cease to be a tenant in that premises.

**2.** Structural alterations, new construction or demolition operations performed by or on behalf of the person(s) or organization(s) shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION – PERMITS OR AUTHORIZATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| |
|---|
| **State Or Governmental Agency Or Subdivision Or Political Subdivision:**<br>THE CITY OF NEW YORK |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any state or governmental agency or subdivision or political subdivision shown in the Schedule, subject to the following provisions:

**1.** This insurance applies only with respect to operations performed by you or on your behalf for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization.

However:

**a.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**b.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**2.** This insurance does not apply to:

**a.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality; or

**b.** "Bodily injury" or "property damage" included within the "products-completed operations hazard".

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

POLICY NUMBER: GLO 3737031-10

**COMMERCIAL GENERAL LIABILITY**
**CG 20 12 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION – PERMITS OR AUTHORIZATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| |
|---|
| **State Or Governmental Agency Or Subdivision Or Political Subdivision:**<br>CITY OF BURBANK CALIFORNIA, ITS OFFICERS, EMPLOYEES, AGENTS AND REPRESENTATIVES (COLLECTIVELY THE "CITY") |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any state or governmental agency or subdivision or political subdivision shown in the Schedule, subject to the following provisions:

**1.** This insurance applies only with respect to operations performed by you or on your behalf for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization.

However:

**a.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**b.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**2.** This insurance does not apply to:

**a.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality; or

**b.** "Bodily injury" or "property damage" included within the "products-completed operations hazard".

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

POLICY NUMBER: GLO 3737031-10

**COMMERCIAL GENERAL LIABILITY**
**CG 20 12 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION – PERMITS OR AUTHORIZATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **State Or Governmental Agency Or Subdivision Or Political Subdivision:**<br>THE CITY OF LOS ANGELES, THE BOARD OF WATER & POWER COMMISSIONERS OF THE CITY OF LOS ANGELES, THE DEPARTMENT OF WATER & POWER, THEIR OFFICERS, AGENTS AND EMPLOYEES. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any state or governmental agency or subdivision or political subdivision shown in the Schedule, subject to the following provisions:

**1.** This insurance applies only with respect to operations performed by you or on your behalf for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization.

However:

**a.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**b.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**2.** This insurance does not apply to:

**a.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality; or

**b.** "Bodily injury" or "property damage" included within the "products-completed operations hazard".

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| HEALTH CLUB PANEL NETWORK, ETAL-"HEALTH CLUB PROMOTIONS" | "ALL PRODUCTS" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to throughout this endorsement as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business.

However:

**1.** The insurance afforded to such vendor only applies to the extent permitted by law; and

**2.** If coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

**B.** With respect to the insurance afforded to these vendors, the following additional exclusions apply:

**1.** The insurance afforded the vendor does not apply to:

**a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**b.** Any express warranty unauthorized by you;

**c.** Any physical or chemical change in the product made intentionally by the vendor;

**d.** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

 © Insurance Services Office, Inc., 2012 

POLICY NUMBER: GLO 3737031-10

**COMMERCIAL GENERAL LIABILITY**
**CG 20 15 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| H.E.B. GROCERY COMPANY L.P ITS SUBSIDIARIES AND AFFILIATES | "ALL PRODUCTS" |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to throughout this endorsement as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business.

However:

**1.** The insurance afforded to such vendor only applies to the extent permitted by law; and

**2.** If coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

**B.** With respect to the insurance afforded to these vendors, the following additional exclusions apply:

**1.** The insurance afforded the vendor does not apply to:

**a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**b.** Any express warranty unauthorized by you;

**c.** Any physical or chemical change in the product made intentionally by the vendor;

**d.** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;


© Insurance Services Office, Inc., 2012

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| ONLY THOSE WHERE REQUIRED BY WRITTEN CONTRACT | "ALL PRODUCTS" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to throughout this endorsement as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business.

However:

**1.** The insurance afforded to such vendor only applies to the extent permitted by law; and

**2.** If coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

**B.** With respect to the insurance afforded to these vendors, the following additional exclusions apply:

**1.** The insurance afforded the vendor does not apply to:

**a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**b.** Any express warranty unauthorized by you;

**c.** Any physical or chemical change in the product made intentionally by the vendor;

**d.** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| WALGREENS VENDOR CERTIFICATE ADMINISTRATOR<br>VENDOR MAINTENANCE DEPT.<br>MS #690<br>1901 E. VORHEES ST.<br>DANVILLE, IL 61834 | "ALL PRODUCTS" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to throughout this endorsement as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business.

However:

**1.** The insurance afforded to such vendor only applies to the extent permitted by law; and

**2.** If coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

**B.** With respect to the insurance afforded to these vendors, the following additional exclusions apply:

**1.** The insurance afforded the vendor does not apply to:

**a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**b.** Any express warranty unauthorized by you;

**c.** Any physical or chemical change in the product made intentionally by the vendor;

**d.** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;


© Insurance Services Office, Inc., 2012

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| SEARS HOLDINGS MANAGEMENT CORPORATION AND IT'S SUBSIDIARIES AND AFFILIATES. | "ALL PRODUCTS" |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to throughout this endorsement as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business.

However:

**1.** The insurance afforded to such vendor only applies to the extent permitted by law; and

**2.** If coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

**B.** With respect to the insurance afforded to these vendors, the following additional exclusions apply:

**1.** The insurance afforded the vendor does not apply to:

**a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**b.** Any express warranty unauthorized by you;

**c.** Any physical or chemical change in the product made intentionally by the vendor;

**d.** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

 © Insurance Services Office, Inc., 2012 

**e.** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**f.** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**g.** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

**h.** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

**(1)** The exceptions contained in Subparagraphs **d.** or **f.;** or

**(2)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**2.** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**C.** With respect to the insurance afforded to these vendors, the following is added to **Section III – Limits Of Insurance**:

If coverage provided to the vendor is required by a contract or agreement, the most we will pay on behalf of the vendor is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

POLICY NUMBER: GLO 3737031-10

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):**<br>CITY OF LOS ANGELES<br>ATTN: FILM PERMIT INSURANCE<br>200 NORTH MAIN STREET, ROOM 1240<br>LOS ANGELES, CA 90012-4190 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

POLICY NUMBER: GLO 3737031-10

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):**<br>FILM L.A., INC. & COUNTY OF LOS ANGELES<br>1201 W. 5TH STREET<br>SUITE T-800<br>LOS ANGELES, CA 90017 USA |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

POLICY NUMBER: GLO 3737031-10

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):**<br>HARTFORD, LP<br>312 ½ & 316 WEST PICO BLVD.<br>1301-1313 OLIVE STREET<br>LOS ANGELES, CA 90015 USA |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

POLICY NUMBER: GLO 3737031-10

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):**<br>THE CAMERA HOUSE<br>7351 HOLTON AVENUE<br>NORTH HOLLYWOOD, CA 91605 USA |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

POLICY NUMBER: GLO 3737031-10

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):**<br>THE CITY OF NEW YORK<br>THE BUSINESS NETWORK OF EMERGENCY RESOURCES, INC. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

1. In the performance of your ongoing operations; or
2. In connection with your premises owned by or rented to you.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and
2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or
2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

POLICY NUMBER: GLO 3737031-10

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):**<br>GOVERNORS ISLAND PRESERVATION AND EDUCATION CORPORATION<br>10 SOUTH STREET, SLIP 7, NEW YORK, NY 10004<br>NYS EMPIRE STATE DEVELOPMENT CORPORATION<br>633 THIRD AVENUE, NEW YORK, NY 10017<br>TURNER CONSTRUCTION<br>10 SOUTH STREET, SLIP 7, NEW YORK, NY 10004<br>NYC ECONOMIC DEVELOPMENT CORPORATION<br>110 WILLIAM STREET, NEW YORK, NY 10038<br>HARBOR MARINE SERVICES - GOVERNORS ISLAND<br>10 SOUTH STREET, SLIP NEW YORK 10004 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):**<br>NATIONAL PARK SERVICE - GOVERNORS ISLAND<br>10 SOUTH STREET, SLIP 7, NEW YORK, NY 10004 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

POLICY NUMBER: GLO 3737031-10

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):**<br>FLORIDA DEPARTMENT OF TRANSPORTATION |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

POLICY NUMBER: GLO 3737031-10

**COMMERCIAL GENERAL LIABILITY**
**CG 20 28 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):**<br>ONLY THOSE PREMISES WHERE REQUIRED BY WRITTEN CONTRACT |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| DANIEL J. EDELMAN, INC. AND JIM BEAM BRANDS CO. | THOSE LOCATIONS WHERE REQUIRED BY WRITTEN CONTRACT. |
| | |
| | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and
2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or
2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

POLICY NUMBER: GLO 3737031-10

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| TIME WARNER CABLE INC., ITS SUBSIDIARIES, AFFILIATED COMP-ANIES, DIRECTORS,OFFICEERS EMPLOYEES, AND AGENTS | ONLY THOSE LOCATIONS WHERE REQUIRED BY WRITTEN CONTRACT. |
| | |
| | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

 © ISO Properties, Inc., 2006 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

 Copyright. Insurance Services Office, Inc., 1998 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(a)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(b)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

 Copyright, Insurance Services Office, Inc., 1998 

POLICY NUMBER: GLO 3737031-10

**COMMERCIAL GENERAL LIABILITY**
**CG 24 04 05 09**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Person Or Organization:**<br>TIME WARNER CABLE INC., ITS SUBSIDIARIES, AFFILIATED COMPANIES, DIRECTORS, OFFICERS, EMPLOYEES, AND AGENTS. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

 © Insurance Services Office, Inc., 2008 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – TRANSFER OF DUTIES WHEN A LIMIT OF INSURANCE IS USED UP

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following Condition is added to COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

**Transfer of Duties When a Limit of Insurance Is Used Up.**

**a.** If we conclude that, based on "occurrences," offenses, claims or "suits" which have been reported to us and to which this insurance may apply, the:

**(1)** General Aggregate Limit (other than the Products/Completed Operations Aggregate Limit);

**(2)** Products/Completed Operations Aggregate Limit;

**(3)** Personal and Advertising Injury Limit;

**(4)** Each Occurrence Limit; or

**(5)** Fire Damage Limit

is likely to be used up in the payment of judgments or settlements, we will notify the first Named Insured, in writing, to that effect.

**b.** When a limit of insurance described in paragraph **a.** above has actually been used up in the payment of judgments or settlements:

**(1)** We will notify the first Named Insured, in writing, as soon as practicable, that:

**(a)** Such a limit has actually been used up; and

**(b)** Our duty to defend "suits" seeking damages subject to that limit has also ended.

**(2)** We will initiate, and cooperate in, the transfer of control, to any appropriate insured, of all claims and "suits" seeking damages which are subject to that limit and which are reported to us before that limit is used up. That insured must cooperate in the transfer of control of said claims and "suits".

We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

We will take no action whatsoever with respect to any claim or "suit" seeking damages that would have been subject to that limit, had it not been used up, if the claim or "suit" is reported to us after that limit of insurance has been used up.

**(3)** The first Named Insured, and any other insured involved in a "suit" seeking damages subject to that limit, must arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us. Absent any such agreement, arrangements for the defense of such "suit" must be made as soon as practicable.

**c.** The first Named Insured will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with paragraph **b.(2)** above.

The duty of the first Named Insured to reimburse us will begin on:

**(1)** The date on which the applicable limit of insurance is used up, if we sent notice in accordance with paragraph **a.** above; or

**(2)** The date on which we sent notice in accordance with paragraph **b.(1)** above, if we did not send notice in accordance with paragraph a. above.

**d.** The exhaustion of any limit of insurance by the payments of judgments or settlements, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this Condition.

 Copyright, Insurance Services Office, Inc., 1991 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

 © ISO Properties, Inc., 2007  □

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   - **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   - **b.** 30 days before the effective date of cancellation if we cancel for any other reason.
3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:
   - **a.** Make inspections and surveys at any time;
   - **b.** Give you reports on the conditions we find; and
   - **c.** Recommend changes.
2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
   - **a.** Are safe or healthful; or
   - **b.** Comply with laws, regulations, codes or standards.
3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.
4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

 © ISO Properties, Inc., 2007 

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2007 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **2.**, **3.** and **5.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least:

**a.** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 45 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will send written notice by registered or certified mail or deliver written notice to the first Named Insured's last mailing address known to us.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. The cancellation will be effective even if we have not made or offered a refund. The following provisions govern calculation of return premium.

**a.** We will compute return premium pro rata and round to the next higher whole dollar when this policy is cancelled:

**(1)** At our request;

**(2)** Because you no longer have a financial or insurable interest in the property or business operation that is the subject of insurance;

**(3)** And rewritten by us or a member of our company group; or

**(4)** After the first year, if it is a prepaid policy written for a term of more than one year.

**b.** When this policy is cancelled at your request (except when Paragraph **a.(2)**, **a.(3)** or **a.(4)** applies), we will return 90% of the pro rata unearned premium, rounded to the next higher whole dollar. However, when such cancellation takes place during the first year of a multiyear prepaid policy, we will return the full annual premium for the subsequent years. In addition, earned premium will not be less than our policywriting minimum premium.

**B.** The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

**1.** If we elect not to renew this policy, we will mail or deliver a notice of nonrenewal to the first Named Insured shown in the Declarations, stating the reason for nonrenewal, at least:

**a.** 15 days before the expiration date if the nonrenewal is due to nonpayment of premium; or

**b.** 45 days before the expiration date if the nonrenewal is for any other reason.

**2.** We will send written notice by registered or certified mail or deliver written notice of nonrenewal to the first Named Insured's last mailing address known to us.

 © Insurance Services Office, Inc., 2011  □

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RHODE ISLAND CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Rhode Island law.

**B.** Under the Commercial Automobile Coverage Part, the term "family member" is replaced by the following and supersedes any other provisions to the contrary:

"Family member" means a person related to:

**1.** An individual Named Insured by blood, adoption, marriage or civil union recognized under Rhode Island law, who is a resident of such Named Insured's household, including a ward or foster child;

**2.** The individual named in the Schedule by blood, adoption, marriage or civil union recognized under Rhode Island law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individuals endorsement is attached; or

**3.** You by blood, adoption, marriage or civil union recognized under Rhode Island law, who is a resident of your household, including a ward or foster child, if the Individual Named Insured endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Rhode Island law, who is a resident of your household, including a ward or foster child.

 © Insurance Services Office, Inc., 2011 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NORTH DAKOTA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by Paragraphs **2.** and **3.** below, except to the extent that Item **B.** of this endorsement applies.

**2. Policies In Effect:**

**a. For Less Than 90 Days**

If this policy has been in effect for less than 90 days, we may cancel the policy for any reason by mailing to the first Named Insured, and agent, if any, written notice of cancellation at least:

**(1)** 10 days before the effective date of cancellation; or

**(2)** Five days before the effective date of cancellation for any condition stated in Paragraph **B.** of this endorsement.

**b. For 90 Days Or More Or Policies With Terms Longer Than One Year Or Continuous Policies**

If this policy has been in effect for 90 days or more, is a renewal of a policy we issued, is a policy issued for a term longer than one year or is a continuous policy, we may cancel the policy only for one or more of the following reasons:

**(1)** Nonpayment of premiums;

**(2)** Misrepresentation or fraud made by the "insured" or with the "insured's" knowledge in obtaining the policy or in pursuing a claim under the policy;

**(3)** The "insured's" actions that have substantially increased or substantially changed the risk insured;

**(4)** The "insured's" refusal to eliminate known conditions that increase the potential for loss, after our notification that the condition must be removed;

**(5)** Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;

**(6)** Loss of reinsurance which provided us with coverage for a significant amount of the underlying risk insured;

**(7)** A determination by the insurance commissioner that the continuation of the policy could place us in violation of North Dakota insurance laws;

**(8)** Nonpayment of dues to an association or organization, other than an insurance association or organization, where payment of dues is a prerequisite to obtaining or continuing such insurance. Cancellation for this reason does not apply to persons who are retired at 62 years of age or older or to any person who is disabled according to social security standards;

 © ISO Properties, Inc., 2007  □

**(9)** A violation of any local fire, health, safety, building or construction regulation or ordinance with respect to Covered Property or the occupancy thereof which substantially increases any hazard insured against; or

**(10)** Certain conditions exist, as stated in Paragraph **B.** of this endorsement.

We will mail written notice of cancellation to the first Named Insured, and agent, if any, at least:

**(a)** Five days before the effective date of cancellation for any condition stated in Paragraph **B.** of this endorsement;

**(b)** 10 days before the effective date of cancellation for nonpayment of premium; or

**(c)** 30 days before the effective date of cancellation for any reason stated in Paragraphs **2.b.(2)** through **(9)** above.

However, for policies with terms longer than one year or continuous policies, notice of cancellation will be mailed at least 30 days prior to any anniversary date for any reason stated in Paragraphs **2.b.(1)** through **(9)** above.

If we cancel for a reason listed in Paragraphs **2.b.(1)** through **(9)** above, the notice of cancellation will state our reasons for cancellation.

**3.** We will mail our notice, by first-class mail, to the first Named Insured and agent, if any, at the last mailing address known to us.

**B.** We may also cancel the policy if one or more of the following conditions exist:

**1.** Buildings with at least 65% of the rental units in the building unoccupied.

**2.** Buildings that have been damaged by a covered cause of loss and the "insured" has stated or such time has elapsed as clearly indicates that the damage will not be repaired.

**3.** Buildings to which, following a fire, permanent repairs have not commenced within 60 days following satisfactory adjustment of loss.

**4.** Buildings that have been unoccupied 60 or more consecutive days, except buildings that have a seasonal occupancy, and buildings actually in the course of construction or repair and reconstruction which are properly secured against unauthorized entry.

**5.** Buildings that are in danger of collapse because of serious structural conditions or those buildings subject to extremely hazardous conditions not contemplated in filed rating plans such as those buildings that are in a state of disrepair as to be dilapidated.

**6.** Buildings on which, because of their physical condition, there is an outstanding order to vacate or an outstanding demolition order, or which have been declared unsafe in accordance with applicable law.

**7.** Buildings from which fixed and salvageable items have been or are being removed and the "insured" can give no reasonable explanation for the removal.

**8.** Buildings on which there is reasonable knowledge and belief that the property is endangered and is not reasonably protected from possible arson for the purpose of defrauding an insurer.

**9.** Buildings with any of the following conditions:

**a.** Failure to furnish heat, water, sewer service, or public lighting for 30 consecutive days or more.

**b.** Failure to correct conditions dangerous to life, health, or safety.

**c.** Failure to maintain the building in accordance with applicable law.

**d.** Failure to pay property taxes for more than one year.

**10.** Buildings that have characteristics of ownership condition, occupancy, or maintenance, which are violative of law or public policy.

**C.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail to the last known address of the first Named Insured shown in the Declarations, and agent, if any, a notice of intention not to renew at least:

**a.** 60 days prior to the expiration date of the policy, except as provided in Paragraph **b.;** or

**b.** 90 days prior to the expiration date of the policy when the policy provides professional liability coverage for legal and medical services.

The notice of nonrenewal will state our reason for nonrenewal.

**2.** We will mail our notice, by first-class mail, to the first Named Insured and agent, if any, at the last mailing address known to us.

**3.** We need not mail or deliver this notice if you have:

**a.** Insured elsewhere;

**b.** Accepted replacement coverage; or

**c.** Requested or agreed to nonrenewal.

 © ISO Properties, Inc., 2007 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DELAWARE CHANGES – TERMINATION PROVISIONS

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** With respect to the:

Farm Property – Farm Dwellings, Appurtenant Structures and Household Personal Property Coverage Form;
Commercial Property Coverage Part; and
Capital Assets Program (Output Policy) Coverage Part;

If the policy covers a building that contains no more than four dwelling units, one of which is the insured's principal place of residence, or covers the insured's household personal property in a residential building, the following applies:

**1.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation along with the reasons for cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

After coverage has been in effect for more than 60 days or after the effective date of a renewal of this policy, no notice of cancellation will be issued by us unless it is based on at least one of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Discovery of fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

**(3)** Discovery of willful or reckless acts or omissions on your part that increase any hazard insured against;

**(4)** The occurrence of a change in the risk that substantially increases any hazard insured against after insurance coverage has been issued or renewed;

**(5)** A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any covered property or its occupancy that substantially increases any hazard insured against;

**(6)** A determination by the Insurance Commissioner that the continuation of the policy would place us in violation of the Delaware insurance laws; or

**(7)** Real property taxes owing on the insured property have been delinquent for two or more years and continue delinquent at the time notice of cancellation is issued.

 © Insurance Services Office, Inc., 2011 

**2.** The following Condition is added:

**Nonrenewal**

**a.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured, at least 30 days before the expiration date, or the anniversary date if this is a policy written for a term of more than one year or with no fixed expiration date.

**b.** Any notice of nonrenewal will include the reason(s) for nonrenewal and will be mailed or delivered to the first Named Insured at the last mailing address known to us.

**c.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**3.** If Cancellation Changes **CP 02 99** is attached to the Commercial Property Coverage Part, Paragraph **E.2.** of that form is replaced by the following:

**2.** Pay property taxes that are owing and have been outstanding for more than two years following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

**B.** With respect to the:

Commercial General Liability Coverage Part;
Commercial Property – Legal Liability Coverage Form;
Commercial Property – Mortgageholders Errors And Omissions Coverage Form;
Employment-Related Practices Liability Coverage Form;
Farm Liability Coverage Form;
Liquor Liability Coverage Part;
Medical Professional Liability Coverage Part;
Pollution Liability Coverage Part; and
Products/Completed Operations Liability Coverage Part:

**1.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 60, but not more than 120, days before the effective date of cancellation if we cancel for any other permissible reason.

**2.** The following Condition is added and supersedes any other condition to the contrary:

**Nonrenewal**

**a.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured, at least 60, but not more than 120, days before the expiration date, or the anniversary date if this is a policy written for a term of more than one year or with no fixed expiration date.

**b.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us.


© Insurance Services Office, Inc., 2011

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **1., 2., 3.** and **5.** of the **Cancellation** Common Policy Condition are replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this entire policy by mailing or delivering to us advance written notice of cancellation.

**2. Cancellation Of Policies In Effect**

**a. 60 Days Or Less**

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 30 days before the effective date of cancellation if we cancel for any reason not included in Paragraph **A.2.b.** below.

**(2)** 15 days before the effective date of cancellation if we cancel for any of the reasons included in Paragraph **A.2.b.** below.

**b. For More Than 60 Days**

If this policy has been in effect for more than 60 days, or if this policy is a renewal or continuation of a policy we issued, we may cancel only for any of the reasons listed below, provided we mail the first Named Insured written notice at least 15 days before the effective date of cancellation:

**(1)** Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

**(2)** Conviction of a crime arising out of acts increasing the hazard insured against;

**(3)** Discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim;

**(4)** After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current policy period;

**(5)** Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the policy, which results in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

**(6)** Required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

 © Insurance Services Office, Inc., 2013 

**(7)** A determination by the Superintendent that the continuation of the policy would violate, or would place us in violation of, any provision of the Insurance Code; or

**(8)** Where we have reason to believe, in good faith and with sufficient cause, that there is a probable risk of danger that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. If we cancel for this reason, you may make a written request to the Department of Financial Services, within 10 days of receipt of this notice, to review our cancellation decision. Also, we will simultaneously send a copy of this cancellation notice to the Department of Financial Services.

**3.** We will mail or deliver our notice, including the reason for cancellation, to the first Named Insured at the address shown in the policy and to the authorized agent or broker.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.

However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**7.** If one of the reasons for cancellation in Paragraph **A.2.b.** or **D.2.b.(2)** exists, we may cancel this entire policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this policy.

**C.** The following conditions are added:

**1. Nonrenewal**

If we decide not to renew this policy we will send notice as provided in Paragraph **C.3.** below.

**2. Conditional Renewal**

If we conditionally renew this policy subject to:

**a.** A change of limits;

**b.** A change in type of coverage;

**c.** A reduction of coverage;

**d.** An increased deductible;

**e.** An addition of exclusion; or

**f.** Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit;

we will send notice as provided in Paragraph **C.3.** below.

**3. Notices Of Nonrenewal And Conditional Renewal**

**a.** If we decide not to renew this policy or to conditionally renew this policy as provided in Paragraphs **C.1.** and **C.2.** above, we will mail or deliver written notice to the first Named Insured shown in the Declarations at least 60 but not more than 120 days before:

**(1)** The expiration date; or

**(2)** The anniversary date if this is a continuous policy.

**b.** Notice will be mailed or delivered to the first Named Insured at the address shown in the policy and to the authorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

**c.** Notice will include the specific reason(s) for nonrenewal or conditional renewal, including the amount of any premium increase for conditional renewal and description of any other changes.

**d.** If we violate any of the provisions of Paragraph **C.3.a., b.** or **c.** above by sending the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice:

**(1)** And if notice is provided prior to the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the first Named Insured, during this 60-day period, has replaced the coverage or elects to cancel;


© Insurance Services Office, Inc., 2013

**(2)** And if the notice is provided on or after the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy for another policy period, at the lower of the current rates or the prior period's rates, unless the first Named Insured, during this additional policy period, has replaced the coverage or elects to cancel.

**e.** If you elect to renew on the basis of a late conditional renewal notice, the terms, conditions and rates set forth in such notice shall apply:

**(1)** Upon expiration of the 60-day period, unless Subparagraph **(2)** below applies; or

**(2)** Notwithstanding the provisions in Paragraphs **d.(1)** and **d.(2),** as of the renewal date of the policy if the conditional renewal notice was sent at least 30 days prior to the expiration or anniversary date of the policy.

**f.** We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that the policy has been replaced or is no longer desired.

**D.** The following provisions apply when the Commercial Property Coverage Part, the Farm Coverage Part or the Capital Assets Program (Output Policy) Coverage Part is made a part of this policy:

**1.** Items **D.2.** and **D.3.** apply if this policy meets the following conditions:

**a.** The policy is issued or issued for delivery in New York State covering property located in this state; and

**b.** The policy insures:

**(1)** For loss of or damage to structures, other than hotels or motels, used predominantly for residential purposes and consisting of no more than four dwelling units; or

**(2)** For loss of or damage to personal property other than farm personal property or business property; or

**(3)** Against damages arising from liability for loss of, damage to or injury to persons or property, except liability arising from business or farming; and

**c.** The portion of the annual premium attributable to the property and contingencies described in **1.b.** exceeds the portion applicable to other property and contingencies.

**2.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Procedure And Reasons For Cancellation**

**a.** We may cancel this entire policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**b.** But if this policy:

**(1)** Has been in effect for more than 60 days; or

**(2)** Is a renewal of a policy we issued;

we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

**(2)** Conviction of a crime arising out of acts increasing the risk of loss;

**(3)** Discovery of fraud or material misrepresentation in obtaining the policy or in making a claim;

**(4)** Discovery of willful or reckless acts or omissions increasing the risk of loss;

**(5)** Physical changes in the covered property that make that property uninsurable in accordance with our objective and uniformly applied underwriting standards in effect when we:

**(a)** Issued the policy; or

**(b)** Last voluntarily renewed the policy;


© Insurance Services Office, Inc., 2013

**(6)** The Superintendent of Financial Services' determination that continuing the policy would violate Chapter 28 of the Insurance Law; or

**(7)** Required pursuant to a determination by the Superintendent of Financial Services that the continuation of our present premium volume would be hazardous to the interests of our policyholders, our creditors or the public.

**3.** The following are added:

**a. Conditional Continuation**

Instead of cancelling this policy, we may continue it on the condition that:

**(1)** The policy limits be changed; or

**(2)** Any coverage not required by law be eliminated.

If this policy is conditionally continued, we will mail or deliver to the first Named Insured written notice at least 20 days before the effective date of the change or elimination. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**b. Nonrenewal**

If, as allowed by the laws of New York State, we:

**(1)** Do not renew this policy; or

**(2)** Condition policy renewal upon:

**(a)** Change of limits; or

**(b)** Elimination of coverage;

we will mail or deliver written notice of nonrenewal or conditional renewal:

**(a)** At least 45 days; but

**(b)** Not more than 60 days;

before the expiration date of the policy. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**E.** The following is added to the Farm Property – Other Farm Provisions Form – Additional Coverages, Conditions, Definitions, the Commercial Property Coverage Part and the Capital Assets Program (Output Policy) Coverage Part:

When the property is subject to the Anti-arson Application in accordance with New York Department of Financial Services' Insurance Regulation No. 96, the following provisions are added:

If you fail to return the completed, signed and affirmed anti-arson application to us:

**1.** Or our broker or agent within 45 days of the effective date of a new policy, we will cancel the entire policy by giving 20 days' written notice to you and to the mortgageholder shown in the Declarations.

**2.** Before the expiration date of any policy, we will cancel the policy by giving written notice to you and to the mortgageholder shown in the Declarations at least 15 days before the effective date of cancellation.

The cancellation provisions set forth in **E.1.** and **E.2.** above supersede any contrary provisions in this policy including this endorsement.

If the notice in **E.1.** or **E.2.** above is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**F.** The following applies to the Commercial Property Coverage Part, the Farm Coverage Part and the Capital Assets Program (Output Policy) Coverage Part:

Paragraphs **f.** and **g.** of the **Mortgageholders** Condition are replaced by the following:

**f. Cancellation**

**(1)** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(a)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(b)** 30 days before the effective date of cancellation if we cancel for any other reason.

 © Insurance Services Office, Inc., 2013 

**(2)** If you cancel this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, cancellation will become effective on the later of:

**(a)** The effective date of cancellation of the insured's coverage; or

**(b)** 10 days after we give notice to the mortgageholder.

**g. Nonrenewal**

**(1)** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**(2)** If you elect not to renew this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, nonrenewal will become effective on the later of:

**(a)** The expiration date of the policy; or

**(b)** 10 days after we give notice to the mortgageholder.

**G.** The following provisions apply when the following are made a part of this policy:

Commercial General Liability Coverage Part

Employment-Related Practices Liability Coverage Part

Farm Liability Coverage Form

Liquor Liability Coverage Part

Products/Completed Operations Liability Coverage Part

**1.** The aggregate limits of this policy as shown in the Declarations will be increased in proportion to any policy extension provided in accordance with Paragraph **C.3.d.** above.

**2.** The last sentence of Limits Of Insurance does not apply when the policy period is extended because we sent the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice.


© Insurance Services Office, Inc., 2013

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOUISIANA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following, which applies unless Paragraph **B.** of this endorsement applies:

**2. Notice Of Cancellation**

**a. Cancellation Of Policies In Effect For Fewer Than 60 Days Which Are Not Renewals**

If this policy has been in effect for fewer than 60 days and is not a renewal of a policy we issued, we may cancel this policy for any reason, subject to the following:

**(1)** Cancellation for nonpayment of premium:

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 10 days before the effective date of cancellation.

**(2)** Cancellation for any other reason:

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 60 days before the effective date of cancellation.

**b. Cancellation Of Renewal Policies And New Policies In Effect For 60 Days Or More**

If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Fraud or material misrepresentation made by you or with your knowledge with the intent to deceive in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

**(3)** Activities or omissions by you which change or increase any hazard insured against;

**(4)** Change in the risk which increases the risk of loss after we issued or renewed this policy, including an increase in exposure due to regulation, legislation, or court decision;

**(5)** Determination by the Commissioner of Insurance that the continuation of this policy would jeopardize our solvency or would place us in violation of the insurance laws of this or any other state;

 © Insurance Services Office, Inc., 2011  ☐

**(6)** The insured's violation or breach of any policy terms or conditions; or

**(7)** Any other reasons that are approved by the Commissioner of Insurance.

We will mail or deliver written notice of cancellation under Paragraph **A.2.b.** to the first Named Insured at least:

**(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(b)** 30 days before the effective date of cancellation if we cancel for a reason described in Paragraphs **A.2.b.(2)** through **(7)** above.

**B.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following, which applies with respect to premium payments due on new and renewal policies, including installment payments:

**2. Notice Of Cancellation**

**a.** If your premium payment check or other negotiable instrument is returned to us or our agent or a premium finance company because it is uncollectible for any reason, we may cancel the policy subject to Paragraphs **B.2.b.** and **B.2.c.**

**b.** We may cancel the policy effective from the date the premium payment was due, by sending you written notice by certified mail, or by delivering such notice to you within 10 days of the date that we receive notice of the returned check or negotiable instrument.

**c.** The cancellation notice will also advise you that the policy will be reinstated effective from the date the premium payment was due, if you present to us a cashier's check or money order for the full amount of the returned check or other negotiable instrument within 10 days of the date that the cancellation notice was mailed.

**C.** With respect to the Coverage Parts and Policies to which this endorsement applies, except the Equipment Breakdown Coverage Part, Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

If this policy is cancelled, we will return any premium refund due, subject to Paragraphs **C.5.a., C.5.b., C.5.c., C.5.d., C.5.e.** and **C.5.f.** The cancellation will be effective even if we have not made or offered a refund.

**a.** If we cancel, the refund will be pro rata.

**b.** If the first Named Insured cancels, the refund will not be less than 90% of the pro rata unearned premium, rounded to the next higher whole dollar. The refund will be returned within 30 days after the effective date of cancellation.

**c.** We will send the refund to the first Named Insured unless Paragraph **C.5.d.** or **C.5.e.** applies.

**d.** If we cancel based on Paragraph **B.2.** of this endorsement, we will return the premium due, if any, within 10 days after the expiration of the 10-day period referred to in **B.2.c.** If the policy was financed by a premium finance company, or if payment was advanced by the insurance agent, we will send the return premium directly to such payor.

**e.** With respect to any cancellation of the Commercial Auto Coverage Part, we will send the return premium, if any, to the premium finance company if the premium was financed by such company.

**f.** When return premium payment is sent to the premium finance company or the agent of the insured, we will provide notice to you, at the time of cancellation, that a return of unearned premium may be generated by the cancellation.

**D.** With respect to the Equipment Breakdown Coverage Part, Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

If this policy is cancelled, we will return any premium refund due, subject to Paragraphs **D.5.a., D.5.b., D.5.c., D.5.d.** and **D.5.e.** The cancellation will be effective even if we have not made or offered a refund.

**a.** If we cancel, the refund will be pro rata.

**b.** If the first Named Insured cancels, the refund will not be less than 75% of the pro rata unearned premium, rounded to the next higher whole dollar. The refund will be returned within 30 days after the effective date of cancellation.

**c.** We will send the refund to the first Named Insured unless Paragraph **D.5.d.** applies.

 © Insurance Services Office, Inc., 2011 

**d.** If we cancel based on Paragraph **B.2.** of this endorsement, we will return the premium due, if any, within 10 days after the expiration of the 10-day period referred to in **B.2.c.** If the policy was financed by a premium finance company, or if payment was advanced by the insurance agent, we will send the return premium directly to such payor.

**e.** When return premium payment is sent to the premium finance company or the agent of the insured, we will provide notice to you, at the time of cancellation, that a return of unearned premium may be generated by the cancellation.

**E.** The **Premiums** Common Policy Condition is replaced by the following:

**Premiums**

**1.** The first Named Insured shown in the Declarations is responsible for the payment of all premiums.

**2.** We will pay return premiums, if any, to the first Named Insured, unless another person or entity is entitled to be the payee in accordance with Paragraph **C.** or **D.** of this endorsement.

**F.** Paragraph **f.** of the **Mortgageholders** Condition in the Commercial Property Coverage Part, Standard Property Policy and the Capital Assets Program (Output Policy) Coverage Part, and Paragraph **4.f.** of the **Mortgageholders** Condition in the Farm Coverage Part are replaced by the following:

If we cancel a policy that has been in effect for fewer than 60 days and is not a renewal of a policy we issued, we will give written notice to the mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at least:

**(1)** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**(2)** 60 days before the effective date of cancellation, if we cancel for any other reason.

If we cancel a policy that has been in effect for 60 days or more, or is a renewal of a policy we issued, we will give written notice to the mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at least:

**(1)** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation, if we cancel for any other reason.

**G.** The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

**1.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured, mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at least 60 days before its expiration date, or its anniversary date if it is a policy written for a term of more than one year or with no fixed expiration date.

**2.** We need not mail or deliver this notice if:

**a.** We or another company within our insurance group have offered to issue a renewal policy; or

**b.** You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

**3.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured, mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**4.** Such notice to the insured shall include the insured's loss run information for the period the policy has been in force within, but not to exceed, the last three years of coverage.


© Insurance Services Office, Inc., 2011

ZURICH

**THIS DISCLOSURE IS ATTACHED TO AND MADE PART OF YOUR POLICY.**

# FLORIDA - DISCLOSURE OF IMPORTANT INFORMATION RELATING TO TERRORISM RISK INSURANCE ACT

**SCHEDULE***

| |
|---|
| Premium attributable to risk of loss from certified acts of terrorism for lines of insurance subject to TRIA:<br><br>**Please see form U-GU-630-C.** |

*Any information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure of Premium**
In accordance with the federal Terrorism Risk Insurance Act ("TRIA"), as amended, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of premium attributable is shown in the Schedule above. The premium shown in the Schedule above is subject to adjustment upon premium audit, if applicable.

**B. Disclosure of Federal Participation in Payment of Terrorism Losses**
The United States Government may pay a share of insured losses resulting from an act of terrorism. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the insurer retention. The insurer retention equals 20% of the insurer's prior calendar year direct earned premium associated with lines of insurance subject to TRIA. TRIA is scheduled to expire on December 31, 2014.

**C. Disclosure of $100 Billion Cap on All Insurer and Federal Obligations**
If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a Program Year (January 1 through December 31): (1) the Federal Government shall not make any payment for any portion of the amount of such losses that exceeds $100 billion; and (2) no insurer that has met its deductible under the program shall be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. If insured losses exceed $100 billion, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**D. Definition of Act of Terrorism under TRIA**
TRIA defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:

1. to be an act of terrorism;
2. to be a violent act or an act that is dangerous to human life, property or infrastructure;
3. to have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and
4. to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

Copyright © 2008 Zurich American Insurance Company
Includes copyrighted material of ISO Properties, Inc. with its permission

# Florida Hurricane Catastrophe Fund (FHCF) Emergency Assessment - 2005 Hurricanes

ZURICH®

The Florida legislature created the FHCF in order to provide capacity to the personal and commercial residential property insurance market. In accordance with Florida law, deficits of the FHCF are funded through emergency assessments on direct premiums for certain property and casualty lines of business in the state of Florida.

The current FHCF emergency assessment is for the purpose of financing the FHCF's shortfall from the 2005 hurricane season. In order to fund this deficit, policies effective on or after January 1, 2011 are subject to an emergency assessment of 1.30% of premium for the following lines of business:

> Fire, Allied Lines, Multi-Peril Crop, Farmowners Multi-Peril, Homeowners Multi-Peril, Commercial Multi-Peril (liability and non-liability), Mortgage Guaranty, Ocean Marine, Inland Marine, Financial Guaranty, Earthquake, Other Liability, Products Liability, Private Passenger Auto No-Fault, Other Private Passenger Auto Liability, Commercial Auto No-Fault, Other Commercial Auto Liability, Private Passenger Auto Physical Damage, Commercial Auto Physical Damage, Aircraft, Fidelity, Surety, Burglary and Theft, Boiler and Machinery, Credit, Warranty, and Aggregate Write Ins for Other Lines of Insurance.

The FHCF emergency assessment applicable to this policy is not subject to premium taxes, fees, or commissions.

ZURICH

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

| Insureds Name | Policy Number | Effective Date | Endorsement Number |
|---|---|---|---|
| | | | |

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies your insurance:

This endorsement applies to all Coverage Parts included in this policy.

**A. Cap on Losses From Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act ("TRIA"). The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

1. to be an act of terrorism;
2. to be a violent act or an act that is dangerous to human life, property or infrastructure;
3. to have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and
4. to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

If aggregate insured losses attributable to one or more "certified acts of terrorism" exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**B. Application of Other Exclusions**

The terms and limitations of a terrorism exclusion or any other exclusion, or the inapplicability or omission of a terrorism exclusion or any other exclusion, do not serve to create coverage which would otherwise be excluded, limited or restricted under this policy.

Copyright © 2008 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Policy Number**
**GLO 3737031-10**

**ENDORSEMENT**

## ZURICH AMERICAN INSURANCE COMPANY

| | | | |
|---|---|---|---|
| Named Insured | MACANDREWS & FORBES HOLDINGS, | Effective Date: | 07-01-14<br>12:01 A.M., Standard Time |
| Agent Name | AON RISK SERVICES NORTHEAST INC | Agent No. | 50522-000 |

**BROAD FORM NAMED INSURED ENDORSEMENT**

MACANDREWS & FORBES HOLDINGS, INC., IT'S PREDECESSORS, IF MACANDREWS & FORBES HOLDINGS, INC. HAS ASSUMED THEIR LIABILITIES BY CONTRACT, AND ANY AND ALL OF ITS SUBSIDIARIES, DIVISIONS, ASSOCIATED AND/OR AFFILIATED COMPANIES IN A LINE OF CORPORATE SUCCESSION NOW EXISTING OR HEREAFTER CREATED OR ACQUIRED, AND THEIR FINANCIALLY CONTROLLED OR ACTIVELY MANAGED ORGANIZATIONS OR UNDERTAKINGS, AND ANY OTHER ORGANIZATION, ENTITY OR PERSON, INCLUDING PARTNERSHIPS AND JOINT VENTURES WHICH THEY HAVE AGREED TO INSURE.

IT IS INTENDED BY THE ABOVE THAT COVERAGE BE INCLUDED FOR LIABILITY OF THE NAMED INSURED AS A RESULT OF AN INTEREST IN ANY ORGANIZATION OR UNDERTAKING, AND ANY RESTRICTION OF COVERAGE PERTAINING TO PARTNERSHIPS OR JOINT VENTURES IS DELETED.

**Policy Number**
**GLO 3737031-10**

**ENDORSEMENT**

## ZURICH AMERICAN INSURANCE COMPANY

Named Insured MACANDREWS & FORBES HOLDINGS,

Effective Date: 07-01-14
12:01 A.M., Standard Time

Agent Name AON RISK SERVICES NORTHEAST INC

Agent No. 50522-000

**DIFFERENCE IN LIMITS-GL-CANADIAN UND COV**

DIFFERENCE IN LIMITS - GENERAL LIABILITY - CANADIAN UNDERLYING COVERAGE

"LOCAL POLICY" MEANS:

INSURANCE COMPANY: ZURICH INSURANCE COMPANY

POLICY NUMBER : 8833207

WHEN, AS A RESULT OF A CLAIM SETTLEMENT, JUDGEMENT, OR "SUIT", A LOSS COVERED BY A "LOCAL POLICY" EXCEEDS THE PER OCCURRENCE OR PER ACCIDENT LIMIT ON THAT POLICY, AND INSURANCE IS ALSO PROVIDED BY THIS POLICY FOR THIS LOSS, THIS POLICY SHALL RESPOND TO THAT PART OF THE SETTLEMENT, JUDGEMENT, OR "SUIT" THAT EXCEEDS THE OCCURRENCE OR ACCIDENT LIMIT ON THE "LOCAL POLICY", BUT ONLY TO THE EXTENT OF THE DIFFERENCE BETWEEN THE APPLICABLE LIMIT OF INSURANCE ON THIS POLICY AND THE APPLICABLE LIMIT OF INSURANCE ON THE "LOCAL POLICY".

ALL PAYMENTS MADE UNDER ANY "LOCAL POLICY" SHALL REDUCE THE LIMITS OF INSURANCE OF THIS POLICY. ANY PAYMENT MADE UNDER THIS POLICY OR ANY "LOCAL POLICY" AFTER THE APPLICABLE AGGREGATE STATED IN THE DECLARATIONS PAGE OF THIS POLICY IS EXHAUSTED SHALL BE REIMBURSED TO US BY YOU WITHIN 10 DAYS OF OUR DEMAND.

**Policy Number**
**GLO 3737031-10**

**ENDORSEMENT**

## ZURICH AMERICAN INSURANCE COMPANY

| | | | |
|---|---|---|---|
| Named Insured | MACANDREWS & FORBES HOLDINGS, | Effective Date: | 07-01-14<br>12:01 A.M., Standard Time |
| Agent Name | AON RISK SERVICES NORTHEAST INC | Agent No. | 50522-000 |

**NOTICE OF CANCELLATION/NON RENEWAL ENDT**

IN THE EVENT THE POLICY IS CANCELED OR NON-RENEWED AT THE REQUEST OF THE COMPANY, NINETY (90) DAYS NOTICE WILL BE PROVIDED TO YOU, EXCEPT IN THE EVENT OF NON-PAYMENT OF PREMIUM IN WHICH CASE NOTICE WILL BE TEN (10) DAYS.

**Policy Number**
**GLO 3737031-10**

**ENDORSEMENT**

# ZURICH AMERICAN INSURANCE COMPANY

Named Insured MACANDREWS & FORBES HOLDINGS,

Effective Date: 07-01-14
12:01 A.M., Standard Time

Agent Name AON RISK SERVICES NORTHEAST INC

Agent No. 50522-000

## EXCLUSION - SPECIFIED ENTITIES/OPERATION

THIS INSURANCE DOES NOT APPLY TO THE ENTITIES SHOWN IN THE SCHEDULE BELOW.

SCHEDULE

M & F WORLDWIDE CORP.
THE COLEMAN COMPANY
GOLDEN STATE BANCORP
CALIFORNIA FEDERAL SAVINGS BANK
FIRST NATIONWIDE MANAGEMENT
AUTO ONE ACCEPTANCE
AUTO ONE DEPOSIT
MERIDIAN SPORTS
MACANDREWS AMG
HOLDINGS LLC
BUT ONLY AS RESPECTS TO ANY LIABILITY ARISING OUT OF THE OPERATIONS OF
AM GENERAL LLC
AM GENERAL HOLDINGS LLC
IRA LEON RENNERT
ILSHAR CAPITAL LLC
THE RENCO GROUP, INC.
TRANSTECH PHARMA
SIGA TECHNOLOGIES, INC.
SCIENTIFIC GAMES CORP.
HARLAND CLARK HOLDINGS CORP.

**Policy Number**
**GLO 3737031-10**

**ENDORSEMENT**

## ZURICH AMERICAN INSURANCE COMPANY

Named Insured MACANDREWS & FORBES HOLDINGS,

Effective Date: 07-01-14
12:01 A.M., Standard Time

Agent Name AON RISK SERVICES NORTHEAST INC

Agent No. 50522-000

**DEDUCTIBLE ENDORSEMENT**

.

**Policy Number**
**GLO 3737031-10**

**ENDORSEMENT**

# ZURICH AMERICAN INSURANCE COMPANY

Named Insured MACANDREWS & FORBES HOLDINGS,

Effective Date: 07-01-14
12:01 A.M., Standard Time

Agent Name AON RISK SERVICES NORTHEAST INC

Agent No. 50522-000

**EMPLOYED LAWYERS PROFESSIONAL LIAB COV**

THE PROVISIONS OF THIS ENDORSEMENT APPLY ONLY AS RESPECTS EMPLOYED LAWYER'S PROFESSIONAL LIABILITY COVERAGE AFFORDED HEREUNDER.

SECTION I - COVERAGE IS AMENDED TO INCLUDE THE FOLLOWING:

EMPLOYED LAWYERS PROFESSIONAL LIABILITY

2. INSURING AGREEMENT

COVERAGE D.

TO PAY TO THE INSURED LAWYER ALL SUMS WHICH THE INSURED LAWYER SHALL BECOME LEGALLY OBLIGATED TO PAY AS DAMAGES INCLUDING PERSONAL INJMY BECAUSE OF THE NEGLIGENT ACTS, ERRORS, OR OMISSIONS, OF THE INSURED LAWYER IN RENDERING OR FAILING TO RENDER PROFESSIONAL SCTVICCS AS A LAWYER, ARISING OUT OF ACTIONS COINCIDENTAL TO EMPLOYMENT EXCEPT FOR SUCH LOSS WHICH THE EMPLOYER SHALL INDEMNIFY SUCH INSURED LAWYER, WHICH TAKES PLACE DURING THE POLICY PERIOD.

COVERAGE E.

TO PAY ON BEHALF OF THE EMPLOYER ALL SUMS WHICH THE EMPLOYER MAY BE REQUITED OR PERMITTED BY LAW TO INDEMNIFY AN INSURED LAWYER FOR AN AMOUNT WHICH THE INSURED LAWYER BECOMES LEGALLY OBLIGATED TO PAY AS DAMAGES INCLUDING PERSONAL INJUTY BECAUSE OF THE NEGLIGENT ACTS, ERRORS, OR OMISSIONS OF THE INSURED LAWYER IN RENDERING OR FAILING TO RENDER PROFESSIONAL SERVICES AS A LAWYER, WHILE ACTING IN THE COURSE OF THE SAID LAWYER'S EMPLOYMENT BY THE EMPLOYER AND WHICH TAKES PLACE DURING THE POLICY PERIOD.

2. DEFENSE

NOTWITHSTANDING ANYTHING IN TLLLS CLAUSE, IT IS UNDERSTOOD AND AGREED THAT AS RESPECTS SUPPLEMENTA1Y PAYMENTS, THE POLICY REMAINS UNALTERED. DEFENSE COSTS ARE IN ADDITION TO THE LIMIT OF LIABILITY

III. SECTION II -WHO IS AN INSURED, IS DELETED IN ITS ENTIRETY AND REPLACED BY THE FOLLOWING WITH RESPECT TO THE INSURANCE AFFORDED BY THIS ENDORSEMENT.

EACH OF THE FOLLOW1NG IS AN INSURED UNDER THIS INSURANCE TO THE EXTENT SET FORTH BELOW:

(A) ANY PERSON ADMITTED TO PRACTICE LAW WHO IS, OR BECOMES EMPLOYED FULL TIME OR PART TIME AND SALARIED BY THE EMPLOYER NAMED IN ITEM 1 OF THE DECLARATIONS, OR WHO WAS SO EMPLOYED ON OR AFTER THE EFFECTIVE DATE OF THE FTTST POLICY ISSUED TO THE EMPLOYER AND CONTINUOUSLY RENEWED THEREAFTER, BUT ONLY AS REGARDS PROFESSIONAL SERVICES RENDERED PRIOR TO OR DURING THE TERM OF SUCH EMPLOYMENT HEREIN REFERRED TO AS AN INSURED LAWYER.

**Policy Number**
**GLO 3737031-10**

**ENDORSEMENT**

# ZURICH AMERICAN INSURANCE COMPANY

| | | | |
|---|---|---|---|
| Named Insured | MACANDREWS & FORBES HOLDINGS, | Effective Date: | 07-01-14<br>12:01 A.M., Standard Time |
| Agent Name | AON RISK SERVICES NORTHEAST INC | Agent No. | 50522-000 |

**EMPLOYED LAWYERS PROFESSIONAL LIAB COV**

(B) THE EMPLOYER NAMED IN ITEM 1 OF THE DECLARATIONS, BUT ONLY IN RESPECT TO PROFESSIONAL SERVICES RENDERED ON ITS BEHALF BY AN INSURED LAWYER AS DESCRIBED IN (A) ABOVE AND ONLY FOR INDEMNIFICATION OF AN INSURED LAWYER AS DESCRIBED IN PARAGRAPH E OF INSURING AGREEMENT 1, COVERAGE OF THIS ENDORSEMENT.

(C) NON-LAWYER EMPLOYEES OF THE EMPLOYER WHO ARE, WERE OR BECOME ASSISTANTS OF INSURED LAWYERS WHILE ACTING UNDER THE DIRECTION AND CONTROL OF INSURED LAWYERS PERFORMING PROFESSIONAL SERVICES ON BEHALF OF THE EMPLOYER; COVERAGE TO APPLY UNDER THE INSURANCE IN THE SAME MANNER AS TO AN INSURED LAWYER;

(D) THE ESTATE, HEIRS, EXECUTORS, ADMINISTRATORS, ASSIGNS, AND LEGAL REPRESENTATIVES OF ANY INSURED LAWYERS IN THE EVENT OF SUCH INSURED LAWYERS DEATH, INCAPACITY OR BANKRUPTCY, BUT ONLY TO THE EXTENT THAT SUCH INSURED LAWYER WOULD OTHERWISE BE PROVIDED COVERAGE UNDER THIS INSURANCE.

EXCLUSIONS:

THIS INSURANCE DOES NOT APPLY:

(A) TO ANY DAMAGES ARISING OUT OF ANY ADJUDICATED CRIMINAL, DISHONEST OR FRAUDULENT ACTS, ERRORS OR OMISSIONS.

(B) TO ANY DAMAGES ARISING OUT OF ANY ADJUDICATED WILLFUL, INTENTIONAL OR MALICIOUS ACTS, ERRORS OR OMISSIONS.

(C) TO ANY CLAIM ARISING OUT OF BODILY INJURY TO, OR SICKNESS, DISEASE OR DEATH OF ANY PERSON, OR INJURY TO OR DESTRUCTION OF ANY TANGIBLE PROPERTY, INCLUDING THE LOSS OF USE THEREOF, EXCEPT THAT THIS EXCLUSION DOES NOT APPLY TO MENTAL ILLNESS OR EMOTIONAL DISTRESS OR HUMILIATION CAUSED BY PERSONAL INJURY;

(D) TO ANY CLAIM BASED UPON THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, PUBLIC LAW 93-406, AND AMENDMENTS THERETO, OR SIMILAR PROVISIONS OF ANY FEDERAL, STATE OR LOCAL STATUTORY OR COMMON LAW;

(E) TO ANY CLAIM ARISING OUT OF ANY INSURED LAWYER'S ACTIVITIES AS AN OFFICER OR DIRECTOR OF THE CORPORATION;

(F) TO ANY PUNITIVE OR EXEMPLARY DAMAGES, WHERE INDEMNIFICATION IS CONTRARY TO THE PUBLIC POLICY OF THE RELEVANT JURISDICTION;

SECTION III - LIMIT OF INSURANCE IS DELETED IN ITS ENTIRETY AND REPLACED BY THE FOLLOWING AS RESPECTS THE INSURANCE AFFORDED BY THIS ENDORSEMENT.

OCCURRENCE LIMIT

THE LIMIT OF LIABILITY STATED IN THE DECLARATIONS AS PER OCCURRENCE IS THE TOTAL LIMIT OF OUR LIABILITY FOR LOSSES SUSTAINED BY ONE OR

**Policy Number**
**GLO 3737031-10**

**ENDORSEMENT**

## ZURICH AMERICAN INSURANCE COMPANY

| | | | |
|---|---|---|---|
| Named Insured | MACANDREWS & FORBES HOLDINGS, | Effective Date: | 07-01-14<br>12:01 A.M., Standard Time |
| Agent Name | AON RISK SERVICES NORTHEAST INC | Agent No. | 50522-000 |

**EMPLOYED LAWYERS PROFESSIONAL LIAB COV**

MORE PERSONS OR ORGANIZATIONS AS A RESULT OF ANY ONE (1) OCCURRENCE. THIS ENDORSEMENT IS SUBJECT TO AN OCCURRENCE DEDUCTIBLE EQUAL TO THE LIMIT OF LIABILITY DEDUCTIBLE SO THAT THE COMPANY HAS NO INSURANCE RISK FOR THE SCOPE OF COVERAGE PROVIDED BY THIS ENDORSEMENT.

GENERAL AGGREGATE LIMIT OF LIABILITY

NOTWITHSTANDING THAT THE COMPANY HAS NO INSURANCE RISK FOR THE SCOPE OF INSURANCE PROVIDED BY THIS ENDORSEMENT, ALL AMOUNTS PAID UNDER THE DEDUCTIBLE BY OR ON BEHALF OF THE INSURED SHALL BE CHARGED AND ACCRUE TO THE GENERAL AGGREGATE LIMIT OF LIABILITY STATED IN THE DECLARATIONS OF THE POLICY.

SECTION IV - CONDITIONS IS DELETED AND REPLACED BY THE FOLLOWING WITH RESPECT TO THE INSURANCE AFFORDED BY THIS ENDORSEMENT:

1. ARBITRATION

THE COMPANY SHALL BE ENTITLED TO EXERCISE ALL INSURED'S RIGHTS IN THE CHOICE OF ARBITRATORS AND IN THE CONDUCT OF ANY ARBITRATION PROCEEDING INVOLVING A CLAIM COVERED BY THIS INSURANCE.

2. ACTION AGAINST THE COMPANY

NO ACTION SHALL LIE AGAINST THE COMPANY UNLESS, AS A CONDITION PRECEDENT THERETO, THERE SHALL HAVE BEEN FULL COMPLIANCE WITH ALL THE TERMS OF THIS POLICY AND UNTIL THE AMOUNT OF THE INSURED LAWYER'S OBLIGATION TO PAY SHALL HAVE BEEN FINALLY DETERMINED EITHER BY JUDGEMENT AGAINST THE INSURED LAWYER AFTER ACTUAL TRIAL OR BY WRITTEN AGREEMENT OF THE INSURED LAWYER, THE CLAIMANT AND THE COMPANY.

ANY PERSON OR ORGANIZATION OR THE LEGAL REPRESENTATIVE THEREOF WHO HAS SECURED SUCH JUDGEMENT OR WRITTEN AGREEMENT SHALL THEREAFTER BE ENTITLED TO RECOVER UNDER THIS INSURANCE TO THE EXTENT OF THE INSURANCE AFFORDED BY THIS ENDORSEMENT. NO PERSON OR ORGANIZATION SHALL HAVE ANY RIGHT UNDER THIS POLICY TO JOIN THE COMPANY AS A PARTY TO ANY ACTION AGAINST THE INSURED LAWYER TO DETERMINE THE INSURED LAWYER'S LIABILITY, NOR SHALL THE COMPANY BE IMPLEADED BY THE INSURED OR ITS LEGAL REPRESENTATIVE. BANKRUPTCY OR INSOLVENCY OF THE INSURED OR OF THE INSURED'S ESTATE SHALL NOT RELIEVE THE COMPANY OF ANY OF ITS OBLIGATIONS HEREUNDER.

3. ASSISTANCE AND COOPERATION OF THE INSURED

THE INSURED SHALL COOPERATE WITH THE COMPANY AND UPON THE COMPANY'S REQUEST ASSIST IN MAKING SETTLEMENTS, ASSIST IN THE CONDUCT OF SUITS AND IN ENFORCING ANY RIGHT OF CONTRIBUTION OR INDEMNITY AGAINST ANY PERSON OR ORGANIZATION OTHER THAN AN EMPLOYEE WHO MAY BE LIABLE TO THE INSURED BECAUSE OF NEGLIGENT ACTS, ERRORS OR OMISSIONS WITH RESPECT TO WHICH THE INSURANCE IS AFFORDED UNDER THE ENDORSEMENT; AND THE INSURED SHALL ATTEND HEARINGS AND TRIALS AND ASSIST IN SECURING AND GIVING EVIDENCE AND OBTAINING THE ATTENDANCE OF WITNESSES. THE INSURED SHALL NOT, EXCEPT AT HIS OWN COST, ADMIT LIABILITY, VOLUNTARILY MAKE ANY PAYMENT, ASSUME ANY OBLIGATION OR INCUR ANY

**Policy Number**
**GLO 3737031-10**

**ENDORSEMENT**

## ZURICH AMERICAN INSURANCE COMPANY

Named Insured MACANDREWS & FORBES HOLDINGS,

Effective Date: 07-01-14
12:01 A.M., Standard Time

Agent Name AON RISK SERVICES NORTHEAST INC

Agent No. 50522-000

**EMPLOYED LAWYERS PROFESSIONAL LIAB COV**

EXPENSE WITHOUT THE CONSENT OF THE COMPANY.

4. CHANGES

NOTICE TO ANY AGENT OR KNOWLEDGE POSSESSED BY ANY AGENT OR BY ANY OTHER PERSON SHALL NOT EFFECT A WAIVER OR CHANGE IN ANY PART OF THIS POLICY OR STOP THE COMPANY FROM ASSERTING ANY RIGHT UNDER THE TERMS OF THIS POLICY; NOR SHALL THE TERMS OF THIS POLICY BE WAIVED OR CHANGED EXCEPT BY ENDORSEMENT ISSUED TO FORM A PART OF THIS POLICY AND SIGNED BY A DULY AUTHORIZED AGENT OF THE COMPANY.

5. CHANGE IN MEMBERSHIP OF EMPLOYER'S LEGAL STAFF

ANY ADDITIONS OR DELETIONS TO OR FROM THE LIST OF ATTORNEYS IN THE APPLICATION SHALL NOT AFFECT THE VALIDITY OF THIS INSURANCE BUT SHALL BE REPORTED TO THE COMPANY PROMPTLY AND IN NO EVENT LATER THAN THE NEXT ANNIVERSARY DATE OF THE POLICY AND ANY ADDITIONAL PREMIUM REQUIRED BY THE COMPANY SHALL BE DUE AND PAYABLE AS BILLED.

6. CONFORMANCE TO STATUTE

TERMS OF THIS POLICY, WHICH ARE IN CONFLICT WITH THE STATUTES OF THE STATE WHEREIN THIS POLICY IS ISSUED, ARE HEREBY AMENDED TO CONFORM TO SUCH STATUTES.

7. FIDUCIARY COVERAGE

FOR PURPOSES OF COVERAGE E.

WHEN THE INSURED LAWYER ACTS AS AN ADMINISTRATOR, CONSERVATOR, EXECUTOR, GUARDIAN, TRUSTEE RECEIVER, ESCROW AGENT, OR IN ANY SIMILAR FIDUCIARY CAPACITY, HIS NEGLIGENT ACTS, ERRORS OR OMISSIONS IN SUCH CAPACITY SHALL BE DEEMED FOR THE PURPOSE OF INSURING AGREEMENT I TO BE THE PERFORMANCE OF PROFESSIONAL SERVICES FOR OTHERS IN THE INSUREDS CAPACITY AS A LAWYER.

8. POLICY TERRITORY

THIS INSTANCE APPLIES TO NEGLIGENT ACTS, ERRORS OR OMISSIONS OCCURRING ANYWHERE IN THE WORLD:

(A) PROVIDED THAT THOSE NEGLIGENT ACTS, ERRORS OR OMISSIONS OCCUR DURING THE POLICY PERIOD;

(B) FURTHER PROVIDED THAT CLAIM IS FIRST MADE AGAINST THE INSURED LAWYER WITHIN THE UNITED STATES OF AMERICA, ITS TERRITORIES OR POSSESSIONS OR CANADA.

SECTION V- DEFINITIONS IS AMENDED AS FOLLOWS.
THE FOLLOWING DEFINITIONS ARE ADDED:

"CLAIM," WHENEVER USED IN THIS ENDORSEMENT, MEANS DEMAND RECEIVED BY THE INSURED FOR MONEY OR SERVICES INCLUDING THE SERVICE OF SUIT OR INSTITUTION OR ARBITRATION PROCEEDING AGAINST THE INSURED.

**Policy Number**
**GLO 3737031-10**

**ENDORSEMENT**

# ZURICH AMERICAN INSURANCE COMPANY

Named Insured MACANDREWS & FORBES HOLDINGS,

Effective Date: 07-01-14
12:01 A.M., Standard Time

Agent Name AON RISK SERVICES NORTHEAST INC

Agent No. 50522-000

**EMPLOYED LAWYERS PROFESSIONAL LIAB COV**

"CLAIMS EXPENSE" MEANS

(1) FEES CHARGED BY AN ATTORNEY(S);

(2) ALL OTHER FEES, COSTS, AND EXPENSES RESULTING FROM THE INVESTIGATION, ADJUSTMENT, DEFENSE AND APPEAL OF A CLAIM, SUIT, OR PROCEEDING ARISING IN CONNECTION THEREWITH.

"EMPLOYER" MEANS THE PERSON OR ENTITY DESIGNATED AS SUCH IN ITEM 1 OF THE DECLARATIONS.

"POLICY PERIOD" MEANS THE PERIOD OF TIME BETWEEN THE INCEPTION DATE SHOWN IN THE DECLARATIONS AND THE EFFECTIVE DATE OF TERMINATION, EXPIRATION OR CANCELLATION OF COVERAGE.

WITH RESPECT TO THE INSURANCE AFFORDED BY THIS ENDORSEMENT, ITEM 10. "PERSONAL INJURY," IN THE DEFINITIONS OF THE POLICY FORM, IS DELETED IN ITS ENTIRETY AND REPLACED AS FOLLOWS:

"PERSONAL INJURY" MEANS

(1) FALSE ARREST, DETENTION OR IMPRISONMENT, WRONGFUL ENTRY OR EVICTION OR OTHER INVASION OF THE RIGHT OF PRIVATE OCCUPANCY, OR MALICIOUS PROSECUTION;

(2) THE PUBLICATION OR UTTERANCE OF A LIBEL OR SLANDER OR OTHER DEFAMATORY OR DISPARAGING MATERIAL, OR A PUBLICATION OR AN UTTERANCE IN VIOLATION OF AN INDIVIDUAL'S RIGHT OF PRIVACY.

**Policy Number**
**GLO 3737031-10**

**ENDORSEMENT**

# ZURICH AMERICAN INSURANCE COMPANY

| | | | |
|---|---|---|---|
| Named Insured | MACANDREWS & FORBES HOLDINGS, | Effective Date: | 07-01-14<br>12:01 A.M., Standard Time |
| Agent Name | AON RISK SERVICES NORTHEAST INC | Agent No. | 50522-000 |

## INSURANCE AGENTS & BROKERS PROF. LIAB.

THE PROVISIONS OF THIS ENDORSEMENT APPLY ONLY AS RESPECTS INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY COVERAGE AFFORDED HEREUNDER.

SECTION I - COVERAGE IS AMENDED TO INCLUDE THE FOLLOWING: INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY
1. INSURING AGREEMENT

1. COVERAGE F - ERRORS AND OMISSIONS

TO PAY THE INSURED ALL SUMS WHICH THE INSURED SHALL BECOME LEGALLY OBLIGATED TO PAY AS DAMAGES RESULTING FROM ANY CLAIM OR CLAIMS ARISING FROM ANY WRONGFUL ACT OF THE INSURED OR OF ANY OTHER PERSON FOR WHOSE ACTIONS THE INSURED IS LEGALLY RESPONSIBLE, BUT ONLY IF SUCH WRONGFUL ACT OCCURS DURING OR PRIOR TO THE POLICY PERIOD AND SOLELY IN RENDERING OR FAILING TO RENDER PROFESSIONAL SERVICES FOR KEY EXECUTIVES OF MAFCO HOLDINGS INC. IN THE INSURED’S CAPACITY AS AN INSURANCE AGENT, INSURANCE BROKER, INSURANCE CONSULTANT OR NOTARY PUBLIC.

2. DEFENSE

NOTWITHSTANDING ANYTHING IN THIS CLAUSE, IT IS UNDERSTOOD AND AGREED THAT AS RESPECTS SUPPLEMENTARY PAYMENTS, THE POLICY REMAINS UNALTERED. DEFENSE COSTS ARE IN ADDITION TO THE LIMIT OF LIABILITY

SECTION II -WHO IS AN INSURED IS DELETED IN ITS ENTIRETY AND REPLACED BY THE FOLLOWING WITH RESPECT TO THE INSURANCE AFFORDED BY THIS ENDORSEMENT. INSURED MEANS THE INDIVIDUAL, PARTNERSHIP, CORPORATION OR OTHER ENTITY NAMED IN ITEM 1 OF THE DECLARATIONS AND SHALL INCLUDE ANY PARTNER, DIRECTOR, OFFICER OR EMPLOYEE THEREOF SOLELY WHILE ACTING WITHIN THE SCOPE OF HIS DUTIES AS SUCH.

EXCLUSIONS:

THIS INSURANCE DOES NOT APPLY:

A) TO ANY CLAIM ALLEGING FRAUD, DISHONESTY, CRIMINAL OR MALICIOUS ACTS OR OMISSIONS:

B) TO ANY CLAIM ALLEGING DISCRIMINATION;

C) TO ANY CLAIM FOR OR ALLEGING BODILY INJURY TO, OR SICKNESS, DISEASE OR DEATH OF ANY PERSON, OR DAMAGE TO OR DESTRUCTION OF ANY PROPERTY, INCLUDING THE LOSS OF USE THEREOF;

D) TO ANY CLAIM ARISING OUT OF THE ACTIVITIES OF ANY INSURED IN REGARD TO ANY "EMPLOYEE PENSION BENEFIT PLAN" AND/OR "EMPLOYEE WELFARE BENEFIT PLAN," AS THOSE TERMS ARE DEFINED IN THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED, SPONSORED BY ANY INSURED OR ANY FIRM WHICH ANY INSURED OWNS OR CONTROLS, OR IN REGARD TO ANY SUCH PLAN IN WHICH ANY INSURED IS A PARTICIPANT OR A NAMED FIDUCIARY AS THAT TERM IS USED UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED;

**Policy Number**
**GLO 3737031-10**

**ENDORSEMENT**

## ZURICH AMERICAN INSURANCE COMPANY

| | | | |
|---|---|---|---|
| Named Insured | MACANDREWS & FORBES HOLDINGS, | Effective Date: | 07-01-14<br>12:01 A.M., Standard Time |
| Agent Name | AON RISK SERVICES NORTHEAST INC | Agent No. | 50522-000 |

**INSURANCE AGENTS & BROKERS PROF. LIAB.**

E) TO ANY CLAIM ARISING DIRECTLY OR INDIRECTLY OUT OF ANY ACTUAL OR ALLEGED DISCHARGE, DISPERSAL, RELEASE, ESCAPE, OR USE OF ASBESTOS, TOXIC SUBSTANCES OR POLLUTANTS, INCLUDING BUT NOT LIMITED TO ANY FAILURE TO EFFECT AND MAINTAIN INSURANCE OR BOND WITH RESPECT THERETO;

F) TO ANY WRONGFUL ACT COMMITTED WITH KNOWLEDGE THAT IT WAS A WRONGFUL ACT;

SECTION III-LIMIT OF INSURANCE IS DELETED IN ITS ENTIRETY AND REPLACED BY THE FOLLOWING AS RESPECTS THE INSURANCE AFFORDED BY THIS ENDORSEMENT.

A) OCCURRENCE LIMIT

THE LIMIT OF LIABILITY STATED IN THE DECLARATIONS AS PER OCCURRENCE IS THE TOTAL LIMIT OF OUR LIABILITY FOR LOSSES SUSTAINED BY ONE OR MORE PERSONS OR ORGANIZATIONS AS A RESULT OF ANY ONE (1) OCCURRENCE. THIS ENDORSEMENT IS SUBJECT TO AN OCCURRENCE DEDUCTIBLE EQUAL TO THE LIMIT OF LIABILITY DEDUCTIBLE SO THAT THE COMPANY HAS NO INSURANCE RISK FOR THE SCOPE OF COVERAGE PROVIDED BY THIS ENDORSEMENT.

B) GENERAL AGGREGATE LIMIT OF LIABILITY
NOTWITHSTANDING THAT THE COMPANY HAS NO INSURANCE RISK FOR THE SCOPE OF INSURANCE PROVIDED BY THIS ENDORSEMENT, ALL AMOUNTS PAID UNDER THE DEDUCTIBLE BY OR ON BEHALF OF THE INSURED SHALL BE CHARGED AND ACCRUE TO THE GENERAL AGGREGATE LIMIT OF LIABILITY STATED IN THE DECLARATIONS OF THE POLICY.

SECTION IV-CONDITIONS IS AMENDED TO INCLUDE THE FOLLOWING:

1. POLICY TERRITORY

THIS INSURANCE ONLY APPLIES TO WRONGFUL ACTS COMMITTED IN, OR SUITS BROUGHT AGAINST THE INSURED IN, THE UNITED STATES OF AMERICA, ITS TERRITORIES OR POSSESSIONS, OR CANADA.

IT IS UNDERSTOOD AND AGREED THAT AGGREGATE LIMITS OF LIABILITY AS LISTED ON THE DECLARATIONS PAGE SHALL REMAINED UNCHANGED.

SECTION V- DEFINITION IS AMENDED AS FOLLOWS
THE FOLLOWING DEFTNITIONS ARE ADDED

"POLICY PERIOD" MEANS THE PERIOD FROM THE INCEPTION DATE OF THIS POLICY SHOWN IN ITEM 2 OF THE DECLARATIONS TO THE EARLIER OF THE EXPIRATION SHOWN IN ITEM 2 OF THE DECLARATIONS OR THE EFFECTIVE DATE OF CANCELLATION OF THIS POLICY.

"WRONGFUL ACTS," MEANS ANY ACTUAL OR ALLEGED:

A) NEGLIGENT ACT, ERROR OR OMISSION; OR,

B) FALSE ARREST, DETENTION, OR IMPRISONMENT; OR,

**Policy Number**
**GLO 3737031-10**

**ENDORSEMENT**

## ZURICH AMERICAN INSURANCE COMPANY

| | | | |
|---|---|---|---|
| Named Insured | MACANDREWS & FORBES HOLDINGS, | Effective Date: | 07-01-14<br>12:01 A.M., Standard Time |
| Agent Name | AON RISK SERVICES NORTHEAST INC | Agent No. | 50522-000 |

**INSURANCE AGENTS & BROKERS PROF. LIAB.**

C) THE PUBLICATION OR UTTERANCE OF A LIBEL OR SLANDER OF OTHER DEFAMATORY OR DISPARAGING MATERIAL, OR A PUBLICATION OR UTTERANCE IN VIOLATION OF AN INDIVIDUAL'S RIGHT OF PRIVACY; OR,

D) WRONGFUL ENTRY OR EVICTION, OR OTHER INVASION OF THE RIGHT OF PRIVACY OCCUPANCY.

**Policy Number**
**GLO 3737031-10**

**ENDORSEMENT**

# ZURICH AMERICAN INSURANCE COMPANY

| | | | |
|---|---|---|---|
| Named Insured | MACANDREWS & FORBES HOLDINGS, | Effective Date: | 07-01-14<br>12:01 A.M., Standard Time |
| Agent Name | AON RISK SERVICES NORTHEAST INC | Agent No. | 50522-000 |

## DECLARATIONS-EMPLOYED LAWYERS-INS AGENTS

DECLARATIONS- EMPLOYED LAWYERS PROFESSIONAL LIABILITY COVERAGE
- INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY

POLICY NUMBER: GLO 3737031-10

LIMITS OF INSURANCE:

$1,000,000 ANY ONE OCCURRENCE SUBJECT TO THE POLICY GENERAL AGGREGATE LIMITS OF LIABILITY FOR EMPLOYED LAWYERS PROFESSIONAL LIABILITY COVERAGE

$1,000,000 ANY ONE OCCURRENCE SUBJECT TO THE POLICY GENERAL AGGREGATE LIMITS OF LIABILITY FOR INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY

FORM OF BUSINESS:

| | | |
|---|---|---|
| INDIVIDUAL | PARTNERSHIP | JOINT VENTURE |
| X CORPORATION | OTHER ---------- | |

PREMIUM SCHEDULE:

| CODE NO. | PREMIUM BASIS (EST. NUMBER OF EMP.) | RATE | | ADVANCE PREMIUM |
|---|---|---|---|---|
| INCLUDED | IF ANY | $-- | PER EMPLOYEE | $----- |
| | | $INCL. | FLAT CHARGE | $INCLUDED |

TOTAL ADVANCE PREMIUM FOR THIS COVERAGE PART: $ INCLUDED

AUDIT PERIOD: X ANNUAL SEMI-ANNUAL QUARTERLY MONTHLY

FORMS AND ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

-EMPLOYED LAWYERS PROFESSIONAL LIABILITY COVERAGE

-INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY

# Tobacco Health Hazard Exclusion

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

1. The following exclusion is added to **2. Exclusions** of **Section I - Coverage A - Bodily Injury and Property Damage Liability**:

   This insurance shall not apply to:

   **Tobacco Health Hazard**

   Any liability for "bodily injury" or "property damage" based upon or arising out of:

   **1.** "Health hazards" from the use of tobacco;

   **2.** "Health hazards" caused or contributed to by second-hand smoke from tobacco products;

   **3.** The furnishing of tobacco products to a person under the legal smoking age; or

   **4.** Any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of tobacco.

2. The following exclusion is added to **2. Exclusions** of **Section I. Coverage B - Personal and Advertising Injury Liability**:

   This insurance shall not apply to:

   **Tobacco Health Hazard**

   Any liability for "personal and advertising injury" based upon or arising out of :

   **1.** "Health hazards" from the use of tobacco;

   **2.** "Health hazards" caused or contributed to by second-hand smoke from tobacco products;

   **3.** The furnishing of tobacco products to a person under the legal smoking age; or

   **4.** Any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of tobacco.

3. For purposes of this exclusion, the following definition applies:

   "Health hazards" means tobacco related diseases and conditions including, but not limited to, cancer, arteriosclerosis, heart disease, lung disease, and emphysema, as well as other metabolic effects of tobacco use including, but not limited to, shortness of breath, low resistance to infection or disease, psychological or mental injury, or addiction.

# Disclosure Statement

ZURICH®

It is our pleasure to present the enclosed policy to you
for presentation to your customer.

**INSTRUCTION TO AGENT OR BROKER:**

WE REQUIRE THAT YOU TRANSMIT THE ATTACHED/ENCLOSED DISCLOSURE STATEMENT TO THE CUSTOMER WITH THE POLICY.

Once again, thank you for your interest, and we look forward to meeting your needs and those of your customers.

# Disclosure Statement

ZURICH®

## NOTICE OF DISCLOSURE FOR AGENT & BROKER COMPENSATION

If you want to learn more about the compensation Zurich pays agents and brokers visit:

http://www.zurichnaproducercompensation.com

or call the following toll-free number: (866) 903-1192.

This Notice is provided on behalf of Zurich American Insurance Company

and its underwriting subsidiaries.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MISSOURI CHANGES – POLLUTION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Subparagraph **f., Pollution** of Paragraph **2., Exclusions** under **Section I – Coverage A – Bodily Injury And Property Damage Liability Coverage** and to Subparagraph **m., Pollution** of Paragraph **2., Exclusions** under **Section I – Coverage B – Personal And Advertising Injury Liability** or to any amendment to or replacement thereof:

This Pollution Exclusion applies even if such irritant or contaminant has a function in your business, operations, premises, site or location.

 © ISO Properties, Inc., 2003 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VERMONT CHANGES – POLLUTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM (OCCURRENCE VERSION)

**SCHEDULE**

| | |
|---|---|
| **Pollution Liability Aggregate Limit:** | $ 1,000,000 |

**A.** The following is added to **Section I – Coverages:**

**COVERAGE D POLLUTION BODILY INJURY AND PROPERTY DAMAGE**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" included within the "pollution liability hazard" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the Pollution Liability Aggregate Limit in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A, B** and **D.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **c.** below, during the policy period.

**c.** A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

**(1)** When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

**(2)** When we make a settlement in accordance with Paragraph **1.a.** above.

All claims for damages because of "bodily injury" to the same person, including damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury" will be deemed to have been made at the time the first of those claims is made against any insured.

All claims for damages because of "property damage" causing loss to the same person or organization as a result of an "occurrence" will be deemed to have been made at the time the first of those claims is made against any insured.

All claims for injury or damage arising out of a discharge, release or escape of "pollutants", including all injury or damage arising out of all subsequent exposure of persons and property to such "pollutants", shall be deemed to have been made at the time the first of those claims is made against any insured.

 © ISO Properties, Inc., 2006 

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**(2)** That the insured would have in the absence of the contract or agreement.

**c. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**d. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**e. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies to claims against any insured that allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which resulted in the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

 © ISO Properties, Inc., 2006 

**f. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**g. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**h. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent or occupy including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you; or

**(4)** Personal property in the care, custody or control of the insured.

Paragraphs **(3)** and **(4)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

**i. Products-Completed Operations Hazard**

"Bodily injury" or "property damage" included within the "products-completed operations hazard".

**j. Statutory Or Regulatory Clean-Up Costs**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**B. Supplementary Payments – Coverages A And B** is replaced by the following:

**SUPPLEMENTARY PAYMENTS – COVERAGES A, B AND D**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**1.** All expenses we incur.

**2.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**3.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**4.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**5.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.


© ISO Properties, Inc., 2006

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.
7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**C.** The following is added to **Section III – Limits Of Insurance:**

The Pollution Liability Aggregate Limit is the most we will pay under Coverage **D** for all damages because of injury and damage for which claim is first made during the policy period.

**D.** Paragraph **4. Other Insurance** of **Section IV – Conditions** is amended as follows:

All references to Coverage **A** or **B** are amended to read Coverage **A, B** or **D.**

**E.** The following additional definition applies:

"Pollution liability hazard" means all "bodily injury" and "property damage" arising out of the discharge, release or escape of "pollutants" at or from:

a. Premises you own, rent or occupy; or
b. Any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations.

 © ISO Properties, Inc., 2006 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

 © ISO Properties, Inc., 2003 

ZURICH

## NONOWNED WATERCRAFT COVERAGE ENDORSEMENT

| POLICY NO. | EFF. DATE OF POL. | EXP. DATE OF POL. | EFF. DATE OF END. | AGENCY NO. | ADD'L PREM. | RETURN PREM. |
|---|---|---|---|---|---|---|
| | | | | | | |

**This endorsement changes the policy. Please read it carefully.**

**Named Insured:**

**Address: (including ZIP Code)**

This endorsement modifies insurance provided under the:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is understood and agreed that exclusion g. of Coverage A (Section I) does not apply to "bodily injury" or "property damage" arising out of the maintenance, operation or use, including "loading or unloading" of any watercraft that is less than 50 feet in length provided that such watercraft is not owned by you and is not being used to carry persons for a charge.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc. 1997

ZURICH®

**Important Notice**

# Texas Safety Consultation Services

Zurich in North America has loss control services available at no additional charge.

If you would like additional information regarding these services, please contact us or visit our website. If you would like to request services, please complete the information on this form and mail it to the address listed below.

Zurich Services Corporation
Risk Engineering
1400 American Lane
Schaumburg, Illinois 60196-1056
1-800-982-5964
http://www.zurichna.com/riskengineering

☐ I request additional safety and health services

Company name

Contact name

Address

City | State | Zip code

Telephone number | Policy number

# Illinois Civil Union Act Policyholder Notice

ZURICH®

On June 1, 2011, Public Act 96-1513, the Religious Freedom Protection and Civil Union Act ("the Act") became effective. Under the Act, both same-sex and opposite-sex couples may enter into a civil union. A party to a civil union is entitled to the same legal obligations, responsibilities, protections, and benefits as are afforded or recognized by the law of Illinois a spouse; whether they derive from statute, administrative rule, common law, or any other source of civil or criminal law. A marriage between persons of the same sex, a civil union, or a substantially similar legal relationship other than common law marriage, legally entered into in another jurisdiction, shall be legally recognized in Illinois as a civil union.

**CAUTION: FEDERAL LAW RIGHTS MAY OR MAY NOT BE AVAILABLE:**

Illinois law grants parties to a civil union the same benefits, protections and responsibilities that flow from marriage under state law. However, some or all of the benefits, protections and responsibilities related to health insurance that are available to married persons under federal law may not be available to parties to a civil union. For example, the Employee Retirement Income Security Act of 1974, a federal law known as "ERISA" controls the employer/employee relationship with regard to determining eligibility for enrollment in private employer health benefit plans. Because of ERISA, Act 91 does not state requirements pertaining to a private employer's enrollment of a party to a civil union in an ERISA employee welfare benefit plan. However, governmental employers (not federal government) are required to provide health benefits to the dependents of a party to a civil union if the public employer provides health benefits to the dependents of married persons. Federal law also controls group health insurance continuation rights under "COBRA" for employers with 20 or more employees as well as the Internal Revenue Code treatment of health insurance premiums. As a result, parties to a civil union and their families may or may not have access to certain benefits under this policy, contract, certificate, rider or endorsement that derive from federal law. You are advised to seek expert advice to determine your rights.

# Colorado Civil Union Act

# Policyholder Notice

On January 1, 2014, the Civil Union Act ("the Act") becomes effective. Under the Act, two persons of the same sex may enter into a civil union. A party to a civil union is entitled to the same legal obligations, responsibilities, protections, and benefits as are afforded or recognized by the law of Colorado to a spouse; whether they derive from statute, administrative rule, common law, or any other source of civil or criminal law.

The Act further provides that a party to a civil union shall be included in any definition or use of the term "dependent", "family", "heir", "immediate family", "next of kin", "spouse", and other terms that denote a familial or spousal relationship.

A marriage between persons of the same sex, a civil union, domestic partnerships or a substantially similar legal relationship, legally entered into in another jurisdiction, shall be legally recognized in Colorado as a civil union.

# Delaware Marriage Equality Act

# Policyholder Notice

On July 1, 2013, the Civil Marriage Equality and Religious Freedom Act of 2013 ("the Act") becomes effective. The Act eliminates the prohibition on same-gender marriage. It allows both parties to a civil union that is not subject to a pending proceeding for dissolution, annulment, or legal separation to convert their civil union to a marriage. On July 1, 2014, all remaining civil unions will automatically convert to marriages by operation of law.

The Act further provides that all laws of Delaware applicable to marriage or married spouses or the children of married spouses, whether derived from statutes, administrative rules or regulations, court rules, governmental policies, common law, court decisions, or any other provisions or sources of law, including in equity, shall apply equally to same-gender and different-gender married couples and their children. Parties to a marriage shall be included in any definition or use of terms such as "dependent", "family", "husband", "wife", "widow", "widower", "immediate family", "next of kin", "spouse", "stepparent", "tenants by the entirety" and other terms, whether or not gender specific, that denote a spousal or familial relationship.

For legal unions other than marriages between two persons of the same gender established in another jurisdiction, both parties to such legal union are afforded the same rights, benefits and protections, and are subject to the same responsibilities, obligations and duties, as a marriage for purposes of Delaware law.

# Minnesota Civil Marriage Policyholder Notice

On August 1, 2013, Minnesota's Civil Marriage law became effective. The Act eliminates the prohibition on same-gender marriage. Also, persons previously legally married in other states are considered legally married for insurance purposes in Minnesota.

The Act further provides that all laws of Minnesota applicable to marriage or married spouses or the children of married spouses, whether derived from statutes, administrative rules or regulations, court rules, governmental policies, common law, court decisions, or any other provisions or sources of law, including in equity, shall apply equally to same-gender and different-gender married couples and their children. Parties to a marriage shall be included in any definition or use of terms such as "dependent", "family", "husband", "wife", "widow", "widower", "immediate family", "next of kin", "spouse", "stepparent", "tenants by the entirety" and other terms, whether or not gender specific, that denote a spousal or familial relationship.

Insurers filing new forms may not limit policy coverage to opposite-sex spouses. To the extent that a property and casualty policy provides a rating or liability benefit because two residents in the same household are married, that benefit must be afforded regardless of the sex of the spouse.

# Deductible Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-10 | 07/01/2014 | 07/01/2015 | 07/01/2014 | 50522-000 | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## COMMERCIAL GENERAL LIABILITY DEDUCTIBLE ENDORSEMENT

This endorsement applies between you and us. You will reimburse us for deductible amounts that we pay on your behalf. This endorsement will remain in effect on renewals of this policy unless specifically not made a part of such or replaced by a similar endorsement.

This endorsement and its individual sections which include Deductible Amounts, How This *(These)* Deductible*(s)* Apply*(ies)*, Effect of Deductible*(s)* On Limits of Liability, Definitions and Conditions apply only with respect to the deductibles which are the subject of this endorsement.

**SCHEDULE**

| | | Coverage | Deductible Amount/Basis | | |
|---|---|---|---|---|---|
| Coverage | A. | Bodily Injury and Property Damage Liability<br>All persons or organization | $ 100,000 | each | "occurrence" |
| Coverage | A. | Bodily Injury and Property Damage Liability<br>Any one person or organization | $ DOES NOT APPLY | each | "claim" |
| Coverage | B. | Personal and Advertising Injury Liability<br>By "offense" – Any one person or organization | $ 100,000 | each | "claim" |
| Coverage | C. | Medical Payments | $ 100,000 | each | "accident" |
| Coverage | | Employee Benefits Liability<br>Any one person or organization | $ 100,000 | each | "claim" |
| Other Coverage by | | Insurance Agents & Brokers Professional Coverage | $ 1,000,000 | each | "occurrence" |
| Other Coverage by | | Employed Lawyers Professional Liability Coverage | $ 1,000,000 | each | "occurrence" |

**ALLOCATED LOSS ADJUSTMENT EXPENSE *('ALAE')***

Select one:

Option 1. X** As respects each "occurrence", each "claim" or each "accident" *(as applicable)*, all "ALAE" is reimbursed in addition to the Deductible Amount.

Option 2 ______ As respects each "occurrence", each "claim" or each "accident" *(as applicable)*, "ALAE" is reimbursed as follows:

(1) If the total amount payable for other than "ALAE" for occurrences, claims or accidents is equal to or less than the Deductible Amount*(s)* or if there is no amount payable other

than "ALAE," then all "ALAE" shall be reimbursed; or

(2) If the total amount payable for other than "ALAE" exceeds the Deductible Amount*(s)*, a prorata share of total "ALAE" based on the ratio of the deductible amount shown in the above schedule divided by the total amount payable for other than "ALAE" as respects each "occurrence", each "claim" or each "accident" is reimbursed.

Option 3 X As respects each "occurrence", each "claim" or each "accident" *(as applicable)*, "ALAE" is reimbursed and included in the Deductible Amount.

**** ALAE OPTION 1 ONLY APPLIES TO EMPLOYED TO INSURANCE AGENTS & BROKERS PROFESSIONAL LIABILITY COVERAGE.**

A. How This *(These)* Deductible*(s)* Apply*(ies)*:

You agree to reimburse us for each "occurrence", each "claim" or each "accident" up to the Deductible Amount shown in the Schedule above:

1. All sums payable for other than "ALAE"; plus

2. All "allocated loss adjustment expense" as respects each "occurrence", "claim" or "accident":

   a. When you have elected Option 1 in the Schedule above, in addition to and not limited by the deductible amount, or

   b. When you have elected Option 2 in the Schedule above, in addition to but not limited by the deductible amount if sums payable for other than "ALAE" are equal to or less than the deductible amount; or a prorata share of total "ALAE" if sums payable for other than "ALAE" exceed the deductible amount, or

   c. When you have elected Option 3 in the Schedule above, as part of the deductible amount.

B. Effect of Deductible*(s)* on Limits of Liability.

All sums payable for other than "ALAE" within the deductible amounts shall be included in determining the most we will pay as defined in Section III of the policy - Limits of Insurance and as stated in the Declarations and as are defined and stated in any endorsement*(s)* to this policy relating to Limits of Insurance.

C. Definitions

1. Each "Occurrence" means:

   For any coverage described in the Schedule to which the each "occurrence" basis applies, to all sums payable for other than "ALAE" as the result of an accident, including continuous or repeated exposure to substantially the same harmful conditions, "regardless of the number of persons or organizations who sustain damages or to whom sums are payable because of that "occurrence".

2. Each "Claim" means:

   a. Other than Coverage B., for any coverage described in the Schedule to which the each "claim" basis applies, to all sums payable for other than "ALAE" to any one person as the result of an "occurrence". If damages are claimed for care, loss of services or death resulting at any time from bodily injury, a separate deductible amount applies to each person making a claim for such damages. With respect to property damage, any one person is also defined as any one organization.

   b. For coverage B., to all damages sustained by any one person or organization as the result of an offense.

3. Each "Accident" means:

For any coverage described in the Schedule to which the each "accident" basis applies, to all sums payable for other than "ALAE" as the result of an accident regardless of the number of persons who sustain medical expenses because of that "accident".

4. "Allocated loss adjustment expense" is an expense directly allocable to a specific claim and shall include but not be limited to all Supplementary Payments as defined under the Policy; all court costs, fees and expenses; costs of all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution; interest; investigative services, non-employee adjusters, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation, and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under the Policy. "Allocated loss adjustment expense" shall not include the fees, charges or costs of a third party administrator engaged to provide claim service or related services.

D. Conditions

1. Subrogation

We have your rights to recover sums that are reimbursable under this endorsement from anyone liable for the injury or damages. You will do everything necessary to protect those rights for us and to help us enforce them.

If we recover any payment made under this policy from anyone liable for injury or damages, the recovered amount will first be applied to any payments made by us in excess of the deductible amount. The remainder of the recovery will then be applied to reduce the deductible amount reimbursed or reimbursable by you as respects that injury or damages.

2. Rights and Duties

a. Except as otherwise indicated herein, the terms of the policy, including those with respect to our rights and duties to defend any "suit" seeking damages, investigate any "occurrence" and settle any claim or "suit" that may result and your duties in the event of an "occurrence," claim or "suit" continue to apply irrespective of the application of this *(these)* deductible amount*(s)*.

b. Payment of amounts reimbursable under this endorsement.

(1) The first Named Insured shown in the declarations is authorized to and shall reimburse us for all amounts paid by us on behalf of all Named Insureds.

(2) Each Named Insured is jointly and severally liable for all reimbursements due us under this endorsement.

(3) You must promptly pay us for all amounts for which you are responsible under this endorsement and promptly reimburse us for any such amounts that we pay upon receipt of a billing from us. If you fail to do so, we will cancel this policy.

# Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-10 | 07/01/2014 | 07/01/2015 | 07/01/2014 | 50522-000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Named Insured**: MACANDREWS & FORBES HOLDINGS, INC.

**Address (including ZIP Code)**:

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Covered Operations |
|---|---|
| "The Irvine Company LLC and all entities controlling, controlled by, or under common control with such entity, together with its respective owners, shareholders, partners, members, divisions, officers, directors, employees, representatives and agents, and its successors and assigns." | "All operations associated with The Irvine Company LLC" |
| | |
| | |

**A.** Section **II – Who Is An Insured** is amended to include as an additional insured the person or organization shown in the Schedule above, whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf,

in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement at the Location designated and described in the Schedule above.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**2.** Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering or failure to render any professional architectural, engineering or surveying services including:

**a.** The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved, the rendering of or the failure to render any professional architectural, engineering or surveying services.

**C.** The following is added to Paragraph **2.** Duties In The Event Of Occurrence, Offense, Claim Or Suit of Section **IV – Commercial General Liability Conditions**:

The additional insured must see to it that:

**1.** We are notified as soon as practicable of an "occurrence" or offense that may result in a claim;

**2.** We receive written notice of a claim or "suit" as soon as practicable; and

**3.** A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured may be an insured in any capacity. This provision does not apply to insurance on which the additional insured is a Named Insured, if the written contract or written agreement requires that this coverage be primary and non-contributory.

**D.** For the purpose of the coverage provided by this endorsement:

**1.** The following is added to the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

**Primary and Noncontributory insurance**

This Insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided that:

**a.** The additional insured is a Named Insured under such other insurance; and

**b.** You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured.

**2.** The following paragraph is added to Paragraph **4.b.** of the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

This insurance is excess over:

Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", offense, claim or "suit". This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

**E.** With respect to the insurance afforded to the additional insureds under this endorsement, the following is added to Section **III – Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement referenced in Paragraph **A.** of this endorsement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations,

whichever is less.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

POLICY NUMBER: GLO 3737031-10
Effective Date12/19/2014

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**REVISED**

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):**<br><br>Unity Construction LLC<br>137 Varick Street<br>New York, NY 10013<br><br>“For the purpose of this coverage for the additional insured. “Those acting on your behalf is deemed to include the acts and/or omissions of unity construction and its subcontractors with respect to construction operations and all related activities, at the premises defined as 27 E. 62nd St., and a perimeter of 100 feet of the premises. Additionally, the insurer for the Named Insured will not deny coverage for the additional insured(s) based on any lack of negligence of the part of the Named Insured.” |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

 © Insurance Services Office, Inc., 2012 
Wolters Kluwer Financial Services | Uniform Forms™

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © ISO Properties, Inc., 2004 

POLICY NUMBER: GLO 3737031-10
Effective Date : 07/01/2014 to 2015

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 07 04**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| THE COUNTY OF LOS ANGELES,<br>ITS SPECIAL DISTRICTS, ELECTED, OFFICIALS, OFFICERS, AGENTS, EMPLOYEES, AND VOLUNTEERS<br>1201 W. 5TH ST., STE. T-800<br>LOS ANGELES, CA 90017 | ALL WORK PERFORMED AT ALL LOCATIONS OF THE ADDITIONAL INSUREDS |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

 Copyright, ISO Properties, Inc., 2004 

ZURICH

**ENDORSEMENT**

**This endorsement changes the policy. Please read it carefully.**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Agency No. | Add'l Premium | Return Premium |
|---|---|---|---|---|---|---|
| GLO 3737031-10 | 07/01/2014 | 07/01/2015 | 07/01/2014 | 50522-000 | | |

This endorsement is issued by the company named in the Declarations. It changes the policy on the effective date listed above at the hour stated in the Declarations.

Named Insured: MacAndrews & Forbes Holdings, Inc.

Address (including Zip Code)

This endorsement changes such insurance as is afforded by provisions of the policy relating to the following:

GENERAL LIABILITY POLICY

It is understood and agreed that the following corrections for Employed Lawyers Professional Liab Cov

is amended to read:

Title is amended to read: EMPLOYED LAWYERS PROFESSIONAL LIABILITY COVERAGE

2. INSURING AGREEMENT, COVERAGE D is amended to read:

TO PAY TO THE INSURED LAWYER ALL SUMS WHICH THE INSURED LAWYER SHALL BECOME LEGALLY OBLIGATED TO PAY AS DAMAGES INCLUDING PERSONAL INJURY BECAUSE OF THE NEGLIGENT ACTS, ERRORS, OR OMISSIONS, OF THE INSURED LAWYER IN RENDERING OR FAILING TO RENDER PROFESSIONAL SERVICES AS A LAWYER, ARISING OUT OF ACTIONS COINCIDENTAL TO EMPLOYMENT EXCEPT FOR SUCH LOSS WHICH THE EMPLOYER SHALL INDEMNIFY SUCH INSURED LAWYER, WHICH TAKES PLACE DURING THE POLICY PERIOD.

2. DEFENSE is amended to read:

NOTWITHSTANDING ANYTHING IN THIS CLAUSE, IT IS UNDERSTOOD AND AGREED THAT AS RESPECTS SUPPLEMENTARY PAYMENTS, THE POLICY REMAINS UNALTERED. DEFENSE COSTS ARE IN ADDITION TO THE LIMIT OF LIABILITY

Countersigned______________________________

Authorized Representative

# Notification to Others of Cancellation or Nonrenewal

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-10 | 07/01/2014 | 07/01/2015 | 07/01/2014 | 50522-000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel or non-renew this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation or non-renewal:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation or non-renewal, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| The City of New York<br>Commissioner of the New York City Department of Transportation<br>c/o DOT Office of Permit Management<br>55 Water Street, Concourse Level<br>New York, NY 10041 | 30 |
| | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ZURICH

**ENDORSEMENT**

**This endorsement changes the policy. Please read it carefully.**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Agency No. | Add'l Premium | Return Premium |
|---|---|---|---|---|---|---|
| GLO 3737031-10 | 07/01/2014 | 07/01/2015 | 07/01/2014 | 50522-000 | | |

This endorsement is issued by the company named in the Declarations. It changes the policy on the effective date listed above at the hour stated in the Declarations.

Named Insured: MacAndrews & Forbes Holdings, Inc.

Address (including Zip Code)

This endorsement changes such insurance as is afforded by provisions of the policy relating to the following:

GENERAL LIABILITY POLICY

It is understood and agreed that as respects Form UGL-1114-A Prior Injury or Damage Endorsement is deleted from the above policy.

Countersigned____________________________________________

Authorized Representative

POLICY NUMBER: GLO 3737031-10
EFFECTIVE DATE 07/01/2014 TO 2015

**COMMERCIAL GENERAL LIABILITY**

CG 24 04 05 09

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Person Or Organization:**<br>"The Irvine Company LLC and all entities controlling, controlled by, or under common control with such entity, together with its respective owners, shareholders, partners, members, divisions, officers, directors, employees, representatives and agents, and its successors and assigns."<br><br>**A Primary Wording Clause** stating that the additional insured's insurance is **non-contributing** with any other insurance . |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.


© Insurance Services Office, Inc., 2008

Wolters Kluwer Financial Services | Uniform Forms™

ZURICH

**ENDORSEMENT**

**This endorsement changes the policy. Please read it carefully.**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Agency No. | Add'l Premium | Return Premium |
|---|---|---|---|---|---|---|
| GLO 3737031-10 | 07/01/2014 | 07/01/2015 | 12/04/2014 | 50522-000 | | |

This endorsement is issued by the company named in the Declarations. It changes the policy on the effective date listed above at the hour stated in the Declarations.

Named Insured: MACANDREWS & FORBES INCORPORATED

Address (including Zip Code)

This endorsement changes such insurance as is afforded by provisions of the policy relating to the following:

GENERAL LIABILITY POLICY

It is understood and agreed that MacAndrews & Forbes Holdings Inc. is changed to MacAndrews & Forbes Incorporated

.

Countersigned________________________________________

Authorized Representative

POLICY NUMBER: GLO 3737031-10
EFF DATE 07/01/2014 TO 07/01/2015

**COMMERCIAL GENERAL LIABILITY**

**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):**<br><br>The City of New York, and its officials and employees<br>c/o DOT Office of Permit Management<br>55 Water Street, Concourse Level<br>New York, NY 10041 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 
Wolters Kluwer Financial Services | Uniform Forms™

POLICY NUMBER: GLO 3737031-10
Effective Date 12/19/2014

**COMMERCIAL GENERAL LIABILITY**

**CG 20 37 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**REVISED**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| Unity Construction LLC<br><br>"For the purpose of this coverage for the additional insured. "Those acting on your behalf is deemed to include the acts and/or omissions of unity construction and its subcontractors with respect to construction operations and all related activities, at the premises defined as 27 E. 62nd St., and a perimeter of 100 feet of the premises. Additionally, the insurer for the Named Insured will not deny coverage for the additional insured(s) based on any lack of negligence of the part of the Named Insured." | 27 East 62nd Street<br>NY, NY 10065 |
| | |
| | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

 © Insurance Services Office, Inc., 2012 
Wolters Kluwer Financial Services | Uniform Forms™

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and
2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or
2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © ISO Properties, Inc., 2004 

POLICY NUMBER: GLO 3737031-10
Effective Date 12/19/2014

**COMMERCIAL GENERAL LIABILITY**

**CG 20 37 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| Unity Construction LLC<br><br>“For the purpose of this coverage for the additional insured. “Those acting on your behalf is deemed to include the acts and/or omissions of unity construction and its subcontractors with respect to construction operations and all related activities, at the premises defined as 27 E. 62nd St., and a perimeter of 100 feet of the premises. Additionally, the insurer for the Named Insured will not deny coverage for the additional insured(s) based on any lack of negligence of the part of the Named Insured.” | 137 Varick Street<br>New York, NY 10013 |
| | |
| | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © ISO Properties, Inc., 2004 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):**<br><br>Unity Construction LLC<br>137 Varick Street<br>New York, NY 10013 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 
Wolters Kluwer Financial Services | Uniform Forms™

ZURICH

**ENDORSEMENT**

**This endorsement changes the policy. Please read it carefully.**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Agency No. | Add'l Premium | Return Premium |
|---|---|---|---|---|---|---|
| GLO 3737031-10 | 07/01/2014 | 07/01/2015 | 07/01/2014 | 50522-000 | | |

This endorsement is issued by the company named in the Declarations. It changes the policy on the effective date listed above at the hour stated in the Declarations.

Named Insured: MACANDREWS & FORBES HOLDINGS, INC.

Address (including Zip Code)

This endorsement changes such insurance as is afforded by provisions of the policy relating to the following:

GENERAL LIABILITY POLICY

EXCLUSION -SPECIFIED ENTITIES/OPERATION

THIS INSURANCE DOES NOT APPLY TO THE ENTITIES SHOWN IN THE SCHEDULE BELOW.

SCHEDULE

M & F WORLDWIDE CORP.
THE COLEMAN COMPANY
GOLDEN STATE BANCORP
CALIFORNIA FEDERAL SAVINGS BANK
FIRST NATIONWIDE MANAGEMENT
AUTO ONE ACCEPTANCE
AUTO ONE DEPOSIT
MERIDIAN SPORTS
MACANDREWS AMG
HOLDINGS LLC
MERISANT COMPANY

BUT ONLY AS RESPECTS TO ANY LIABILITY ARISING OUT OF THE OPERATIONS OF

AM GENERAL LLC
AM GENERAL HOLDINGS LLC
IRA LEON RENNERT
ILSHAR CAPITAL LLC
THE RENCO GROUP, INC
TRANSTECH PHARMA
SIGA TECHNOLOGIES, INC.
SCIENTIFIC GAMES CORP.
HARLAND CLARK HOLDINGS CORP.

Countersigned________________________________________

Authorized Representative

ZURICH

**ENDORSEMENT**

**This endorsement changes the policy. Please read it carefully.**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Agency No. | Add'l Premium | Return Premium |
|---|---|---|---|---|---|---|
| GLO 3737031-10 | 07/01/2014 | 07/01/2015 | 07/01/2014 | 50522-000 | | |

This endorsement is issued by the company named in the Declarations. It changes the policy on the effective date listed above at the hour stated in the Declarations.

Named Insured: MacAndrews & Forbes Holdings, Inc.

Address (including Zip Code)

This endorsement changes such insurance as is afforded by provisions of the policy relating to the following:

GENERAL LIABILITY POLICY

It is understood and agreed that the following corrections for Insurance Agents & Brokers Prof. Liab.

is amended to read:

Title is amended to read: INSURANCE AGENTS & BROKERS PROFESSIONAL LIABILITY

1. INSURING AGREEMENT, COVERAGE F - ERRORS AND OMISSIONS is amended to read:

TO PAY THE INSURED ALL SUMS WHICH THE INSURED SHALL BECOME LEGALLY OBLIGATED TO PAY AS DAMAGES RESULTING FROM ANY CLAIM OR CLAIMS ARISING FROM ANY WRONGFUL ACT OF THE INSURED OR OF ANY OTHER PERSON FOR WHOSE ACTIONS THE INSURED IS LEGALLY RESPONSIBLE, BUT ONLY IF SUCH WRONGFUL ACT OCCURS DURING OR PRIOR TO THE POLICY PERIOD AND SOLELY IN RENDERING OR FAILING TO RENDER PROFESSIONAL SERVICES FOR KEY EXECUTIVES OF MACANDREWS & FORBES HOLDINGS INC. IN THE INSURED'S CAPACITY AS AN INSURANCE AGENT, INSURANCE BROKER, INSURANCE CONSULTANT OR NOTARY PUBLIC.

SECTION IV - 1. POLICY TERRITORY is amended to read

THIS INSURANCE ONLY APPLIES TO WRONGFUL ACTS COMMITTED IN, OR SUITS BROUGHT AGAINST THE INSURED IN, THE UNITED STATES OF AMERICA, ITS TERRITORIES OR POSSESSIONS, OR CANADA.

IT IS UNDERSTOOD AND AGREED THAT AGGREGATE LIMITS OF LIABILITY AS LISTED ON THE DECLARATIONS PAGE SHALL REMAINED UNCHANGED

Countersigned______________________________

Authorized Representative

ZURICH

**ENDORSEMENT**

**This endorsement changes the policy. Please read it carefully.**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Agency No. | Add'l Premium | Return Premium |
|---|---|---|---|---|---|---|
| GLO 3737031-10 | 07/01/2014 | 07/01/2015 | 07/01/2014 | 50522-000 | | |

This endorsement is issued by the company named in the Declarations. It changes the policy on the effective date listed above at the hour stated in the Declarations.

Named Insured: MacAndrews & Forbes Holdings, Inc.

Address (including Zip Code)

This endorsement changes such insurance as is afforded by provisions of the policy relating to the following:

GENERAL LIABILITY POLICY

It is understood and agreed that as respects form CG 2149 (09/99) Total Pollution Exclusion Endorsement is deleted from the above policy.

Countersigned________________________________________

Authorized Representative

ZURICH

**ENDORSEMENT**

**This endorsement changes the policy. Please read it carefully.**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Agency No. | Add'l Premium | Return Premium |
|---|---|---|---|---|---|---|
| GLO 3737031-10 | 07/01/2014 | 07/01/2015 | 07/01/2014 | 50522-000 | | |

This endorsement is issued by the company named in the Declarations. It changes the policy on the effective date listed above at the hour stated in the Declarations.

Named Insured: MacAndrews & Forbes Holdings, Inc.

Address (including Zip Code)

This endorsement changes such insurance as is afforded by provisions of the policy relating to the following:

GENERAL LIABILITY POLICY

VICARIOUS LIABILITY ENDORSEMENT

It is understood and agreed that the entities noted in the schedule below are provided vicarious liability as respects to their ownership of Harland Clarke Holdings Corp.

Named Insured: Harland Clarke Holdings Corp.

Vicarious Liability:
MacAndrews & Forbes Holdings Inc.
M&F Worldwide Corp.
CA Acquisition

Exclude:
Merisant Company
MAFCO Worldwide Corp.
PCT International Holdings Inc.
Flavors Holdings Inc.

.

Countersigned____________________________________________

Authorized Representative

# Exhibit 8

## 2018 Primary Policy

# Disclosure Statement

ZURICH®

**NOTICE OF DISCLOSURE FOR AGENT & BROKER COMPENSATION**

If you want to learn more about the compensation Zurich pays agents and brokers visit:

http://www.zurichnaproducercompensation.com

or call the following toll-free number: (866) 903-1192.

This Notice is provided on behalf of Zurich American Insurance Company

and its underwriting subsidiaries.

**COMMERCIAL INSURANCE**

**COMMON POLICY DECLARATIONS**

Policy Number GLO 3737031-14 Renewal of Number GLO 3737031-13

Named Insured and Mailing Address
MACANDREWS & FORBES
INCORPORATED
35 EAST 62ND STREET
NEW YORK NY 10065

Producer and Mailing Address
AON RISK SERVICES NORTHEAST INC.
199 WATER STREET
NEW YORK NY 10038

Producer Code 50522-000

Policy Period: Coverage begins 07-01-2018 at 12:01 A.M.; Coverage ends 07-01-2019 at 12:01 A.M.

The name insured is ☐ Individual ☐ Partnership ☒ Corporation
☐ Other:

This insurance is provided by one or more of the stock insurance companies which are members of the Zurich-American Insurance Group. The company that provides coverage is designated on each Coverage Part Common Declarations. The company or companies providing this insurance may be referred to in this policy as "The Company", we, us, or our. The address of the companies of the Zurich-American Insurance Group are provided on the next page.

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE(S):**

| | | |
|---|---|---|
| GENERAL LIABILITY COVERAGE<br>issued by ZURICH AMERICAN INSURANCE COMPANY | PREMIUM $ | 254,247.00 |
| KY SURCHARGE | $ | 1.00 |
| NJ PROP LIAB INS GUAR ASSOC SURCHARGE | $ | 184.00 |
| VA BIRTH-RELATED NEUROLOGICAL INJURY COMP FUND | $ | 24.00 |
| WA REGULATORY SURCHARGE | $ | 1.00 |
| WV SURCHARGE | $ | 1.00 |

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**THIS PREMIUM MAY BE SUBJECT TO AUDIT.** **TOTAL** **$** 254,247.00
This premium does not include Taxes and Surcharges. SEE INSTALLMENT SCHEDULE

**Taxes and Surcharges** **TOTAL** **$** 211.00
SEE INSTALLMENT SCHEDULE

The Form(s) and Endorsement(s) made a part of this policy at the time of issue are listed on the **SCHEDULE of FORMS and ENDORSEMENTS.**

Countersigned this day of

Authorized Representative

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART FORM(S), FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

# Important Notice – In Witness Clause

ZURICH®

In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).

| | |
|---|---|
| President | Corporate Secretary |

**QUESTIONS ABOUT YOUR INSURANCE?** Your agent or broker is best equipped to provide information about your insurance. Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1299 Zurich Way
Schaumburg, Illinois 60196-1056
**1-800-382-2150** (Business Hours: 8am - 4pm [CT])
**Email**: info.source@zurichna.com

**COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS**

Policy Number: GLO 3737031-14

# ZURICH AMERICAN INSURANCE COMPANY

Named Insured MACANDREWS & FORBES

Policy Period: Coverage begins 07-01-2018 at 12:01 A.M.; Coverage ends 07-01-2019 at 12:01 A.M.

Producer Name: AON RISK SERVICES NORTHEAST INC. Producer No. 50522-000

**Item 1.** Business Description: MANUFACTURER

**Item 2.** Limits of Insurance

| | | |
|---|---|---|
| GENERAL AGGREGATE LIMIT | $ 4,000,000 | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ 4,000,000 | |
| EACH OCCURRENCE LIMIT | $ 2,000,000 | |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $ 500,000 | Any one premises |
| MEDICAL EXPENSE LIMIT | $ 10,000 | Any one person |
| PERSONAL AND ADVERTISING INJURY LIMIT | $ 2,000,000 | Any one person or organization |

**Item 3.** Retroactive Date **(CG 00 02 ONLY)**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" offense which occurs before the Retroactive Date, if any, shown here: NONE

(Enter Date or "None" if no Retroactive Date applies)

**Item 4.** Form of Business and Location Premises

Form of Business: CORPORATION

Location of All Premises You Own, Rent or Occupy: **See Schedule of Locations**

**Item 5.** Schedule of Forms and Endorsements

Form(s) and Endorsement(s) made a part of this Policy at time of issue:
**See Schedule of Forms and Endorsements**

**Item 6.** Premiums

| | |
|---|---|
| Coverage Part Premium: | 254,247 |
| Other Premium: | |
| Total Premium: | 254,247 |

**EMPLOYEE BENEFIT LIABILITY COVERAGE PART – OCCURRENCE DECLARATIONS**

Policy Number: GLO 3737031-14

Named Insured: MACANDREWS & FORBES

Policy Period: Coverage begins 07-01-2018 at 12:01 A.M; Coverage ends 07-01-2019 at 12:01 A.M.

Producer Name: AON RISK SERVICES NORTHEAST INC.

Producer No. 50522-000

**Item 1.** Limits of Insurance

**$** 4,000,000 Aggregate Limit

**$** 1,000,000 Each Act, Error or Omission Limit

**Item 2.** Form of Business:

☐ Individual ☐ Partnership ☐ Joint Venture ☒ Corporation

☐ Other ____________________

**Item 3.** Premium Schedule:

| Code No. | Premium Basis (Estimated Number of Employees) | Rate | | Advance Premium |
|---|---|---|---|---|
| 92100 | IF ANY | $ | Per Employee | $ |
| | | $ 150.000 | Flat Charge | $ INCL |

Total Advance Premium For This Coverage Part: $ INCL

Audit Period: ☒ Annual ☐ Semi-annual ☐ Quarterly ☐ Monthly

**Forms And Endorsements Applicable To This Coverage Part:**

**SEE SCHEDULE OF FORMS AND ENDORSEMENTS**

**Policy Number**
**GLO 3737031-14**

**SCHEDULE OF FORMS AND ENDORSEMENTS**

**Zurich American Insurance Company**

Named Insured MACANDREWS & FORBES

Effective Date: 07-01-18
12:01 A.M., Standard Time

Agent Name AON RISK SERVICES NORTHEAST INC.

Agent No. 50522-000

COMMON & GENERAL LIABILITY FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| U-GU-D-310-A | 01-93 | COMMON POLICY DECLARATIONS |
| U-GU-319-F | 01-09 | IMPORTANT NOTICE - IN WITNESS CLAUSE |
| U-GL-D-1115-B CW | 09-04 | COMMERCIAL GL COVERAGE PART DECLARATIONS |
| U-GL-D-851-B CW | 09-04 | EMPLOYEE BENEFITS LIAB (OCCURRENCE) COV |
| U-GU-619-A CW | 10-02 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| U-GU-406-B | 07-15 | INSTALLMENT PREMIUM SCHEDULE |
| CG 00 01 | 04-13 | COMMERCIAL GENERAL LIABILITY COV FORM |
| U-GL-1055-A CW | 12-01 | BODILY INJURY REDEFINED |
| UGL1171ACW | 07-03 | FUNGI OR BACTERIA EXCLUSION |
| U-GL-1175-F CW | 04-13 | ADDL INSD-AUTO-OWNERS LESSEES CONTRACTR |
| U-GL-1177-F CW | 04-13 | ADL INSD OWNER,LESSE,CONT-SCHEDULED |
| U-GL-1178ACW | 07-03 | ASBESTOS EXCLUSION ENDORSEMENT |
| U-GL-1296-A NY | 05-07 | FIRST NAMED INSURED INDEMNIFICATION ENDT |
| U-GL-1342-A CW | 10-07 | LEAD LIABILITY EXCLUSION |
| U-GL-1387-B CW | 05-10 | NOTIFI TO OTHERS OF CANC OR NONRENEW |
| U-GL-1446-A CW | 05-10 | NOTIFICATION TO OTHERS OF CANCELLATION |
| U-GL-1517-B CW | 04-13 | RECORD OR DISTRB OF MATRL OR INFO EXCL |
| U-GL-1521-A CW | 10-12 | BLANKET NOTIFICATION TO OTH CANC/NONREN |
| U-GL-2106-A NY | 05-16 | CANADIAN LOCAL PROGRAM ENDORSEMENT-NY |
| U-GL-678-B CW | 12-01 | TWO OR MORE OF OUR POLICIES ENDORSEMENT |
| U-GL-851-B CW | 06-04 | EMPLOYEE BENEFITS LIAB (OCCURRENCE) COV |
| U-GL-872-B CW | 04-09 | PREMIUM & REPORTS AGREEMENT-COMP RATED |
| U-GL-915-C CW | 08-04 | FELLOW EMPLOYEE COVERAGE ENDORSEMENT |
| U-GL-917-C CW | 08-04 | INCIDENTAL MEDICAL MALPRACTICE COV ENDT |
| U-GL-918-B CW | 08-04 | NEWLY FORMED ORGANIZATIONS COVERAGE ENDT |
| U-GL-920-A NY | 07-10 | NONOWNED WATERCRAFT COVERAGE ENDT |
| U-GL-921-A CW | 12-97 | AMENDMENT OF REPRESENTATIONS CONDITION |
| U-GL-922-B CW | 12-01 | NOTICE OF ERROR IN CLAIM REPORTING ENDT |
| U-GL-925-B CW | 12-01 | WAIVER OF SUBROGATION (BLANKET) ENDT. |
| U-GU-1016-A CW | 06-10 | KNOWLEDGE BY POSITION OR DEPARTMENT |
| CG 01 04 | 12-04 | NEW YORK CHANGES - PREMIUM AUDIT |
| CG 01 63 | 07-11 | NY CHANGES-COMM GEN LIAB COV FORM |
| CG 04 24 | 10-93 | COVERAGE FOR INJURY TO LEASED WORKERS |
| CG 20 10 | 04-13 | ADDL INSD - OWNERS/LESSEES/CONTRACTORS |
| CG 20 11 | 04-13 | ADDL INSD-MANAGERS/LESSORS OF PREMISES |
| CG 20 12 | 04-13 | ADDL INS-ST,GOV AGY,SUB,POL SUB-PERM |
| CG 20 15 | 04-13 | ADDL INSD-VENDORS |
| CG 20 26 | 04-13 | ADDL INSD-DESIGNATED PERSON/ORGANIZATION |
| CG 20 28 | 04-13 | ADDL INSD-LESSOR OF LEASED EQUIPMENT |
| CG 20 37. | 04-13 | ADDL INSD-OWNERS/LESSEES/CONTR-COMP OPS |
| CG 21 06 | 05-14 | EXCL-ACC/DISCL OF CONFI OR PERSONAL INFO |
| CG 21 18 | 10-17 | OR - MARIJUANA EXCLUSION |
| CG 21 47 | 12-07 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 55 | 09-99 | TOTAL POLLUTION EXCL. WITH HOSTILE FIRE |
| CG 24 04 | 05-09 | WAIVER OF TRANSFER RIGHTS OF RECOVERY |
| CG 26 21 | 10-91 | NY CHANGES - TRANSFER OF DUTIES |
| CG 32 85 | 07-10 | VA CHNGS - TOTAL POLLUTION W BLDG HEAT |
| IL 00 03 | 09-08 | CALCULATION OF PREMIUM |
| IL 00 17 | 11-98 | COMMON POLICY CONDITIONS |
| IL 00 21 | 09-08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDT |
| IL 02 34 | 09-17 | NORTH DAKOTA CHANGES-CANC & NONRENL |
| IL 02 68 | 01-14 | NEW YORK CHANGES-CANC & NONRENL |
| IL 02 77 | 01-18 | LOUISIANA CHANGES-CANC & NONRENL |

**Policy Number**
**GLO 3737031-14**

**SCHEDULE OF FORMS AND ENDORSEMENTS**

**Zurich American Insurance Company**

Named Insured MACANDREWS & FORBES

Effective Date: 07-01-18
12:01 A.M., Standard Time

Agent Name AON RISK SERVICES NORTHEAST INC.

Agent No. 50522-000

| | | |
|---|---|---|
| U-GU-298-B CW | 04-94 | CANCELLATION BY US |
| U-GU-767-B CW | 01-15 | CAP ON LOSS FROM CERTIFIED ACTS OF TERR |
| U-GL-1114-A CW | 10-02 | BROAD FORM NAMED INSURED ENDORSEMENT |
| U-GL-1114-A CW | 10-02 | EXCLUSION - SPECIFIED ENTITIES/OPERATION |
| U-GL-1114-A CW | 10-02 | DEDUCTIBLE ENDORSEMENT |
| U-GL-1114-A CW | 10-02 | EMPLOYED LAWYERS PROFESSIONAL LIABILITY COVAGE ENDORSEMENT |
| U-GL-1114-A CW | 10-02 | INSURANCE AGENTS & BROKERS PROFESSIONAL LIABILITY ENDORSEMENT |
| U-GL-1114-A CW | 10-02 | DECLARATIONS-EMPLOYED LAWYERS-INS AGENTS |
| U-GL-924-B CW | 08-04 | TOBACCO HEALTH HAZARD EXCLUSION |
| U-GU-1223-B CA | 09-16 | REVISED DEFINITION OF SPOUSE ENDORSEMENT |
| U-GU-630-D CW | 01-15 | DISCLOSURE OF INFO RELATING TO TRIA |
| U-GU-1191-A CW | 03-15 | SANCTIONS EXCLUSION ENDORSEMENT |
| U-GU-1169-A CO | 06-13 | CO CIVIL UNION ACT POLICYHOLDER NOTICE |

ZURICH

## INSTALLMENT PREMIUM SCHEDULE

The total premium shown in the Declarations of this policy is made payable in installments, on the dates and in the amounts shown below.

| NAMED INSURED | POLICY NUMBER | ENDORSEMENT NUMBER |
|---|---|---|
| MACANDREWS & FORBES | GLO 3737031-14 | |

| PAYMENT DUE | STANDARD PREMIUM | TAXES PREPAID | TOTAL PREMIUM |
|---|---|---|---|
| 07/01/18 | $ 63,564.00 | $ 211.00 | $ 63,775.00 |
| 10/01/18 | $ 63,561.00 | | $ 63,561.00 |
| 01/01/19 | $ 63,561.00 | | $ 63,561.00 |
| 04/01/19 | $ 63,561.00 | | $ 63,561.00 |
| TOTAL | $ 254,247.00 | $ 211.00 | $ 254,458.00 |

Failure to pay the installment Premium by the Due Date shown shall constitute non-payment of premium for which we may cancel this policy.

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

 © Insurance Services Office, Inc., 2012 

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

 © Insurance Services Office, Inc., 2012 

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

 © Insurance Services Office, Inc., 2012 

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

 © Insurance Services Office, Inc., 2012 

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

 © Insurance Services Office, Inc., 2012 

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

 © Insurance Services Office, Inc., 2012 

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

 © Insurance Services Office, Inc., 2012 

**COVERAGE C – MEDICAL PAYMENTS**

1. **Insuring Agreement**
   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:
      (1) On premises you own or rent;
      (2) On ways next to premises you own or rent; or
      (3) Because of your operations;

      provided that:
         (a) The accident takes place in the "coverage territory" and during the policy period;
         (b) The expenses are incurred and reported to us within one year of the date of the accident; and
         (c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.
   b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:
      (1) First aid administered at the time of an accident;
      (2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and
      (3) Necessary ambulance, hospital, professional nursing and funeral services.
2. **Exclusions**

   We will not pay expenses for "bodily injury":

   a. **Any Insured**

      To any insured, except "volunteer workers".

   b. **Hired Person**

      To a person hired to do work for or on behalf of any insured or a tenant of any insured.

   c. **Injury On Normally Occupied Premises**

      To a person injured on that part of premises you own or rent that the person normally occupies.

   d. **Workers' Compensation And Similar Laws**

      To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

   e. **Athletics Activities**

      To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

   f. **Products-Completed Operations Hazard**

      Included within the "products-completed operations hazard".

   g. **Coverage A Exclusions**

      Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
   a. All expenses we incur.
   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.
   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.
   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.
   e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.
   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

 © Insurance Services Office, Inc., 2012 

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

 © Insurance Services Office, Inc., 2012 

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

 © Insurance Services Office, Inc., 2012 

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A;** and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.


© Insurance Services Office, Inc., 2012

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

 © Insurance Services Office, Inc., 2012 

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

 © Insurance Services Office, Inc., 2012 

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

 © Insurance Services Office, Inc., 2012 

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

 © Insurance Services Office, Inc., 2012 

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.


© Insurance Services Office, Inc., 2012

# Bodily Injury Redefined

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | $ **INCL** | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Form**

The definition of "bodily injury" in SECTION V – DEFINITIONS is replaced by the following:

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death resulting from bodily injury, sickness or disease.

# Fungi Or Bacteria Exclusion Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | $ **INCL** | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions** of **Section I. – Coverage A – Bodily Injury And Property Damage Liability** and paragraph **2. Exclusions** of **Coverage B – Personal And Advertising Injury Liability**:

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

A. "Bodily injury", "property damage" or "personal and advertising injury " caused directly or indirectly by the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any:

1. "Fungi"or "bacteria"; or
2. Substance, vapor or gas produced by or arising out of any "fungi" or "bacteria".

B. Loss, costs or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or "bacteria", by any insured or by any other person or entity.

C. For the purposes of this exclusion, the following definitions are added:

1. "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, "spores", scents or byproducts produced or released by fungi.
2. "Spores" means reproductive bodies produced by or arising out of "fungi".
3. "Bacteria" means any type or form of bacteria and any materials or substances that are produced or released by bacteria.

This exclusion does not apply to any "fungi"or "bacteria" that are, are on, or are contained in, an edible good or edible product intended for human or animal consumption.



Includes copyrighted material of Insurance Services Office, Inc. with its permission

# Additional Insured – Automatic – Owners, Lessees Or Contractors

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Named Insured**: MACANDREWS & FORBES INCORPORATED

**Address (including ZIP Code)**:

35 EAST 62ND STREET

NEW YORK, NY 10065

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**A.** Section **II – Who Is An Insured** is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement**.** Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf,

in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or failure to render, any professional architectural, engineering or surveying services including:

**a.** The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**C.** The following is added to Paragraph **2.** Duties In The Event Of Occurrence, Offense, Claim Or Suit of Section **IV – Commercial General Liability Conditions**:

The additional insured must see to it that:

**1.** We are notified as soon as practicable of an "occurrence" or offense that may result in a claim;

**2.** We receive written notice of a claim or "suit" as soon as practicable; and

**3.** A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured may be an insured in any capacity. This provision does not apply to insurance on which the additional insured is a Named Insured if the written contract or written agreement requires that this coverage be primary and non-contributory.

**D.** For the purposes of the coverage provided by this endorsement:

**1.** The following is added to the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

**Primary and Noncontributory insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided that:

**a.** The additional insured is a Named Insured under such other insurance; and

**b.** You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured.

**2.** The following paragraph is added to Paragraph **4.b.** of the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

This insurance is excess over:

Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", offense, claim or "suit". This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by a written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

**E.** This endorsement does not apply to an additional insured which has been added to this policy by an endorsement showing the additional insured in a Schedule of additional insureds, and which endorsement applies specifically to that identified additional insured.

**F.** With respect to the insurance afforded to the additional insureds under this endorsement, the following is added to Section **III – Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the written contract or written agreement referenced in Paragraph **A.** of this endorsement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations,

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031 14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Named Insured**: MACANDREWS & FORBES INCORPORATED
**Address (including ZIP Code)**:
35 EAST 62ND STREET
NEW YORK, NY 10065
This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Covered Operations |
|---|---|
| THE IRVINE COMPANY LLC AND ALL ENTITIES CONTROLLING, CONTROLLED BY, OR UNDER COMMON CONTROL WITH | ALL OPERATIONS ASSOCIATED WITH THE IRVINE COMPANY LLC |

**A.** Section **II – Who Is An Insured** is amended to include as an additional insured the person or organization shown in the Schedule above, whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf,

in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement at the Location designated and described in the Schedule above.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:
This insurance does not apply to:



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering or failure to render any professional architectural, engineering or surveying services including:

**a.** The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved, the rendering of or the failure to render any professional architectural, engineering or surveying services.

**C.** The following is added to Paragraph **2.** Duties In The Event Of Occurrence, Offense, Claim Or Suit of Section **IV – Commercial General Liability Conditions**:

The additional insured must see to it that:

**1.** We are notified as soon as practicable of an "occurrence" or offense that may result in a claim;

**2.** We receive written notice of a claim or "suit" as soon as practicable; and

**3.** A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured may be an insured in any capacity. This provision does not apply to insurance on which the additional insured is a Named Insured, if the written contract or written agreement requires that this coverage be primary and non-contributory.

**D.** For the purpose of the coverage provided by this endorsement:

**1.** The following is added to the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

**Primary and Noncontributory insurance**

This Insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided that:

**a.** The additional insured is a Named Insured under such other insurance; and

**b.** You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured.

**2.** The following paragraph is added to Paragraph **4.b.** of the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

This insurance is excess over:

Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", offense, claim or "suit". This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

**E.** With respect to the insurance afforded to the additional insureds under this endorsement, the following is added to Section **III – Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement referenced in Paragraph **A.** of this endorsement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations,

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031 14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Named Insured**: MACANDREWS & FORBES INCORPORATED
**Address (including ZIP Code)**:
35 EAST 62ND STREET
NEW YORK, NY 10065
This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**SCHEDULE**

| **Name Of Additional Insured Person(s) Or Organization(s)** | **Location And Description Of Covered Operations** |
|---|---|
| SONY PICTURES TELEVISION<br>10202 W. WASHINGTON BLVD. SSP 7414<br>CULVER CITY, CA 90232 | |

**A.** Section **II – Who Is An Insured** is amended to include as an additional insured the person or organization shown in the Schedule above, whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf,

in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement at the Location designated and described in the Schedule above.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:
This insurance does not apply to:



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering or failure to render any professional architectural, engineering or surveying services including:

**a.** The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved, the rendering of or the failure to render any professional architectural, engineering or surveying services.

**C.** The following is added to Paragraph **2.** Duties In The Event Of Occurrence, Offense, Claim Or Suit of Section **IV – Commercial General Liability Conditions**:

The additional insured must see to it that:

**1.** We are notified as soon as practicable of an "occurrence" or offense that may result in a claim;

**2.** We receive written notice of a claim or "suit" as soon as practicable; and

**3.** A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured may be an insured in any capacity. This provision does not apply to insurance on which the additional insured is a Named Insured, if the written contract or written agreement requires that this coverage be primary and non-contributory.

**D.** For the purpose of the coverage provided by this endorsement:

**1.** The following is added to the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

**Primary and Noncontributory insurance**

This Insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided that:

**a.** The additional insured is a Named Insured under such other insurance; and

**b.** You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured.

**2.** The following paragraph is added to Paragraph **4.b.** of the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

This insurance is excess over:

Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", offense, claim or "suit". This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

**E.** With respect to the insurance afforded to the additional insureds under this endorsement, the following is added to Section **III – Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement referenced in Paragraph **A.** of this endorsement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations,

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031 14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Named Insured**: MACANDREWS & FORBES INCORPORATED
**Address (including ZIP Code)**:
35 EAST 62ND STREET
NEW YORK, NY 10065
This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Covered Operations |
|---|---|
| TOPANGA PRODUCTIONS, INC., ITS PARENT(S), SUBSIDIARIES, SUCCESSORS, LICENSEES, RELATED | |

**A.** Section **II – Who Is An Insured** is amended to include as an additional insured the person or organization shown in the Schedule above, whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf,

in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement at the Location designated and described in the Schedule above.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:
This insurance does not apply to:



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering or failure to render any professional architectural, engineering or surveying services including:

**a.** The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved, the rendering of or the failure to render any professional architectural, engineering or surveying services.

**C.** The following is added to Paragraph **2.** Duties In The Event Of Occurrence, Offense, Claim Or Suit of Section **IV – Commercial General Liability Conditions**:

The additional insured must see to it that:

**1.** We are notified as soon as practicable of an "occurrence" or offense that may result in a claim;

**2.** We receive written notice of a claim or "suit" as soon as practicable; and

**3.** A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured may be an insured in any capacity. This provision does not apply to insurance on which the additional insured is a Named Insured, if the written contract or written agreement requires that this coverage be primary and non-contributory.

**D.** For the purpose of the coverage provided by this endorsement:

**1.** The following is added to the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

**Primary and Noncontributory insurance**

This Insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided that:

**a.** The additional insured is a Named Insured under such other insurance; and

**b.** You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured.

**2.** The following paragraph is added to Paragraph **4.b.** of the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

This insurance is excess over:

Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", offense, claim or "suit". This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

**E.** With respect to the insurance afforded to the additional insureds under this endorsement, the following is added to Section **III – Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement referenced in Paragraph **A.** of this endorsement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations,

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031 14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Named Insured**: MACANDREWS & FORBES INCORPORATED
**Address (including ZIP Code)**:
35 EAST 62ND STREET
NEW YORK, NY 10065
This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Covered Operations |
|---|---|
| COLUMBIA REIT 218 W. 18TH LLC<br>COLUMBIA PROPERTY TRUST, INC.<br>OWNERS, 200 PARK AVENUE | |

**A.** Section **II – Who Is An Insured** is amended to include as an additional insured the person or organization shown in the Schedule above, whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf,

in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement at the Location designated and described in the Schedule above.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:
This insurance does not apply to:



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering or failure to render any professional architectural, engineering or surveying services including:

**a.** The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved, the rendering of or the failure to render any professional architectural, engineering or surveying services.

**C.** The following is added to Paragraph **2.** Duties In The Event Of Occurrence, Offense, Claim Or Suit of Section **IV – Commercial General Liability Conditions**:

The additional insured must see to it that:

**1.** We are notified as soon as practicable of an "occurrence" or offense that may result in a claim;

**2.** We receive written notice of a claim or "suit" as soon as practicable; and

**3.** A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured may be an insured in any capacity. This provision does not apply to insurance on which the additional insured is a Named Insured, if the written contract or written agreement requires that this coverage be primary and non-contributory.

**D.** For the purpose of the coverage provided by this endorsement:

**1.** The following is added to the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

**Primary and Noncontributory insurance**

This Insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided that:

**a.** The additional insured is a Named Insured under such other insurance; and

**b.** You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured.

**2.** The following paragraph is added to Paragraph **4.b.** of the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

This insurance is excess over:

Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", offense, claim or "suit". This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

**E.** With respect to the insurance afforded to the additional insureds under this endorsement, the following is added to Section **III – Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement referenced in Paragraph **A.** of this endorsement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations,

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031 14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Named Insured**: MACANDREWS & FORBES INCORPORATED
**Address (including ZIP Code)**:
35 EAST 62ND STREET
NEW YORK, NY 10065

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Covered Operations |
|---|---|
| NEW YORK, NY 10166 | |

**A.** Section **II – Who Is An Insured** is amended to include as an additional insured the person or organization shown in the Schedule above, whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf,

in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement at the Location designated and described in the Schedule above.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:
This insurance does not apply to:



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering or failure to render any professional architectural, engineering or surveying services including:

**a.** The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved, the rendering of or the failure to render any professional architectural, engineering or surveying services.

**C.** The following is added to Paragraph **2.** Duties In The Event Of Occurrence, Offense, Claim Or Suit of Section **IV – Commercial General Liability Conditions**:

The additional insured must see to it that:

**1.** We are notified as soon as practicable of an "occurrence" or offense that may result in a claim;

**2.** We receive written notice of a claim or "suit" as soon as practicable; and

**3.** A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured may be an insured in any capacity. This provision does not apply to insurance on which the additional insured is a Named Insured, if the written contract or written agreement requires that this coverage be primary and non-contributory.

**D.** For the purpose of the coverage provided by this endorsement:

**1.** The following is added to the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

**Primary and Noncontributory insurance**

This Insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided that:

**a.** The additional insured is a Named Insured under such other insurance; and

**b.** You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured.

**2.** The following paragraph is added to Paragraph **4.b.** of the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

This insurance is excess over:

Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", offense, claim or "suit". This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

**E.** With respect to the insurance afforded to the additional insureds under this endorsement, the following is added to Section **III – Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement referenced in Paragraph **A.** of this endorsement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations,

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031 14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Named Insured**: MACANDREWS & FORBES INCORPORATED
**Address (including ZIP Code)**:
35 EAST 62ND STREET
NEW YORK, NY 10065
This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Covered Operations |
|---|---|
| "THE IRVINE COMPANY LLC AND ALL ENTITIES CONTROLLING, CONTROLLED BY, OR UNDER COMMON CONTROL WITH | ALL OPERATIONS ASSOCIATED WITH THE IRVINE COMPANY LLC |

**A.** Section **II – Who Is An Insured** is amended to include as an additional insured the person or organization shown in the Schedule above, whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf,

in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement at the Location designated and described in the Schedule above.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:
This insurance does not apply to:



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering or failure to render any professional architectural, engineering or surveying services including:

**a.** The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved, the rendering of or the failure to render any professional architectural, engineering or surveying services.

**C.** The following is added to Paragraph **2.** Duties In The Event Of Occurrence, Offense, Claim Or Suit of Section **IV – Commercial General Liability Conditions**:

The additional insured must see to it that:

**1.** We are notified as soon as practicable of an "occurrence" or offense that may result in a claim;

**2.** We receive written notice of a claim or "suit" as soon as practicable; and

**3.** A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured may be an insured in any capacity. This provision does not apply to insurance on which the additional insured is a Named Insured, if the written contract or written agreement requires that this coverage be primary and non-contributory.

**D.** For the purpose of the coverage provided by this endorsement:

**1.** The following is added to the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

**Primary and Noncontributory insurance**

This Insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided that:

**a.** The additional insured is a Named Insured under such other insurance; and

**b.** You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured.

**2.** The following paragraph is added to Paragraph **4.b.** of the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

This insurance is excess over:

Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", offense, claim or "suit". This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

**E.** With respect to the insurance afforded to the additional insureds under this endorsement, the following is added to Section **III – Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement referenced in Paragraph **A.** of this endorsement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations,

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add’l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031 14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Named Insured**: MACANDREWS & FORBES INCORPORATED
**Address (including ZIP Code)**:
35 EAST 62ND STREET
NEW YORK, NY 10065
This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Covered Operations |
|---|---|
| SUCH ENTITY, TOGETHER WITH ITS RESPECTIVE OWNERS, SHAREHOLDERS, PARTNERS, MEMBERS, DIVISIONS, | |

**A.** Section **II – Who Is An Insured** is amended to include as an additional insured the person or organization shown in the Schedule above, whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf,

in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement at the Location designated and described in the Schedule above.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:
This insurance does not apply to:



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering or failure to render any professional architectural, engineering or surveying services including:

**a.** The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved, the rendering of or the failure to render any professional architectural, engineering or surveying services.

**C.** The following is added to Paragraph **2.** Duties In The Event Of Occurrence, Offense, Claim Or Suit of Section **IV – Commercial General Liability Conditions**:

The additional insured must see to it that:

**1.** We are notified as soon as practicable of an "occurrence" or offense that may result in a claim;

**2.** We receive written notice of a claim or "suit" as soon as practicable; and

**3.** A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured may be an insured in any capacity. This provision does not apply to insurance on which the additional insured is a Named Insured, if the written contract or written agreement requires that this coverage be primary and non-contributory.

**D.** For the purpose of the coverage provided by this endorsement:

**1.** The following is added to the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

**Primary and Noncontributory insurance**

This Insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided that:

**a.** The additional insured is a Named Insured under such other insurance; and

**b.** You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured.

**2.** The following paragraph is added to Paragraph **4.b.** of the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

This insurance is excess over:

Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", offense, claim or "suit". This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

**E.** With respect to the insurance afforded to the additional insureds under this endorsement, the following is added to Section **III – Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement referenced in Paragraph **A.** of this endorsement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations,

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031 14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Named Insured**: MACANDREWS & FORBES INCORPORATED
**Address (including ZIP Code)**:
35 EAST 62ND STREET
NEW YORK, NY 10065
This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Covered Operations |
|---|---|
| OFFICERS, DIRECTORS, EMPLOYEES, REPRESENTATIVES AND AGENTS, AND ITS SUCCESSORS AND ASSIGNS." | |

**A.** Section **II – Who Is An Insured** is amended to include as an additional insured the person or organization shown in the Schedule above, whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf,

in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement at the Location designated and described in the Schedule above.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:
This insurance does not apply to:



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering or failure to render any professional architectural, engineering or surveying services including:

**a.** The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved, the rendering of or the failure to render any professional architectural, engineering or surveying services.

**C.** The following is added to Paragraph **2.** Duties In The Event Of Occurrence, Offense, Claim Or Suit of Section **IV – Commercial General Liability Conditions**:

The additional insured must see to it that:

**1.** We are notified as soon as practicable of an "occurrence" or offense that may result in a claim;

**2.** We receive written notice of a claim or "suit" as soon as practicable; and

**3.** A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured may be an insured in any capacity. This provision does not apply to insurance on which the additional insured is a Named Insured, if the written contract or written agreement requires that this coverage be primary and non-contributory.

**D.** For the purpose of the coverage provided by this endorsement:

**1.** The following is added to the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

**Primary and Noncontributory insurance**

This Insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided that:

**a.** The additional insured is a Named Insured under such other insurance; and

**b.** You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured.

**2.** The following paragraph is added to Paragraph **4.b.** of the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

This insurance is excess over:

Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", offense, claim or "suit". This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

**E.** With respect to the insurance afforded to the additional insureds under this endorsement, the following is added to Section **III – Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement referenced in Paragraph **A.** of this endorsement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations,

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Asbestos Exclusion Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | $ **INCL** | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions** of **Section I - Coverage A – Bodily Injury And Property Damage Liability** and **Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Asbestos**

**A.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of or which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, release, leakage, leaching, friability, flaking, escape or presence of asbestos, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to the injury or damage; or

**B.** Any sums that any insured or other entity must pay, repay or reimburse because of any:

1. Request, demand, order, statutory or regulatory requirement, direction or determination that any insured or others test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or
2. Claim or "suit" for damages arising out of or relating in any way to any request, demand, order, statutory or regulatory requirement, direction or determination that any insured or others test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

**C.** Any other loss, cost or expense arising out of or relating in any way to asbestos.



Includes copyrighted material of Insurance Services Office, Inc. with its permission.

ZURICH

# Pollution Liability Exclusion Disclosure Notice

**This insurance policy does not apply to or provides very limited coverage as respects pollution liability. You should refer to the specific pollution liability policy exclusions or pollution liability exclusion endorsements of your policy for determination of specific terms and conditions as respects exclusion of any pollution liability exposures that you may have. The policy exclusions of the Commercial General Liability Coverage Part, form CG 00 01, apply to pollution exposures in the "coverage territory" unless replaced or modified, as indicated in the applicable endorsement, by one or more of the following pollution exclusion endorsements. The pollution exclusion endorsements that are checked ☒ apply to pollution exposures in the indicated area(s) of the "coverage territory":**

ISO FORM CG 00 01

| | |
|---|---|
| ☐ Total Pollution Exclusion Endorsement, ISO Form CG 21 49 | ☐ All states in the "coverage territory" except: |
| ☒ Total Pollution Exclusion - Hostile Fire Exception, ISO Form CG 21 55 | ☐ All states in the "coverage territory" except:<br>☐ Only applicable in the following state(s) |
| ☐ Total Pollution Exclusion with a Building Heating Equipment Exception and a Hostile Fire Exception ISO Form CG 21 65 | ☐ All states in the "coverage territory" except:<br>☐ Only applicable in the following state(s) |

**Other State Endorsements**:

| | |
|---|---|
| ☐ Indiana Changes - Pollution Exclusion, ISO Form CG 01 23 | ☐ Indiana |
| ☐ Missouri Changes - Pollution Exclusion, ISO Form CG 01 34; or | ☐ Missouri |
| ☐ Missouri Changes – Gasoline Risks - Pollution Exclusion, ISO Form CG 01 35; | ☐ Missouri |
| ☐ Vt. Changes - Pollution, ISO form CG 01 54 | ☐ Vermont |
| ☒ Other<br>CG 32 85 | ☐ Applicable in the following states:<br>VA |

ZURICH

# First Named Insured Indemnification Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Named Insured:**
**Address (including ZIP Code):**

This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage Part**

**THIS ENDORSEMENT APPLIES SOLELY WITH RESPECT TO ENTITIES REGISTERED, DOMICILED OR HAVE ONGOING OPERATIONS IN "NON-ADMITTED JURISDICTIONS".**

**I.** **SECTION I. Coverages A, B** and **C** , **1. Insuring agreement**, are amended as follows; these endorsement provisions supercede any policy provisions which may be contrary to these provisions:

A. With respect to a "qualified entity", we will indemnify the first Named Insured for sums that the first Named Insured has agreed to indemnify or reimburse a "qualified entity" for its:

(1) legal liability because of "bodily injury" , "property damage" or "personal and advertising injury";

(2) payment of medical expenses for "bodily injury", and

(3) reasonable defense costs incurred with our consent,

those sums to which this insurance would apply if the "qualified entity" were an insured under this policy**.**

B. **Coverages A**, **B** and **C** do not apply to a "qualified entity". In a "non-admitted jurisdiction" where we are prohibited by law from the investigation, settlement or defense of any claim made, "suit" brought or proceeding instituted against any insured, we will indemnify the Named Insured for reasonable defense costs incurred in the "non-admitted jurisdiction".

**II.** **SECTION IV., COMMERICAL GENERAL LIABILITY CONDITIONS,** is amended to include the following additional condition:

**Duties as respects claims or suits in non-admitted jurisdictions**

The duties and requirements imposed upon any insured under this Policy shall not apply in any "non-admitted jurisdiction"**.** However, with respect to any claim made or "suit" brought in a "non-
admitted jurisdiction", it shall be the duty of the first Named Insured to do or to cause the applicable "qualified entity" to do such things as would be required of such insured if **Coverage A**, **Coverage B** or **Coverage C** applied directly to such claim or "suit", as the case may be.

When the amount of damages is determined by an agreed settlement or on a final judgment against a "qualified entity", we will promptly indemnify the first Named Insured, at the mailing address listed in item 2. of the Declarations, the amount of damages covered under the terms of this policy.

If the first Named Insured or any "qualified entity" recovers from any third party all or part of any amount that we have paid pursuant to this endorsement, the first Named Insured shall promptly reimburse the amount of any such recovery to us.

**III. SECTION V. DEFINITIONS,** is amended to include the following additional definition:

"Non-admitted jurisdiction" means any country or political subdivision in which we are not authorized to insure risks and where doing so would violate the insurance laws and regulations of such jurisdiction.

"Qualified entity" means an entity, person or organization that would qualify as an insured under this policy, but for the fact that the entity is registered, domiciled or has ongoing operations in "non-admitted jurisdictions".

**All other terms and conditions of the policy not affected by this endorsement continue to apply as currently written.**

Countersigned________________________________________________________________
Authorized Representative Date

# Lead Liability Exclusion

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to Paragraph **2. Exclusions,** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2**. **Exclusions**, of **Coverage B - Personal And Advertising Injury Liability**:

This insurance does not apply to:

**Lead**

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of, resulting from, caused by or related to: the actual, alleged or threatened:

**(a)** Exposure to or existence of lead, paint containing lead, or any other material, product or substance containing lead; or

**(b)** Manufacture, distribution, sale, resale, re-branding, installation, repair, removal, encapsulation, abatement, replacement or handling of lead, paint containing lead, or any other material, product or substance containing lead,

whether the lead is or was at any time airborne, ingested, inhaled, absorbed, transmitted in any fashion, or found in any form whatsoever, or whether any other cause, event, material, product or substance contributed concurrently or in any sequence to the injury or damage.;

**(2)** Any sums that any insured or other entity must pay, repay or reimburse because of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, sample, monitor, clean up, remove, abate, cover, contain, treat, mitigate, or neutralize lead, paint containing lead, or any other material, product or substance containing lead, or in any way respond to, or assess the effects of lead in any form; or

**(b)** Claim or "suit" for damages relating to testing for, sampling, monitoring, cleaning up, removing, abating, covering, containing, treating, mitigating, or neutralizing lead, paint containing lead, or any other material, product or substance containing lead or in any way responding to or assessing the effects of lead in any form.

**(3)** Any other loss, cost or expense arising out of, caused by or relating in any way to lead.

# Notification to Others of Cancellation or Nonrenewal

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel or non-renew this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation or non-renewal:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation or non-renewal, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| THE CITY OF NEW YORK | 30 |
| COMMISSIONER OF THE NEW YORK CITY DEPARTMENT OF | |
| TRANSPORTATION | |
| C/O DOT OFFICE OF PERMIT MANAGEMENT | |
| 55 WATER STREET, CONCOURSE LEVEL | |
| NEW YORK, NY 10041 | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation or Nonrenewal

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel or non-renew this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation or non-renewal:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation or non-renewal, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| PR 1111 BRICKELL, LLC, GRV REALTY GROUP, LLC, | 30 |
| CASSIDY TURLEY COMMERCIAL REAL ESTATE SERVICES, | |
| INC., DBA CUSHMAN & WAKEFIELD AND ITS AFFILIATES | |
| 1111 BRICKELL AVENUE, SUITE 165 | |
| MIAMI FL 33131 USA | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation or Nonrenewal

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel or non-renew this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation or non-renewal:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation or non-renewal, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| PR 1111 BRICKELL LLC | 30 |
| GRV REALTY GROUP LLC | |
| 1111 BRICKELL AVENUE, SUITE 165 | |
| MIAMI, FLORIDA 33131 | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation or Nonrenewal

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel or non-renew this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation or non-renewal:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation or non-renewal, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| BASHAS' INC. | 30 |
| ATTN: RISK MANAGEMENT | |
| PO BOX 488 | |
| CHANDLER, AZ 85244 | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation or Nonrenewal

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel or non-renew this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation or non-renewal:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation or non-renewal, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| HD SMITH WHOLESALE DRUG | 30 |
| INSURANCE COMPLIANCE DEPARTMENT | |
| PO BOX 12010-HS | |
| HEMET, CA 92546-8010 USA | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation or Nonrenewal

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel or non-renew this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation or non-renewal:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation or non-renewal, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| STATE OF CALIFORNIA | 30 |
| DEPT. OF PARKS AND RECREATION | |
| SAN DIEGO COAST DISTRICT | |
| 4477 PACIFIC HIGHWAY | |
| SAN DIEGO, CA 92110 | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation or Nonrenewal

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel or non-renew this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation or non-renewal:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation or non-renewal, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| 235P NORTHVALE, LLC & STRO REALTY | 10 |
| C/O CERTFOCUS | |
| PO BOX 140528 | |
| KANSAS CITY MO 64114 USA | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation or Nonrenewal

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel or non-renew this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation or non-renewal:

1. To the name and address corresponding to each person or organization shown in the Schedule below; and
2. At least 10 days prior to the effective date of the cancellation or non-renewal, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

| **SCHEDULE** | |
|---|---|
| **Name and Address of Other Person(s) / Organization(s):** | **Number of Days Notice:** |
| MILITARY ROAD SOUTH ASSOCIATES, LLC & LESMIR CORP. DBA | 30 |
| ROSEN PROPERTIES & ROSEN-HARBOTTLE CRE | |
| | |
| | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| AGNL BLUSH LLC C/O ANGELO, GORDON & CO. LP | 30 |
| 245 PARK AVE., 26TH FL | |
| NEW YORK, NY 10167 | |
| | |
| | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| DIGITAL CINEMA DISTRIBUTION COALITION LLC | 30 |
| C/O WARNER BROS. ENT. INC. | |
| 4000 WARNER BLVD. | |
| BURBANK, CA 91522 USA | |
| | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION | 30 |
| 10 RIVERVIEW DRIVE | |
| DANBURY, CT 06810 | |
| | |
| | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| DOITT | 30 |
| 255 GREENWICH STREET, 9TH FLOOR | |
| NEW YORK, NY 10007 | |
| | |
| | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| DANIEL J. EDELMAN | 30 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| BERKADIA COMMERCIAL MORTGAGE | 30 |
| P.O. BOX 14447 | |
| DES MOINES, IA 50306 | |
| | |
| | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| AGNL BLUSH L.L.C. | 30 |
| C/O ANGELO, GORDAN & CO. LP. | |
| 245 PARK AVENUE, 26TH FL. | |
| NEW YORK, NY 10167 | |
| | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| TRUSTEE OF THE CSU | 30 |
| CALIFORNIA STATE UNIVERSITY, LONG BEACH | |
| 1250 BELLFLOWER BLVD. | |
| LONG BEACH, CA 90840-0123 | |
| | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION | 30 |
| INSURANCE PROCESSING ATTN: 8734531-009 | |
| P.O. BOX 35705 | |
| BILLINGS, MT 59107-5705 | |
| | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| 235P NORTHVALE, LLC & STRO REALTY | 10 |
| 283368 | |
| C/O CERTFOCUS | |
| P.O. BOX 140528 | |
| KANSAS CITY, MO 64114 USA | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| DCT-AZ 2004 RN PORTFOLIO U, LLC | 30 |
| C/O RIVERROCK REAL ESTATE GROUP | |
| 2777 E CAMELBACK ROAD, #115 | |
| PHOENIX, AZ 85016 USA | |
| | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation:

**1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

**2.** At least 10 days prior to the effective date of the cancellation, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

**SCHEDULE**

| Name and Address of Other Person(s) / Organization(s): | Number of Days Notice: |
|---|---|
| WALT DISNEY STUDIOS MOTION PICTURES | 30 |
| 500 S. BUENA VISTA STREET | |
| BURBANK, CA 91524 | |
| | |
| | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Recording And Distribution Of Material Or Information In Violation Of Law Exclusion

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**A.** Exclusion **q. Recording And Distribution Of Material Or Information In Violation Of Law** of Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" directly or indirectly arising out of or based upon any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, or any other legal liability, at common law or otherwise, that addresses, prohibits, or limits the printing, dissemination, disposal, monitoring, collecting, recording, use of, sending, transmitting, communicating or distribution of material or information.

**B.** Exclusion **p. Recording And Distribution Of Material Or Information In Violation Of Law** of Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" directly or indirectly arising out of or based upon any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, or any other legal liability, at common law or otherwise, that addresses, prohibits, or limits the printing, dissemination, disposal, monitoring, collecting, recording, use of, sending, transmitting, communicating or distribution of material or information.

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Blanket Notification to Others of Cancellation or Non-Renewal

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**A.** If we cancel or non-renew this Coverage Part by written notice to the first Named Insured, we will mail or deliver notification that such Coverage Part has been cancelled or non-renewed to each person or organization shown in a list provided to us by the first Named Insured if you are required by written contact or written agreement to provide such notification. However, such notification will not be mailed or delivered if a conditional notice of renewal has been sent to the first Named Insured. Such list:

1. Must be provided to us prior to cancellation or non-renewal;
2. Must contain the names and addresses of only the persons or organizations requiring notification that such Coverage Part has been cancelled or non-renewed; and
3. Must be in an electronic format that is acceptable to us.

**B.** Our notification as described in Paragraph **A.** of this endorsement will be based on the most recent list in our records as of the date the notice of cancellation or non-renewal is mailed or delivered to the first Named Insured. We will mail or deliver such notification to each person or organization shown in the list:

1. Within seven days of the effective date of the notice of cancellation, if we cancel for non-payment of premium; or
2. At least 30 days prior to the effective date of:
   a. Cancellation, if cancelled for any reason other than nonpayment of premium; or
   b. Non-renewal, but not including conditional notice of renewal.

**C.** Our mailing or delivery of notification described in Paragraphs **A.** and **B.** of this endorsement is intended as a courtesy only. Our failure to provide such mailing or delivery will not:

1. Extend the Coverage Part cancellation or non-renewal date;
2. Negate the cancellation or non-renewal; or
3. Provide any additional insurance that would not have been provided in the absence of this endorsement.

**D.** We are not responsible for the accuracy, integrity, timeliness and validity of information contained in the list provided to us as described in Paragraphs **A.** and **B.** of this endorsement.

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Canadian Local Program Endorsement – New York

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**A. Local Program Policy Cancellation**

The following is added to the **Cancellation** Section of the Common Policy Conditions:

When this policy is cancelled by the first Named Insured, any "local program policy" shall also be cancelled effective at the same time as the cancellation of this policy. In the event a Canadian law, regulation or any similar rule prevents the company issuing such "local program policy" from cancelling effective at the same time as the cancellation of this policy, the first Named Insured shall reimburse us within 10 days of our demand for any payments made under a "local program policy" that would not have been made had such "local program policy" been cancelled effective at the same time as the cancellation of this policy.

**B. Defense, Qualified Entity and Non-Admitted Jurisdictions – Coverages A, B and C**

**1.** The following is added to Paragraph **1.a.** under the **Insuring Agreement** provision of Section **I – Coverage A – Bodily Injury And Property Damage Liability**:

**Defense and Qualified Entity**

**(1)** We shall have no duty to defend any "suit" brought in Canada where its laws do not permit us to defend that "suit". We will indemnify the first Named Insured for reasonable defense costs and supplementary payments under **Supplementary Payments – Coverages A And B** actually incurred by an insured in conducting the insured's defense of such a "suit" that seeks damages for "bodily injury" or "property damage" to which this insurance applies.

**(2)** We shall have no duty to investigate or settle claims or pay those sums that a "qualified entity" becomes legally obligated to pay as damages, nor shall we have the duty to defend a "qualified entity" against any "suit" seeking those damages. We will, however, indemnify the first Named Insured for:

**(a)** Sums the first Named Insured has agreed to indemnify or reimburse a "qualified entity" which the "qualified entity" becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance would apply if the "qualified entity" were an insured under this Coverage Part; and

**(b)** Reasonable defense costs and supplementary payments under **Supplementary Payments – Coverages A And B** actually incurred in conducting the "qualified entity's" defense of such a "suit" that seeks damages for "bodily injury" or "property damage" to which this insurance would apply if the "qualified entity" were an insured under this Coverage Part.

**2.** The following is added to Paragraph **1.a.** under the **Insuring Agreement** provision of Section **I – Coverage B – Personal And Advertising Injury Liability**:

**Defense and Qualified Entity**

**(1)** We shall have no duty to defend any "suit" brought in Canada where its laws do not permit us to defend that "suit". We will indemnify the first Named Insured for reasonable defense costs and supplementary payments under **Supplementary Payments – Coverages A And B** actually incurred by an insured in conducting the



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

insured's defense of such a "suit" that seeks damages for "personal and advertising injury" to which this insurance applies.

**(2)** We shall have no duty to investigate or settle claims or pay those sums that a "qualified entity" becomes legally obligated to pay as damages, nor shall we have the duty to defend a "qualified entity" against any "suit" seeking those damages. We will, however, indemnify the first Named Insured for:

**(a)** Sums the first Named Insured has agreed to indemnify or reimburse a "qualified entity" which the "qualified entity" becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance would apply if the "qualified entity" were an insured under this Coverage Part; and

**(b)** Reasonable defense costs and supplementary payments under **Supplementary Payments – Coverages A And B** actually incurred in conducting the "qualified entity's" defense of such a "suit" that seeks damages for "personal and advertising injury" to which this insurance would apply if the "qualified entity" were an insured under this Coverage Part.

**3.** The following is added to Paragraph **1. Insuring Agreement** provision of Section **I – Coverage C – Medical Payments**:

**Non-Admitted Jurisdictions**

We will not pay medical expenses to any injured person, including any entity or organization that may have provided or funded medical treatment, who is located, registered, domiciled or has ongoing operations in "non-admitted jurisdictions". We will, however, indemnify the first Named Insured for any amounts the first Named Insured has agreed to indemnify or reimburse such injured person for medical expenses to which this insurance would apply in the absence of the preceding sentence.

Any existing language within any **Insuring Agreement** that may be contrary to the provisions of this Section **B.** is amended to comply with the changes in coverage as stipulated in Paragraphs **1.**, **2.** and **3.** above.

**C. Supplementary Payments – Coverages A And B**

The following is added to **Supplementary Payments – Coverages A And B**:

Notwithstanding any provisions of Paragraph **2.** above, we shall have no duty to defend a "qualified indemnitee" against any "suit". However, subject to the provisions of Paragraph **2.** above, we will indemnify the first Named Insured for reasonable defense costs actually incurred in conducting the "qualified indemnitee's" defense of such a "suit".

Solely with respect to this endorsement, a "qualified indemnitee" means any entity, person or organization that we would have otherwise defended under the provisions of Paragraph **2.** above, but for the fact that the entity is registered, domiciled or has ongoing operations in one or more "non-admitted jurisdictions".

**D. Limits of Insurance – Local Program Policy**

The following is added to the **Limits of Insurance** Section:

**Local Program Policy**

This Coverage Part is coordinated with any "local program policy" per the following provisions:

**a.** All payments made under any "local program policy" shall reduce the Limits of Insurance of this Coverage Part as if paid under this policy. Any payment made under this Coverage Part or any "local program policy" after any applicable limit of insurance stated in the Declarations of this Coverage Part is exhausted shall be reimbursed to us by you within 10 days of our demand.

**b.** This Coverage Part shall not respond to any loss for which there is coverage available under a "local program policy" until the earlier of the following:

**(1)** The applicable limits of the "local program policy" have been exhausted by the "qualified entity's" obligation to pay judgments or settlements; or

**(2)** The unavailability of coverage under a "local program policy" solely due to the insolvency of the insurer of such "local program policy".

**c.** In no event shall this Coverage Part respond upon the exhaustion of any coverage which is subject to a sublimit in a "local program policy".


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**d.** When coverage is available under this Coverage Part but not under a "local program policy" because this Coverage Part provides broader coverage, this policy shall respond subject to any applicable deductible.

**e.** Payments made under Paragraph **a.** above that would qualify as supplementary payments under **Supplementary Payments – Coverages A And B** under this Coverage Part will be treated in the same manner as if paid as supplementary payments under this Coverage Part.

**E. Other Insurance**

The following is added to the **Excess Insurance** provision under the **Other Insurance** Condition of the **Commercial General Liability Conditions** Section:

This insurance is excess over any of the valid and collectible insurance, whether primary, excess, contingent or on any other basis that is a "local program policy" except in the event of the unavailability of coverage under such "local program policy" solely due to the insolvency of the insurer of such "local program policy".

**F. Additional Conditions**

The following is added to the **Commercial General Liability Conditions** Section:

**Trade and Economic Sanctions**

Notwithstanding any other terms under this Coverage Part, we shall not provide coverage nor will we make any payments or provide any service or benefit to any insured, beneficiary, or third party who may have any rights under this policy to the extent that such cover, payment, service, benefit, or any business or activity of the insured would violate any applicable trade or economic sanctions law or regulation.

**Local Compulsory Insurance**

The coverage provided by this insurance will not act as a substitute for any "local compulsory insurance". The insured represents that all "local compulsory insurance" is in full force and effect at limits mandated by law. Failure of the insured to comply with "local compulsory insurance" requirements shall not invalidate this insurance, but in the event of such failure, we shall only be liable to the same extent as if the insured has complied with such requirements.

**Duties As Respects Claims Or Suits In Non-admitted Jurisdictions**

The duties and requirements imposed upon any insured under these Commercial General Liability Conditions shall not apply in any "non-admitted jurisdiction". However, with respect to any claim made or "suit" brought in a "non-admitted jurisdiction", it shall be the duty of the first Named Insured to do or to cause the applicable "qualified entity" to do such things as would be required of such insured if Coverage **A**, Coverage **B** or Coverage **C** applied to such claim or "suit", as the case may be.

When the amount of damages is determined by settlement, for which our prior written consent has been provided, or on a final judgment obtained against a "qualified entity", we will promptly indemnify the first Named Insured, at the mailing address listed in the Declarations, the amount of damages covered under the terms of this Coverage Part.

If the first Named Insured or any "qualified entity" recovers from any third party all or part of any amount that we have paid pursuant to this endorsement, the first Named Insured shall promptly reimburse the amount of any such recovery to us.

**G. Definitions**

The following definitions are added to the **Definitions** Section:

"Local compulsory insurance" means any insurance which an insured is required to purchase from domestic or licensed insurance companies under the laws of Canada.

"Local program policy" means a primary policy effective on or after the beginning of the policy period which has been issued in Canada and has been issued at our direction or coordinated by us specifically for this insurance program.

"Non-admitted jurisdiction" means:

**a.** Canada; or

**b.** Any political subdivision within Canada,


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

if we are not authorized to insure risks and where doing so would violate the insurance laws and regulations of such jurisdiction.

"Qualified entity" means any entity, person or organization that would qualify as an insured under this Coverage Part, but for the fact that the entity is registered, domiciled or has ongoing operations in one or more "non-admitted jurisdictions".

All other terms and conditions of this policy remain unchanged.


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Two Or More Of Our Policies Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | $ **INCL** | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Named Insured:**

**Address (including ZIP Code):**

This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage Part**

**I.** In consideration of premium charged, Section III. Limits of Insurance is deleted and replaced by the following when this policy is one of two or more commercial general liability policies issued by any Zurich North American Insurance Group company to the same Named Insured, and where all such policies are part of an overall insurance program for that Named Insured. The most that we will pay under all such policies combined for all insureds, claims made or "suits" brought, or persons or organizations making claims or bringing "suits" is as follows:

**1.** The highest single General Aggregate Limit shown in the Declarations page of any of our policies is the most we will pay for the sum of:

**a.** Medical expenses under Coverage C.

**b.** Damages under Coverage A., except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage B;

as sustained under all of our policies.

**2.** The highest single Products-Completed Operations Aggregate Limit shown in the Declarations page of any of our policies is the most we will pay under Coverage A. for damages because of all "bodily injury" and "property damage" included in the "products-completed operations hazard" as sustained under all of our policies.

**3.** Subject to 1. above, the highest single Personal and Advertising Injury Limit shown in the Declarations page of any of our policies is the most we will pay under Coverage B. for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization under all of our policies.

**4.** Subject to 1. or 2. above, whichever applies, the highest single Each Occurrence Limit shown in the Declarations Page of any of our policies is the most we will pay for the sum of:

**a.** Damages under Coverage A.; and

**b.** Medical expenses under Coverage C;

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**5.** Subject to 4. above, the the highest single Damage To Premises Rented To You Limit indicated in the Declarations page of any of our policies is the most we will pay under Coverage A. for damages because of "property damage" to premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**6.** Subject to 4. above, the highest single Medical Expense Limit indicated in the Declarations page of any of our policies is the most we will pay under Coverage C. for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance per Section I. above of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for determination of the Limits of Insurance.

**II.** Paragraphs 1.a.(2) under Insuring Agreements Coverage A. and Coverage B. are deleted and replaced by the following:

Our right and duty to defend ends when we have used up the applicable limit(s) of insurance per Section I. above of this endorsement in the payment of judgments or settlements under Coverages A. or B. or medical expenses under Coverage C.

**III.** The provisions of this endorsement do not apply to any policy issued by us to apply as excess insurance over this policy.

# Employee Benefits Liability - Occurrence Coverage Form

This Coverage Form provides *occurrence* coverage. Please read the entire form carefully.

**Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.**

**Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us", and "our" refer to the Company providing this insurance.**

Other words and phrases that appear in quotes have special meaning. Refer to the Definitions Section.

## Section I. Coverage - Employee Benefit Liability

### 1. Insuring Agreement

**A.** We will pay those sums that the "insured" becomes legally obligated to pay as damages because of any act, error, or omission of the "insured" in the "administration" of the "insured's" "employee benefit programs". We will have the right and duty to defend the "insured" against any suit seeking those damages. However, we will have no duty to defend the "insured" against any "suit" seeking damages for any act, error, or omission for which this insurance does not apply. We may, at our discretion, investigate any claim and settle any "suit" that may result; but:

**1.** The amount we pay for damages is limited as described in Section II. - Limits of Insurance of this Coverage Part; and

**2.** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under this Employee Benefit Liability coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments of this Coverage Part.

**B.** This insurance applies to an act, error or omission only if:

**1.** The act, error, or omission takes place in the "coverage territory";

**2.** The "insured" had no knowledge of and could not have reasonably foreseen any circumstances which might result in a claim or "suit"; and

**3.** The act, error, or omission occurs during the policy period.

**2. Exclusions**

This insurance does not apply to any:

**A.** "Bodily injury", "property damage" or "personal and advertising injury";

**B.** Any "claim" or "suit" arising out of any dishonest, fraudulent, criminal or malicious act;

**C.** Any "claim" or "suit" arising out of discrimination or humiliation;

**D.** Any "claim" or "suit" arising out of an insurer's or other provider's failure to perform its contract;

**E.** Any "claim" or "suit" arising out of your failure to comply with any workers compensation, unemployment insurance, social security, or disability benefits law;

**F.** Any "claim" or "suit" arising out of the failure of any of your "employee benefit plans" to meet obligations due to insufficient funds;

**G.** Any "claim" or "suit" arising out of:

**a.** Advice given to any person to participate or not participate in a plan or program included in "employee benefit programs";

**b.** The appointment of, or failure to appoint, any investment manager, administrator, trustee, actuary, advisor, counsel, accountant, custodian, or consultant;

**c.** Any investment activity, including the management, administration, or disposition of assets of your "employee benefit programs"; or

**d.** Failure of any investment to perform as represented by any "insured".

**H.** Any "claim or "suit" arising out of an "Insured's" liability as a fiduciary under:

a. The Employee Retirement Income Security Act of 1974 (PL93-406) and its amendments; or

b. The Internal Revenue Code of 1986 (including the Internal Revenue Code of 1954) and its amendments.

**3. Supplementary Payments**

We will pay, in addition to the applicable Limits of Insurance, with respect to any claim we investigate or settle or "suit" we defend:

**A.** All expenses incurred by us, all costs taxed against the "insured" in any "suit" defended by us, and all interest on the full amount of any judgment which accrues after entry of the judgment and before we have paid or tendered or deposited in court, that part of the judgment which does not exceed the limit of our liability.

**B.** Premiums on appeal bonds required and on bonds to release attachments in any "suit". We do not have to furnish these bonds.

**C.** All reasonable expenses incurred by the "insured" at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**D.** Prejudgment interest awarded against the "insured" on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

## II. Limits of Insurance

**A.** The Limits of Insurance shown in the Declarations and the rules below establish the most we will pay regardless of the number of:

**(1)** "Insureds";

**(2)** Claims made or "suits" brought; or

**(3)** "Employees" or dependents or beneficiaries of "employees" making claims or bringing "suits".

**B.** The Aggregate Limit is the most we will pay for all damages because of all "claims" or "suits" arising from the "administration" of your "employee benefit programs" during the policy period.

**C.** Subject to the Aggregate Limit provisions in **B.** above, the Each Act, Error, or Omission Limit is the most we will pay for all damages sustained by any one "employee", including the "employee's" dependents and beneficiaries, because of acts, errors, or omissions committed in the "administration" of your "employee benefit programs".

**D.** The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## III. Conditions

**A. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of our obligations.

**B. Duties in the Event of an Act, Error, Omission, Claim or Suit**

**(1)** Regardless of whether the loss exceeds any applicable deductible amount, you must see to it that we are notified as soon as practicable of any act, error, or omission which may result in a claim. To the extent possible, notice should include:

**a.** How, when, and where the act, error, or omission took place;

**b.** The names and addresses of any injured "employee", dependents, or beneficiaries of any "employee" and witnesses.

**(2)** If a claim is received by any "insured", you must:

**a.** Immediately record the specifics of the claim and the date received; and

**b.** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim as soon as practicable.

**(3)** You and any other involved "insured" must:

**a.** Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit";

**b.** Authorize us to obtain records and other information;

**c.** Cooperate with us in the investigation, settlement, or defense of the claim or "suit"; and

**d.** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury to which this insurance may also apply.

**(4)** No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**C. Legal Action Against Us**

No person or organization has a right:

**(1)** To join us as a party or otherwise bring us into a "suit" asking for damages from an "insured"; or

**(2)** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured" obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the "insured", and the claimant or the claimant's legal representative.

**D. Other Insurance**

**(1)** This Coverage Part is primary insurance, except when stated, to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which applies to the loss on an excess or contingent basis, the amount of our liability under this Coverage Part shall not be reduced because of such other insurance.

**(2)** When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess, or contingent, we shall not be liable for a greater proportion of the loss than that stated in the applicable contribution provision below:

**a. Contribution by Equal Shares**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

**b. Contribution by Limits**

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**E. Separation of Insureds**

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**(1)** As if each Named Insured were the only Named Insured; and

**(2)** Separately to each "insured" against whom claim is made or "suit" is brought.

**F. Transfer Of Rights Of Recovery Against Others To Us**

If the "insured" has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The "insured" must do nothing after loss to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

**IV. Definitions**

**A.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**(1)** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**(2)** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**B.** "Administration" means:

**(1)** Counseling "employees", including their dependents and beneficiaries, with respect to "employee benefit programs";

**(2)** Handling records in connection with "employee benefit programs"; or

**(3)** Effecting or terminating an "employee's" participation in a plan included in "employee benefit programs".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**D.** "Coverage territory" means:

**(1)** The United States of America (including its territories and possessions), Puerto Rico, and Canada; or

**(2)** All parts of the world if the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **D.(1)** above, or in a settlement to which we agree.

**E.** "Employee" means:

Your officers and employees, whether actively employed, disabled, or retired.

**F.** "Employee benefit programs" mean:

Group life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, workers compensation, unemployment insurance, salary continuation

plans, social security, disability benefits insurance, savings plans, vacation plans, or any other similar plans or programs.

**G.** "Insured" means:

You and any of your partners, executive officers, directors, members, stockholders or "employees", provided such "employee" is authorized to act in the "administration" of your "employee benefit programs".

**H.** "Personal and advertising injury" means:

Injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**(1)** False arrest, detention, or imprisonment;

**(2)** Malicious prosecution;

**(3)** The wrongful eviction from wrongful entry into, or invasion of the right of private occupancy of, a room, dwelling, or premises that a person occupies by or on behalf of its owner, landlord, or lessor;

**(4)** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

**(5)** Oral or written publication,' in any manner, of material that violates a person's right of privacy;

**(6)** The use of another's advertising idea in your "advertisement"; or

**(7)** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**I.** "Property damage" means:

**(1)** Physical injury to tangible property, including all resulting loss of use of that property.

**(2)** Loss of use of tangible property that is not physically injured.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications, software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**J.** "Suit" means:

A civil proceeding in which damages to which this insurance applies is alleged. "Suit" includes:

**(1)** An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

**(2)** Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

# Premium And Reports Agreement – Composite Rated Policies

ZURICH

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under any of the following:

**Commercial General Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**
**Owners Contractors Protective Coverage Part**
**Railroad Protective Coverage Part**

**Schedule**

1. **Unit of Exposure:**

| | | |
|---|---|---|
| ☐ Gross sales | ☐ Area | ☐ Gallons |
| ☐ Each | ☐ Rooms | ☐ General Liability Payroll |
| ☐ Admissions | ☐ Units | ☐ Rounds played |
| ☐ Total Cost | ☐ Total Operating Expenditures | ☐ Occupied rooms |
| ☐ Licensed Autos | ☐ Workers Compensation Payroll | ☒ Other<br>REVENUE |

**2.**

| Coverage / Description | Unit of Exposure | Rate(s) | Estimated Premium(s) |
|---|---|---|---|
| GENERAL LIABILITY | 2,024,241,000 | 0.125601 | $254,247 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

(Add more rows as required)

3. **Deposit Premium:** $254,247
4. **Minimum Premium:** $228,822

Condition **5, Premium Audit**, of Section **IV**, **Commercial General Liability Conditions**, is replaced by the following:

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part according to our rules and the composite rates shown in the Schedule above or attached hereto.

**b.** For policies other than Annual Reporting, the deposit premium shown in the Schedule is due and payable on the first day of the policy period. The first Named Insured will pay, within 20 days following the mailing or delivery of the statement of audited premium for each audit period, the earned premium due.

**c.** Within 180 days after this Coverage Part expires we will conduct an audit, which may not be waived. We will compute the earned premium for the policy period by multiplying the composite rate against the total developed exposure. If the earned premium is greater than the sum of the deposit and any interim adjustment premiums, the first Named Insured will pay us the excess; if less, we will return the unearned portion to the first Named Insured. However, the earned premium will not be less than the Minimum Premium as shown in the Schedule.

**d.** The first Named Insured must maintain records of the information we need for premium computation and send us copies at such times as we may request.

**e.** The units of exposure shown in the Schedule are defined as follows:

1. **Admissions** means the total number of persons, other than employees of the named insured, admitted to events conducted on the insured premises whether on paid admissions, tickets, complimentary tickets or passes.
2. **Gallons** means the total number of gallons of liquefied petroleum gasses invoiced on any basis to any customer, whether or not the insured actually takes possession of such gases.
3. **Gross sales** means gross sales invoiced, before discounts, but does not include taxes collected for any governmental unit.
4. **Licensed "auto"** means the final average of the number of "autos" at policy inception and the number of "autos" at policy termination.
5. **Occupied rooms** means the number of rooms actually rented during the policy year in a hotel or other place of lodging.
6. **General Liability payroll** means total remuneration for all "employees" of the insured as defined in our rating manuals.
7. **Workers Compensation payroll** means total remuneration for all "employees" of the insured as defined in our rating manuals.
8. **Rounds played** means the number of both paid and gratuitous rounds of golf played on an 18 hole golf course during the policy year. Rounds that are less then 10 holes will be counted as a half round toward the total number of rounds of golf played.
9. **Each** means the total number of exposure units as described in the exposure basis.
10. **Rooms** mean the total number of rooms available for rent in a hotel or other place of lodging.
11. **Total cost** means the total cost of all work let or sublet in connection with each specified project including the cost of all labor, material and equipment furnished, used or delivered in the execution of the work, however, do not include the cost of finished equipment installed but not furnished by the subcontractor if the subcontractor does no other work on or in connection with such equipment; and all fees, bonuses or commissions made, paid or due.
12. **Total Operating Expenditures** means expenditures (including grants, entitlements and shared revenue) without regard to source of revenue, including accounts payable.
13. **Units** means a single room or group of rooms intended for occupancy as separate living quarters by a family, by a group of unrelated persons living together, or by a person living alone.
14. **Area** means the total number of square feet of floor space at the insured premises they occupy or lease to others.
15. **Other** means the unit of exposure as defined in the Unit of Exposure Schedule of this endorsement

# Fellow Employee Coverage Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | $ **INCL** | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**1.** It is agreed that paragraph **2. a. (1)** of **SECTION II - WHO IS AN INSURED** is deleted and replaced by the following:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company);

(b) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1) (a) above; or

(c) Arising out of his or her providing or failing to provide professional health care services.



Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Incidental Medical Malpractice Coverage Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | $ **INCL** | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**I.** Sections **2.a.(1)(d)** of **Section II. WHO IS AN INSURED** are deleted and replaced by the following:

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insured for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(d)** Arising out of his or her providing or failing to provide professional health care services, except any "bodily injury" or "personal and advertising injury" arising out of:

**(1)** medical or paramedical services to persons performed by any physician, dentist, nurse, emergency medical technician, paramedic or other licensed medical care person employed by you to provide such services: or

**(2)** emergency cardiopulmonary resuscitation (CPR) or first aid services performed by any other employee of yours who is not a licensed medical professional.

**II.** Any insurance coverage provided by this endorsement is excess over any other valid and collectible insurance.


Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Newly Formed Organizations Coverage Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031 14 | 07/01/2018 | 07/01/2019 | | 50522000 | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**I.** Part 3. of Section II - WHO IS AN INSURED is deleted and replaced by the following:

**3.** Any organization you newly acquire or form and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage A. does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization;

**c.** Coverage B. does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization;

**d.** If the organization is a joint venture or partnership, coverage is afforded only to the extent of the percentage of ownership interest of any insured in the organization.



Includes copyrighted material of Insurance Services Office, Inc. with its permission.



New York Free Trade Zone

# Nonowned Watercraft Coverage Endorsement
## New York

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

It is understood and agreed that exclusion g. of Coverage A (Section I) does not apply to "bodily injury" or "property damage" arising out of the maintenance, operation or use of any watercraft that is less than 50 feet in length provided that such watercraft is not owned by you and is not being used to carry persons for a charge.


Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Amendment of Representations Condition Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | $ **INCL** | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following is added to the Representations Condition of Section IV - Commercial General Liability Conditions:

Coverage will continue to apply if you:

- unintentionally fail to disclose all hazards existing at the inception of this policy, or
- unintentionally make an error, omission, or improper description of premises or other statement of information stated in this policy.

You must notify us as soon as possible after the discovery of any hazards or any other information that was not provided to us prior to the acceptance of this policy.

# Notice of Error In Claim Reporting Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | $ **INCL** | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following is added to **Duties In The Event Of Occurrence, Offense, Claim or Suit** of **Section IV - Commercial General Liability Conditions**:

**e.** In the event that an insured reports an "occurrence" to the workers compensation carrier of the named insured, and this "occurrence" later develops into a General Liability claim covered by this policy, the failure to report such "occurrence" to us at the time of the "occurrence" shall not be deemed in violation of this condition. You must, however, give us notice as soon as practicable after being made aware that the particular claim is a General Liability rather than a Workers Compensation claim.

# Waiver Of Subrogation (Blanket) Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | $ **INCL** | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following is added to the **Transfer Of Rights Of Recovery Against Others To Us Condition**:

If you are required by a written contract or agreement, which is executed before a loss, to waive your rights of recovery from others, we agree to waive our rights of recovery. This waiver of rights shall not be construed to be a waiver with respect to any other operations in which the insured has no contractual interest.

# Knowledge by Position or Department

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 3737031-14 | 07/01/2018 | 07/01/2019 | | 50522000 | **INCL** | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Business Auto Coverage Part**
**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**
**Railroad Protective Liability Coverage Part**

**SCHEDULE**

| | |
|---|---|
| **Position or Department:** | KNOWLEDGE BY THE RISK MANAGER. |
| | |
| | |
| | |

The following Condition is added:

**Knowledge By Your Employee**

**1.** Knowledge of an "accident", "occurrence", offense, "injury", claim, "suit" or loss by your employee will not in and of itself be considered your knowledge of the "accident", "occurrence", offense, "injury", claim, "suit" or loss unless an employee who:

**a.** Holds a position; or

**b.** Is a member of a department;

shown in the Schedule of this endorsement receives such knowledge.

**2.** This endorsement does not apply unless the Schedule of this endorsement indicates at least one Position or Department.

All other terms and conditions of this policy remain unchanged.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – PREMIUM AUDIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **b.** of the **Premium Audit** Condition **Section IV** is replaced by the following:

**PREMIUM AUDIT**

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. An audit to determine the final premium due or to be refunded will be completed within 180 days after the expiration date of the policy. But the audit may be waived if the total annual premium attributable to the auditable exposure base is not reasonably expected to exceed $1500. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

**B.** Except as provided in Paragraph **A.** above, the **Examination Of Your Books And Records** Common Policy Condition continues to apply.

 © ISO Properties, Inc., 2003 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **1. Insuring Agreement** of Section **I – Coverage A Bodily Injury And Property Damage Liability** is replaced by the following:

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

 © Insurance Services Office, Inc., 2010 

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**B.** Paragraph **1.a.** of Section **I – Coverage B Personal And Advertising Injury Liability** is replaced by the following:

1. **Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** and **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**C.** The following is added as Paragraph **e.** to the **Duties In The Event Of Occurrence, Offense, Claim Or Suit** Condition (Paragraph **2.** of **Section IV – Commercial General Liability Conditions**):

**e.** Notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us.

**D.** Paragraph **3.** of **Section IV – Commercial General Liability Conditions** is replaced by the following:

3. **Legal Action Against Us**

**a.** Except as provided in Paragraph **b.,** no person or organization has a right under this Coverage Part:

**(1)** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**(2)** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**b.** With respect to "bodily injury" and "personal and advertising injury" claims, if we deny coverage or do not admit liability because an insured or the injured person, someone acting for the injured person or other claimant fails to give us written notice as soon as practicable, then the injured person, someone acting for the injured person or other claimant may bring an action against us, provided the sole question is whether the denial of coverage or nonadmission of liability is based on the failure to provide timely notice.

However, the injured person, someone acting for the injured person or other claimant may not bring an action if within 60 days after we deny coverage or do not admit liability, we or an insured:

**(1)** Brings an action to declare the rights of the parties under the policy; and

**(2)** Names the injured person, someone acting for the injured person or other claimant as a party to the action.


© Insurance Services Office, Inc., 2010

**E.** The following provision is added and supersedes any provision to the contrary:

Failure to give notice to us as required under this Coverage Part shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide such timely notice has prejudiced us. However, no claim made by the insured, injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

**F.** The definition of "loading or unloading" in the **Definitions** Section does not apply.

 © Insurance Services Office, Inc., 2010 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COVERAGE FOR INJURY TO LEASED WORKERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

With respect to the Employer's Liability exclusion (Section **I**) only, the definition of "employee" in the DEFINITIONS Section is replaced by the following:

"Employee" does not include a "leased worker" or a "temporary worker".

 Copyright, Insurance Services Office, Inc., 1992 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| CITIBANK, N.A. AS COLLATERAL AGENT FOR THE TERM CREDIT AGREEMENT<br>CRMS DOCUMENTATION UNIT<br>580 CROSSPOINT PKWY<br>GETZVILLE, NY 14068 | 388 GREENWICH STREET<br>NEW YORK, NY 10013 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

 © Insurance Services Office, Inc., 2012 

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| CITIBANK, N.A. AS COLLATERAL AGENT FOR THE ASSET-<br>BASED REVOLVING CREDIT AGREEMENT<br>ATTN: ASSET BASED AND TRANSITIONAL FINANCE GROUP<br>390 GREENWICH ST., 1ST FL<br>NEW YORK, NY 10013 | 388 GREENWICH STREET<br>NEW YORK, NY 10013 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

 © Insurance Services Office, Inc., 2012 

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| COLUMBIA REIT – 218 W 18TH STREET, COLUMBIA PROPERTY TRUST, INC., INCLUDING ITS AFFILIATED AND SUBSIDIARY COMPANIES, THEIR OFFICERS, DIRECTORS AND EMPLOYEES ARE NAMED AS ADDITIONAL INSUREDS. AND FOR THOSE ENTITIES ABOVE THEIR AFFILIATED AND SUBSIDIARY COMPANIES, INCLUDING THEIR OFFICERS, DIRECTORS, EMPLOYEES AND APPLICABLE MANAGING AGENT ARE NAMED AS ADDITIONAL INSURED | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

 © Insurance Services Office, Inc., 2012 

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Designation Of Premises (Part Leased To You):**<br>ONLY THOSE PREMISES WHERE REQUIRED BY WRITTEN CONTRACT |
| **Name of Person(s) Or Organization(s) (Additional Insured):**<br>ONLY THOSE PERSONS OR ORGANIZATIONS WHERE REQUIRED BY WRITTEN CONTRACT |
| **Additional Premium:** INCL. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

**1.** Any "occurrence" which takes place after you cease to be a tenant in that premises.

**2.** Structural alterations, new construction or demolition operations performed by or on behalf of the person(s) or organization(s) shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Designation Of Premises (Part Leased To You):**<br>900 N. SEWARD STREET<br>HOLLYWOOD, CA 90038 |
| **Name of Person(s) Or Organization(s) (Additional Insured):**<br>900 SEWARD HOLLYWOOD, LLC.<br>TIARNA REAL ESTATE SERVICES, INC AS AGENT<br>CURO HOLLYWOOD, LLC AS OWNER |
| **Additional Premium:** INCL. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

**1.** Any "occurrence" which takes place after you cease to be a tenant in that premises.

**2.** Structural alterations, new construction or demolition operations performed by or on behalf of the person(s) or organization(s) shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Designation Of Premises (Part Leased To You):**<br>8300 MILITARY ROAD S, SUITE 200, SEATTLE, WA 98108; MILITARY ROAD SOUTH ASSOCIATES, LLC |
| **Name of Person(s) Or Organization(s) (Additional Insured):**<br>MILITARY ROAD SOUTH ASSOCIATES, LLC & LESMIR CORP. DBA ROSEN PROPERTIES & ROSEN-HARBOTTLE CRE |
| **Additional Premium:** INCL. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

**1.** Any "occurrence" which takes place after you cease to be a tenant in that premises.

**2.** Structural alterations, new construction or demolition operations performed by or on behalf of the person(s) or organization(s) shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Designation Of Premises (Part Leased To You):** |
| **Name of Person(s) Or Organization(s) (Additional Insured):** TRIBUNE TOWER WEST (CHICAGO) OWNER, LLC, CIM GROUP LLC, AND THEIR OFFICERS, DIRECTORS, EMPLOYEES, DIVISIONS, SUBSIDIARIES, PARTNERS, MEMBERS, MANAGERS, SHAREHOLDERS, AFFILIATED COMPANIES AND MORTGAGEES/LENDERS |
| **Additional Premium:** INCL. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

**1.** Any "occurrence" which takes place after you cease to be a tenant in that premises.

**2.** Structural alterations, new construction or demolition operations performed by or on behalf of the person(s) or organization(s) shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION – PERMITS OR AUTHORIZATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| **State Or Governmental Agency Or Subdivision Or Political Subdivision:** |
|---|
| THE CITY OF NEW YORK |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any state or governmental agency or subdivision or political subdivision shown in the Schedule, subject to the following provisions:

**1.** This insurance applies only with respect to operations performed by you or on your behalf for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization.

However:

**a.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**b.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**2.** This insurance does not apply to:

**a.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality; or

**b.** "Bodily injury" or "property damage" included within the "products-completed operations hazard".

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION – PERMITS OR AUTHORIZATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **State Or Governmental Agency Or Subdivision Or Political Subdivision:**<br>CITY OF BURBANK CALIFORNIA, ITS OFFICERS, EMPLOYEES, AGENTS AND REPRESENTATIVES (COLLECTIVELY THE "CITY") |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any state or governmental agency or subdivision or political subdivision shown in the Schedule, subject to the following provisions:

**1.** This insurance applies only with respect to operations performed by you or on your behalf for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization.

However:

**a.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**b.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**2.** This insurance does not apply to:

**a.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality; or

**b.** "Bodily injury" or "property damage" included within the "products-completed operations hazard".

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION – PERMITS OR AUTHORIZATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **State Or Governmental Agency Or Subdivision Or Political Subdivision:**<br>THE CITY OF LOS ANGELES, THE BOARD OF WATER & POWER COMMISSIONERS OF THE CITY OF LOS ANGELES, THE DEPARTMENT OF WATER & POWER, THEIR OFFICERS, AGENTS AND EMPLOYEES. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any state or governmental agency or subdivision or political subdivision shown in the Schedule, subject to the following provisions:

**1.** This insurance applies only with respect to operations performed by you or on your behalf for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization.

However:

**a.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**b.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**2.** This insurance does not apply to:

**a.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality; or

**b.** "Bodily injury" or "property damage" included within the "products-completed operations hazard".

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

POLICY NUMBER: GLO 3737031-14

**COMMERCIAL GENERAL LIABILITY**
**CG 20 15 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| HEALTH CLUB PANEL NETWORK, ETAL-"HEALTH CLUB PROMOTIONS" | "ALL PRODUCTS" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to throughout this endorsement as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business.

However:

**1.** The insurance afforded to such vendor only applies to the extent permitted by law; and

**2.** If coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

**B.** With respect to the insurance afforded to these vendors, the following additional exclusions apply:

**1.** The insurance afforded the vendor does not apply to:

**a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**b.** Any express warranty unauthorized by you;

**c.** Any physical or chemical change in the product made intentionally by the vendor;

**d.** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

 © Insurance Services Office, Inc., 2012 

**e.** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**f.** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**g.** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

**h.** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

**(1)** The exceptions contained in Sub-paragraphs **d.** or **f.;** or

**(2)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**2.** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**C.** With respect to the insurance afforded to these vendors, the following is added to **Section III – Limits Of Insurance**:

If coverage provided to the vendor is required by a contract or agreement, the most we will pay on behalf of the vendor is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

POLICY NUMBER: GLO 3737031-14

**COMMERCIAL GENERAL LIABILITY**
**CG 20 15 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| H.E.B. GROCERY COMPANY L.P ITS SUBSIDIARIES AND AFFILIATES | "ALL PRODUCTS" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to throughout this endorsement as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business.

However:

1. The insurance afforded to such vendor only applies to the extent permitted by law; and
2. If coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

**B.** With respect to the insurance afforded to these vendors, the following additional exclusions apply:

1. The insurance afforded the vendor does not apply to:
   a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;
   b. Any express warranty unauthorized by you;
   c. Any physical or chemical change in the product made intentionally by the vendor;
   d. Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;


© Insurance Services Office, Inc., 2012

**e.** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**f.** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**g.** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

**h.** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

**(1)** The exceptions contained in Sub-paragraphs **d.** or **f.;** or

**(2)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**2.** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**C.** With respect to the insurance afforded to these vendors, the following is added to **Section III – Limits Of Insurance**:

If coverage provided to the vendor is required by a contract or agreement, the most we will pay on behalf of the vendor is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| ONLY THOSE WHERE REQUIRED BY WRITTEN CONTRACT | "ALL PRODUCTS" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to throughout this endorsement as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business.

However:

**1.** The insurance afforded to such vendor only applies to the extent permitted by law; and

**2.** If coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

**B.** With respect to the insurance afforded to these vendors, the following additional exclusions apply:

**1.** The insurance afforded the vendor does not apply to:

**a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**b.** Any express warranty unauthorized by you;

**c.** Any physical or chemical change in the product made intentionally by the vendor;

**d.** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;


© Insurance Services Office, Inc., 2012

**e.** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**f.** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**g.** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

**h.** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

**(1)** The exceptions contained in Sub-paragraphs **d.** or **f.**; or

**(2)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**2.** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**C.** With respect to the insurance afforded to these vendors, the following is added to **Section III – Limits Of Insurance**:

If coverage provided to the vendor is required by a contract or agreement, the most we will pay on behalf of the vendor is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

POLICY NUMBER: GLO 3737031-14

**COMMERCIAL GENERAL LIABILITY**
**CG 20 15 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| WALGREENS VENDOR CERTIFICATE ADMINISTRATOR<br>VENDOR MAINTENANCE DEPT.<br>MS #690<br>1901 E. VORHEES ST.<br>DANVILLE, IL 61834 | "ALL PRODUCTS" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to throughout this endorsement as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business.

However:

**1.** The insurance afforded to such vendor only applies to the extent permitted by law; and

**2.** If coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

**B.** With respect to the insurance afforded to these vendors, the following additional exclusions apply:

**1.** The insurance afforded the vendor does not apply to:

**a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**b.** Any express warranty unauthorized by you;

**c.** Any physical or chemical change in the product made intentionally by the vendor;

**d.** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

 © Insurance Services Office, Inc., 2012 

**e.** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**f.** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**g.** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

**h.** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

**(1)** The exceptions contained in Subparagraphs **d.** or **f.;** or

**(2)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**2.** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**C.** With respect to the insurance afforded to these vendors, the following is added to **Section III – Limits Of Insurance**:

If coverage provided to the vendor is required by a contract or agreement, the most we will pay on behalf of the vendor is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

POLICY NUMBER: GLO 3737031-14

**COMMERCIAL GENERAL LIABILITY**
**CG 20 15 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| SEARS HOLDINGS MANAGEMENT CORPORATION AND IT'S SUBSIDIARIES AND AFFILIATES. | "ALL PRODUCTS" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to throughout this endorsement as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business.

However:

**1.** The insurance afforded to such vendor only applies to the extent permitted by law; and

**2.** If coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

**B.** With respect to the insurance afforded to these vendors, the following additional exclusions apply:

**1.** The insurance afforded the vendor does not apply to:

**a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**b.** Any express warranty unauthorized by you;

**c.** Any physical or chemical change in the product made intentionally by the vendor;

**d.** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

 © Insurance Services Office, Inc., 2012 

**e.** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**f.** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**g.** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

**h.** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

**(1)** The exceptions contained in Sub-paragraphs **d.** or **f.;** or

**(2)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**2.** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**C.** With respect to the insurance afforded to these vendors, the following is added to **Section III – Limits Of Insurance**:

If coverage provided to the vendor is required by a contract or agreement, the most we will pay on behalf of the vendor is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

POLICY NUMBER: GLO 3737031-14

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):**<br>CITY OF LOS ANGELES<br>ATTN: FILM PERMIT INSURANCE<br>200 NORTH MAIN STREET, ROOM 1240<br>LOS ANGELES, CA 90012-4190 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

POLICY NUMBER: GLO 3737031-14

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):**<br>FILM L.A., INC. & COUNTY OF LOS ANGELES<br>1201 W. 5TH STREET<br>SUITE T-800<br>LOS ANGELES, CA 90017 USA |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

POLICY NUMBER: GLO 3737031-14

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):**<br>HARTFORD, LP<br>312 ½ & 316 WEST PICO BLVD.<br>1301-1313 OLIVE STREET<br>LOS ANGELES, CA 90015 USA |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

POLICY NUMBER: GLO 3737031-14

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):**<br>THE CAMERA HOUSE<br>7351 HOLTON AVENUE<br>NORTH HOLLYWOOD, CA 91605 USA |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| **Name Of Additional Insured Person(s) Or Organization(s):**<br>THE CITY OF NEW YORK<br>THE BUSINESS NETWORK OF EMERGENCY RESOURCES, INC. |
|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

POLICY NUMBER: GLO 3737031-14

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):**<br>GOVERNORS ISLAND PRESERVATION AND EDUCATION CORPORATION<br>10 SOUTH STREET, SLIP 7, NEW YORK, NY 10004<br>NYS EMPIRE STATE DEVELOPMENT CORPORATION<br>633 THIRD AVENUE, NEW YORK, NY 10017<br>TURNER CONSTRUCTION<br>10 SOUTH STREET, SLIP 7, NEW YORK, NY 10004<br>NYC ECONOMIC DEVELOPMENT CORPORATION<br>110 WILLIAM STREET, NEW YORK, NY 10038<br>HARBOR MARINE SERVICES - GOVERNORS ISLAND<br>10 SOUTH STREET, SLIP NEW YORK 10004 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

POLICY NUMBER: GLO 3737031-14

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):**<br>NATIONAL PARK SERVICE - GOVERNORS ISLAND<br>10 SOUTH STREET, SLIP 7, NEW YORK, NY 10004 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| **Name Of Additional Insured Person(s) Or Organization(s):** |
| --- |
| FLORIDA DEPARTMENT OF TRANSPORTATION |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

POLICY NUMBER: GLO 3737031-14

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):**<br>THE CITY OF NEW YORK, AND ITS OFFICIALS AND EMPLOYEES<br>C/O DOT OFFICE OF PERMIT MANAGEMENT<br>55 WATER STREET, CONCOURSE LEVEL<br>NEW YORK, NY 10041 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

POLICY NUMBER: GLO 3737031-14

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| UNITY CONSTRUCTION LLC<br>137 VARICK STREET, NEW YORK, NY 10013<br>FOR THE PURPOSE OF THIS COVERAGE FOR THE ADDITIONAL INSURED. "THOSE ACTING ON YOUR BEHAIF IS DEEMED TO INCLUDE THE ACTS AND/OR OMISSIONS OF UNITY CONSTRUCTION AND ITS SUBCONTRACTORS WITH RESPECT TO CONSTRUCTION OPERATIONS AND ALL RELATED ACTIVITIES, AT THE PREMISES DEFINED AS 27 E.62ND ST, AND A PERIMETER OF 100 FEET OF THE PREMISES. ADDITIONALY, THE INSURED FOR THE NAMED INSURED WILL NOT DENY COVERAGE FOR THE ADDITIONAL INSURED(S) BASED ON ANY LACK OF NEGLIGENCE OF THE PART OF THE NAMED INSURED. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):**<br>ONLY THOSE PERSONS OR ORGANIZATIONS WHERE REQUIRED BY WRITTEN CONTRACT |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| **Name Of Additional Insured Person(s) Or Organization(s):** |
| --- |
| THE IRVINE COMPANY<br>OFFICE PROPERTIES<br>INSURANCE COMPLIANCE<br>PO BOX 10085 13<br>DULUTH, GA 30096 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

POLICY NUMBER: GLO 3737031-14

**COMMERCIAL GENERAL LIABILITY**
**CG 20 28 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):**<br>ONLY THOSE PREMISES WHERE REQUIRED BY WRITTEN CONTRACT |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| DANIEL J. EDELMAN, INC. AND JIM BEAM BRANDS CO. | THOSE LOCATIONS WHERE REQUIRED BY WRITTEN CONTRACT. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

POLICY NUMBER: GLO 3737031-14

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| TIME WARNER CABLE INC., ITS SUBSIDIARIES, AFFILIATED COMPANIES,DIRECTORS, OFFICEERS EMPLOYEES, AND AGENTS | ONLY THOSE LOCATIONS WHERE REQUIRED BY WRITTEN CONTRACT. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

POLICY NUMBER: GLO 3737031-14

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| UNITY CONSTRUCTION LLC "FOR THE PURPOSE OF THIS COVERAGE FOR THE ADDITIONAL INSURED. "THOSE ACTING ON YOUR BEHALF IS DEEMED TO INCLUDE THE ACTS AND/OR OMISSIONS OF UNITY CONSTRUCTION AND ITS SUBCONTRACTORS WITH RESPECT | 27 EAST 62ND STREET NEW YORK, NY 10065 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

POLICY NUMBER: GLO 3737031-14

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| TO CONSTRUCTION OPERATIONS AND ALL RELATED ACTIVITIES, AT THE PREMISES DEFINED AS 27 E.62ND ST., AND A PERIMETER OF 100 FEET OF THE PREMISES. ADDITIONALLY, THE INSURER FOR THE NAMED INSURED WILL NOT DENY COVERAGE FOR THE THE ADDITIONAL INSURED(S) BASED ON ANY LACK OF | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and
2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or
2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

 © Insurance Services Office, Inc., 2013 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OREGON – MARIJUANA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

**a.** The design, manufacture, distribution, sale, serving, furnishing, use or possession of "marijuana";

**b.** The actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of "marijuana"; or

**2.** "Property damage" to "marijuana".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph **A.1.** or **A.2.** above.

However, this exclusion does not apply to any "marijuana" that is not designed, manufactured, distributed, sold, served or furnished for bodily:

**a.** Ingestion;

**b.** Inhalation;

**c.** Absorption; or

**d.** Consumption.

**B.** The following definition is added to the **Definitions** section:

"Marijuana":

**1.** Means:

Any good or product that consists of or contains any amount of Tetrahydrocannabinol (THC) or any other cannabinoid, regardless of whether any such THC or cannabinoid is natural or synthetic.

**2.** Paragraph **B.1.** above includes, but is not limited to, any of the following containing such THC or cannabinoid:

**a.** Any plant of the genus Cannabis L., or any part thereof, such as seeds, stems, flowers, stalks and roots; or

**b.** Any compound, byproduct, extract, derivative, mixture or combination, such as, but not limited to:

**(1)** Resin, oil or wax;

**(2)** Hash or hemp; or

**(3)** Infused liquid or edible marijuana;

whether derived from any plant or part of any plant set forth in Paragraph **B.2.a.** above or not.

 © Insurance Services Office, Inc., 2017 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

 © ISO Properties, Inc., 2006 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(a)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(b)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

 Copyright, Insurance Services Office, Inc., 1998 

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Person Or Organization:**<br>TIME WARNER CABLE INC., ITS SUBSIDIARIES, AFFILIATED COMPANIES, DIRECTORS, OFFICERS, EMPLOYEES, AND AGENTS. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

 © Insurance Services Office, Inc., 2008 

POLICY NUMBER: GLO 3737031-14

**COMMERCIAL GENERAL LIABILITY**
**CG 24 04 05 09**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Person Or Organization:**<br>THE IRVINE COMPANY LLC AND ALL ENTITIES CONTROLLING, CONTROLLED BY, OR UNDER COMMON CONTROL WITH SUCH ENTITY, TOGETHER WITH ITS RESPECTIVE OWNERS, SHAREHOLDERS, PARTNERS, MEMBERS, DIVISIONS, OFFICERS, DIRECTORS, EMPLOYEES, REPRESENTATIVES AND AGENTS, AND ITS SUCCESSORS AND ASSIGNS.<br><br>A PRIMARY WORDING CLAUSE STATING THAT THE ADDITIONAL INSURED'S INSURANCE IS NON-CONTRIBUTING WITH ANY OTHER INSURANCE . |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

 © Insurance Services Office, Inc., 2008  □

POLICY NUMBER: GLO 3737031-14

**COMMERCIAL GENERAL LIABILITY**
**CG 24 04 05 09**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Person Or Organization:**<br>MILITARY ROAD SOUTH ASSOCIATES, LLC & LESMIR CORP. DBA ROSEN PROPERTIES & ROSEN-HARBOTTLE CRE |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

 © Insurance Services Office, Inc., 2008 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – TRANSFER OF DUTIES WHEN A LIMIT OF INSURANCE IS USED UP

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following Condition is added to COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

**Transfer of Duties When a Limit of Insurance Is Used Up.**

**a.** If we conclude that, based on "occurrences," offenses, claims or "suits" which have been reported to us and to which this insurance may apply, the:

**(1)** General Aggregate Limit (other than the Products/Completed Operations Aggregate Limit);

**(2)** Products/Completed Operations Aggregate Limit;

**(3)** Personal and Advertising Injury Limit;

**(4)** Each Occurrence Limit; or

**(5)** Fire Damage Limit

is likely to be used up in the payment of judgments or settlements, we will notify the first Named Insured, in writing, to that effect.

**b.** When a limit of insurance described in paragraph **a.** above has actually been used up in the payment of judgments or settlements:

**(1)** We will notify the first Named Insured, in writing, as soon as practicable, that:

**(a)** Such a limit has actually been used up; and

**(b)** Our duty to defend "suits" seeking damages subject to that limit has also ended.

**(2)** We will initiate, and cooperate in, the transfer of control, to any appropriate insured, of all claims and "suits" seeking damages which are subject to that limit and which are reported to us before that limit is used up. That insured must cooperate in the transfer of control of said claims and "suits".

We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

We will take no action whatsoever with respect to any claim or "suit" seeking damages that would have been subject to that limit, had it not been used up, if the claim or "suit" is reported to us after that limit of insurance has been used up.

**(3)** The first Named Insured, and any other insured involved in a "suit" seeking damages subject to that limit, must arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us. Absent any such agreement, arrangements for the defense of such "suit" must be made as soon as practicable.

**c.** The first Named Insured will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with paragraph **b.(2)** above.

The duty of the first Named Insured to reimburse us will begin on:

**(1)** The date on which the applicable limit of insurance is used up, if we sent notice in accordance with paragraph **a.** above; or

**(2)** The date on which we sent notice in accordance with paragraph **b.(1)** above, if we did not send notice in accordance with paragraph a. above.

**d.** The exhaustion of any limit of insurance by the payments of judgments or settlements, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this Condition.

 Copyright, Insurance Services Office, Inc., 1991  □

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES – TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT EXCEPTION AND A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

**(a)** "Bodily injury" or "property damage" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or

**(b)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(i)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(ii)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

 © Insurance Services Office, Inc., 2010 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

 © ISO Properties, Inc., 2007 

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.
3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:
   a. Make inspections and surveys at any time;
   b. Give you reports on the conditions we find; and
   c. Recommend changes.
2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
   a. Are safe or healthful; or
   b. Comply with laws, regulations, codes or standards.
3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.
4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

 © ISO Properties, Inc., 2007 

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.


© ISO Properties, Inc., 2007

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NORTH DAKOTA CHANGES – CANCELLATION AND NONREWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by Paragraphs **2.** and **3.** below, except to the extent that Item **B.** of this endorsement applies.

**2. Policies In Effect:**

**a. For Less Than 90 Days**

If this policy has been in effect for less than 90 days, we may cancel the policy for any reason by mailing to the first Named Insured, and agent, if any, written notice of cancellation at least:

**(1)** 10 days before the effective date of cancellation; or

**(2)** Five days before the effective date of cancellation for any condition stated in Paragraph **B.** of this endorsement.

**b. For 90 Days Or More Or Policies With Terms Longer Than One Year Or Continuous Policies**

If this policy has been in effect for 90 days or more, is a renewal of a policy we issued, is a policy issued for a term longer than one year or is a continuous policy, we may cancel the policy only for one or more of the following reasons:

**(1)** Nonpayment of premiums;

**(2)** Misrepresentation or fraud made by the "insured" or with the "insured's" knowledge in obtaining the policy or in pursuing a claim under the policy;

**(3)** The "insured's" actions that have substantially increased or substantially changed the risk insured;

**(4)** The "insured's" refusal to eliminate known conditions that increase the potential for loss, after our notification that the condition must be removed;

**(5)** Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;

**(6)** Loss of reinsurance which provided us with coverage for a significant amount of the underlying risk insured;

**(7)** A determination by the insurance commissioner that the continuation of the policy could place us in violation of North Dakota insurance laws;

**(8)** Nonpayment of dues to an association or organization, other than an insurance association or organization, where payment of dues is a prerequisite to obtaining or continuing such insurance. Cancellation for this reason does not apply to persons who are retired at 62 years of age or older or to any person who is disabled according to social security standards;

 © Insurance Services Office, Inc., 2017 

**(9)** A violation of any local fire, health, safety, building or construction regulation or ordinance with respect to Covered Property or the occupancy thereof which substantially increases any hazard insured against; or

**(10)** Certain conditions exist, as stated in Paragraph **B.** of this endorsement.

We will mail written notice of cancellation to the first Named Insured, and agent, if any, at least:

**(a)** Five days before the effective date of cancellation for any condition stated in Paragraph **B.** of this endorsement;

**(b)** 10 days before the effective date of cancellation for nonpayment of premium; or

**(c)** 30 days before the effective date of cancellation for any reason stated in Paragraphs **2.b.(2)** through **(9)** above.

However, for policies with terms longer than one year or continuous policies, notice of cancellation will be mailed at least 30 days prior to any anniversary date for any reason stated in Paragraphs **2.b.(1)** through **(9)** above.

If we cancel for a reason listed in Paragraphs **2.b.(1)** through **(9)** above, the notice of cancellation will state our reasons for cancellation.

**3.** We will mail our notice, by first-class mail, to the first Named Insured and agent, if any, at the last mailing address known to us.

**B.** We may also cancel the policy if one or more of the following conditions exist:

**1.** Buildings with at least 65% of the rental units in the building unoccupied.

**2.** Buildings that have been damaged by a covered cause of loss and the "insured" has stated or such time has elapsed as clearly indicates that the damage will not be repaired.

**3.** Buildings to which, following a fire, permanent repairs have not commenced within 60 days following satisfactory adjustment of loss.

**4.** Buildings that have been unoccupied 60 or more consecutive days, except buildings that have a seasonal occupancy, and buildings actually in the course of construction or repair and reconstruction which are properly secured against unauthorized entry.

**5.** Buildings that are in danger of collapse because of serious structural conditions or those buildings subject to extremely hazardous conditions not contemplated in filed rating plans such as those buildings that are in a state of disrepair as to be dilapidated.

**6.** Buildings on which, because of their physical condition, there is an outstanding order to vacate or an outstanding demolition order, or which have been declared unsafe in accordance with applicable law.

**7.** Buildings from which fixed and salvageable items have been or are being removed and the "insured" can give no reasonable explanation for the removal.

**8.** Buildings on which there is reasonable knowledge and belief that the property is endangered and is not reasonably protected from possible arson for the purpose of defrauding an insurer.

**9.** Buildings with any of the following conditions:

**a.** Failure to furnish heat, water, sewer service, or public lighting for 30 consecutive days or more.

**b.** Failure to correct conditions dangerous to life, health, or safety.

**c.** Failure to maintain the building in accordance with applicable law.

**d.** Failure to pay property taxes for more than one year.

**10.** Buildings that have characteristics of ownership condition, occupancy, or maintenance, which are violative of law or public policy.

**C.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail to the last known address of the first Named Insured shown in the Declarations, and agent, if any, a notice of intention not to renew at least:

**a.** 60 days prior to the expiration date of the policy, except as provided in Paragraph **b.;** or

**b.** 90 days prior to the expiration date of the policy when the policy provides professional liability coverage for legal and medical services.

 © Insurance Services Office, Inc., 2017 

The notice of nonrenewal will state our reason for nonrenewal.

**2.** We will mail our notice, by first-class mail, to the first Named Insured and agent, if any, at the last mailing address known to us.

**3.** We need not mail or deliver this notice if you have:

**a.** Insured elsewhere;

**b.** Accepted replacement coverage; or

**c.** Requested or agreed to nonrenewal.

This Paragraph **3.** does not apply to the Commercial Automobile, Farm and Commercial Property Coverage Parts when you accept replacement coverage providing equal or more extensive coverage.

 © Insurance Services Office, Inc., 2017 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEW YORK CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **1., 2., 3.** and **5.** of the **Cancellation** Common Policy Condition are replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this entire policy by mailing or delivering to us advance written notice of cancellation.

**2. Cancellation Of Policies In Effect**

**a. 60 Days Or Less**

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 30 days before the effective date of cancellation if we cancel for any reason not included in Paragraph **A.2.b.** below.

**(2)** 15 days before the effective date of cancellation if we cancel for any of the reasons included in Paragraph **A.2.b.** below.

**b. For More Than 60 Days**

If this policy has been in effect for more than 60 days, or if this policy is a renewal or continuation of a policy we issued, we may cancel only for any of the reasons listed below, provided we mail the first Named Insured written notice at least 15 days before the effective date of cancellation:

**(1)** Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

**(2)** Conviction of a crime arising out of acts increasing the hazard insured against;

**(3)** Discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim;

**(4)** After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current policy period;

**(5)** Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the policy, which results in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

**(6)** Required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

 © Insurance Services Office, Inc., 2013 

**(7)** A determination by the Superintendent that the continuation of the policy would violate, or would place us in violation of, any provision of the Insurance Code; or

**(8)** Where we have reason to believe, in good faith and with sufficient cause, that there is a probable risk of danger that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. If we cancel for this reason, you may make a written request to the Department of Financial Services, within 10 days of receipt of this notice, to review our cancellation decision. Also, we will simultaneously send a copy of this cancellation notice to the Department of Financial Services.

**3.** We will mail or deliver our notice, including the reason for cancellation, to the first Named Insured at the address shown in the policy and to the authorized agent or broker.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.

However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**7.** If one of the reasons for cancellation in Paragraph **A.2.b.** or **D.2.b.(2)** exists, we may cancel this entire policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this policy.

**C.** The following conditions are added:

**1. Nonrenewal**

If we decide not to renew this policy we will send notice as provided in Paragraph **C.3.** below.

**2. Conditional Renewal**

If we conditionally renew this policy subject to:

**a.** A change of limits;

**b.** A change in type of coverage;

**c.** A reduction of coverage;

**d.** An increased deductible;

**e.** An addition of exclusion; or

**f.** Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit;

we will send notice as provided in Paragraph **C.3.** below.

**3. Notices Of Nonrenewal And Conditional Renewal**

**a.** If we decide not to renew this policy or to conditionally renew this policy as provided in Paragraphs **C.1.** and **C.2.** above, we will mail or deliver written notice to the first Named Insured shown in the Declarations at least 60 but not more than 120 days before:

**(1)** The expiration date; or

**(2)** The anniversary date if this is a continuous policy.

**b.** Notice will be mailed or delivered to the first Named Insured at the address shown in the policy and to the authorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

**c.** Notice will include the specific reason(s) for nonrenewal or conditional renewal, including the amount of any premium increase for conditional renewal and description of any other changes.

**d.** If we violate any of the provisions of Paragraph **C.3.a., b.** or **c.** above by sending the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice:

**(1)** And if notice is provided prior to the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the first Named Insured, during this 60-day period, has replaced the coverage or elects to cancel;

 © Insurance Services Office, Inc., 2013 

**(2)** And if the notice is provided on or after the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy for another policy period, at the lower of the current rates or the prior period's rates, unless the first Named Insured, during this additional policy period, has replaced the coverage or elects to cancel.

**e.** If you elect to renew on the basis of a late conditional renewal notice, the terms, conditions and rates set forth in such notice shall apply:

**(1)** Upon expiration of the 60-day period, unless Subparagraph **(2)** below applies; or

**(2)** Notwithstanding the provisions in Paragraphs **d.(1)** and **d.(2),** as of the renewal date of the policy if the conditional renewal notice was sent at least 30 days prior to the expiration or anniversary date of the policy.

**f.** We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that the policy has been replaced or is no longer desired.

**D.** The following provisions apply when the Commercial Property Coverage Part, the Farm Coverage Part or the Capital Assets Program (Output Policy) Coverage Part is made a part of this policy:

**1.** Items **D.2.** and **D.3.** apply if this policy meets the following conditions:

**a.** The policy is issued or issued for delivery in New York State covering property located in this state; and

**b.** The policy insures:

**(1)** For loss of or damage to structures, other than hotels or motels, used predominantly for residential purposes and consisting of no more than four dwelling units; or

**(2)** For loss of or damage to personal property other than farm personal property or business property; or

**(3)** Against damages arising from liability for loss of, damage to or injury to persons or property, except liability arising from business or farming; and

**c.** The portion of the annual premium attributable to the property and contingencies described in **1.b.** exceeds the portion applicable to other property and contingencies.

**2.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Procedure And Reasons For Cancellation**

**a.** We may cancel this entire policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**b.** But if this policy:

**(1)** Has been in effect for more than 60 days; or

**(2)** Is a renewal of a policy we issued;

we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

**(2)** Conviction of a crime arising out of acts increasing the risk of loss;

**(3)** Discovery of fraud or material misrepresentation in obtaining the policy or in making a claim;

**(4)** Discovery of willful or reckless acts or omissions increasing the risk of loss;

**(5)** Physical changes in the covered property that make that property uninsurable in accordance with our objective and uniformly applied underwriting standards in effect when we:

**(a)** Issued the policy; or

**(b)** Last voluntarily renewed the policy;

 © Insurance Services Office, Inc., 2013 

**(6)** The Superintendent of Financial Services' determination that continuing the policy would violate Chapter 28 of the Insurance Law; or

**(7)** Required pursuant to a determination by the Superintendent of Financial Services that the continuation of our present premium volume would be hazardous to the interests of our policyholders, our creditors or the public.

**3.** The following are added:

**a. Conditional Continuation**

Instead of cancelling this policy, we may continue it on the condition that:

**(1)** The policy limits be changed; or

**(2)** Any coverage not required by law be eliminated.

If this policy is conditionally continued, we will mail or deliver to the first Named Insured written notice at least 20 days before the effective date of the change or elimination. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**b. Nonrenewal**

If, as allowed by the laws of New York State, we:

**(1)** Do not renew this policy; or

**(2)** Condition policy renewal upon:

**(a)** Change of limits; or

**(b)** Elimination of coverage;

we will mail or deliver written notice of nonrenewal or conditional renewal:

**(a)** At least 45 days; but

**(b)** Not more than 60 days;

before the expiration date of the policy. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**E.** The following is added to the Farm Property – Other Farm Provisions Form – Additional Coverages, Conditions, Definitions, the Commercial Property Coverage Part and the Capital Assets Program (Output Policy) Coverage Part:

When the property is subject to the Anti-arson Application in accordance with New York Department of Financial Services' Insurance Regulation No. 96, the following provisions are added:

If you fail to return the completed, signed and affirmed anti-arson application to us:

**1.** Or our broker or agent within 45 days of the effective date of a new policy, we will cancel the entire policy by giving 20 days' written notice to you and to the mortgageholder shown in the Declarations.

**2.** Before the expiration date of any policy, we will cancel the policy by giving written notice to you and to the mortgageholder shown in the Declarations at least 15 days before the effective date of cancellation.

The cancellation provisions set forth in **E.1.** and **E.2.** above supersede any contrary provisions in this policy including this endorsement.

If the notice in **E.1.** or **E.2.** above is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**F.** The following applies to the Commercial Property Coverage Part, the Farm Coverage Part and the Capital Assets Program (Output Policy) Coverage Part:

Paragraphs **f.** and **g.** of the **Mortgageholders** Condition are replaced by the following:

**f. Cancellation**

**(1)** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(a)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(b)** 30 days before the effective date of cancellation if we cancel for any other reason.

 © Insurance Services Office, Inc., 2013 

**(2)** If you cancel this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, cancellation will become effective on the later of:

**(a)** The effective date of cancellation of the insured's coverage; or

**(b)** 10 days after we give notice to the mortgageholder.

**g. Nonrenewal**

**(1)** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**(2)** If you elect not to renew this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, nonrenewal will become effective on the later of:

**(a)** The expiration date of the policy; or

**(b)** 10 days after we give notice to the mortgageholder.

**G.** The following provisions apply when the following are made a part of this policy:

Commercial General Liability Coverage Part

Employment-Related Practices Liability Coverage Part

Farm Liability Coverage Form

Liquor Liability Coverage Part

Products/Completed Operations Liability Coverage Part

**1.** The aggregate limits of this policy as shown in the Declarations will be increased in proportion to any policy extension provided in accordance with Paragraph **C.3.d.** above.

**2.** The last sentence of Limits Of Insurance does not apply when the policy period is extended because we sent the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice.

 © Insurance Services Office, Inc., 2013 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOUISIANA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following, which applies unless Paragraph **B.** of this endorsement applies:

**2. Notice Of Cancellation**

**a. Cancellation Of Policies In Effect For Fewer Than 60 Days Which Are Not Renewals**

If this policy has been in effect for fewer than 60 days and is not a renewal of a policy we issued, we may cancel this policy for any reason, subject to the following:

**(1)** Cancellation for nonpayment of premium:

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 10 days before the effective date of cancellation.

**(2)** Cancellation for any other reason:

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 60 days before the effective date of cancellation.

**b. Cancellation Of Renewal Policies And New Policies In Effect For 60 Days Or More**

If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Fraud or material misrepresentation made by you or with your knowledge with the intent to deceive in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

**(3)** Activities or omissions by you which change or increase any hazard insured against;

**(4)** Change in the risk which increases the risk of loss after we issued or renewed this policy, including an increase in exposure due to regulation, legislation, or court decision;

**(5)** Determination by the Commissioner of Insurance that the continuation of this policy would jeopardize our solvency or would place us in violation of the insurance laws of this or any other state;

 © Insurance Services Office, Inc., 2017 

**(6)** The insured's violation or breach of any policy terms or conditions; or

**(7)** Any other reasons that are approved by the Commissioner of Insurance.

We will mail or deliver written notice of cancellation under Paragraph **A.2.b.** to the first Named Insured at least:

**(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(b)** 30 days before the effective date of cancellation if we cancel for a reason described in Paragraphs **A.2.b.(2)** through **(7)** above.

**B.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following, which applies with respect to premium payments due on new and renewal policies, including installment payments:

**2. Notice Of Cancellation**

**a.** If your premium payment check or other negotiable instrument is returned to us or our agent or a premium finance company because it is uncollectible for any reason, we may cancel the policy subject to Paragraphs **B.2.b.** and **B.2.c.**

**b.** We may cancel the policy effective from the date the premium payment was due, by sending you written notice by certified mail, or by delivering such notice to you within 10 days of the date that we receive notice of the returned check or negotiable instrument.

**c.** The cancellation notice will also advise you that the policy will be reinstated effective from the date the premium payment was due, if you present to us a cashier's check or money order for the full amount of the returned check or other negotiable instrument within 10 days of the date that the cancellation notice was mailed.

**C.** With respect to the Coverage Parts and Policies to which this endorsement applies, except the Equipment Breakdown Coverage Part, Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

If this policy is cancelled, we will return any premium refund due, subject to Paragraphs **C.5.a., C.5.b., C.5.c., C.5.d.** and **C.5.e.** The cancellation will be effective even if we have not made or offered a refund.

**a.** If the first Named Insured cancels, the refund will not be less than 90% of the pro rata unearned premium, rounded to the next higher whole dollar. The refund will be returned within 30 days after the effective date of cancellation.

We will send the refund to the first Named Insured and any mortgagee that has provided us with written notice of the percentage of the premium being funded with the mortgagee's own funds. The percentage of the unearned premium attributable to the mortgagee shall be returned to the mortgagee and the percentage of the unearned premium attributable to the first Named Insured shall be returned to the first Named Insured.

**b.** If we cancel, the refund will be pro rata and we will send the refund to the first Named Insured unless Paragraph **C.5.c.** or **C.5.d.** applies.

**c.** If we cancel based on Paragraph **B.2.** of this endorsement, we will return the premium due, if any, within 10 days after the expiration of the 10-day period referred to in **B.2.c.** If the policy was financed by a premium finance company, or if payment was advanced by the insurance agent, we will send the return premium directly to such payor.

**d.** With respect to any cancellation of the Commercial Auto Coverage Part, we will send the return premium, if any, to the premium finance company if the premium was financed by such company.

**e.** When return premium payment is sent to the premium finance company or the agent of the insured, we will provide notice to you, at the time of cancellation, that a return of unearned premium may be generated by the cancellation.

**D.** With respect to the Equipment Breakdown Coverage Part, Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

If this policy is cancelled, we will return any premium refund due, subject to Paragraphs **D.5.a., D.5.b., D.5.c., D.5.d.** and **D.5.e.** The cancellation will be effective even if we have not made or offered a refund.

**a.** If we cancel, the refund will be pro rata.

 © Insurance Services Office, Inc., 2017 

**b.** If the first Named Insured cancels, the refund will not be less than 75% of the pro rata unearned premium, rounded to the next higher whole dollar. The refund will be returned within 30 days after the effective date of cancellation.

**c.** We will send the refund to the first Named Insured unless Paragraph **D.5.d.** applies.

**d.** If we cancel based on Paragraph **B.2.** of this endorsement, we will return the premium due, if any, within 10 days after the expiration of the 10-day period referred to in **B.2.c.** If the policy was financed by a premium finance company, or if payment was advanced by the insurance agent, we will send the return premium directly to such payor.

**e.** When return premium payment is sent to the premium finance company or the agent of the insured, we will provide notice to you, at the time of cancellation, that a return of unearned premium may be generated by the cancellation.

**E.** The **Premiums** Common Policy Condition is replaced by the following:

**Premiums**

**1.** The first Named Insured shown in the Declarations is responsible for the payment of all premiums.

**2.** We will pay return premiums, if any, to the first Named Insured, unless another person or entity is entitled to be the payee in accordance with Paragraph **C.** or **D.** of this endorsement.

**F.** Paragraph **f.** of the **Mortgageholders** Condition in the Commercial Property Coverage Part, Standard Property Policy and the Capital Assets Program (Output Policy) Coverage Part, and Paragraph **4.f.** of the **Mortgageholders** Condition in the Farm Coverage Part are replaced by the following:

If we cancel a policy that has been in effect for fewer than 60 days and is not a renewal of a policy we issued, we will give written notice to the mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at least:

**(1)** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**(2)** 60 days before the effective date of cancellation, if we cancel for any other reason.

If we cancel a policy that has been in effect for 60 days or more, or is a renewal of a policy we issued, we will give written notice to the mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at least:

**(1)** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation, if we cancel for any other reason.

**G.** The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

**1.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured, mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at least 60 days before its expiration date, or its anniversary date if it is a policy written for a term of more than one year or with no fixed expiration date.

**2.** We need not mail or deliver this notice if:

**a.** We or another company within our insurance group have offered to issue a renewal policy; or

**b.** You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

**3.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured, mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**4.** Such notice to the insured shall include the insured's loss run information for the period the policy has been in force within, but not to exceed, the last three years of coverage.

 © Insurance Services Office, Inc., 2017 

ZURICH®

# Notice to Indiana Policyholders
# Regarding Filing Complaints with the Department of Insurance

**Questions regarding your policy or coverage should be directed to:**

**Customer Inquiry Center**
**Zurich North America**
**1299 Zurich Way**
**Schaumburg, IL 60196**
**800-382-2150**

If you (a) need the assistance of the governmental agency that regulates insurance; or (b) have a complaint you have been unable to resolve with your insurer you may contact the Department of Insurance by mail, telephone or email:

State of Indiana Department of Insurance
Consumer Services Division
311 West Washington Street, Suite 300
Indianapolis, Indiana 46204

Consumer Hotline: (800) 622-4461; (317) 232-2395

Complaints can be filed electronically at www.in.gov/idoi.

.

ZURICH®

# Important Notice to Arkansas Policyholders

Inquiries concerning your policy should be directed to your insurance agent, if one is involved, at the name, address and telephone number shown on the policy and/or in the material accompanying the policy. If you have additional questions, you may contact Zurich North America Commercial at the following address and telephone number:

Customer Inquiry Center
Zurich North America Commercial
1299 Zurich Way
Schaumburg, IL 60196
1-800-382-2150

If you require additional information you may contact the Arkansas Insurance Department at either the following address or phone number:

Arkansas Insurance Department
1200 West Third Street
Little Rock, Arkansas 72201-1904
Telephone: 501-371-2640 or 800-852-5494

## CANCELLATION BY US

**This endorsement changes the policy. Please read it carefully.**

This endorsement modifies insurance provided by the following:

BOILER AND MACHINERY COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL INLAND MARINE COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE FORM
FARM COVERAGE FORM
GARAGE COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
POLLUTION LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
TRUCKERS COVERAGE FORM

**SCHEDULE**

**Number of Days' Notice:** 90

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation, as provided in paragraph 2, of either the CANCELLATION Common Policy Condition or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.

ZURICH

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

| Insureds Name | Policy Number | Effective Date | Endorsement Number |
|---|---|---|---|
| MACANDREWS & FORBES INCORPORAT | GLO 3737031-14 | 07/01/2018 | |

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies your insurance:

**A. Cap on Losses From Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism. The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

**1.** To be an act of terrorism;

**2.** To be a violent act or an act that is dangerous to human life, property or infrastructure;

**3.** To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

**4.** To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

If aggregate insured losses attributable to one or more "certified acts of terrorism" exceed $100 billion in a calendar year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**B. Application of Other Exclusions**

The terms and limitations of a terrorism exclusion or any other exclusion, or the inapplicability or omission of a terrorism exclusion or any other exclusion, do not serve to create coverage which would otherwise be excluded, limited or restricted under this policy.

Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notice To Policyholder
# Revised Definition of Spouse

California law provides that registered domestic partners have the same rights, protections, and benefits, and are subject to the same responsibilities, obligations, and duties under law as are granted to and imposed upon spouses. This applies whether they derive from statutes, administrative regulations, court rules, government policies, common law, or any other provisions or sources of law, as are granted to and imposed upon spouses. Existing law requires, where necessary to implement the rights of registered domestic partners, gender-specific terms referring to spouses to be construed to include domestic partners.

**Policy Number**
**GLO 3737031-14**

**ENDORSEMENT**

# ZURICH AMERICAN INSURANCE COMPANY

Named Insured MACANDREWS & FORBES

Effective Date: 07-01-18
12:01 A.M., Standard Time

Agent Name AON RISK SERVICES NORTHEAST INC.

Agent No. 50522-000

## BROAD FORM NAMED INSURED ENDORSEMENT

MACANDREWS & FORBES INCORPORATED, IT'S PREDECESSORS, IF MACANDREWS & FORBES INCORPORATED HAS ASSUMED THEIR LIABILITIES BY CONTRACT, AND ANY AND ALL OF ITS SUBSIDIARIES, DIVISIONS, ASSOCIATED AND/OR AFFILIATED COMPANIES IN A LINE OF CORPORATE SUCCESSION NOW EXISTING OR HEREAFTER CREATED OR ACQUIRED, AND THEIR FINANCIALLY CONTROLLED OR ACTIVELY MANAGED ORGANIZATIONS OR UNDERTAKINGS, AND ANY OTHER ORGANIZATION, ENTITY OR PERSON, INCLUDING PARTNERSHIPS AND JOINT VENTURES WHICH THEY HAVE AGREED TO INSURE.

IT IS INTENDED BY THE ABOVE THAT COVERAGE BE INCLUDED FOR LIABILITY OF THE NAMED INSURED AS A RESULT OF AN INTEREST IN ANY ORGANIZATION OR UNDERTAKING, AND ANY RESTRICTION OF COVERAGE PERTAINING TO PARTNERSHIPS OR JOINT VENTURES IS DELETED.

**Policy Number**
**GLO 3737031-14**

**ENDORSEMENT**

# ZURICH AMERICAN INSURANCE COMPANY

| | | | |
|---|---|---|---|
| Named Insured | MACANDREWS & FORBES | Effective Date: | 07-01-18<br>12:01 A.M., Standard Time |
| Agent Name | AON RISK SERVICES NORTHEAST INC. | Agent No. | 50522-000 |

## EXCLUSION - SPECIFIED ENTITIES/OPERATION

THIS INSURANCE DOES NOT APPLY TO THE ENTITIES SHOWN IN THE SCHEDULE BELOW.

SCHEDULE

M & F WORLDWIDE CORP.
THE COLEMAN COMPANY
GOLDEN STATE BANCORP
CALIFORNIA FEDERAL SAVINGS BANK
FIRST NATIONWIDE MANAGEMENT
AUTO ONE ACCEPTANCE
AUTO ONE DEPOSIT
MERIDIAN SPORTS
MACANDREWS AMG
HOLDINGS LLC
MERISANT COMPANY

BUT ONLY AS RESPECTS TO ANY LIABILITY ARISING OUT OF THE OPERATIONS OF

AM GENERAL LLC
AM GENERAL HOLDINGS LLC
IRA LEON RENNERT
ILSHAR CAPITAL LLC
THE RENCO GROUP, INC.
TRANSTECH PHARMA
SIGA TECHNOLOGIES, INC.
SCIENTIFIC GAMES CORP.
HARLAND CLARK HOLDINGS CORP.

**Policy Number**
**GLO 3737031-14**

**ENDORSEMENT**

# ZURICH AMERICAN INSURANCE COMPANY

| | | | |
|---|---|---|---|
| Named Insured | MACANDREWS & FORBES | Effective Date: | 07-01-18<br>12:01 A.M., Standard Time |
| Agent Name | AON RISK SERVICES NORTHEAST INC. | Agent No. | 50522-000 |

## DEDUCTIBLE ENDORSEMENT

THIS ENDORSEMENT APPLIES BETWEEN YOU AND US. YOU WILL REIMBURSE US FOR DEDUCTIBLE AMOUNTS THAT WE PAY ON YOUR BEHALF. THIS ENDORSEMENT WILL REMAIN IN EFFECT ON RENEWALS OF THIS POLICY UNLESS SPECIFICALLY NOT MADE A PART OF SUCH OR REPLACED BY A SIMILAR ENDORSEMENT.

THIS ENDORSEMENT AND ITS INDIVIDUAL SECTIONS WHICH INCLUDE DEDUCTIBLE AMOUNTS, HOW THIS (THESE) DEDUCTIBLE(S) APPLY(IES), EFFECT OF DEDUCTIBLE(S) ON LIMITS OF LIABILITY, DEFINITIONS AND CONDITIONS APPLY ONLY WITH RESPECT TO THE DEDUCTIBLES WHICH ARE THE SUBJECT OF THIS ENDORSEMENT.

SCHEDULE

| | COVERAGE | DEDUCTIBLE AMOUNT/BASIS |
|---|---|---|
| COVERAGE A. | BODILY INJURY AND PROPERTY DAMAGE LIABILITY ALL PERSONS OR ORGANIZATION | $100,000 EACH OCCURRENCE |
| COVERAGE A. | BODILY INJURY AND PROPERTY DAMAGE LIABILITY ANY PERSONS OR ORGANIZATION | $ DOES NOT APPLY EACH CLAIM |
| COVERAGE B. | PERSONAL AND ADVERTISING INJURY BY "OFFENSE" - ANY ONE PERSON OR ORGANIZATION | $ 100,000 EACH CLAIM |
| COVERAGE C. | MEDICAL PAYMENTS COVERAGE | $ 100,000 EACH ACCIDENT |
| COVERAGE | EMPLOYEE BENEFITS LIABILITY ANY ONE PERSON OR ORGANIZATION | $ 100,000 EACH CLAIM |
| OTHER COVERAGE BY | INSURANCE AGENTS & BROKERS PROFESSIONAL COVERAGE | $ 1,000,000 WRONGFUL ACT |
| OTHER COVERAGE BY | EMPLOYEE LAWYERS PROFESSIONAL LIABILITY COVERAGE | $ 1,000,000 EACH OCCURRENCE |

ALLOCATED LOSS ADJUSTMENT EXPENSE ('ALAE')
SELECT ONE:

OPTION 1. ______ AS RESPECTS EACH "OCCURRENCE", EACH "CLAIM" OR EACH "ACCIDENT" (AS APPLICABLE), ALL "ALAE" IS REIMBURSED IN ADDITION TO THE DEDUCTIBLE AMOUNT.

OPTION 2 X** AS RESPECTS EACH "OCCURRENCE", EACH "CLAIM" OR EACH "ACCIDENT" (AS APPLICABLE), "ALAE" IS REIMBURSED AS FOLLOWS:

Policy Number
GLO 3737031-14

ENDORSEMENT

## ZURICH AMERICAN INSURANCE COMPANY

Named Insured MACANDREWS & FORBES

Effective Date: 07-01-18
12:01 A.M., Standard Time

Agent Name AON RISK SERVICES NORTHEAST INC.

Agent No. 50522-000

### DEDUCTIBLE ENDORSEMENT

(1) IF THE TOTAL AMOUNT PAYABLE FOR OTHER THAN EQUAL "ALAE" FOR OCCURRENCES, CLAIMS OR ACCIDENTS IS TO OR LESS THAN THE DEDUCTIBLE AMOUNT(S) OR IF ALL THERE IS NO AMOUNT PAYABLE OTHER THAN "ALAE," THEN ALL "ALAE" SHALL BE REIMBURSED, OR

(2) IF THE TOTAL AMOUNT PAYABLE FOR OTHER THAN "ALAE" EXCEEDS THE DEDUCTIBLE AMOUNT(S), A PRORATA SHARE OF TOTAL "ALAE" BASED ON THE RATIO OF THE DEDUCTIBLE AMOUNT SHOWN IN THE ABOVE SCHEDULE DIVIDED BY THE TOTAL AMOUNT PAYABLE FOR OTHER THAN "ALAE" AS RESPECTS EACH "OCCURRENCE", EACH "CLAIM" OR EACH "ACCIDENT" IS REIMBURSED.

OPTION 3 X AS RESPECTS EACH "OCCURRENCE", EACH "CLAIM" OR EACH "ACCIDENT" (AS APPLICABLE), "ALAE" IS REIMBURSED AND INCLUDED IN THE DEDUCTIBLE AMOUNT.

** ALAE OPTION 2 ONLY APPLIES TO EMPLOYED LAWYERS & INSURANCE AGENTS & BROKERS PROFESSIONAL LIABILITY COVERAGE

A. HOW THIS (THESE) DEDUCTIBLE(S) APPLY(IES):

YOU AGREE TO REIMBURSE US FOR EACH "OCCURRENCE", EACH "CLAIM" OR EACH "ACCIDENT" UP TO THE DEDUCTIBLE AMOUNT SHOWN IN THE SCHEDULE ABOVE:

1. ALL SUMS PAYABLE FOR OTHER THAN "ALAE"; PLUS

2. ALL "ALLOCATED LOSS ADJUSTMENT EXPENSE" AS RESPECTS EACH "OCCURRENCE", "CLAIM" OR "ACCIDENT":

   A. WHEN YOU HAVE ELECTED OPTION 1 IN THE SCHEDULE ABOVE, IN ADDITION TO AND NOT LIMITED BY THE DEDUCTIBLE AMOUNT, OR

   B. WHEN YOU HAVE ELECTED OPTION 2 IN THE SCHEDULE ABOVE, IN ADDITION TO BUT NOT LIMITED BY THE DEDUCTIBLE AMOUNT IF SUMS PAYABLE FOR OTHER THAN "ALAE" ARE EQUAL TO OR LESS THAN THE DEDUCTIBLE AMOUNT; OR A PRORATA SHARE OF TOTAL "ALAE" IF SUMS PAYABLE FOR OTHER THAN "ALAE" EXCEED THE DEDUCTIBLE AMOUNT, OR

   C. WHEN YOU HAVE ELECTED OPTION 3 IN THE SCHEDULE ABOVE, AS PART OF THE DEDUCTIBLE AMOUNT.

B. EFFECT OF DEDUCTIBLE(S) ON LIMITS OF LIABILITY.

ALL SUMS PAYABLE FOR OTHER THAN "ALAE" WITHIN THE DEDUCTIBLE AMOUNTS SHALL BE INCLUDED IN DETERMINING THE MOST WE WILL PAY AS DEFINED IN SECTION III OF THE POLICY - LIMITS OF INSURANCE AND AS STATED IN THE DECLARATIONS AND AS ARE DEFINED AND STATED IN ANY ENDORSEMENT(S) TO THIS POLICY RELATING TO LIMITS OF INSURANCE.

C. DEFINITIONS

**Policy Number**
**GLO 3737031-14**

**ENDORSEMENT**

## ZURICH AMERICAN INSURANCE COMPANY

Named Insured MACANDREWS & FORBES

Effective Date: 07-01-18
12:01 A.M., Standard Time

Agent Name AON RISK SERVICES NORTHEAST INC.

Agent No. 50522-000

**DEDUCTIBLE ENDORSEMENT**

1. EACH "OCCURRENCE" MEANS:

FOR ANY COVERAGE DESCRIBED IN THE SCHEDULE TO WHICH THE EACH "OCCURRENCE" BASIS APPLIES, TO ALL SUMS PAYABLE FOR OTHER THAN "ALAE" AS THE RESULT OF AN ACCIDENT, INCLUDING CONTINUOUS OR REPEATED EXPOSURE TO SUBSTANTIALLY THE SAME HARMFUL CONDITIONS, "REGARDLESS OF THE NUMBER OF PERSONS OR ORGANIZATIONS WHO SUSTAIN DAMAGES OR TO WHOM SUMS ARE PAYABLE BECAUSE OF THAT "OCCURRENCE".

2. EACH "CLAIM" MEANS:

A. OTHER THAN COVERAGE B., FOR ANY COVERAGE DESCRIBED IN THE SCHEDULE TO WHICH THE EACH "CLAIM" BASIS APPLIES, TO ALL SUMS PAYABLE FOR OTHER THAN "ALAE" TO ANY ONE PERSON AS THE RESULT OF AN "OCCURRENCE". IF DAMAGES ARE CLAIMED FOR CARE, LOSS OF SERVICES OR DEATH RESULTING AT ANY TIME FROM BODILY INJURY, A SEPARATE DEDUCTIBLE AMOUNT APPLIES TO EACH PERSON MAKING A CLAIM FOR SUCH DAMAGES. WITH RESPECT TO PROPERTY DAMAGE, ANY ONE PERSON IS ALSO DEFINED AS ANY ONE ORGANIZATION.

B. FOR COVERAGE B., TO ALL DAMAGES SUSTAINED BY ANY ONE PERSON OR ORGANIZATION AS THE RESULT OF AN OFFENSE.

3. EACH "ACCIDENT" MEANS:

FOR ANY COVERAGE DESCRIBED IN THE SCHEDULE TO WHICH THE EACH "ACCIDENT" BASIS APPLIES, TO ALL SUMS PAYABLE FOR OTHER THAN "ALAE" AS THE RESULT OF AN ACCIDENT REGARDLESS OF THE NUMBER OF PERSONS WHO SUSTAIN MEDICAL EXPENSES BECAUSE OF THAT "ACCIDENT".

4. "ALLOCATED LOSS ADJUSTMENT EXPENSE" IS AN EXPENSE DIRECTLY ALLOCABLE TO A SPECIFIC CLAIM AND SHALL INCLUDE BUT NOT BE LIMITED TO ALL SUPPLEMENTARY PAYMENTS AS DEFINED UNDER THE POLICY; ALL COURT COSTS, FEES AND EXPENSES; COSTS OF ALL ATTORNEYS, WITNESSES, EXPERTS, DEPOSITIONS, REPORTED OR RECORDED STATEMENTS, SUMMONSES, SERVICE OF PROCESS, LEGAL TRANSCRIPTS OR TESTIMONY, COPIES OF ANY PUBLIC RECORDS; ALTERNATIVE DISPUTE RESOLUTION; INTEREST; INVESTIGATIVE SERVICES, NONEMPLOYEE ADJUSTERS, MEDICAL EXAMINATIONS, AUTOPSIES, MEDICAL COST CONTAINMENT; DECLARATORY JUDGMENT, SUBROGATION, AND ANY OTHER FEES, COSTS OR EXPENSES REASONABLY CHARGEABLE TO THE INVESTIGATION, NEGOTIATION, SETTLEMENT OR DEFENSE OF A CLAIM OR A LOSS UNDER THE POLICY. "ALLOCATED LOSS ADJUSTMENT EXPENSE" SHALL NOT INCLUDE THE FEES, CHARGES OR COSTS OF A THIRD PARTY ADMINISTRATOR ENGAGED TO PROVIDE CLAIM SERVICE OR RELATED SERVICES.

D. CONDITIONS

1. SUBROGATION

WE HAVE YOUR RIGHTS TO RECOVER SUMS THAT ARE REIMBURSABLE UNDER

**Policy Number**
**GLO 3737031-14**

**ENDORSEMENT**

# ZURICH AMERICAN INSURANCE COMPANY

Named Insured MACANDREWS & FORBES

Effective Date: 07-01-18
12:01 A.M., Standard Time

Agent Name AON RISK SERVICES NORTHEAST INC.

Agent No. 50522-000

## DEDUCTIBLE ENDORSEMENT

THIS ENDORSEMENT FROM ANYONE LIABLE FOR THE INJURY OR DAMAGES. YOU WILL DO EVERYTHING NECESSARY TO PROTECT THOSE RIGHTS FOR US AND TO HELP US ENFORCE THEM.

2. RIGHTS AND DUTIES

A. EXCEPT AS OTHERWISE INDICATED HEREIN, THE TERMS OF THE POLICY, INCLUDING THOSE WITH RESPECT TO OUR RIGHTS AND DUTIES TO DEFEND ANY "SUIT" SEEKING DAMAGES, INVESTIGATE ANY "OCCURRENCE" AND SETTLE ANY CLAIM OR "SUIT" THAT MAY RESULT AND YOUR DUTIES IN THE EVENT OF AN "OCCURRENCE," CLAIM OR "SUIT" CONTINUE TO APPLY IRRESPECTIVE OF THE APPLICATION OF THIS (THESE) DEDUCTIBLE AMOUNT(S).

B. PAYMENT OF AMOUNTS REIMBURSABLE UNDER THIS ENDORSEMENT.

(1) THE FIRST NAMED INSURED SHOWN IN THE DECLARATIONS IS AUTHORIZED TO AND SHALL REIMBURSE US FOR ALL AMOUNTS PAID BY US ON BEHALF OF ALL NAMED INSUREDS.

(2) EACH NAMED INSURED IS JOINTLY AND SEVERALLY LIABLE FOR ALL REIMBURSEMENTS DUE US UNDER THIS ENDORSEMENT.

(3) YOU MUST PROMPTLY PAY US FOR ALL AMOUNTS FOR WHICH YOU ARE RESPONSIBLE UNDER THIS ENDORSEMENT AND PROMPTLY REIMBURSE US FOR ANY SUCH AMOUNTS THAT WE PAY UPON RECEIPT OF A BILLING FROM US. IF YOU FAIL TO DO SO, WE WILL CANCEL THIS POLICY.

**Policy Number**
**GLO 3737031-14**

**ENDORSEMENT**

## ZURICH AMERICAN INSURANCE COMPANY

Named Insured MACANDREWS & FORBES

Effective Date: 07-01-18
12:01 A.M., Standard Time

Agent Name AON RISK SERVICES NORTHEAST INC.

Agent No. 50522-000

**EMPLOYED LAWYERS PROFESSIONAL LIABILITY COVAGE ENDORSEMENT**

THE PROVISIONS OF THIS ENDORSEMENT APPLY ONLY AS RESPECTS EMPLOYED LAWYER'S PROFESSIONAL LIABILITY COVERAGE AFFORDED HEREUNDER.

SECTION I - COVERAGE IS AMENDED TO INCLUDE THE FOLLOWING:

EMPLOYED LAWYERS PROFESSIONAL LIABILITY

2. INSURING AGREEMENT

COVERAGE D.

TO PAY TO THE INSURED LAWYER ALL SUMS WHICH THE INSURED LAWYER SHALL BECOME LEGALLY OBLIGATED TO PAY AS DAMAGES INCLUDING PERSONAL INJURY BECAUSE OF THE NEGLIGENT ACTS, ERRORS, OR OMISSIONS, OF THE INSURED LAWYER IN RENDERING OR FAILING TO RENDER PROFESSIONAL SERVICES AS A LAWYER, ARISING OUT OF ACTIONS COINCIDENTAL TO EMPLOYMENT EXCEPT FOR SUCH LOSS WHICH THE EMPLOYER SHALL INDEMNIFY SUCH INSURED LAWYER, WHICH TAKES PLACE DURING THE POLICY PERIOD.

COVERAGE E.

TO PAY ON BEHALF OF THE EMPLOYER ALL SUMS WHICH THE EMPLOYER MAY BE REQUITED OR PERMITTED BY LAW TO INDEMNIFY AN INSURED LAWYER FOR AN AMOUNT WHICH THE INSURED LAWYER BECOMES LEGALLY OBLIGATED TO PAY AS DAMAGES INCLUDING PERSONAL INJUTY BECAUSE OF THE NEGLIGENT ACTS, ERRORS, OR OMISSIONS OF THE INSURED LAWYER IN RENDERING OR FAILING TO RENDER PROFESSIONAL SERVICES AS A LAWYER, WHILE ACTING IN THE COURSE OF THE SAID LAWYER'S EMPLOYMENT BY THE EMPLOYER AND WHICH TAKES PLACE DURING THE POLICY PERIOD.

2. DEFENSE

NOTWITHSTANDING ANYTHING IN THIS CLAUSE, IT IS UNDERSTOOD AND AGREED THAT AS RESPECTS SUPPLEMENTARY PAYMENTS, THE POLICY REMAINS UNALTERED. DEFENSE COSTS ARE IN ADDITION TO THE LIMIT OF LIABILITY

III. SECTION II -WHO IS AN INSURED, IS DELETED IN ITS ENTIRETY AND REPLACED BY THE FOLLOWING WITH RESPECT TO THE INSURANCE AFFORDED BY THIS ENDORSEMENT.

EACH OF THE FOLLOW1NG IS AN INSURED UNDER THIS INSURANCE TO THE EXTENT SET FORTH BELOW:

(A) ANY PERSON ADMITTED TO PRACTICE LAW WHO IS, OR BECOMES EMPLOYED FULL TIME OR PART TIME AND SALARIED BY THE EMPLOYER NAMED IN ITEM 1 OF THE DECLARATIONS, OR WHO WAS SO EMPLOYED ON OR AFTER THE EFFECTIVE DATE OF THE FIRST POLICY ISSUED TO THE EMPLOYER AND CONTINUOUSLY RENEWED THEREAFTER, BUT ONLY AS REGARDS PROFESSIONAL SERVICES RENDERED PRIOR TO OR DURING THE TERM OF SUCH EMPLOYMENT HEREIN REFERRED TO AS AN INSURED LAWYER.

**Policy Number**
**GLO 3737031-14**

**ENDORSEMENT**

## ZURICH AMERICAN INSURANCE COMPANY

| | | | |
|---|---|---|---|
| Named Insured | MACANDREWS & FORBES | Effective Date: | 07-01-18<br>12:01 A.M., Standard Time |
| Agent Name | AON RISK SERVICES NORTHEAST INC. | Agent No. | 50522-000 |

**EMPLOYED LAWYERS PROFESSIONAL LIABILITY COVAGE ENDORSEMENT**

(B) THE EMPLOYER NAMED IN ITEM 1 OF THE DECLARATIONS, BUT ONLY IN RESPECT TO PROFESSIONAL SERVICES RENDERED ON ITS BEHALF BY AN INSURED LAWYER AS DESCRIBED IN (A) ABOVE AND ONLY FOR INDEMNIFICATION OF AN INSURED LAWYER AS DESCRIBED IN PARAGRAPH E OF INSURING AGREEMENT 1, COVERAGE OF THIS ENDORSEMENT.

(C) NON-LAWYER EMPLOYEES OF THE EMPLOYER WHO ARE, WERE OR BECOME ASSISTANTS OF INSURED LAWYERS WHILE ACTING UNDER THE DIRECTION AND CONTROL OF INSURED LAWYERS PERFORMING PROFESSIONAL SERVICES ON BEHALF OF THE EMPLOYER; COVERAGE TO APPLY UNDER THE INSURANCE IN THE SAME MANNER AS TO AN INSURED LAWYER;

(D) THE ESTATE, HEIRS, EXECUTORS, ADMINISTRATORS, ASSIGNS, AND LEGAL REPRESENTATIVES OF ANY INSURED LAWYERS IN THE EVENT OF SUCH INSURED LAWYERS DEATH, INCAPACITY OR BANKRUPTCY, BUT ONLY TO THE EXTENT THAT SUCH INSURED LAWYER WOULD OTHERWISE BE PROVIDED COVERAGE UNDER THIS INSURANCE.

EXCLUSIONS:

THIS INSURANCE DOES NOT APPLY:

(A) TO ANY DAMAGES ARISING OUT OF ANY ADJUDICATED CRIMINAL, DISHONEST OR FRAUDULENT ACTS, ERRORS OR OMISSIONS.

(B) TO ANY DAMAGES ARISING OUT OF ANY ADJUDICATED WILLFUL, INTENTIONAL OR MALICIOUS ACTS, ERRORS OR OMISSIONS.

(C) TO ANY CLAIM ARISING OUT OF BODILY INJURY TO, OR SICKNESS, DISEASE OR DEATH OF ANY PERSON, OR INJURY TO OR DESTRUCTION OF ANY TANGIBLE PROPERTY, INCLUDING THE LOSS OF USE THEREOF, EXCEPT THAT THIS EXCLUSION DOES NOT APPLY TO MENTAL ILLNESS OR EMOTIONAL DISTRESS OR HUMILIATION CAUSED BY PERSONAL INJURY;

(D) TO ANY CLAIM BASED UPON THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, PUBLIC LAW 93-406, AND AMENDMENTS THERETO, OR SIMILAR PROVISIONS OF ANY FEDERAL, STATE OR LOCAL STATUTORY OR COMMON LAW;

(E) TO ANY CLAIM ARISING OUT OF ANY INSURED LAWYER'S ACTIVITIES AS AN OFFICER OR DIRECTOR OF THE CORPORATION;

(F) TO ANY PUNITIVE OR EXEMPLARY DAMAGES, WHERE INDEMNIFICATION IS CONTRARY TO THE PUBLIC POLICY OF THE RELEVANT JURISDICTION;

SECTION III - LIMIT OF INSURANCE IS DELETED IN ITS ENTIRETY AND REPLACED BY THE FOLLOWING AS RESPECTS THE INSURANCE AFFORDED BY THIS ENDORSEMENT.

OCCURRENCE LIMIT

THE LIMIT OF LIABILITY STATED IN THE DECLARATIONS AS PER OCCURRENCE IS THE TOTAL LIMIT OF OUR LIABILITY FOR LOSSES SUSTAINED BY ONE OR

**Policy Number**
**GLO 3737031-14**

**ENDORSEMENT**

## ZURICH AMERICAN INSURANCE COMPANY

Named Insured MACANDREWS & FORBES

Effective Date: 07-01-18
12:01 A.M., Standard Time

Agent Name AON RISK SERVICES NORTHEAST INC.

Agent No. 50522-000

**EMPLOYED LAWYERS PROFESSIONAL LIABILITY COVAGE ENDORSEMENT**

MORE PERSONS OR ORGANIZATIONS AS A RESULT OF ANY ONE (1) OCCURRENCE. THIS ENDORSEMENT IS SUBJECT TO AN OCCURRENCE DEDUCTIBLE EQUAL TO THE LIMIT OF LIABILITY DEDUCTIBLE SO THAT THE COMPANY HAS NO INSURANCE RISK FOR THE SCOPE OF COVERAGE PROVIDED BY THIS ENDORSEMENT.

GENERAL AGGREGATE LIMIT OF LIABILITY

NOTWITHSTANDING THAT THE COMPANY HAS NO INSURANCE RISK FOR THE SCOPE OF INSURANCE PROVIDED BY THIS ENDORSEMENT, ALL AMOUNTS PAID UNDER THE DEDUCTIBLE BY OR ON BEHALF OF THE INSURED SHALL BE CHARGED AND ACCRUE TO THE GENERAL AGGREGATE LIMIT OF LIABILITY STATED IN THE DECLARATIONS OF THE POLICY.

SECTION IV - CONDITIONS IS DELETED AND REPLACED BY THE FOLLOWING WITH RESPECT TO THE INSURANCE AFFORDED BY THIS ENDORSEMENT:

1. ARBITRATION

THE COMPANY SHALL BE ENTITLED TO EXERCISE ALL INSURED’S RIGHTS IN THE CHOICE OF ARBITRATORS AND IN THE CONDUCT OF ANY ARBITRATION PROCEEDING INVOLVING A CLAIM COVERED BY THIS INSURANCE.

2. ACTION AGAINST THE COMPANY

NO ACTION SHALL LIE AGAINST THE COMPANY UNLESS, AS A CONDITION PRECEDENT THERETO, THERE SHALL HAVE BEEN FULL COMPLIANCE WITH ALL THE TERMS OF THIS POLICY AND UNTIL THE AMOUNT OF THE INSURED LAWYER’S OBLIGATION TO PAY SHALL HAVE BEEN FINALLY DETERMINED EITHER BY JUDGEMENT AGAINST THE INSURED LAWYER AFTER ACTUAL TRIAL OR BY WRITTEN AGREEMENT OF THE INSURED LAWYER, THE CLAIMANT AND THE COMPANY.

ANY PERSON OR ORGANIZATION OR THE LEGAL REPRESENTATIVE THEREOF WHO HAS SECURED SUCH JUDGEMENT OR WRITTEN AGREEMENT SHALL THEREAFTER BE ENTITLED TO RECOVER UNDER THIS INSURANCE TO THE EXTENT OF THE INSURANCE AFFORDED BY THIS ENDORSEMENT. NO PERSON OR ORGANIZATION SHALL HAVE ANY RIGHT UNDER THIS POLICY TO JOIN THE COMPANY AS A PARTY TO ANY ACTION AGAINST THE INSURED LAWYER TO DETERMINE THE INSURED LAWYER’S LIABILITY, NOR SHALL THE COMPANY BE IMPLEADED BY THE INSURED OR ITS LEGAL REPRESENTATIVE. BANKRUPTCY OR INSOLVENCY OF THE INSURED OR OF THE INSURED’S ESTATE SHALL NOT RELIEVE THE COMPANY OF ANY OF ITS OBLIGATIONS HEREUNDER.

3. ASSISTANCE AND COOPERATION OF THE INSURED

THE INSURED SHALL COOPERATE WITH THE COMPANY AND UPON THE COMPANY’S REQUEST ASSIST IN MAKING SETTLEMENTS, ASSIST IN THE CONDUCT OF SUITS AND IN ENFORCING ANY RIGHT OF CONTRIBUTION OR INDEMNITY AGAINST ANY PERSON OR ORGANIZATION OTHER THAN AN EMPLOYEE WHO MAY BE LIABLE TO THE INSURED BECAUSE OF NEGLIGENT ACTS, ERRORS OR OMISSIONS WITH RESPECT TO WHICH THE INSURANCE IS AFFORDED UNDER THE ENDORSEMENT; AND THE INSURED SHALL ATTEND HEARINGS AND TRIALS AND ASSIST IN SECURING AND GIVING EVIDENCE AND OBTAINING THE ATTENDANCE OF WITNESSES. THE INSURED SHALL NOT, EXCEPT AT HIS OWN COST, ADMIT LIABILITY, VOLUNTARILY MAKE ANY PAYMENT, ASSUME ANY OBLIGATION OR INCUR ANY

**Policy Number**
**GLO 3737031-14**

**ENDORSEMENT**

## ZURICH AMERICAN INSURANCE COMPANY

Named Insured MACANDREWS & FORBES

Effective Date: 07-01-18
12:01 A.M., Standard Time

Agent Name AON RISK SERVICES NORTHEAST INC.

Agent No. 50522-000

**EMPLOYED LAWYERS PROFESSIONAL LIABILITY COVAGE ENDORSEMENT**

EXPENSE WITHOUT THE CONSENT OF THE COMPANY.

4. CHANGES

NOTICE TO ANY AGENT OR KNOWLEDGE POSSESSED BY ANY AGENT OR BY ANY OTHER PERSON SHALL NOT EFFECT A WAIVER OR CHANGE IN ANY PART OF THIS POLICY OR STOP THE COMPANY FROM ASSERTING ANY RIGHT UNDER THE TERMS OF THIS POLICY; NOR SHALL THE TERMS OF THIS POLICY BE WAIVED OR CHANGED EXCEPT BY ENDORSEMENT ISSUED TO FORM A PART OF THIS POLICY AND SIGNED BY A DULY AUTHORIZED AGENT OF THE COMPANY.

5. CHANGE IN MEMBERSHIP OF EMPLOYER'S LEGAL STAFF

ANY ADDITIONS OR DELETIONS TO OR FROM THE LIST OF ATTORNEYS IN THE APPLICATION SHALL NOT AFFECT THE VALIDITY OF THIS INSURANCE BUT SHALL BE REPORTED TO THE COMPANY PROMPTLY AND IN NO EVENT LATER THAN THE NEXT ANNIVERSARY DATE OF THE POLICY AND ANY ADDITIONAL PREMIUM REQUIRED BY THE COMPANY SHALL BE DUE AND PAYABLE AS BILLED.

6. CONFORMANCE TO STATUTE

TERMS OF THIS POLICY, WHICH ARE IN CONFLICT WITH THE STATUTES OF THE STATE WHEREIN THIS POLICY IS ISSUED, ARE HEREBY AMENDED TO CONFORM TO SUCH STATUTES.

7. FIDUCIARY COVERAGE

FOR PURPOSES OF COVERAGE E.

WHEN THE INSURED LAWYER ACTS AS AN ADMINISTRATOR, CONSERVATOR, EXECUTOR, GUARDIAN, TRUSTEE RECEIVER, ESCROW AGENT, OR IN ANY SIMILAR FIDUCIARY CAPACITY, HIS NEGLIGENT ACTS, ERRORS OR OMISSIONS IN SUCH CAPACITY SHALL BE DEEMED FOR THE PURPOSE OF INSURING AGREEMENT I TO BE THE PERFORMANCE OF PROFESSIONAL SERVICES FOR OTHERS IN THE INSUREDS CAPACITY AS A LAWYER.

8. POLICY TERRITORY

THIS INSTANCE APPLIES TO NEGLIGENT ACTS, ERRORS OR OMISSIONS OCCURRING ANYWHERE IN THE WORLD:

(A) PROVIDED THAT THOSE NEGLIGENT ACTS, ERRORS OR OMISSIONS OCCUR DURING THE POLICY PERIOD;

(B) FURTHER PROVIDED THAT CLAIM IS FIRST MADE AGAINST THE INSURED LAWYER WITHIN THE UNITED STATES OF AMERICA, ITS TERRITORIES OR POSSESSIONS OR CANADA.

SECTION V- DEFINITIONS IS AMENDED AS FOLLOWS.
THE FOLLOWING DEFINITIONS ARE ADDED:

"CLAIM," WHENEVER USED IN THIS ENDORSEMENT, MEANS DEMAND RECEIVED BY THE INSURED FOR MONEY OR SERVICES INCLUDING THE SERVICE OF SUIT OR INSTITUTION OR ARBITRATION PROCEEDING AGAINST THE INSURED.

**Policy Number**
**GLO 3737031-14**

**ENDORSEMENT**

# ZURICH AMERICAN INSURANCE COMPANY

Named Insured MACANDREWS & FORBES

Effective Date: 07-01-18
12:01 A.M., Standard Time

Agent Name AON RISK SERVICES NORTHEAST INC.

Agent No. 50522-000

## EMPLOYED LAWYERS PROFESSIONAL LIABILITY COVAGE ENDORSEMENT

"CLAIMS EXPENSE" MEANS

(1) FEES CHARGED BY AN ATTORNEY(S);

(2) ALL OTHER FEES, COSTS, AND EXPENSES RESULTING FROM THE INVESTIGATION, ADJUSTMENT, DEFENSE AND APPEAL OF A CLAIM, SUIT, OR PROCEEDING ARISING IN CONNECTION THEREWITH.

"EMPLOYER" MEANS THE PERSON OR ENTITY DESIGNATED AS SUCH IN ITEM 1 OF THE DECLARATIONS.

"POLICY PERIOD" MEANS THE PERIOD OF TIME BETWEEN THE INCEPTION DATE SHOWN IN THE DECLARATIONS AND THE EFFECTIVE DATE OF TERMINATION, EXPIRATION OR CANCELLATION OF COVERAGE.

WITH RESPECT TO THE INSURANCE AFFORDED BY THIS ENDORSEMENT, ITEM 10. "PERSONAL INJURY," IN THE DEFINITIONS OF THE POLICY FORM, IS DELETED IN ITS ENTIRETY AND REPLACED AS FOLLOWS:

"PERSONAL INJURY" MEANS

(1) FALSE ARREST, DETENTION OR IMPRISONMENT, WRONGFUL ENTRY OR EVICTION OR OTHER INVASION OF THE RIGHT OF PRIVATE OCCUPANCY, OR MALICIOUS PROSECUTION;

(2) THE PUBLICATION OR UTTERANCE OF A LIBEL OR SLANDER OR OTHER DEFAMATORY OR DISPARAGING MATERIAL, OR A PUBLICATION OR AN UTTERANCE IN VIOLATION OF AN INDIVIDUAL'S RIGHT OF PRIVACY.

**Policy Number**
**GLO 3737031-14**

**ENDORSEMENT**

# ZURICH AMERICAN INSURANCE COMPANY

Named Insured MACANDREWS & FORBES

Effective Date: 07-01-18
12:01 A.M., Standard Time

Agent Name AON RISK SERVICES NORTHEAST INC.

Agent No. 50522-000

## INSURANCE AGENTS & BROKERS PROFESSIONAL LIABILITY ENDORSEMENT

THE PROVISIONS OF THIS ENDORSEMENT APPLY ONLY AS RESPECTS INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY COVERAGE AFFORDED HEREUNDER.

SECTION I - COVERAGE IS AMENDED TO INCLUDE THE FOLLOWING: INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY
1. INSURING AGREEMENT

1. COVERAGE F - ERRORS AND OMISSIONS IS AMENDED TO READ

   TO PAY THE INSURED ALL SUMS WHICH THE INSURED SHALL BECOME LEGALLY OBLIGATED TO PAY AS DAMAGES RESULTING FROM ANY CLAIM OR CLAIMS ARISING FROM ANY WRONGFUL ACT OF THE INSURED OR OF ANY OTHER PERSON FOR WHOSE ACTIONS THE INSURED IS LEGALLY RESPONSIBLE, BUT ONLY IF SUCH WRONGFUL ACT OCCURS DURING OR PRIOR TO THE POLICY PERIOD AND SOLELY IN RENDERING OR FAILING TO RENDER PROFESSIONAL SERVICES OF MACANDREWS & FORBES INCORPORATED IN THE INSURED’S CAPACITY AS AN INSURANCE AGENT, INSURANCE BROKER, INSURANCE CONSULTANT OR NOTARY PUBLIC.

2. DEFENSE

   NOTWITHSTANDING ANYTHING IN THIS CLAUSE, IT IS UNDERSTOOD AND AGREED THAT AS RESPECTS SUPPLEMENTARY PAYMENTS, THE POLICY REMAINS UNALTERED. DEFENSE COSTS ARE IN ADDITION TO THE LIMIT OF LIABILITY

SECTION II -WHO IS AN INSURED IS DELETED IN ITS ENTIRETY AND REPLACED BY THE FOLLOWING WITH RESPECT TO THE INSURANCE AFFORDED BY THIS ENDORSEMENT. INSURED MEANS THE INDIVIDUAL, PARTNERSHIP, CORPORATION OR OTHER ENTITY NAMED IN ITEM 1 OF THE DECLARATIONS AND SHALL INCLUDE ANY PARTNER, DIRECTOR, OFFICER OR EMPLOYEE THEREOF SOLELY WHILE ACTING WITHIN THE SCOPE OF HIS DUTIES AS SUCH.

EXCLUSIONS:

THIS INSURANCE DOES NOT APPLY:

A) TO ANY CLAIM ALLEGING FRAUD, DISHONESTY, CRIMINAL OR MALICIOUS ACTS OR OMISSIONS:

B) TO ANY CLAIM ALLEGING DISCRIMINATION;

C) TO ANY CLAIM FOR OR ALLEGING BODILY INJURY TO, OR SICKNESS, DISEASE OR DEATH OF ANY PERSON, OR DAMAGE TO OR DESTRUCTION OF ANY PROPERTY, INCLUDING THE LOSS OF USE THEREOF;

D) TO ANY CLAIM ARISING OUT OF THE ACTIVITIES OF ANY INSURED IN REGARD TO ANY "EMPLOYEE PENSION BENEFIT PLAN" AND/OR "EMPLOYEE WELFARE BENEFIT PLAN," AS THOSE TERMS ARE DEFINED IN THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED, SPONSORED BY ANY INSURED OR ANY FIRM WHICH ANY INSURED OWNS OR CONTROLS, OR IN REGARD TO ANY SUCH PLAN IN WHICH ANY INSURED IS A PARTICIPANT OR A NAMED FIDUCIARY AS THAT TERM IS USED UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED;

**Policy Number**
**GLO 3737031-14**

**ENDORSEMENT**

## ZURICH AMERICAN INSURANCE COMPANY

Named Insured MACANDREWS & FORBES

Effective Date: 07-01-18
12:01 A.M., Standard Time

Agent Name AON RISK SERVICES NORTHEAST INC.

Agent No. 50522-000

**INSURANCE AGENTS & BROKERS PROFESSIONAL LIABILITY ENDORSEMENT**

E) TO ANY CLAIM ARISING DIRECTLY OR INDIRECTLY OUT OF ANY ACTUAL OR ALLEGED DISCHARGE, DISPERSAL, RELEASE, ESCAPE, OR USE OF ASBESTOS, TOXIC SUBSTANCES OR POLLUTANTS, INCLUDING BUT NOT LIMITED TO ANY FAILURE TO EFFECT AND MAINTAIN INSURANCE OR BOND WITH RESPECT THERETO;

F) TO ANY WRONGFUL ACT COMMITTED WITH KNOWLEDGE THAT IT WAS A WRONGFUL ACT;

SECTION III-LIMIT OF INSURANCE IS DELETED IN ITS ENTIRETY AND REPLACED BY THE FOLLOWING AS RESPECTS THE INSURANCE AFFORDED BY THIS ENDORSEMENT.

A) OCCURRENCE LIMIT

THE LIMIT OF LIABILITY STATED IN THE DECLARATIONS AS PER OCCURRENCE IS THE TOTAL LIMIT OF OUR LIABILITY FOR LOSSES SUSTAINED BY ONE OR MORE PERSONS OR ORGANIZATIONS AS A RESULT OF ANY ONE (1) OCCURRENCE. THIS ENDORSEMENT IS SUBJECT TO AN OCCURRENCE DEDUCTIBLE EQUAL TO THE LIMIT OF LIABILITY DEDUCTIBLE SO THAT THE COMPANY HAS NO INSURANCE RISK FOR THE SCOPE OF COVERAGE PROVIDED BY THIS ENDORSEMENT.

B) GENERAL AGGREGATE LIMIT OF LIABILITY
NOTWITHSTANDING THAT THE COMPANY HAS NO INSURANCE RISK FOR THE SCOPE OF INSURANCE PROVIDED BY THIS ENDORSEMENT, ALL AMOUNTS PAID UNDER THE DEDUCTIBLE BY OR ON BEHALF OF THE INSURED SHALL BE CHARGED AND ACCRUE TO THE GENERAL AGGREGATE LIMIT OF LIABILITY STATED IN THE DECLARATIONS OF THE POLICY.

SECTION IV-CONDITIONS IS AMENDED TO INCLUDE THE FOLLOWING:

1. POLICY TERRITORY

THIS INSURANCE ONLY APPLIES TO WRONGFUL ACTS COMMITTED IN, OR SUITS BROUGHT AGAINST THE INSURED IN, THE UNITED STATES OF AMERICA, ITS TERRITORIES OR POSSESSIONS, OR CANADA.

IT IS UNDERSTOOD AND AGREED THAT AGGREGATE LIMITS OF LIABILITY AS LISTED ON THE DECLARATIONS PAGE SHALL REMAINED UNCHANGED.

SECTION V- DEFINITION IS AMENDED AS FOLLOWS
THE FOLLOWING DEFINITIONS ARE ADDED

"POLICY PERIOD" MEANS THE PERIOD FROM THE INCEPTION DATE OF THIS POLICY SHOWN IN ITEM 2 OF THE DECLARATIONS TO THE EARLIER OF THE EXPIRATION SHOWN IN ITEM 2 OF THE DECLARATIONS OR THE EFFECTIVE DATE OF CANCELLATION OF THIS POLICY.

"WRONGFUL ACTS," MEANS ANY ACTUAL OR ALLEGED:

A) NEGLIGENT ACT, ERROR OR OMISSION; OR,

B) FALSE ARREST, DETENTION, OR IMPRISONMENT; OR,

**Policy Number**
**GLO 3737031-14**

**ENDORSEMENT**

## ZURICH AMERICAN INSURANCE COMPANY

Named Insured MACANDREWS & FORBES

Effective Date: 07-01-18
12:01 A.M., Standard Time

Agent Name AON RISK SERVICES NORTHEAST INC.

Agent No. 50522-000

**INSURANCE AGENTS & BROKERS PROFESSIONAL LIABILITY ENDORSEMENT**

C) THE PUBLICATION OR UTTERANCE OF A LIBEL OR SLANDER OF OTHER DEFAMATORY OR DISPARAGING MATERIAL, OR A PUBLICATION OR UTTERANCE IN VIOLATION OF AN INDIVIDUAL'S RIGHT OF PRIVACY; OR,

D) WRONGFUL ENTRY OR EVICTION, OR OTHER INVASION OF THE RIGHT OF PRIVACY OCCUPANCY.

**Policy Number**
**GLO 3737031-14**

**ENDORSEMENT**

# ZURICH AMERICAN INSURANCE COMPANY

Named Insured MACANDREWS & FORBES

Effective Date: 07-01-18
12:01 A.M., Standard Time

Agent Name AON RISK SERVICES NORTHEAST INC.

Agent No. 50522-000

**DECLARATIONS-EMPLOYED LAWYERS-INS AGENTS**

DECLARATIONS- EMPLOYED LAWYERS PROFESSIONAL LIABILITY COVERAGE
- INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY

POLICY NUMBER: GLO 3737031-13

LIMITS OF INSURANCE:

$1,000,000 ANY ONE OCCURRENCE SUBJECT TO THE POLICY GENERAL AGGREGATE LIMITS OF LIABILITY FOR EMPLOYED LAWYERS PROFESSIONAL LIABILITY COVERAGE

$1,000,000 ANY ONE OCCURRENCE SUBJECT TO THE POLICY GENERAL AGGREGATE LIMITS OF LIABILITY FOR INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY

FORM OF BUSINESS:

| | | |
|---|---|---|
| INDIVIDUAL | PARTNERSHIP | JOINT VENTURE |
| X CORPORATION | OTHER ---------- | |

PREMIUM SCHEDULE:

| CODE NO. | PREMIUM BASIS (EST. NUMBER OF EMP.) | RATE | | ADVANCE PREMIUM |
|---|---|---|---|---|
| INCLUDED | IF ANY | $-- | PER EMPLOYEE | $----- |
| | | $INCL. | FLAT CHARGE | $INCLUDED |

TOTAL ADVANCE PREMIUM FOR THIS COVERAGE PART: $ INCLUDED

AUDIT PERIOD: X ANNUAL SEMI-ANNUAL QUARTERLY MONTHLY

FORMS AND ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

-EMPLOYED LAWYERS PROFESSIONAL LIABILITY COVERAGE

-INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY

# Tobacco Health Hazard Exclusion

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

1. The following exclusion is added to **2. Exclusions** of **Section I - Coverage A - Bodily Injury and Property Damage Liability**:

   This insurance shall not apply to:

   **Tobacco Health Hazard**

   Any liability for "bodily injury" or "property damage" based upon or arising out of:

   **1.** "Health hazards" from the use of tobacco;

   **2.** "Health hazards" caused or contributed to by second-hand smoke from tobacco products;

   **3.** The furnishing of tobacco products to a person under the legal smoking age; or

   **4.** Any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of tobacco.

2. The following exclusion is added to **2. Exclusions** of **Section I. Coverage B - Personal and Advertising Injury Liability**:

   This insurance shall not apply to:

   **Tobacco Health Hazard**

   Any liability for "personal and advertising injury" based upon or arising out of :

   **1.** "Health hazards" from the use of tobacco;

   **2.** "Health hazards" caused or contributed to by second-hand smoke from tobacco products;

   **3.** The furnishing of tobacco products to a person under the legal smoking age; or

   **4.** Any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of tobacco.

3. For purposes of this exclusion, the following definition applies:

   "Health hazards" means tobacco related diseases and conditions including, but not limited to, cancer, arteriosclerosis, heart disease, lung disease, and emphysema, as well as other metabolic effects of tobacco use including, but not limited to, shortness of breath, low resistance to infection or disease, psychological or mental injury, or addiction.

ZURICH

# Revised Definition of Spouse Endorsement

| THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. | |
|---|---|
| Policyholder | MACANDREWS & FORBES INCORPORATED |
| Policy No. | GLO 3737031-14 |
| Effective Date: | 07/01/2018 |

It is hereby understood and agreed that the following changes are made and incorporated into the Policy/Certificate:

**PURPOSE:** California law provides that registered domestic partners have the same rights, protections, and benefits, and are subject to the same responsibilities, obligations, and duties under law, whether they derive from statutes, administrative regulations, court rules, government policies, common law, or any other provisions or sources of law, as are granted to and imposed upon spouses. Existing law requires, where necessary to implement the rights of registered domestic partners, gender-specific terms referring to spouses to be construed to include domestic partners.

**DEFINITIONS, TERMS, CONDITIONS AND PROVISIONS:**
The definitions, terms, conditions or any other provisions of the policy, contract, certificate and/or riders and endorsements to which this mandatory endorsement is attached are hereby amended and superseded as follows:

**Spouse** includes a Registered Domestic Partner.

Except for the above, this endorsement does not vary, alter, waive, or extend any of the terms of the **Policy/Certificate** to which it is attached.

Endorsement No. [ 0 ]

Insurance Company ZURICH AMERICAN INSURANCE COMPANY

______________________________ Date:______________

Countersigned by

**Insured Name:**
**Policy Number:**
**Effective Date:**

ZURICH

**THIS DISCLOSURE IS ATTACHED TO AND MADE PART OF YOUR POLICY.**

# DISCLOSURE OF IMPORTANT INFORMATION RELATING TO TERRORISM RISK INSURANCE ACT

**SCHEDULE***

| |
|---|
| Premium attributable to risk of loss from certified acts of terrorism for lines of insurance subject to TRIA: |
| INCLUDED |

*Any information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act ("TRIA"), as amended, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of premium attributable is shown in the Schedule above. The premium shown in the Schedule above is subject to adjustment upon premium audit, if applicable.

**B. Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States Government may pay a share of insured losses resulting from an act of terrorism. The federal share will decrease by 5% from 85% to 80% over a five year period while the insurer share increases by the same amount during the same period. The schedule below illustrates the decrease in the federal share:

January1, 2015 – December 31, 2015 federal share: 85%

January1, 2016 – December 31, 2016 federal share: 84%

January1, 2017 – December 31, 2017 federal share: 83%

January1, 2018 – December 31, 2018 federal share: 82%

January1, 2019 – December 31, 2019 federal share: 81%

January1, 2020 – December 31, 2020 federal share: 80%

**C. Disclosure of $100 Billion Cap on All Insurer and Federal Obligations**

If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a calendar year (January 1 through December 31) and an insurer has met its deductible under the program, that insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**D. Availability**

As required by TRIA, we have made available to you for lines subject to TRIA coverage for losses resulting from acts of terrorism certified under TRIA with terms, amounts and limitations that do not differ materially from those for losses arising from events other than acts of terrorism.

**E. Definition of Act of Terrorism under TRIA**

TRIA defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism. The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

**1.** To be an act of terrorism;


Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**2.** To be a violent act or an act that is dangerous to human life, property or infrastructure;

**3.** To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

**4.** To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.


Copyright © 2015 Zurich American Insurance Company

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# SANCTIONS EXCLUSION ENDORSEMENT

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

The following exclusion is added to the policy to which it is attached and supersedes any existing sanctions language in the policy, whether included in an Exclusion Section or otherwise:

SANCTIONS EXCLUSION

Notwithstanding any other terms under this policy, we shall not provide coverage nor will we make any payments or provide any service or benefit to any insured, beneficiary, or third party who may have any rights under this policy to the extent that such cover, payment, service, benefit, or any business or activity of the insured would violate any applicable trade or economic sanctions law or regulation.

The term policy may be comprised of common policy terms and conditions, the declarations, notices, schedule, coverage parts, insuring agreement, application, enrollment form, and endorsements or riders, if any, for each coverage provided. Policy may also be referred to as contract or agreement.

We may be referred to as insurer, underwriter, we, us, and our, or as otherwise defined in the policy, and shall mean the company providing the coverage.

Insured may be referred to as policyholder, named insured, covered person, additional insured or claimant, or as otherwise defined in the policy, and shall mean the party, person or entity having defined rights under the policy.

These definitions may be found in various parts of the policy and any applicable riders or endorsements.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

ZURICH®

## Important Notice

# Texas Safety Consultation Services

Zurich in North America has loss control services available at no additional charge.

If you would like additional information regarding these services, please contact us at the address, or phone listed below.

Zurich Services Corporation
Risk Engineering
1299 Zurich Way
Schaumburg, Illinois 60196-1056
1-800-982-5964

**By email:** **risk.engineering@zurichna.com**

# Illinois Civil Union Act Policyholder Notice

ZURICH®

On June 1, 2011, Public Act 96-1513, the Religious Freedom Protection and Civil Union Act ("the Act") became effective. Under the Act, both same-sex and opposite-sex couples may enter into a civil union. A party to a civil union is entitled to the same legal obligations, responsibilities, protections, and benefits as are afforded or recognized by the law of Illinois a spouse; whether they derive from statute, administrative rule, common law, or any other source of civil or criminal law. A marriage between persons of the same sex, a civil union, or a substantially similar legal relationship other than common law marriage, legally entered into in another jurisdiction, shall be legally recognized in Illinois as a civil union.

**CAUTION: FEDERAL LAW RIGHTS MAY OR MAY NOT BE AVAILABLE:**
Illinois law grants parties to a civil union the same benefits, protections and responsibilities that flow from marriage under state law. However, some or all of the benefits, protections and responsibilities related to health insurance that are available to married persons under federal law may not be available to parties to a civil union. For example, the Employee Retirement Income Security Act of 1974, a federal law known as "ERISA" controls the employer/employee relationship with regard to determining eligibility for enrollment in private employer health benefit plans. Because of ERISA, Act 91 does not state requirements pertaining to a private employer's enrollment of a party to a civil union in an ERISA employee welfare benefit plan. However, governmental employers (not federal government) are required to provide health benefits to the dependents of a party to a civil union if the public employer provides health benefits to the dependents of married persons. Federal law also controls group health insurance continuation rights under "COBRA" for employers with 20 or more employees as well as the Internal Revenue Code treatment of health insurance premiums. As a result, parties to a civil union and their families may or may not have access to certain benefits under this policy, contract, certificate, rider or endorsement that derive from federal law. You are advised to seek expert advice to determine your rights.

ZURICH®

# Colorado Civil Union Act

# Policyholder Notice

On January 1, 2014, the Civil Union Act ("the Act") becomes effective. Under the Act, two persons of the same sex may enter into a civil union. A party to a civil union is entitled to the same legal obligations, responsibilities, protections, and benefits as are afforded or recognized by the law of Colorado to a spouse; whether they derive from statute, administrative rule, common law, or any other source of civil or criminal law.

The Act further provides that a party to a civil union shall be included in any definition or use of the term "dependent", "family", "heir", "immediate family", "next of kin", "spouse", and other terms that denote a familial or spousal relationship.

A marriage between persons of the same sex, a civil union, domestic partnerships or a substantially similar legal relationship, legally entered into in another jurisdiction, shall be legally recognized in Colorado as a civil union.