# EXHIBIT E

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| REVLON GROUP HOLDINGS COMPANY, LLC AND REVLON CONSUMER PRODUCTS LLC (f/k/a REVLON CONSUMER PRODUCTS CORPORATION),<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,<br><br>Defendant. | Index No.:<br><br>Date Purchased:<br><br>**SUMMONS** |

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiffs' attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Venue is proper pursuant to N.Y. C.P.L.R. § 503. The bases of venue are that New York County is the County of plaintiffs' domicile and is also the County in which the substantial part of the events or omissions giving rise to the claim occurred.

Dated: November 15, 2024
New York, New York

**COHEN ZIFFER FRENCHMAN & MCKENNA, LLP**

By: ____________

Keith McKenna
Jillian M. Raines
Morgan L. Greene
1325 Avenue of the Americas, 31st Fl.
New York, NY 10019
Telephone: (212) 584-1890
Fax: (212) 584-1891
kmckenna@cohenziffer.com
jraines@cohenziffer.com
mgreene@cohenziffer.com

*Attorneys for Plaintiffs Revlon Group Holdings LLC and Revlon Consumer Products LLC (f/k/a Revlon Consumer Products Corp.)*

TO:

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.
1271 Ave of the Americas, Floor 41
New York, NY 10020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| REVLON GROUP HOLDINGS COMPANY, LLC AND REVLON CONSUMER PRODUCTS LLC (f/k/a REVLON CONSUMER PRODUCTS CORPORATION)<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>Defendant. | Index No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Revlon Group Holdings Company, LLC (as the reorganized successor to Revlon, Inc.) and Revlon Consumer Products LLC (f/k/a Revlon Consumer Products Corp.) (together, "Revlon"), by and through their undersigned counsel, as and for their Complaint against Defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("Defendant" or "AIG"), allege as follows:

## NATURE OF THE ACTION

1. Revlon is a multinational business that, among other things, has been involved in the personal and beauty care products business for nearly one hundred years. Some of the products that Revlon's business has produced, manufactured, distributed, and/or sold were hair straightening or relaxing products.

2. Revlon, Inc. and certain of its subsidiaries filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in June 2022, and emerged from bankruptcy in May 2023. Revlon Group Holdings Company, LLC is the reorganized successor to Revlon, Inc.

3. Beginning in early 2023, while Revlon was still in bankruptcy and subject to an automatic stay of litigation, individuals or representatives of individuals who allegedly used hair straightening or hair relaxer products during various time periods, including the 1970s and 1980s, filed claims and suits against Revlon and other companies that also produced, manufactured, distributed, and/or sold hair straightening or hair relaxer products alleging that use of such products caused cancers and other physical harms and bodily injuries, including death, and seeking, among other relief, damages because of such injuries. To date, more than 30,000 claims have been filed in Revlon's bankruptcy proceedings, *In re: RML, LLC*, No. 22-10784 (Bankr. S.D.N.Y.), by claimants alleging various types of bodily injuries from their use of or exposure to Revlon hair straightener or hair relaxer products. Revlon has been defending against these claims through the bankruptcy claims objection process and in accordance with the provisions of its confirmed bankruptcy plan of reorganization.

4. Relatedly, to date, thousands of personal injury complaints and a putative class action complaint have been filed against Revlon and other beauty care industry defendants, in a multi-district litigation, styled, *In Re: Hair Relaxer Marketing Sales Practices and Products Liability Litigation*, No. 1:23-cv-00818 (N.D. Ill.) (together with *In re: RML, LLC*, No. 22-10784 (Bankr. S.D.N.Y.), the "Hair Relaxer Litigation"). While Revlon has been defending against the Hair Relaxer Litigation, pursuant to the terms of Revlon's confirmed bankruptcy reorganization plan, any settlements or judgments entered in the litigation must be recovered solely from Revlon's bankruptcy estate or from Revlon's insurance companies, like AIG.

5. To protect itself against claims and suits like those presented by the Hair Relaxer Litigation, Revlon obtained broad general liability policies that cover injuries like those at issue in the Hair Relaxer Litigation, including certain insurance policies issued by AIG. A list of AIG

liability policies that are presently known or believed to cover Revlon for such injuries (the "Policies") is attached to this complaint as Exhibit 1. Revlon reserves the right to amend, modify, or supplement this list if it obtains additional policy information.

6. Among the AIG Policies covering Revlon are three primary commercial general liability policies that collectively cover the period from April 1, 1988 through April 1, 1990 (the "Triggered AIG Policies"), all of which provide Revlon with uncapped defense coverage in addition to policy limits and have no applicable exclusions or limitations to coverage for the Hair Relaxer Litigation.

7. Yet, when Revlon turned to AIG to honor its coverage obligations and pay for the millions of dollars Revlon has been forced to expend in its defense against the Hair Relaxer Litigation, AIG failed to honor its contractual promises to Revlon and breached its duty of good faith and fair dealing owed to Revlon.

8. Instead, in the more than a year that has passed since Revlon provided timely notice to AIG for the Hair Relaxer Litigation, AIG effectively abandoned its insured.

9. AIG knew that Revlon's historical insurance policy records were incomplete, yet for more than nineteen months, AIG ignored Revlon's requests for policy information, forcing Revlon to incur significant funds in seeking to obtain AIG policies, including the Triggered AIG Policies, from third parties. AIG also failed to promptly investigate and respond to Revlon's coverage request or to provide AIG's complete coverage position under all of its insurance policies, including all of the Triggered AIG Policies. Although notice of the Hair Relaxer Litigation was given approximately 19 months ago, to date, AIG has not paid anything towards defense costs in that litigation.

10. It was only after months of delay, after Revlon itself procured copies of AIG policies showing that AIG clearly agreed to cover claims and suits like those at issue in the Hair Relaxer Litigation, and after Revlon finally demanded that AIG advise within one week whether it would honor its defense obligation and pay 100% of Revlon's defense costs in the Hair Relaxer Litigation that AIG bothered to provide a substantive coverage response under the full universe of Triggered AIG Policies and several other AIG Policies. And even then, and despite having copies of Revlon defense invoices totaling millions of dollars and the complaints at issue in the Hair Relaxer Litigation for many months, AIG only agreed *to begin* reviewing the invoices that Revlon long ago had provided and to pay an unidentified "pro rata" share of an unidentified portion of defense costs for an unidentified subset of claims and suits at issue in the Hair Relaxer Litigation—all subject to various reservations of rights.

11. The only excuse AIG has offered for its unreasonable delay and failure to honor its defense obligations to Revlon is that other insurers also issued insurance policies to Revlon triggered by the Hair Relaxer Litigation. But none of Revlon's other insurers has unequivocally agreed to pay or in fact paid anything towards Revlon's defense costs in the Hair Relaxer Litigation. And, whether and to what extent any other insurance company also may owe a defense obligation to Revlon, does not vitiate AIG's independent obligation to provide Revlon a full and complete defense under any one of the Triggered AIG Policies. In short, AIG has no legitimate excuse for its failure to pay Revlon's defense costs in the Hair Relaxer Litigation.

12. Because of AIG's failure to adjust Revlon's claim in good faith and to honor its present duty to defend, Revlon is forced to bring this action against AIG to force it to comply with its obligations under the insurance policies it issued to Revlon.

## THE PARTIES

13. Plaintiff Revlon Group Holdings LLC ("RGH") is the reorganized successor to Revlon, Inc. RGH is limited liability company organized and existing under the laws of Delaware with its principal place of business at 55 Water St., New York, NY 10041.

14. Plaintiff Revlon Consumer Products LLC (f/k/a Revlon Consumer Products Corporation) ("RCP") is a limited liability company organized under the laws of Delaware, with its principal place of business at 55 Water St., New York, New York 10041.

15. Upon information and belief, Defendant National Union Fire Insurance Company of Pittsburgh, Pa. is a company organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 1271 Ave of the Americas, Floor 41, New York, NY 10020.

## JURISDICTION & VENUE

16. This Court has personal jurisdiction over the Defendant pursuant to C.P.L.R. § 301 as the Defendant is domiciled in the State of New York and regularly conducts business within the State of New York.

17. Venue is proper in this Court pursuant to C.P.L.R. § 503. New York County is the county of Plaintiffs' domicile and is also the county in which the substantial part of the events or omissions giving rise to the claim occurred.

## FACTUAL ALLEGATIONS

### I. REVLON'S BANKRUPTCY AND THE HAIR RELAXER LITIGATION

18. On or about June 16, 2022, Revlon, Inc. and certain of its subsidiaries entered Chapter 11 bankruptcy proceedings. On May 2, 2023, the Revlon entities emerged from bankruptcy. "Revlon Group Holdings, LLC" is the reorganized successor to Revlon, Inc. that emerged from bankruptcy.

19. In early 2023, while Revlon was in bankruptcy and subject to an automatic stay of litigation, claimants represented by multiple law firms commenced proceedings in the Bankruptcy Court seeking to file proofs of claim alleging that their use of or exposure to certain Revlon hair straightener and/or hair relaxer products caused cancer and/or other physical and bodily injuries, including death. Ultimately, more than 30,000 such claims were filed in the bankruptcy proceedings. Following Revlon's emergence from chapter 11 bankruptcy and the lifting of the automatic stay of litigation, in May 2023, numerous of these same claimants filed lawsuits against Revlon (and others in the beauty care industry) in federal courts across the country, which complaints have been consolidated in a multi-district litigation, styled, *In Re: Hair Relaxer Marketing Sales Practices and Products Liability Litigation*, No. 1:23-cv-00818 (N.D. Ill.) (the "MDL").

20. Underlying plaintiffs in the MDL filed an operative master personal injury complaint and a consolidated class action complaint on or about August 14, 2023. They also subsequently filed individual "short form" personal injury complaints against Revlon and/or others.

21. The claims in the Hair Relaxer Litigation allege the possibility that Revlon's hair straightener and hair relaxer products caused bodily injuries to underlying plaintiffs during the policy periods of the Policies that AIG insured Revlon, including specifically the periods of coverage of the Triggered AIG Policies, *i.e.*, April 1, 1988 through April 1, 1990.

22. These claims, for example, allege that underlying plaintiffs used certain hair straightening or relaxer products manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Revlon during various time periods, including the

1970s and 1980s, and that such use caused cancers and other physical harms and bodily injuries to the underlying plaintiffs.

23. Revlon strongly disputes and is actively defending against the allegations in the Hair Relaxer Litigation. Revlon has retained the law firms of Paul, Weiss, Rifkind, Wharton & Garrison ("Paul Weiss") and Hawkins Parnell & Young LLP ("Hawkins Parnell") to serve as defense counsel in the Hair Relaxer Litigation. As is customary in defense of mass tort claims, those firms have engaged third party providers to support, among other efforts, discovery and medical records review.

24. To date, Revlon's vigorous defense of the Hair Relaxer Litigation in the Bankruptcy Court and the MDL have led to the dismissal and expungement of many thousands of the bankruptcy claims and the dismissal of more than a thousand MDL complaints, all redounding to the benefit of AIG and Revlon's other insurers.

25. However, although AIG and/or other insurers have benefitted from this defense and should be fully funding the defense, Revlon alone has borne the significant costs of those defense efforts. Worse, it has done so during a critical time in Revlon's post-bankruptcy transformation, when it needs to focus available resources on business strategies and not on footing the bill for AIG's and other insurers' obligations.

26. Revlon's significant defense costs are expected to continue. Notwithstanding the extensive work (and related successes) to date, Revlon still faces thousands of claims in the Hair Relaxer Litigation.

27. Certain claimants continue to file pleadings in the Bankruptcy Court and/or in the MDL attempting to bring additional claims of bodily injury from use of or exposure to Revlon's hair straightening and/or hair relaxer products, often in violation of the provisions of Revlon's plan

of reorganization. Revlon has had to defend against these claims and, to the extent the claims have been filed in violation of Revlon's confirmed plan of reorganization, to seek their dismissal—without AIG's and other insurers' required financial support.

28. Moreover, at this juncture, more than 6,000 claimants are still pursuing claims against Revlon in the MDL. And, additional complaints may be filed in the MDL, because certain claimants preserved their rights in the bankruptcy proceedings to file actions against Revlon in the future in the event of certain future medical diagnoses.

29. AIG's ongoing and knowing failure to adjust Revlon's claim in good faith and to honor its duty to defend has caused significant economic harm to Revlon and continues to impose a substantial financial burden on Revlon.

30. As of the date of this complaint, Revlon has incurred millions of dollars in defense costs, and those costs are continuing to mount.

31. As of the date of this complaint, there have been no judgments against Revlon or settlements in the Hair Relaxer Litigation.

## II. THE AIG POLICIES

32. Because the Hair Relaxer Litigation alleges harmful exposures and injuries dating back decades, it implicates coverage afforded by AIG liability insurance policies covering Revlon since at least the 1970s, including the Triggered AIG Policies, because those policies generally cover claim and suits seeking damages for injuries that potentially or actually occurred during their policy periods.

33. For example, each of the Triggered AIG Policies is a primary policy that owes "first-dollar" defense coverage for, among other things, any lawsuit against an insured alleging that the insured's products caused bodily injury during the policy period.

34. The Triggered AIG Policies, among other things, cover damages because of bodily injury that occur during the policy periods. Under their plain terms and applicable law, each of the Triggered AIG Policies also includes a duty to defend any "suit" alleging or potentially alleging such damages and defines "suit" to include, among other things, "a civil proceeding in which damages because of 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' to which this insurance applies are alleged."

35. None of the Triggered AIG Policies has a deductible or self-insured retention that applies to defense costs.

36. Thus, because the claims and lawsuits at issue in the Hair Relaxer Litigation qualify as "suits" and allege the possibility that products manufactured, distributed, or sold by Revlon caused injury during the policy periods of the Triggered AIG Policies, each of the Triggered AIG Policies has an independent obligation to pay all defense costs that Revlon incurs in connection with such "suits."

**A. The 1988 Triggered AIG Policy**

37. National Union Fire insurance Company of Pittsburgh, Pa. Policy No. RM GLA 2493652, with a policy period of April 1, 1988 to April 1, 1989 (the "'88 AIG Primary Policy"), is a primary general liability policy issued by AIG that provides various coverages, including coverage for claims or suits alleging damages because of "bodily injury."

38. Revlon Group Inc. is the first Named Insured under the '88 AIG Primary Policy, but the policy broadly extends coverage as well to "its subsidiaries, Associated and Affiliated Companies, Joint Ventures, as now or may hereafter be constituted and any entity which is acquired or formed and over which the named insured maintains ownership financial interest, or comes under the active management of the named insured." The Revlon defendants in the Hair Relaxer Litigation qualify as insureds under this policy language.

39. The '88 AIG Primary Policy provides various insuring agreements, including an insuring agreement that obligates AIG to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and to "defend any 'suit' seeking those damages."

40. A Supplementary Payments provision in the '88 AIG Primary Policy states that AIG "will pay with respect to any claim or 'suit' we defend," among other things, "[a]ll expenses we incur" and "[a]ll reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or 'suit'." This provision further states that such supplementary payments "will not reduce the limits of insurance."

41. The '88 AIG Primary Policy states that it applies to "bodily injury" that occurs during the policy period and is caused by an "occurrence" that takes place in the "coverage territory."

42. The '88 AIG Primary Policy's "coverage territory" includes "[a]nywhere in the world," including the United States.

43. The '88 AIG Primary Policy defines "bodily injury" to include "bodily injury, sickness or disease sustained by a person including death resulting from any of these at any time."

44. The '88 AIG Primary Policy defines an "occurrence" to include "an accident, disaster, casualty, happening or event which results in (1) bodily injury, . . .; arising out of continuous or repeated exposure to conditions, or proceeding from, or traceable to, the same causative agency or condition."

45. The '88 AIG Primary Policy provides that its "duty to defend end[s] when we have used up the applicable limit of insurance in the payment of judgments or settlements."

46. The '88 AIG Primary Policy provides a combined single limit of $1,00,000 per occurrence and $2,750,000 in the aggregate.

47. The '88 AIG Primary Policy does not contain any exclusions that apply to bar or limit AIG's defense obligations to Revlon for the Hair Relaxer Litigation.

48. The '88 AIG Primary Policy does not contain any deductibles or self-insured retentions that apply to AIG's defense obligations to Revlon for the Hair Relaxer Litigation.

49. The '88 AIG Primary Policy provides that "[b]ankrupcty or insolvency of the insured or of the insured's estate will not relieve [AIG] of [its] obligations."

50. The '88 AIG Primary Policy contains a "Non-Cumulative Limits Endorsement" which recognizes that if a claim is covered under the '88 AIG Primary Policy as well as under certain other specified AIG insurance policies, then "the company's limit of liability is not the sum of the limits of liability of those related polices" but "shall be the highest limit of liability applicable under one policy or another of the related" and "[i]n no event, with respect to such a claim, shall the limits of liability of both policies be cumulative."

51. The '88 AIG Primary Policy further provides that "Where [AIG] has issued other similar policies of insurance to the named insured, it is hereby understood and agreed that the named insured may elect to have the terms and conditions of this policy apply."

**B. The 1989 AIG Policies**

52. National Union Fire Insurance Company of Pittsburgh, Pa. Policy Nos. RM GL 459-65-01 and RM GL 459-65-03, both with a policy period of April 1, 1989 to April 1, 1990 (the "'89 AIG Primary Policies"), are primary general liability policies issued by AIG that provide various coverages, including coverage for claims or suits alleging damages because of "bodily injury."

53. Revlon Group Inc. is the first Named Insured under each of the ’89 AIG Primary Policies, but both of the policies broadly extend coverage as well to “its subsidiaries, Associated and Affiliated Companies, Joint Ventures, as now or may hereafter be constituted and any entity which is acquired or formed and over which the named insured maintains ownership financial interest, or comes under the active management of the named insured.” The Revlon defendants in the Hair Relaxer Litigation qualify as insureds under this policy language.

54. The ’89 AIG Primary Policies include various insuring agreements, including insuring agreements that obligate AIG to “pay those sums that the insured becomes legally obligated to pay as damages because of ‘bodily injury’ or ‘property damage’ to which this insurance applies” and to “defend any ‘suit’ seeking those damages.”

55. Supplementary Payments provisions in the ’89 AIG Primary Policies provide that AIG “will pay with respect to any claim or ‘suit’ we defend,” among other things, “[a]ll expenses we incur” and “[a]ll reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or ‘suit’.” These provisions further state that such supplementary payments “will not reduce the limits of insurance.”

56. The ’89 AIG Primary Policies each state that it applies to “bodily injury” that occurs during the policy period and is caused by an “occurrence” that takes place in the “coverage territory.”

57. The ’89 AIG Primary Polies’ “coverage territory” includes “[a]nywhere in the world,” including the United States.

58. The ’89 AIG Primary Policies define “bodily injury” to include “bodily injury, sickness or disease sustained by a person including death resulting from any of these at any time.”

59. The '89 AIG Primary Policies define an "occurrence" to include "an accident, disaster, casualty, happening or event which results in (1) bodily injury, . . .; arising out of continuous or repeated exposure to conditions, or proceeding from, or traceable to, the same causative agency or condition."

60. The '89 AIG Primary Policies provide that AIG's "duty to defend end[s] when we have used up the applicable limit of insurance in the payment of judgments or settlements."

61. Each of the '89 AIG Primary Policies has a combined single limit of $1,000,000 per occurrence and $2,750,000 in the aggregate. Exhaustion or erosion of either '89 AIG Primary Policy's limit applies to erode or exhaust the other's respective limit.

62. The '89 AIG Primary Policies do not contain any exclusions that apply to bar or limit AIG's defense obligations to Revlon for the Hair Relaxer Litigation.

63. The '89 AIG Primary Policies do not contain any deductibles or self-insured retentions that apply to bar or limit AIG's defense obligations to Revlon for the Hair Relaxer Litigation.

64. The '89 AIG Primary Policies provide that "[b]ankrupcty or insolvency of the insured or of the insured's estate will not relieve [AIG] of [its] obligations."

65. The '89 AIG Primary Policies each contain a "Non-Cumulative Limits Endorsement" which recognizes that if a claim is covered under that policy as well as under certain other specified AIG insurance policies, then "the company's limit of liability is not the sum of the limits of liability of those related polices" but "shall be the highest limit of liability applicable under one policy or another of the related" and "[i]n no event, with respect to such a claim, shall the limits of liability of both policies be cumulative."

66. Each of the '89 AIG Primary Policies further provides that "[w]here [AIG] has issued other similar policies of insurance to the named insured, it is hereby understood and agreed that the named insured may elect to have the terms and conditions of this policy apply."

## III. REVLON'S TIMELY NOTICE OF THE HAIR RELAXER LITIGATION AND AIG'S FAILURE TO PAY

67. Revlon provided timely notice to AIG, among other of its insurers, of the Hair Relaxer Litigation.

68. As part of its initial notice to AIG in March of 2023, Revlon requested that AIG provide Revlon with copies of any and all policy documents in AIG's possession that may apply to Revlon's claim.

69. Although AIG acknowledged receipt of Revlon's notice letter on March 27, 2023, AIG did not enclose with this acknowledgment any documents in response to Revlon's request for policy documents or provide any substantive coverage position.

70. To the contrary, AIG did nothing for seven months following Revlon's tender. And when AIG finally did provide a formal coverage position to Revlon in October of 2023, AIG purported to acknowledge a duty to defend Revlon only under one of the '89 AIG Primary Policies and did not specify what amounts of Revlon's rapidly accruing defense costs it would pay. AIG also failed to provide any of the policy documentation requested by Revlon seven months earlier.

71. Notwithstanding AIG's non-action in response to Revlon's coverage requests, Revlon proceeded to keep AIG and Revlon's other insurers fully apprised of all material developments in the Hair Relaxer Litigation, including through (a) written correspondence; (b) conference calls held approximately monthly with insurers and defense counsel to discuss status and developments in the Hair Relaxer Litigation; (c) provision of substantive litigation updates and material court filings; and (d) provision of defense invoices.

72. AIG representatives have attended Revlon's monthly defense calls and have received all of the other substantive Hair Relaxer Litigation updates and invoices from Revlon.

73. Yet, notwithstanding AIG's purported acknowledgement of its present defense obligation in October of 2023, AIG took no steps whatsoever to actually honor its policy obligations to Revlon.

74. Rather, in the year since AIG sent its initial October 2023 coverage letter, AIG never provided Revlon with any of the policy documents and information that Revlon has requested since March of 2023; AIG never supplemented its coverage position to accept Revlon's defense under *all* of the Triggered AIG Policies; and AIG never paid or even committed to pay so much as a dollar of Revlon's defense costs. AIG effectively has left Revlon—which only recently emerged from bankruptcy—to fend for itself and to pay millions of dollars in defense costs on its own.

75. For instance, in January of 2024, Revlon held a call with many of its historical primary insurers, including AIG, in which it specifically reiterated its requests for all policy documents that any insurers had in their possession that related to the Hair Relaxer Litigation. AIG representatives attended this call but still did not provide Revlon with any policy documents.

76. In April of 2024, Revlon again sent AIG another formal written request for policy documents and specifically requested that AIG provide Revlon with its complete coverage position. In addition, Revlon requested additional documents from AIG, including relating to policy exhaustion and prior claim settlements. AIG never bothered to respond to Revlon's letter.

77. Finally, after a year of inaction from AIG, on October 19, 2024, Revlon reiterated its requests to AIG and demanded that, by no later than October 25, 2024, AIG acknowledge its

present and outstanding defense obligation to Revlon under the Triggered AIG Policies and pay Revlon's defense costs incurred in defense of the Hair Relaxer Litigation.

78. Only then, on October 25, 2024, did AIG finally respond to "update" its coverage position.

79. In its belated October 25, 2024 correspondence, AIG finally acknowledged that it had a duty to defend Revlon under multiple AIG policies, including, among others, under the '88 AIG Primary Policy and one of the '89 AIG Primary Policies. However, AIG's correspondence said "there are numerous plaintiffs, all of which were allegedly exposed or potentially sustained injuries at different times, as early as the 1960s" and that AIG only would pay its "pro rata, time on the risk" share of "reasonable and necessary defense costs relative to those Hair Relaxer Lawsuits that allege injury during the applicable policy periods," subject to various reservations of rights and AIG's "audit" of invoices. AIG's letter suggested that certain defense costs were not covered because they "appear to be related to Revlon's bankruptcy proceedings" and "include rates higher than defense counsel agreed to charge for these matters." AIG failed to commit to pay any specific amount of Revlon's defense costs or to identify what invoices or invoice entries or hourly rates AIG contends are not covered or are unreasonable.

80. AIG's belated October 25, 2024 correspondence provides no explanation for AIG's year-long inaction and failure to make any payment towards Revlon's defense costs. And, while it did finally provide some policy documents, AIG still has not provided much of the information that Revlon has repeatedly requested for months.

81. In addition, AIG's October 25, 2024 correspondence erroneously states that one of the Triggered '89 AIG Primary Policies (policy no. RM GL 4596501) applies to Texas claims

only, notwithstanding that the Policy expressly states that its coverage territory extends to claims anywhere in the world.

82. Finally, while AIG's belated October 25, 2024 correspondence indicates that AIG will "participate" in Revlon's defense, it is clear—by AIG's references to an "audit", to unspecified attorneys' fees and rates that it contends are not covered, and to its payment of only a "pro rata, time on the risk" share of defense cost—that AIG intends to pay only a fraction of Revlon's covered defense costs and not the full amount owed under the express terms of its Policies and applicable law.

83. Nothing in the AIG Policies, including the Triggered AIG Policies, or applicable law permits AIG to avoid its obligation to provide Revlon with a complete defense for the Hair Relaxer Litigation. Rather, each of the Triggered AIG Policies (as well as other AIG Policies) independently is obligated to pay all of Revlon's defense expenditures for the cases and claims at issue in the Hair Relaxer Litigation, which by AIG's own admission involve "numerous plaintiffs, all of which were allegedly exposed or potentially sustained injuries at different times, as early as the 1960s."

84. As it is now clear that AIG has failed and refused to honor its defense obligations, including under the Triggered AIG Polices, Revlon is forced to commence this action.

## FIRST CAUSE OF ACTION

**(**Breach of Contract as to Defendant's Duty to Defend)

85. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 84 of this Complaint as if fully set forth herein.

86. The insurance policies that AIG issued to Revlon, including the Triggered AIG Policies, each constitute valid, enforceable contracts between Revlon and AIG, and Revlon seeks

coverage on behalf of insureds under those insurance policies, including the Triggered AIG Policies.

87. The claims and suits at issue in the Hair Relaxer Litigation seek damages because of bodily injury that occurred during each of the AIG Policies at issue in this action, including the Triggered AIG Policies.

88. Revlon provided prompt notice to AIG of the claims and suits at issue in the Hair Relaxer Litigation, and otherwise performed any obligations required of it under its Policies.

89. Numerous of AIG's Policies provide coverage for the Hair Relaxer Litigation, including the Triggered AIG Policies. The allegations made in the claims and suits at issue in the Hair Relaxer Litigation fall within the insuring agreements of AIG's Policies, including the Triggered AIG Policies, and coverage for the Hair Relaxer Litigation is not otherwise excluded under the terms of any of the Policies, including the Triggered AIG Policies.

90. Under the terms of its Policies, including the Triggered AIG Policies, AIG must pay all defense costs that Revlon reasonably has incurred or will incur in its defense against the Hair Relaxer Litigation.

91. Despite AIG's duty to defend Revlon against the Hair Relaxer Litigation and Revlon's request that AIG fully fund Revlon's defense in the Hair Relaxer Litigation, AIG has not paid any amount to Revlon in connection with its claim. By failing to honor its duty and obligation to defend Revlon for the Hair Relaxer Litigation, AIG has breached the terms of its Policies, including of each of the Triggered AIG Policies.

92. As a direct, proximate and legal result of AIG's breach of contract, which is continuing as of the date of this Complaint, Revlon has suffered damages in an amount to be

determined at trial, plus consequential damages, attorneys' fees, and pre- and post-judgment interest to the extent permitted by law.

**SECOND CAUSE OF ACTION**
**(**Declaratory Judgment – Duty to Defend)

93. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 92 of this Complaint as if fully set forth herein.

94. The insurance Policies that AIG issued to Revlon, including the Triggered AIG Policies, each constitute valid, enforceable contracts between Revlon and AIG, and Revlon seeks coverage on behalf of insureds under those insurance policies, including the Triggered AIG Policies.

95. The claims and suits at issue in the Hair Relaxer Litigation seek damages because of bodily injury that occurred during each of the AIG Policies at issue in this action, including the Triggered AIG Policies.

96. Revlon provided prompt notice to AIG of the claims and suits at issue in the Hair Relaxer Litigation, and otherwise performed any obligations required of it under its Policies

97. Numerous of AIG's Policies provide coverage for the Hair Relaxer Litigation, including the Triggered AIG Policies. The allegations made in the claims and suits at issue in the Hair Relaxer Litigation fall within the insuring agreements of AIG's Policies, including the Triggered AIG Policies, and coverage for the Hair Relaxer Litigation is not otherwise excluded under the terms of the Policies.

98. Under the terms of its Policies, including the Triggered AIG Policies, AIG has a duty to pay all defense costs that Revlon reasonably has incurred or will in the future incur in its defense against the Hair Relaxer Litigation.

99. However, Revlon is informed and believes, and on that basis alleges, that AIG disputes that Revlon is entitled to such coverage. Thus, an actionable and justiciable controversy exists between Revlon and AIG concerning the proper construction and application its Policies, including of each of the Triggered AIG Policies, and the rights and obligations of the parties thereto, with respect to the Hair Relaxer Litigation.

100. Revlon seeks a judicial declaration from this Court confirming that AIG's Policies, including each of the Triggered AIG Policies: (1) provides coverage for the claims and suits at issue in the Hair Relaxer Litigation; and (2) obligates AIG to pay in full all defense costs that Revlon reasonably has incurred or will in incur in the future in its defense against the Hair Relaxer Litigation, so long as any such Policy's applicable liability limits remain unexhausted. A declaration is necessary at this time so that the parties' disputes may be resolved and that they may be aware of their respective rights and duties under the AIG Policies, including the Triggered AIG Policies.

101. The issuance of prompt declaratory relief by this Court is desirable and necessary to resolve the existing controversy between the parties.

**THIRD CAUSE OF ACTION**
**(**Breach of the Implied Covenant of Good Faith and Fair Dealing)

102. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 101 of this Complaint as if fully set forth herein.

103. AIG has acted in bad faith and through a pattern of deceptive conduct in connection with its attempts to manage its exposure, without regard for the interests of its insureds, not only for the Hair Relaxer Litigation against Revlon but also, upon information and belief, in connection with other policyholders' claims, including without limitation claims made by other policyholders

for coverage of lawsuits against them seeking damages related to those other policyholders' productions, manufacturing, distribution, and/or sales of hair straightening or relaxing products.

104. New York law imposes on AIG an implied covenant to act in good faith and to deal fairly with Revlon in connection with coverage requests made under the AIG Policies, including the Triggered AIG Policies. This covenant operates to prevent AIG from taking any action that would deprive Revlon of the benefits of the contract or to cause undue hardship or harm to Revlon. In insurance contracts, this covenant requires AIG to investigate coverage requests promptly, to respond to requests for coverage-related information promptly, and to pay covered claims promptly.

105. By its actions, as set forth herein, AIG has breached the implied covenant of good faith and fair dealing by, among other things: (1) falsely disclaiming the existence of additional coverage issued by AIG that is responsive to the Hair Relaxer Litigation; (2) unreasonably, recklessly, knowingly, intentionally, and/or maliciously failing to promptly investigate and respond to Revlon's requests for insurance coverage under AIG's Policies, including the Triggered AIG Policies, and instead delaying provision of AIG's coverage positions for many months and relying on false pretenses to justify AIG's inordinate delays in providing Revlon with copies of AIG's policy documents and information; (3) unreasonably, recklessly, knowingly, intentionally, and/or maliciously failing to promptly review and pay Revlon's defense costs relating to the Hair Relaxer Litigation; (4) unreasonably, recklessly, knowingly, intentionally, and/or maliciously failing to promptly respond to Revlon's reasonable requests for policy documents and information regarding Revlon's coverages despite repeated requests for such information over a period of more than one year; (5) unreasonably, recklessly, knowingly, intentionally, and/or maliciously failing to promptly review the defense invoices that Revlon provided to AIG and to pay or commit to pay

any portion of Revlon's covered defense costs under one or more of the Triggered AIG Policies; (6) arbitrarily, and with reckless disregard for the rights of Revlon, refusing to effectuate prompt, fair, and equitable payment of Revlon's defense costs; (7) purporting to acknowledge a duty to defend suits at issue in the Hair Relaxer Litigation under certain Policies but then unreasonably and knowingly refusing and failing to pay any defense expenses incurred in the defense against the suits at issue in the Hair Relaxer Litigation, let alone all the defense expenses owed under the express terms of AIG's Policies; (8) refusing to pay or reimburse Revlon for its full defense costs, without a reasonable basis; and (9) forcing Revlon to sue for coverage when such coverage is patent.

106. AIG's conduct also has violated the standards of good faith and fair dealing set forth in New York Insurance Law § 2601(a) and its obligations set forth in New York Insurance Law § 3420(d)(2).

107. AIG's conduct has breached the covenant of good faith and fair dealing and evinces such bad faith that no reasonable insurer would, in these circumstances, be expected to engage in such conduct.

108. AIG's conduct has forced Revlon to self-fund its defense against the Hair Relaxer Litigation, diverting resources that Revlon might otherwise have used to pursue business strategies necessary to its growth and prosperity.

109. As a result of AIG's breach of its implied covenant of good faith and fair dealing, Revlon has incurred damages in an amount to be determined at trial.

110. Revlon is entitled to consequential damages flowing from AIG's violation of the implied covenant of good faith and fair dealing, including, without limitation, claim preparation expenses and attorneys' fees, costs, and disbursements incurred by Revlon in enforcing their rights

as a consequence of AIG's bad-faith conduct, including without limitation Revlon's attorneys' fees and costs incurred in pursuing this action.

111. AIG's breach of the implied covenant of good faith and fair dealing has proximately caused and is proximately causing the consequential damages sustained by Revlon.

112. Consequential damages for breach of the implied covenant of good faith and fair dealing in the Triggered AIG Policies was reasonably contemplated by Revlon and AIG at the time they entered into the Triggered AIG Policies.

**FOURTH CAUSE OF ACTION**
**(**Deceptive Business Practices – General Business Law § 349)

113. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 112 of this Complaint as if fully set forth herein.

114. AIG has acted in bad faith and through a pattern of deceptive conduct in connection with its attempts to manage its exposure, without regard for the interests of its insureds, not only for the Hair Relaxer Litigation against Revlon but also, upon information and belief, in connection with other policyholders' claims, including without limitation claims made by other policyholders for coverage of lawsuits against them seeking damages related to those other policyholders' productions, manufacturing, distribution, and/or sales of hair straightening or relaxing products.

115. New York Insurance Law § 2601 provides that "No insurer doing business in this state shall engage in unfair claim settlement practices," and defines unfair claim settlement practices to include, among other things:

> (1) knowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue;
> (2) failing to acknowledge with reasonable promptness pertinent communications as to claims arising under its policies;
> …
> (4) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear.

116. The deceptive acts and practices by AIG include, without limitation: (1) falsely disclaiming the existence of additional coverage issued by AIG that is responsive to the Hair Relaxer Litigation; (2) unreasonably, recklessly, knowingly, intentionally, and/or maliciously failing to promptly investigate and respond to Revlon's requests for insurance coverage under AIG's Policies, including the Triggered AIG Policies, and instead delaying provision of AIG's coverage positions for many months and relying on false pretenses to justify AIG's inordinate delays in providing Revlon with copies of AIG's policy documents and information; (3) unreasonably, recklessly, knowingly, intentionally, and/or maliciously failing to promptly review and pay Revlon's defense costs relating to the Hair Relaxer Litigation; (4) unreasonably, recklessly, knowingly, intentionally, and/or maliciously failing to promptly respond to Revlon's reasonable requests for policy documents and information regarding Revlon's coverages despite repeated requests for such information over a period of more than one year; (5) unreasonably, recklessly, knowingly, intentionally, and/or maliciously failing to promptly review the defense invoices that Revlon provided to AIG and to pay or commit to pay any portion of Revlon's covered defense costs under one or more of the Triggered AIG Policies; (6) arbitrarily, and with reckless disregard for the rights of Revlon, refusing to effectuate prompt, fair, and equitable payment of Revlon's defense costs; (7) purporting to acknowledge a duty to defend suits at issue in the Hair Relaxer Litigation under certain Policies but then unreasonably and knowingly refusing and failing to pay any defense expenses incurred in the defense against the suits at issue in the Hair Relaxer Litigation, let alone all the defense expenses owed under the express terms of AIG's Policies; (8) refusing to pay or reimburse Revlon for its full defense costs, without a reasonable basis; and (9) forcing Revlon to sue for coverage when such coverage is patent.

117. This conduct has forced Revlon to self-fund its defense against the Hair Relaxer Litigation, diverting resources that Revlon might otherwise have used to pursue business strategies necessary to its growth and prosperity.

118. AIG also has taken improper coverage positions and engaged in unjustifiable delays, which it improperly and without a good-faith basis purported to justify based on the assertion it was still "investigating" Revlon's coverages, even though AIG had policy information and documents in its possession that showed it owed a full defense obligation to Revlon for the Hair Relaxer Litigation.

119. AIG's unreasonable and bad-faith conduct was undertaken in an effort not only to limit AIG's exposure to Revlon for the Hair Relaxer Litigation, but also to limit its exposure to claims of other policyholders insured under other AIG policies with similar policy language to the AIG Policies at issue here.

120. AIG's conduct constitutes deceptive acts and practices in violation of New York General Business Law § 349.

121. AIG's conduct is knowing, reckless, and willful.

122. By reason of the foregoing, Revlon has suffered and continues to suffer damages.

123. By reason of the foregoing, Revlon is entitled to compensatory, consequential, and punitive damages, statutory penalties, as well as prejudgment interest and attorney's fees and costs, against AIG in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for relief as follows:

(a) On the First Cause of Action, Plaintiffs request that the Court enter a judgment against AIG awarding Plaintiffs all damages sustained in an amount to be determined at trial,

plus pre- and post-judgment interest, costs, and attorneys' fees and expenses to the extent permitted by law;

(b) On the Second Cause of Action, Plaintiffs request that the Court enter a judgment against AIG declaring Plaintiffs' rights under the AIG Policies, including without limitation that (1) AIG Policies, including the Triggered AIG Policies, provide coverage for the claims and suits at issue in the Hair Relaxer Litigation; and (2) AIG is obligated under AIG Policies, including the Triggered AIG Policies, to pay in full all defense costs that Plaintiffs reasonably have incurred or will in incur in the future in its defense against the Hair Relaxer Litigation, so long as any such Policy's applicable liability limits remain unexhausted.

(c) On the Third Cause of Action, Plaintiffs request that the Court enter a judgment against AIG awarding Plaintiffs damages, including consequential damages, in an amount to be determined at trial, plus attorneys' fees, and pre- and post-judgment interest to the extent permitted by law;

(d) On the Fourth Cause of Action, Plaintiffs request that the Court enter a judgment against AIG awarding Revlon damages in an amount to be determined at trial, including actual damages, consequential damages including attorney's fees, statutory penalties, and punitive damages in an amount deemed sufficient to punish AIG for the conduct to which it has subjected Revlon and any other policyholders, and to prevent AIG from engaging in similar deceptive conduct with Revlon and/or other policyholders in the future;

(e) On all Causes of Action, Plaintiffs request pre- and post-judgment interest to the extent permitted by law; and

(f) Any such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: November 15, 2024
New York, New York

**COHEN ZIFFER FRENCHMAN & MCKENNA, LLP**

By: ______________

Keith McKenna
Jillian M. Raines
Morgan L. Greene
1325 Avenue of the Americas, 31st Fl.
New York, NY 10019
Telephone: (212) 584-1890
Fax: (212) 584-1891
kmckenna@cohenziffer.com
jraines@cohenziffer.com
mgreene@cohenziffer.com

*Attorneys for Plaintiffs Revlon Group Holdings LLC and Revlon Consumer Products LLC (f/k/a Revlon Consumer Products Corp.)*